ACCEPTED
01-15-00838-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/2/2015 10:38:19 AM
CHRISTOPHER PRINE
CLERK

No. 01-15-00838-CV

No. _____

IN THE \_\_\_\_ 1st COURT OF APPEALS
FOR HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/2/2015 10:38:19 AM
CHRISTOPHER A. PRINE
Clerk

IN RE: CHARLES STORER,
AGENT UNDER A POWER OF ATTORNEY FOR
KENNETH COOPER MCAFEE,
RELATOR

---

## PETITION FOR WRIT OF MANDAMUS

---

Respectfully Submitted,

ANDERSON PFEIFFER, PC

/s/ Esther Anderson

Esther Anderson
SBN: 00792332
Robert Teir (of Counsel)
SBN: 00797940
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Telephone: (281) 488-6535
Facsimile: (281) 488-0625
Email: esther@probateguardianship.com

Attorneys for Relator, Charles Storer, Power
of Attorney for Kenneth Cooper McAfee

# IDENTITY OF PARTIES AND COUNSEL

Relator, Charles Storer, Agent under a Power of Attorney for Kenneth Cooper McAfee, certifies that the following is a complete list of the parties, the attorneys and any other persons who have any interest in the outcome of this lawsuit.

| | | |
|---|---|---|
| **1.** | **Relator:** | Charles Storer, Agent under a Power of Attorney for Kenneth Cooper McAfee |
| | **Counsel:** | Esther Anderson<br>Anderson Pfeiffer, PC<br>SBN: 00792332<br>845 FM 517 West, Suite 200<br>Dickinson, Texas 77539-2903<br>Office: 281-488-6535<br>Facsimile: 281-614-5205<br>Email: esther@probateguardianship.com |
| | **Of Counsel:** | Robert Teir (of Counsel)<br>SBN: 00797940<br>845 FM 517 West, Suite 200<br>Dickinson, Texas 77539<br>Office: 832-365-1191<br>Facsimile: 832-550-2700<br>Email: rob@teirlaw.com |
| **2.** | **Respondent:** | Honorable Loyd Wright<br>Judge, Probate Court No. 1<br>Harris County, Texas<br>201 Caroline, 6th Floor<br>Houston, Texas 77002 |

| | | |
|---|---|---|
| **3.** | **Real Party in Interest:** | Rosemary Foltyn and Jake Foltyn |
| | **Counsel:** | Dean M. Blumrosen<br>SBN: 02517900<br>4615 Southwest Freeway, Suite 850<br>Houston, Texas 77027<br>Office: 713-524-2225<br>Facsimile: 713-524-5570<br>Email: Dblumrosenlaw@aol.com |
| **4.** | **Real Party in Interest:** | Rosemary Foltyn, Administratrix of The Estate of Janet Foltyn McAfee, Deceased |
| | **Counsel:** | Mary Elizabeth Duff<br>Mitchell & Duff, LLC<br>SBN: 06166880<br>210 Main Street<br>Richmond, Texas 77469<br>Office: 281-341-1718<br>Facsimile: 281-239-7928<br>Email:eduff@mitchellandduff.com |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ...................................................... II, III

TABLE OF CONTENTS ................................................................................ IV, V

INDEX OF AUTHORITIES ...................................................... VI, VII, VIII, IX, X

STATEMENT OF THE CASE ......................................................................... XI

STATEMENT OF JURISDICTION .............................................................. XIII

ISSUES PRESENTED ................................................................................ XIII

    1.    Does the Probate Court have jurisdiction to act without a pending cause of action? (No.)

    2.    Without a pending cause of action, are the June 8, 2011 temporary injunction and the May 18, 2015 Orders void? (Yes.)

    3.    Do the doctrines of collateral estoppel and res judicata bar re-tracing of the Woodforest account? (Yes.)

    4.    Do the two Orders amount to a violation of K. McAfee's due process rights? (Yes.)

    5.    Do the two Orders amount to an abuse of discretion? (Yes.)

STATEMENT OF FACTS ................................................................................. 1

SUMMARY OF ARGUMENT ........................................................................ 11

ARGUMENT .............................................................................................13

    I.     This case warrants mandamus relief.

    II.    The Probate Court does not have jurisdiction to act without a pending cause of action.

    III.   Without a pending cause of action, the temporary injunction and the May 18, 2015 Order are void.

    IV.   Res Judicata and Collateral Estoppel bar re-tracing of the Woodforest account.

    V.    The Estate's claims cannot be satisfied from the Woodforest account or assets stemming from the Woodforest account and continued obstruction of these funds violates due process and constitutes an abuse of discretion.

PRAYER ................................................................................................45

CERTIFICATE OF SERVICE .............................................................47

CERTIFICATE OF COMPLIANCE .....................................................48

RULE 52.3(J) CERTIFICATION ...........................................................49

APPENDIX ............................................................................................50

# INDEX OF AUTHORITIES

CASES                                                                                  PAGE(S)

*360 Degree Commc'ns Co. v. Grundman,*
    937 S.W.2d 574 (Tex. App.—Texarkana 1996, no writ) ............................ 22

*Amstadt v. U.S. Brass Corp.,*
    919 S.W.2d 644 (Tex. 1996) ........................................................ 37

*Barr v. Resolution Trust Corp.,*
    837 S.W.2d 627 (Tex. 1992) ................................................ 25, 26, 38, 42

*Benson v. Wanda Petroleum Co.,*
    468 S.W.2d 361 (Tex. 1971) ........................................................ 37

*Big D Props., Inc. v. Foster,*
    2 S.W.3d 21 (Tex. App.—Fort Worth 1999, no pet.) ................................. 22

*Butnaru v. Ford Motor Co.,*
    84 S.W.3d 198 (Tex. 2002) ......................................................... 21

*Crowson v. Wakeham,*
    897 S.W.2d 779 (Tex. 1995) ........................................................ 40

*Cunningham v. Parkdale Bank,*
    660 S.W.2d 810 (Tex. 1983) ................................................ 17, 18, 19

*Dionne v. Bouley,*
    757 F.2d 1344 (1st Cir. 1985) ..................................................... 44

*Eagle Props., Ltd. v. Scharbauer,*
    807 S.W.2d 714 (Tex. 1990) ...................................................... 35, 37

*Eastern Energy, Inc. v. SBY P'ship,*
    750 S.W.2d 5 (Tex. App.—Houston [1st Dist.] 1988, no writ) .................... 25

*EOG Res., Inc. v. Gutierrez,*
    75 S.W.3d 50 (Tex. App.—San Antonio 2002, no pet.) ............................ 22

*Evans v. C. Woods, Inc.,*
     34 S.W.3d 581 (Tex. App.—Tyler 1999, no pet.) ....................................... 22

*Goldstein v. Comm'n for Lawyer Discipline,*
     109 S.W.3d 810 (Tex. App.—Dallas 2003, pet. denied) ............................ 38

*Houtex Ready Mix Concrete & Materials v. Eagle Const. & Envtl. Servs., L.P.,*
     226 S.W.3d 514 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ............... 38

*In re Cerberus Capital Mgmt., L.P.*
     164 S.W.3d 379 (Tex. 2005) (orig. proceeding) ................................... 14, 45

*In re Dickason,*
     987 S.W.2d 570 (Tex. 1998) ................................................................. 13, 15

*In re Francis,*
     186 S.W.3d 534 (Tex. 2006) ..................................................................... 16

*In re Mask,*
     198 S.W.3d 231 (Tex. App.—San Antonio 2006, orig. proceeding) .......... 15

*In re Pierce,*
     No. 13-12-00125-CV, 2012 WL 3525638
     (Tex. App.—Corpus Christi Aug. 10, 2012, orig. proceeding)
     (mem. op.) ............................................................................. 14, 15, 16, 45

*In re Sw. Bell Tel. Co.,*
     35 S.W.3d 602 (Tex. 2000) (orig. proceeding) (per curiam)................... 13, 15

*InterFirst Bank San Felipe v. Paz Constr. Co.,*
     715 S.W.2d 640 (Tex. 1986) (per curiam) ............................................. 13, 22

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,*
     962 S.W.2d 507 (Tex. 1998) .......................................... 27, 32, 33, 36

*Lehmann v. Har-Con Corp.,*
     39 S.W.3d 191 (Tex. 2001) ....................................................................... 40

*Logan v. McDaniel,*
 21 S.W.3d 683 (Tex. App.—Austin 2000, pet. denied) ............................... 40

*Lozano v. Lozano,*
 975 S.W.2d 63 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ........ 28

*Lucik v. Taylor,*
 596 S.W.2d 514 (Tex. 1980) ...................................................................... 18

*Murray v. O & A Express, Inc.,*
 630 S.W.2d 633 (Tex. 1982) ...................................................................... 18

*Parklane Hosiery Co. v. Shore,*
 439 U.S. 322 (1979) .................................................................................... 37

*Phillips v. Allums,*
 882 S.W.2d 71 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ........ 37

*Quinney Elec., Inc. v. Kondos Entm't, Inc.,*
 988 S.W.2d 212 (Tex. 1999) (per curiam) .................................................. 26

*Qwest Commc'ns Corp. v. AT&T Corp.,*
 24 S.W.3d 337 (Tex. 2000) (per curiam) ............................................... 13, 22

*Rexrode v. Bazar,*
 37 S.W.2d 614 (Tex. App.—Amarillo 1997, no writ) ........................... 34, 41

*Roark v. Allen,*
 633 S.W.2d 804 (Tex. 1982) ...................................................................... 18

*Robbins v. HNG Oil Co.,*
 878 S.W.2d 351 (Tex. App —Beaumont 1994, writ dism'd w.o.j.) ............ 37

*Scurlock Oil Co. v. Smithwick,*
 724 S.W.2d 1 (Tex. 1986) .......................................................................... 38

*Smith v. Lanier,*
 998 S.W.2d 324 (Tex. App.—Austin 1999, pet. denied) ........................ 17,18

*State & Cty. Mut. Fire Ins. v. Miller,*
      52 S.W.3d 693 (Tex. 2001) ........................................................................ 28

*State v. Traylor,*
      374 S.W.2d 203 (Tex. 1963) ................................................................. 17, 19

*Sysco Food Servs., Inc. v. Trapnell,*
      890 S.W.2d 796 (Tex. 1994) ................................................ 26, 27, 32, 37, 38

*Tankersley v. Durish,*
      855 S.W.2d 241 (Tex. App.—Austin 1993, writ denied) ............................ 38

*Tex. Dep't of Pub. Safety v. Petta,*
      44 S.W.3d 575 (Tex. 2001) .............................................................. 27, 28, 37

*Texas Natural Res. Conservation Comm'n,*
      85 S.W.3d 201 (Tex. 2002) (orig. proceeding) ......................................... 15

*Walling v. Metcalfe,*
      863 S.W.2d 56 (Tex. 1993) (per curiam) ................................................... 24

## Rules

TEX. R. CIV. P.

§ 2 ...................................................................................................................18

§ 22 .................................................................................................................18

§ 97 .................................................................................................................42

§ 683 ..........................................................................................................18, 24

## Statutes

TEXAS ESTATE CODE

§ 22.029 .........................................................................................................24

§ 31.001 ....................................................................................................17, 18

§ 31.002 ....................................................................................................17, 18

§ 32.001 .........................................................................................................17

§ 402.001 .......................................................................................................17

TEXAS PROP. CODE
§ 42.0021(a)

42 U.S.C. 407 .............................................................................. 12, 31, 32, 44

## STATEMENT OF THE CASE

*Nature of the Case*      The Probate Court granted an independent estate administration in one cause number, and heard a wrongful death proceeding in another cause number. The Probate Court issued a temporary injunction in the estate administration. A final judgment was entered in the wrongful death proceeding, but no claims were filed in the estate administration.

*Probate Court*      Probate Court No. 1 of Harris County, Texas

Hon. Loyd Wright, Presiding

*Disposition Below*      The Probate Court refused to fully lift the temporary injunction and instead ordered that a portion of funds in an account containing only social security benefit proceeds be turned over to the County Clerk's registry.

# STATEMENT OF JURISDICTION

The Court has jurisdiction to issue a writ of mandamus under TEX. GOV'T CODE §22.221(b)(1).

## ISSUES PRESENTED

The Probate Court entered an order declaring Kenneth McAfee's account at Woodforest National Bank ending in -404 exclusively holds his social security benefit proceeds that are exempt from garnishment. Subsequently, the Probate Court refused to fully lift a temporary injunction on this account and ordered a portion of such funds to be turned over to the County Clerk's registry for the benefit of the estate of Janet Foltyn McAfee, Deceased until the nature of two deposits at issue has been determined.

1. Does the Probate Court have jurisdiction to act without a pending cause of action? (No.)

2. Without a pending cause of action, are the June 8, 2011 temporary injunction and the May 18, 2015 Orders void? (Yes.)

3. Do the doctrines of collateral estoppel and res judicata bar re-tracing of the Woodforest account? (Yes.)

4. Do the two Orders amount to a violation of K. McAfee's due process rights? (Yes.)

5. Do the two Orders amount to an abuse of discretion? (Yes.)

## STATEMENT OF FACTS

Kenneth Cooper McAfee ("K. McAfee" herein) was convicted of a criminal offense involving the death of his wife, Janet Foltyn McAfee, and is currently serving his sentence at a Texas correctional institution. Janet McAfee died on May 8, 2010.

On June 8, 2010, Janet McAfee's mother, Rosemary Foltyn, was appointed Independent Administrator of Janet McAfee's estate by the Probate Court No. 1 of Harris County, Texas under Cause no. 396,935. Rosemary Foltyn, in this capacity, will be referred to herein as "the Estate."

On February 23, 2011, Janet McAfee's parents, Rosemary and Jake Foltyn, individually, and the Estate brought a wrongful death action against Kenneth McAfee in the same Court, under the ancillary Cause no. 396,935-401.

On March 31, 2011, the Estate obtained a *Temporary Restraining Order* in the estate administration under Cause no. 396,935, which was eventually converted to the June 8, 2011 *Agreed Order for Temporary Injunction*. Tab 1. The *Temporary Injunction* enjoins K. McAfee from the use and control of his assets and assets he shared with Janet McAfee and states that it is to remain in place until the Court makes a determination of what property belongs to the Estate of Janet McAfee or renders a full and final judgment in the wrongful death suit. Tab 1, at p. 9.

On March 21, 2014, the Probate Court granted a summary judgment in the wrongful death action in favor of the Foltyns and awarded them each $1,000,000.00. Tab 2.

The June 8, 2011 *Temporary Injunction* remains in place today and affects K. McAfee's Woodforest National Bank account that is the subject of this mandamus proceeding and his 401(k) account at GMS.

### *The Foltyns seek writs of garnishment; two of K. McAfee's accounts are exempt.*

On October 9, 2014, the Foltyns sought Writs of Garnishment against K. McAfee's bank accounts at The GMS Group, L.L.C., and Woodforest National Bank under the ancillary wrongful death cause of action no. 396,935-401. Tab 3.

Charles Storer, as agent under a power of attorney for K. McAfee, acted on behalf of K. McAfee in the 401 garnishment proceedings. On November 19, 2014 Storer filed a *Motion to Quash Writs of Garnishment* only to the extent that they reached two particular accounts: a GMS account ending in -606 holding only K. McAfee's tax-deferred retirement benefits from his previous employer, and the Woodforest account ending in -404 holding only K. McAfee's Social Security Disability Insurance benefits, claiming both are exempt from judgment creditors. Tab 4.

On January 7, 2015, the Estate entered the 401 garnishment proceedings by filing a *Notice to Court* wherein the Estate objected to Storer's *Motion to Quash* and claimed a community property interest in the two accounts Storer sought to protect from garnishment. Tab 5. The Foltyns, individually, also filed a *Response to Charles Storer's Motion to Quash Writs of Garnishment*, claiming that Charles Storer did not have standing, and seeking a stay pending K. McAfee's compliance with post-judgment discovery. Tab 6. On January 8, 2015, the parties attended a hearing, which was ultimately continued by the Court until the issues of standing and post judgment discovery were addressed. Tab 7.[1]

On January 22, 2015, the Court heard arguments of counsel regarding the writs and Storer's *Motion to Quash*. Tab 8. All counsel agreed that the writs on the Woodforest -404 account should be quashed because it held K. McAfee's 401(k) and social security benefits. Tab 8, at p. 4, lns. 1-9; at p. 8, lns. 11-15 and at p. 18, lns. 15-18. All counsel also agreed the Foltyns should receive the balance in all of the remaining accounts. Tab 8. However, there was disagreement over whether the Order should include language to release the temporary injunction, and to what extent. Tab 8.

---

[1] The January 8, 2015 Reporter's Record states Cause No. 396,935, when it should actually state Cause No. 396,935-401.

The Estate did not want to release the temporary injunction on the 401(k) account (GMS -606) because of its alleged verbal claim for Janet McAfee's potential community property interest. Tab 8. The Foltyns did not want to release either of the two accounts, their reason being, "I don't think [the Estate] has had a complete [opportunity] to review and look at everything on the Woodforest account." Tab 8, at p. 3, lns. 21 through p. 4, ln. 1.

The Court inquired more than once if the Estate had enough information to determine its claims. Tab 8. The Estate's response was that it was "reasonably sure" that the 401(k) was the only issue and that the Woodforest account held only K. McAfee's social security benefits, to which they had no claim. Tab 8, at p. 17, through p. 18, lns. 1-25.

The Foltyns and the Estate made no argument contrary to Storer's argument in his *Motion to Quash* or his oral arguments that the Woodforest -404 account held only K. McAfee's social security benefits and the Court considered the proposed orders. Tab 8, at p. 21, lns. 6-8.

On January 27, 2015, the Probate Court entered an *Order Partially Granting Motion to Quash Writs of Garnishment*. Tab 9. The Probate Court found that both the GMS -606 account and the Woodforest -404 account were exempt from garnishment and the writs against these two accounts were quashed. Tab 9, at p. 2. The Probate Court further found that K. McAfee's remaining accounts at GMS

(ending in -008 and -628) remained subject to the writs and that payment from such accounts shall issue to the Foltyns "upon receipt of an order releasing the *Agreed Order for Temporary Injunctions* in Cause No. 396,935; In the Estate of Janet Foltyn McAfee, Deceased, dated June 8, 2011." Tab 9, at p. 3.

Specific language of the Order, as it relates to the Woodforest social security account, reads:

> "On this day came to be considered the *Motion to Quash Writs of Garnishment* filed by Charles Storer, Power of Attorney for Kenneth Cooper McAfee. After review and consideration of said *Motion*, the evidence, the responses, and the arguments of counsel, the Court finds the following:
>
> 5. The Woodforest account ending in 404 holds, exclusively, social security benefit proceeds of Kenneth C. McAfee which benefits are exempt from garnishment under 42 U.S.C. 407. 42 U.S.C. provides an absolute exemption and there are no statutory exceptions to same. Because the Woodforest account ending in 404 contains only funds exempted from garnishment, the writ directed at Woodforest as to Kenneth McAfee's account ending in 404 should be quashed."

Tab 9, at p. 2.

### *The parties deal with the temporary injunction in the estate administration.*

On February 10, 2015, Storer filed a *Motion to Partially Release Temporary Injunction* in the estate administration cause (396,935) regarding the exempt Woodforest social security account and the non-exempt GMS accounts payable to the Foltyns (ending in -008 and -628). Tab 10. On March 6, 2015, the Estate filed its own *Motion to Partially Release Temporary Injunction*, in which it sought

release of only the non-exempt GMS accounts payable to the Foltyns (ending in -008 and -628), and requested the temporary injunction otherwise remain in place, without stating any reason why. Tab 11.

On March 12, 2015, a hearing was held to consider the partial release of the temporary injunction. Tab 12.[2]

The Estate now resisted lifting the temporary injunction as to the Woodforest social security account because it questioned the characterization of two deposits that were made in the amounts of $25,162.66 on April 23, 2010, and $9,735.92 on May 4, 2010. Tab 12, at p. 3, lns. 10-24; at p. 8, lns. 16-25; at p. 9, lns. 1-7; at p. 10, lns. 13-21; at p. 15, lns. 17-24; at p. 17, lns. 6-10. The Estate claimed it might have an interest of at least 50% in these deposits if they were community property, and that this potential claim should be considered "completely separate" from the garnishment proceedings brought by the Foltyns, individually. Tab 12, at p. 8, lns 16-25; at p. 9, lns. 5-7.

---

[2] The March 12, 2015 Reporters Record states Cause No. 396,835-401 when it should actually state Cause No. 396,935 or include both.

The Foltyns' argument to keep the temporary injunction in place was based upon (1) the language in the January 27, 2015 Order was overbroad, and (2) the Court should use its inherent authority to rule for the Estate's claim due to the purported lack of information from K. McAfee. Tab 12, at p. 9, lns. 21-25; at p. 10, lns. 1-3; at p. 6 lns. 10-25; at p. 7, lns. 1-6; at p. 13, lns. 23-25; at p. 14, lns. 1-8.

The language in the January 27, 2015 Order is not overbroad. It is true that the Estate may have a community property interest in K. McAfee's 401(k) account but the Woodforest social security account is different because it was traced and found to include only K. McAfee's social security benefits, which benefits are his separate property. Tab 9. Additionally, the Estate's own Inventory reveals the Estate has had the information they are now seeking since at least August 26, 2011. Tab 16, at p. 2.

Storer reminded the Court that, under the doctrine of res judicata, it had already found that every dime in the Woodforest account is K. McAfee's social security benefits. Tab 12, at p. 7, lns. 14-25; at p. 8, lns. 1-13. In fact, the two deposits in question were specifically traced in Storer's *Motion to Quash* and they were shown to have been withdrawn close to the time of the deposits, leaving only social security benefits in the social security account. Tab 4, at p. 10, ¶25, and Exhibit "A" to such Motion; Tab 12, at p. 11, lns. 18-25. And with no objection or

contrary evidence to Storer's tracing, or arguments of counsel, the Estate previously admitted it was reasonably sure the Woodforest account held only K. McAfee's social security benefits. Tab 8, at p. 18, lns. 13-18. The Woodforest social security account was traced, and that is what the Court found. Tab 9.

That was indeed the purpose of Storer's *Motion to Quash Writs of Garnishment*, to prove that the entire Woodforest account was made up only of his social security benefits and nothing else. Tab 4. The Estate took the additional step to voluntarily enter the garnishment proceeding, make its claim, and to sit silent as to any of the details regarding the Woodforest social security account. Tab 8, at p. 5, lns. 5-18; at p. 12, lns. 10-23; at p. 17, lns. 18-24; at p. 18, lns. 13.23. Their new challenge to the characterization of two deposits is waived and is barred by collateral estoppel and res judicata.

Nevertheless, on March 16, 2015, the Probate Court granted Rosemary Foltyn's *Motion,* releasing only the non-exempt GMS accounts that were ordered to be paid to the Foltyns (ending in -008 and -628), and continued the temporary injunction. Tab 13. The Probate Court did not release K. McAfee's exempt Woodforest -404 account. Tab 13.

*Storer tries again.*

On April 15, 2015, Storer filed a *Motion for Reconsideration...and Motion for Entry of Order Releasing Social Security Proceeds from Injunction*, which was amended on May 4, 2015. Tab 14 (First Amended Motion).[3] Storer urged the Court again to release K. McAfee's social security proceeds and reminded the Probate Court that a determination regarding the tracing of the funds in the Woodforest account had already been made. Tab 14.

On May 14, 2015, the Probate Court heard the matter again, and specifically reconsidered the tracing of the two deposits and withdrawals at issue in the Woodforest account. Tab 15, at p. 16, lns. 15-25; at p. 17, lns. 1-17. Again, there was no contrary evidence presented against Storer's tracing, just arguments that Storer should have to re-prove his tracing with clear and convincing evidence. Tab 15, at p. 10, lns. 12-24.

Storer explained some of the lingering questions that had been raised:

First, because social security benefits are not community property, any claim the Estate might have in the two deposits/withdrawals cannot be satisfied from the social security account, but must be satisfied from other assets of K. McAfee. Tab 15, at p. 14, lns. 6-15; Tab 14, at p. 9, ¶ iii.

---

[3] Because the parties and discussions had started to comingle between the attorneys involved in the base and ancillary case, the *First Amended Motion for Reconsideration* was filed in both causes, but the May 18, 2015 Order on same was signed in the wrongful death ancillary case (396,935-401).

Second, the Estate indeed had possession of records showing the source of the deposits since at least the time of filing the Estate inventory on September 26, 2011. Tab 16; Tab 15, at p. 12, lns. 4-25; at p. 13, lns. 1-17.

Third, everyone participated in the January 22, 2015 hearing and had the opportunity to propose language for the Court's January 27, 2015 Order that Mr. Blumrosen claims is too broad. Tab 15, at p. 27, lns. 11-25.

***The Probate Court releases part of the social security account to K. McAfee, but takes control of the remaining social security proceeds.***

On May 18, 2015, the Probate Court signed the Estate's *Order on First Amended Motion for Reconsideration...and Motion for Entry of Order Releasing Social Security Proceeds from Injunction....* Tab 17. The Court found that Storer did not prove the characterization of the two deposits by clear and convincing evidence and ordered the Woodforest funds be released to K. McAfee, but for $34,898.58 to be made payable to the County Clerk, for the use and benefit of the Estate of Janet Foltyn McAfee, Deceased, until the nature of two deposits at issue has been determined. Tab 17.

The Probate Court not only refuses to lift the temporary injunction as to all of K. McAfee's social security benefits, but now has essentially garnished a large part of the account ($34,898.58) to satisfy the Estate's alleged verbal claim. These acts exceed the Court's authority and discretion over K. McAfee's social security funds.

## SUMMARY OF ARGUMENT

Mandamus is appropriate to compel a trial court to rescind a void order, to correct a clear abuse of discretion, and to preserve important substantive and procedural rights from impairment and loss when appellate remedy to cure the error is not adequate. These criteria are present here.

The Probate Court does not have jurisdiction to act without a pending cause of action. There are no pleadings filed in the estate administration against K. McAfee, and there are no live pleadings remaining in the wrongful death/garnishment proceedings at all. The Probate Court does not have jurisdiction to handle estate claims sua sponte. Therefore, the temporary injunction should be dissolved and the May 18, 2015 Order should be set aside for lack of jurisdiction.

Additionally, without a pending cause of action, the temporary injunction and the May 18, 2015 Order are void because an order for an injunction must set a cause for trial. This requirement is mandatory and failure to comply makes the temporary injunction and the order void, as they have turned into nothing short of a

permanent injunction. Therefore, the temporary injunction should be dissolved and the May 18, 2015 Order should be set aside, both for being void.

Furthermore, res judicata and collateral estoppel bar re-tracing of the Woodforest account. Storer previously put on tracing evidence, without question or objection, to show the Woodforest account holds only K. McAfee's social security benefits, and nothing else. The Court heard and decided that this account in fact holds only McAfee's social security benefits and is exempt from creditors, no exception. Any later "questions" the Estate may have that the Woodforest account needs to be traced again are waived and are barred by the doctrines of collateral estoppel and res judicata.

The Probate Court's most recent May 18, 2015 Order ignored Storer's arguments concerning res judicata and invited further litigation. Although the Probate Court released a portion of the Woodforest account to K. McAfee, the Court took a drastic step by ordering Woodforest to turn over $34,898.58 of such account to the County Clerk's registry for the benefit of the Estate of Janet Foltyn McAfee. This was a violation of due process and contrary to the protections provided by 42 U.S.C. 407. Such actions have amounted to an abuse of discretion that needs to be corrected.

## ARGUMENT & AUTHORITIES

### I.    This case warrants mandamus relief.

Mandamus is appropriate to compel a trial court to rescind a void order, to correct a clear abuse of discretion, and to preserve important substantive and procedural rights from impairment and loss when appellate remedy to cure the error is not adequate. *See In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam) (adding that "mandamus is proper if a trial court issues an order beyond its jurisdiction") (citing *In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998)).

### *Void order*

The June 8, 2011 temporary injunction is void because the Probate Court does not have jurisdiction, there are no pleadings on file, and there is no cause set for trial. *See Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 337, 337 (Tex. 2000) (per curiam); *InterFirst Bank San Felipe v. Paz Constr. Co.*, 715 S.W.2d 640 (Tex. 1986) (per curiam). The requirement for setting a cause for trial is mandatory and must be strictly followed, or else the order is subject to being declared void and dissolved. *See Qwest Commc'ns Corp.*, 24 S.W.3d at 337; *InterFirst Bank San Felipe*, 715 S.W.2d at 641. The temporary injunction should have been rescinded by the trial Court and should be set aside by the Court of Appeals.

The May 18, 2015 Order directing $34,898.58 from K. McAfee's social security account be deposited into the registry of the court for the benefit of Janet Foltyn McAfee is void for the same reasons: the Probate Court does not have jurisdiction, there are no pleadings on file, and there is no cause set for trial on the determination of to whom the funds belong. This Order should be set aside by the Court of Appeals.

### *Clear abuse of discretion*

A court abuses its discretion "if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law." *In re Pierce*, No. 13-12-00125-CV, 2012 WL 3525638, at *2 (Tex. App.—Corpus Christi Aug. 10, 2012, orig. proceeding) (mem. op.) (citing *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding)).

The law was clearly laid out as to why the temporary injunction should be dissolved, at least in regards to the Woodforest account, for lack of jurisdiction — no pleadings being on file and no cause being set for trial. Furthermore, it is clear that the issue of tracing the Woodforest account had already occurred through the Probate Court's January 27, 2015 Order, which determined that 100% of the funds were K. McAfee's social security benefits, and nothing else.

The Probate Court's refusal to lift the temporary injunction, and instead to take control of K. McAfee's funds and to hold them for the use and benefit of the Estate, before it even receives what is being asked for, constitutes an abuse of discretion.

### *Appellate remedy not adequate*

Because the June 8, 2011 temporary injunction and the May 18, 2015 Order are void, Storer need not show lack of an adequate appellate remedy, and mandamus relief is appropriate. *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam) (citing *In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998)).[4] Nevertheless, at this point in time, there will never be a final order to appeal on the Probate Court's seizure of K. McAfee's social security benefits because there are no claims on file by the estate and because Storer can no longer obtain a hearing with the Court. That is also why this proceeding is not subject to an accelerated appeal, because there is no pending claim. *See Texas Natural Res. Conservation Comm'n*, 85 S.W.3d 201, 206-07 (Tex. 2002) (orig. proceeding) (holding mandamus was available when "a restraint on conduct...has yet to be subject to a truly adversarial proceeding"); *See In re Pierce*, 2012 WL 3525638, at

---

[4] *See also In re Pierce*, No. 13-12-00125-CV, 2012 WL 3525638, at *4 (Tex. App.—Corpus Christi Aug. 10, 2012, orig. proceeding) (mem. op.) ("temporary injunctions which do not comply with 683 are void, and when the trial court's order is void, mandamus relief is available regardless of whether there is an adequate remedy by appeal"); *In re Mask*, 198 S.W.3d 231, 233 (Tex. App.—San Antonio 2006, orig. proceeding) (concluding that when an order is void, then "mandamus relief is available regardless of whether there is an adequate remedy by appeal") .

*4 (writ of mandamus may be appropriate for reviewing a temporary injunction) (citing *In re Francis*, 186 S.W.3d 534, 538 (Tex. 2006)).

There are also significant benefits to mandamus relief in this matter, due to the federally mandated protection provided to K. McAfee's social security benefits, which would be rendered moot absent review by mandamus.[5] The Probate Court has seized money that it had previously declared to be K. McAfee's social security benefits. The United States legislature and Supreme Court have made it painstakingly clear that social security proceeds are prohibited from seizure in the legal process, regardless of the merits of the claim, including community property claims. The Probate Court's rulings defeat the purpose of these laws and place Storer in the position of having to continuously re-litigate the exempt status of his social security benefits. Appellate remedy would be inadequate for K. McAfee to protect his social security funds, even if the Court had seized them with jurisdiction and a proper order. Therefore, mandamus relief is appropriate in this matter.

## II.    The Probate Court does not have jurisdiction to act without a pending cause of action.

According to arguments of the Foltyns and the Estate's counsel, the only reason they sought to keep the temporary injunction in place was due to alleged

---

[5] *See In re Pierce*, 2012 WL 3525638, at *4 (discussing the benefits of mandamus relief when there are other claims raised which would be rendered moot if not reviewed by mandamus).

community property claims the Estate may have against K. McAfee.[6] But without any live pleadings on file, the Probate Court lacks jurisdiction to take any action in this case, including the issuance of injunctive relief or taking control of an individual's assets to hold in the registry of the Court for the benefit of someone else.

Texas Estates Code section 402.001 states that after the inventory has been approved in an independent administration, the Probate Court can take no further action of any nature unless specifically provided for by the Texas Estates Code. *See also State v. Traylor*, 374 S.W.2d 203, 204 (Tex. 1963) (probate court has only that jurisdiction conferred upon it by the Probate Code).

The probate court is then vested with substantial "potential jurisdiction" to hear almost any issue involving the estate or the personal representative, even matters related to the settlement and partition of an estate. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 (Tex. 1983); TEX. ESTATES CODE §§ 32.001, 31.001, 31.002. The probate court can even have the power to determine community property claims, characterize separate and community property interests, and order the surrender of property held by a party to the suit. *Smith v. Lanier*, 998 S.W.2d 324, 332, 336 (Tex. App.—Austin 1999, pet. denied) (probate

---

[6] Tab 8, at p. 3, lns. 20-25; at p. 4, lns. 1-7; at p. 5, lns. 5-10; at p. 5, lns. 14-19; at p. 8, lns. 2-4; at p. 11, lns. 4-16; at p. 17, lns. 18-25; at p. 18, lns. 1- 24; Tab 12, at p. 3, lns. 13-22; at p. 6, lns. 10-25; at p. 7, lns. 1-6; at p. 8, lns. 16-25; at p. 9, lns. 1-7; at p. 9, lns. 21-25; at p. 10, lns. 1-21; at p. 12, lns. 1-25; at p. 13, lns. 1-6; at p. 15, lns. 4-25; at p. 16, ln. 1; Tab 15, at p. 10, lns. 1-21; at p. 10, lns. 7-24; at p. 11, lns. 10-16; at p. 14, lns. 16-25.

court can issue injunction against survivor's separate property pending declaratory judgment action); *Lucik v. Taylor*, 596 S.W.2d 514, 516 (Tex. 1980) (probate court can issue injunction over estate property pending contest to administration).

But there is no authority for a court to act on estate issues sua sponte. A probate court's potential jurisdiction is "activated and becomes actual jurisdiction" only after the filing of a petition, the subject matter of which is within the jurisdiction of the court. *Cunningham*, 660 S.W.2d at 812 (probate court did not have jurisdiction to enter judgment against independent administrator based solely on substance of final account; pleadings required). Just as in any other type case, a party must invoke a probate court's jurisdiction by filing an application, petition, motion, action, claim, cause of action, or request of some nature. *See* TEX. ESTATES CODE §§ 31.001, 31.002.

Pleadings create the foundation of due process: they define the issues and give the opposing party information sufficient to enable him to prepare a defense. *Cunningham*, 660 S.W.2d at 812-13 (citing *Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex. 1982); *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982)). There is no exception simply because we are in probate court:

> "The Texas Rules of Civil Procedure govern proceedings in probate matters except in those instances in which a specific provision has been made to the contrary. Tex.R.Civ.P. 2. In Texas, '[a] civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk.' Tex.R.Civ.P. 22." *Id.*

The Estate has no live pleadings in this case asking the Probate Court to do anything or decide any matter. In fact, the Estate has never even *asked* the Court to determine a marital property claim; it has only alluded throughout the hearings that there may be claims. The Probate Court cannot provide the Estate any relief to which it has not requested in writing. *Id.* at 813 ("a party may not be granted relief in the absence of pleadings to support that relief").

This is because an independent administration is managed at the direction of the personal representative, not by the probate court. The Texas Supreme Court has explained that a probate court cannot take on duties of the independent executor. In *State v. Traylor*, the independent executors asked the probate court to order a partition and distribution, giving the decedent's widow a compromised community property distribution, which they had chosen not to trace for economic reasons, and which was opposed by the other beneficiary. 374 S.W.2d 203 (Tex. 1963). While a probate court has statutory authority to order a partition and distribution, the executors were essentially asking for the court's stamp of approval on their decision to not trace the community property interest, instead of just approving the widow's claim (and facing suit) or having the widow's claim established by judgment. *Id.* The Supreme Court said this was not something the Court could do, even at an executor's request, and the executors must act on the claim before coming to the Court for a partition and distribution.

In the present case, the independent administrator must first act on its alleged claim by filing a pleading seeking relief. The Probate Court has no power to seize or continue an injunction over K. McAfee's assets until after the Estate has acted.

The fact that the Estate has no pleadings on file was argued by Storer multiple times:

1.  January 8, 2015 hearing: "…there's nothing to intervene in, because there is no pending action." Tab 7, at p. 10, lns. 7-12.

2.  January 22, 2015 hearing: "…I can't even learn what the base lawsuit is that the Temporary Injunction was filed for." Tab 8, at p. 7, lns. 1-5.

3.  May 14, 2015 hearing: "this Temporary Injunction that everyone is talking about and relying on, you know has been going on for a very long time without a cause of action, without a trial date. It's basically an agreement for everyone to have a standstill. And that's fine. We intend to honor it. But it's time to separate these parties." Tab 15, at p. 7, lns. 3-5.

With no pleadings on file, the injunction should be dissolved entirely. It is however, even more serious that a portion of K. McAfee's social security benefits were ordered to be turned over to the Clerk for the use and benefit of the Estate of Janet Foltyn McAfee. The Probate Court's taking of the $34,898.58 from K.

McAfee's social security account is essentially a further injunction with no pleadings on file and no jurisdiction.

Therefore, the temporary injunction should be dissolved and the May 18, 2015 Order should be set aside for lack of jurisdiction.

## III. Without a pending cause of action, the June 8, 2011 temporary injunction and the May 18, 2015 Order are void.

The lack of pleadings makes the temporary injunction void in its entirety, as well as the May 18, 2015 Order that directs Woodforest to turn over $34,898.58 to the registry of the court. The parties can enter an agreement outside of Court to freeze the remaining assets, but the temporary injunction, especially in this new form, has been taken too far.

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Company*, 84 S.W.3d 198, 204 (Tex. 2002). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* The Estate has no cause of action on file against K. McAfee, and, even if it did, there is no probable right to the relief sought because the facts are what they are. The evidence that has already been considered will always yield the same result—that all of the money in the Woodforest account is federally protected social security proceeds.

Texas Rule of Civil Procedure 683 further states that "every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought." This requirement is mandatory and must be strictly followed, or else the order is subject to being declared void and dissolved. *Qwest Commc'ns Corp.*, 24 S.W.3d at 337 (Tex. 2000); *InterFirst Bank San Felipe*, 715 S.W.2d at 641 (Tex. 1986). An error of such kind is so critical that it has been held by many Texas appellate courts as "fatally defective and void, whether specifically raised by point of error or not."[7]

The Estate sought a temporary restraining order in the estate administration cause (396,935) to preserve its community property interests and anticipated recovery from the wrongful death proceedings pending against K. McAfee in the ancillary cause (396,935-401). Tab 18. The Estate's Application states, "the nature of the lawsuit is Probate, with an additional wrongful death suit pending." Tab 18, at p. 2, ¶5. The June 8, 2011 *Agreed Order for Temporary Injunction* also states:

---

[7] *EOG Res., Inc. v. Gutierrez*, 75 S.W.3d 50, 52-53 (Tex. App.—San Antonio 2002); *Evans v. C. Woods, Inc.*, 34 S.W.3d 581, 582-83 (Tex. App.—Tyler 1999, no pet.); *Big D Props., Inc. v. Foster*, 2 S.W.3d 21, 23 (Tex. App.—Fort Worth 1999, no pet.); *360 Degree Commc'ns Co. v. Grundman*, 937 S.W.2d 574, 575 (Tex. App.—Texarkana 1996, no writ).

> "this Temporary Injunction Order...shall continue in force and effect until the Court makes a determination of what property belongs to the Estate or the Court renders a full and final judgment is in the pending wrongful death suit associated with this matter, whichever is later, or by further order of this Court."

Tab 1, at p. 9 of 10.

A full and final judgment was entered in the wrongful death suit on March 21, 2014. Tab 2. The Court, however, has made clear that the injunction remains in effect in the estate administration until a determination of what property belongs to the Estate has occurred. Tab 17, last paragraph.

Whether the temporary injunction has ever been effective in the past may be a moot issue. The temporary injunction was filed only in the estate administration, where no pleadings were ever filed. On January 22, 2015, the parties argued over whether the order on the garnishment proceeding (395,835-401) should require a release of the temporary injunction in the estate administration. Tab 8, at p. 3, lns. 20-25; at p. 4, lns. 1-7; at p. 8, lns. 2-4; at p. 9, lns. 14-17; at p. 11, lns. 4-16. Storer argued to release the temporary injunction:

> "The other thing, Judge, is I don't even think there is a Temporary Injunction in place. I think everyone has honored it because everyone understood what the intent was of the parties and the intent of the Court but I can't even learn what the base lawsuit is that the Temporary Injunction was filed for. It's my understanding also that there is no ending to the Temporary Injunction and the only way one can be valid is if there is a final trial date that says on this date this Temporary Injunction ends and

will either go away or turn into a Permanent Injunction. So I believe there is not even a Temporary Injunction in place. I will go along with what's been going on but we were here two weeks ago and the issue garnishment was decided. That's over. The only thing that needed to be added was to make the payment to Mr. Blumrosen and/or his client. That's been done. And so this is the Proposed Order that covers both parties and both banks in the garnishment proceeding."

Tab. 8, at p. 6, ln. 25; at p. 7, lns. 1-16; at p. 14, lns. 15-19. Regardless of how the estate administration and wrongful death proceedings were intertwined, today there are clearly no actions being pursued in any cause against K. McAfee. This makes the temporary injunction fatally void and it should be dissolved. TEX. R. CIV. P. 683.

Additionally, "Probate" is not a cause of action. Probate is a general description for all matters or proceedings that relate to a decedent's estate. TEX. ESTATES CODE § 22.029.

The Texas Supreme Court has clarified, "the issue in determining whether an applicant has met the first qualification for a temporary writ of injunction is not whether the prayer seeking the writ and the ultimate cause of action is 'related,' but whether the applicant has a cause of action at all." *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam) (considering whether applicant's live pleadings supported the temporary injunction). With no cause of action at all on

file, there is no matter to set for trial and the injunction in whatever form it has now taken, must be dissolved.

And if there were a cause of action on file, the reason for strict compliance in setting a trial date "is to prevent the temporary injunction from becoming effectively permanent, without a trial having occurred." *Eastern Energy, Inc. v. SBY P'ship*, 750 S.W.2d 5, 6 (Tex. App.—Houston [1st Dist.] 1988). Such would be contrary to the purpose and procedure of obtaining a temporary injunction, yet this is exactly what has happened in this case, because a determination of all Estate property may never occur.

Therefore, the temporary injunction should be dissolved and the May 18, 2015 Order should be set aside for being void.

## IV. Collateral Estoppel and Res Judicata bar re-tracing of the Woodforest account.

Even if the Probate Court were to obtain jurisdiction to enjoin or take control over K. McAfee's assets, the Woodforest account cannot be subject to any further authority of the Probate Court because the funds have already been traced and found to be solely K. McAfee's social security benefits. Tab 9; Tab 14, at p. 6-8. Since the Estate can have no claim against K. McAfee's social security benefits, all of such assets must be released to K. McAfee.

The well-known case of *Barr v. Resolution Trust Corp.* describes "res judicata" as a generic term for two types of conclusive effects given to final

judgments: res judicata precludes relitigation of claims, and collateral estoppel prevents relitigation of particular issues. 837 S.W.2d 627, 628 (Tex. 1992). This mandamus involves both.

The Estate would like the Court to believe that the garnishment proceedings were completely separate from the Estate's purported community property claims in the estate administration. Tab 12, at p. 8, lns. 16-25; Tab15, at p. 11, lns. 22-25; at p. 12, lns. 1-3. This, however, is not accurate. First, the issue of tracing the Woodforest account was actually litigated in the garnishment proceeding (collateral estoppel). Second, the Estate should have brought its claims against Kenneth McAfee for the funds in the Woodforest account during the garnishment proceedings (res judicata).

## 1. Collateral Estoppel

The doctrine of collateral estoppel or issue preclusion is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues a party previously litigated and lost. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994); *Quinney Elec., Inc. v. Kondos Entm't, Inc.*, 988 S.W.2d 212, 213 (Tex. 1999) (per curiam). "A party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first

action; and (3) the parties were cast as adversaries in the first action." *Sysco Food Servs., Inc.*, 890 S.W.2d at 801. "Fairness" may also be considered, but it is narrowly applied in only the most unique circumstances. *Id.* at 805.

Collateral estoppel can apply even if the causes of action are different in the first and second proceedings. *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 577 (Tex. 2001) (criminal defendant was convicted of fleeing and attempting to elude a police officer; because the issue of whether she faced imminent harm was a fact that was litigated in her criminal trial, she was barred from bringing a civil action for assault against the officer who tried to stop her). "If a cause of action in the second lawsuit involves an element already decided in the first lawsuit, that cause of action is barred" if the issue decided in the first action was actually litigated, essential to that lawsuit's judgment, and is identical to the issue in the pending action. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 521 (Tex. 1998).

### *Element 1: the facts sought to be litigated in the second action are identical to the facts litigated in the first action*

"Collateral estoppel applies when an issue decided in the first action is actually litigated." *Tex. Dep't of Pub. Safety*, 44 S.W.3d at 579. "Actually litigated" means the issue was properly raised (by pleadings), submitted for determination, and determined. *Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 521. The issues must be identical and must have been fully and fairly litigated.

*State & Cty. Mut. Fire Ins. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001); *Tex. Dep't of Pub. Safety*, 44 S.W.3d at 579.

What the Estate is seeking now is identical to what was before the Court in the garnishment proceedings, a tracing of the Woodforest account. The tracing that was necessary to establish protection in the garnishment proceedings is the very same tracing that would be necessary to prove the Woodforest account is solely K. McAfee's social security benefits. *Tex. Dep't of Pub. Safety*, 44 S.W.3d at 577 (collateral estoppel applied because same facts were necessary to prove first and second claims).

In the garnishment proceedings, Storer sought to quash two writs the Foltyns had obtained, one against a 401(k) Savings Plan and one against a social security account. Tab 4. Both accounts needed to be established as exempt accounts in order to quash the writs. While the funds in the 401(k) were protected merely by being in a tax-deferred retirement account,[8] the social security funds were held in an ordinary checking account and Storer had to show that every penny in the Woodforest account was attributed to his social security benefits. Tab 4, at ¶'s 22-25 (regarding need to trace comingling of social security benefits). Had there been

---

[8] TEX. PROP. CODE § 42.0021(a); *see also* Tab 4, at p. 13, footnote 12: Unlike with social security benefits, it is the account that is exempt; the source of the funds is irrelevant. *Lozano v. Lozano*, 975 S.W.2d 63, 68 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

any funds that were not social security benefits, those funds would have been subject to garnishment. Tab 4, at ¶ 23.

The nature of the Woodforest funds was plead in Storer's *Motion to Quash,* which also provided copies of the bank statements, and an account detail sheet showing the source of all deposits and withdrawals. Tab 4, at Exhibits A, B. Storer agreed the tracing rules in his *Motion,* and identified the funds all as coming exclusively from the Social Security Administration. Tab 4, at ¶ 25.

At the first hearing on January 8, 2015, the Foltyns did not challenge the protected status of a person's 401(k) or social security benefits, but argued that they did not have sufficient information to determine the character of the funds at issue due to outstanding discovery requests. Tab 7, at p. 4, lns. 1-9; at p. 5, lns. 2-17; at p. 6, lns. 9-20; at p. 8, lns. 12-25; at p. 9, lns. 1-24. The Probate Court reset the matter for two weeks to specifically allow time for exchanging information. Tab 7, at p. 27, lns. 5-6.

On January 22, 2015, the parties and the Estate returned. Tab 8. Again, quashing the writs on the two accounts was never challenged. Tab 8; at p. 3, lns. 5-7. However, because Storer sought to include language in the proposed order to also release the temporary injunction as to the two accounts, the Foltyns and the Estate resisted, in order to preserve the Estate's potential community property claims against the 401(k). Tab 8, at p. 3, lns. 20-25 through at p. 4, lns. 1-7; at p.

5, lns. 5-10; at p. 5, lns. 14-19; at p. 8, lns. 2-4; at p. 9, lns. 14-15; at p. 11, lns. 4-16; at p. 14, lns. 15-19; at p. 17, lns. 18-25, at p. 18, lns. 1-24.

At both hearings, no one challenged the character of the funds that made up the Woodforest social security account (*see* Tab 7 and Tab 8); this was not done until months after the Court signed the January 27, 2015 Order. *See* Tab 12 and Tab 15. Had any contrary evidence been offered, Storer could have orally argued his tracing evidence that was filed in his *Motion to Quash Writs of Garnishment* because that was the very subject matter of that hearing, to prove that all funds in the Woodforest account were social security benefits. Tab 7, at p. 5, lns. 12-15. But the Foltyns specifically said that was not necessary (Tab 7, at p. 5, lns. 16-17) and the Estate raised no issues as to Storer's accounting (Tab 8, at p. 18, lns. 13-23).

Based upon the parties' pleadings and arguments, the Probate Court determined that the Woodforest account contained only K. McAfee's social security benefits and signed the January 27, 2015 Order:

> "On this day came to be considered the *Motion to Quash Writs of Garnishment* filed by Charles Storer, Power of Attorney for Kenneth Cooper McAfee. After review and consideration of said *Motion,* the evidence, the responses, and the arguments of counsel, the Court finds the following:
>
> ...

5. The Woodforest account ending in 404 holds, exclusively, social security benefit proceeds of Kenneth C. McAfee which benefits are exempt from garnishment under 42 U.S.C. 407. 42 U.S.C. 407 provides an absolute exemption and there are no statutory exceptions to same. Because the Woodforest account ending in 404 contains only funds exempted from garnishment, the writ directed at Woodforest as to Kenneth McAfee's account ending in 404 should be quashed."

Tab 9.

The Estate now questions the characterization of two deposits that were made into the Woodforest social security account and that were identically withdrawn from the account days later, arguing these might be deposits of community property and withdrawals of social security funds that would give the Estate a one-half interest in the deposits of community property depending on what method of tracing is used (first in/first out, or last in/first out). Tab 12, at p. 3, lns. 13-22; at p. 6, lns. 14-21; at p. 7, lns. 1-6; at p. 7, lns 14-21; at p. 8, lns. 19-25; at p. 9, lns. 7-9; at p. 9, lns. 21-25; at p. 10, lns. 1-21; at p. 12, lns. 1-25; at p. 13, lns. 1-6; at p. 15, lns. 4-25; at p. 16, ln.1; Tab 15, at p. 10, lns. 6-24; at p. 11, lns. 1-16; at p. 14, lns. 18-25. This is a tracing issue that has already been litigated and determined by the Court. Tab 9 and Tab 12 at p. 7, lns. 14-22; at p. 11, lns. 21-25; Tab 15, at p. 4, lns. 2-19; at p. 5, lns. 1-9; at p. 5, lns. 17-19; at p. 6, lns. 4-10; at p. 7, lns. 17-25; at p. 7, lns. 17-25; at p. 8, lns. 1-25; at p. 9, lns. 1-17; at p. 13, lns. 13-17; at p. 15, lns. 1-9; at p. 16, lns. 3-25; at p. 17, lns. 1-14.

Storer does not dispute the 401(k) is funded with some community property. But the social security benefits are federally protected separate property, so there is nothing left to fight over. 42 U.S.C. 407; Tab 15, at p. 15, lns. 10-14; at p. 15, lns. 22-25; at p. 16, lns. 1-25; at p. 17, lns. 1-17. To have this fight again (to trace the Woodforest social security account) would require an identical trial to the one already had, with the exact same tracing evidence and burden of proof (*Sysco Food Servs., Inc.*, 890 S.W.2d at 802 (in considering collateral estoppel, similarity of each action's burden of proof was a factor));it would just be for a different purpose, but with the same result as to the Woodforest assets.

Although Storer's tracing evidence was not challenged in the garnishment proceeding, that does not mean the issue was not actually litigated. "Actually litigated" does not require a contested proceeding, but merely that the issue was pled, considered and decided. *Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 521. These criteria have all been met. The transcripts show that it was put before the Court by all counsel, repeatedly, and that there was no issue that the Woodforest account contained anything other than K. McAfee's social security benefits. The Estate specifically said, "the two issues, which one we could see, the Woodforest, is that's all SSI money. My client has no claim to that. We can see that. As long as that's an accurate statement, it's all SSI." Tab 8, at p. 18, lns. 13-25, at p. 19, line 1; Tab 4, Exhibit A & B.

In *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, the Supreme Court considered "fully and fairly litigated" and rejected a party's argument that they had no real incentive in the first action to develop their claims in the second action. 962 S.W.2d 507, 525 (Tex. 1998). When the plaintiff lost a significant portion of his profits in oil he was transporting across the Atlantic, he used his insurance agent as a witness to recover from another insurance company based on agreements that had been discussed between multiple insurance companies to insure the cargo. *Id.* at 511-513. As to at least one claim, the Supreme Court found that the testimony of the plaintiff's insurance agent supported the court's determination that there were no insurance agreements for the extra loss coverage the plaintiff was seeking. *Id.* at 524. The plaintiff was later barred from suing his own insurance company because the issue had already been decided that there were no valid insurance agreements for the extra loss coverage. *Id.* The plaintiff argued that had he known he would be precluded from suing his own insurance company, he would have further developed the testimony to prove his insurance agent represented to him that he was covered. *Id.* at 525. The Supreme Court said he had missed his chance because he had every incentive in the first suit to establish an agreement since his claims in the first suit depended on that agreement. *Id.* Likewise, the Estate's purported community property claims to the Woodforest account depend 100% on what type funds are in the account. The

tracing was just as essential to the garnishment proceeding as it is to the Estate's purported community property claims. The Estate's agreement and/or inaction when the issue of tracing was before the Court precludes the Estate's later developed arguments.

Additionally, in *Rexrode v. Bazar*, collateral estoppel was applied even in a situation where no evidence was ever admitted. 937 S.W.2d 614 (Tex. App.— Amarillo 1997, no writ). A plaintiff sued a defendant for negligence and also sued his own insurance company under the uninsured/underinsured motorist provision of his auto insurance policy. *Id.* at 615-16. When the insurance company failed to answer requests for admissions, the plaintiff nonsuited his case against the defendant and went to trial against the insurance company. *Id.* at 616. At trial, the plaintiff offered only the deemed admissions. *Id.* at 617-18. The insurance company was granted leave to prepare responses to the requests for admissions. *Id.* at 618. The plaintiff rested. *Id.* The insurance company prepared responses, and the Court withdrew the deemed admissions. *Id.* The Court then issued a directed verdict against the plaintiff, having rested with no evidence. *Id.* The plaintiff was later barred from bringing suit against the original defendant because he had "failed to prevent the issue…from being submitted for determination and determined adversely to him. That being so, the issue was "actually litigated" in the first suit." *Id.* at 620. That is exactly what has happened in this case—the

Estate's agreement and/or inaction failed to prevent the tracing issue from being submitted for determination and determined adversely to their current purported claims, if any. The opportunity to fully and fairly litigate the issue of tracing existed, but the Estate chose not to act. This opportunity is all that is required. *See Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990) (collateral estoppel applies when the party against whom it is asserted had a full and fair opportunity to litigate the issue in the prior suit).

Because the issue of tracing the Woodforest social security account was actually litigated, fully and fairly, and is identical to the claims the Estate makes now, the first element of collateral estoppel has been met.

### *Element 2: those facts were essential to the judgment in the first action*

When the Probate Court examined whether or not the Woodforest social security account should be exempt from garnishment, the sole issue was the nature of the funds in the account. It may be redundant to keep saying that it was already established and unopposed that the funds were 100% K. McAfee's social security benefits. Tab 9 and Tab 12 at p. 7, lns. 14-22; at p. 11, lns. 21-25; Tab 15, at p. 4, lns. 2-19; at p. 5, lns. 1-9; at p. 5, lns. 17-19; at p. 6, lns. 4-10; at p. 7, lns. 17-25; at p. 7, lns. 17-25; at p. 8, lns. 1-25; at p. 9, lns. 1-17; at p. 13, lns. 13-17; at p. 15, lns. 1-9; at p. 16, lns. 3-25; at p. 17, lns. 1-14. But there was simply no other purpose to the garnishment proceeding in regards to the Woodforest account other than to

trace the funds, which is exactly what the Estate seeks to do again. *See above,*

*Johnson & Higgins of Tex., Inc.,* 962 S.W.2d at 525 (establishment of insurance

agreement was essential to first claim against 3rd party insurance company;

plaintiff could not bring action against his own insurance company because court

already found there was no insurance agreement).

Because the issue of tracing was essential to the Probate Court's January 27,

2015 Order, the second element of collateral estoppel has been met.

### *Element 3: the parties were cast as adversaries in the first action*

All parties involved today also participated in the garnishment proceeding

that resulted in the January 27, 2015 Order.

The parties in the estate administration proceedings are K. McAfee, the

Estate, and the Foltyns, individually, who are participating herein as interested

parties. Tab 18.

The garnishment proceeding did not originally involve the Estate; it

involved only K. McAfee and the Foltyns, individually, who sought to recover on

their wrongful death judgment. Tab 3. However, the Estate made a voluntary

appearance in the garnishment proceeding by filing a *Notice to Court* in which the

Estate objected to Storer's *Motion to Quash* and claimed an interest in the two

accounts Storer sought to protect from garnishment. Tab 5; Tab 7, at p. 9, lns. 1-8.

The Estate further participated in the garnishment hearings, not challenging the

quashing of the writs, but alluding to their community property claims that might exist post-garnishment. Tab 7, at p. 8, lns. 15-25; at p. 9, lns. 1-2; Tab 8, at p. 2; at p. 5, lns. 5-10, lns. 16-18; at p. 12, lns. 10-17; at p. 17, lns. 21-24; at p. 18, lns. 18-23.

Regardless of what happened thereafter, it cannot be disputed that all parties involved today actually participated in the garnishment proceedings that (1) considered the tracing of the Woodforest social security account and (2) resulted in the January 27, 2015 Order.[9]

Because the same parties were cast as adversaries in the garnishment proceeding, the third element of collateral estoppel has been met.

### Consideration of Fairness

The nature of the wrongful death proceeding is not a factor the court can consider in deciding whether to apply collateral estoppel. Fairness factors involve unique procedural and evidentiary burdens that defeat the design of collateral estoppel, and that are not caused by the party seeking to avoid the preclusive effect

---

[9] Nevertheless, collateral estoppel does not even require direct participation by the Estate, only that the Estate be in privity with the Foltyns. *Tex. Dep't of Pub. Safety*, 44 S.W.3d at 577; *Sysco Food Servs., Inc.*, 890 S.W.2d at 801; *Eagle Props., Ltd.*, 807 S.W.2d at 721. Privity cannot be disputed because the Estate and the Foltyns both share interests in the Woodforest account that are directly affected by its tracing. *See Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971). They are merely acting in two different capacities, individually and as beneficiaries of the Estate, to recover the same interests under different theories of recovery. *See Robbins v. HNG Oil Co.*, 878 S.W.2d 351, 357-58 (Tex. App —Beaumont 1994, writ dism'd w.o.j.) (Robbins as attorney-in-fact in second suit was certainly in privity with Robbins, individually, in first suit).

of a prior judgment. *See Sysco Food Servs., Inc.*, 890 S.W.2d at 804-05 (party was prevented from filing all of their claims in one suit by case law that has subsequently been overruled by statute; procedural predicament is not of their own making; then holding is narrow, given the unusual procedural posture of the case); *Phillips v. Allums*, 882 S.W.2d 71, 75 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (because party was nonsuited, party was deprived of the opportunity to litigate; "Mary Carter" agreements violate public policy). None of these type factors are present in this case.[10]

## 2. Res Judicata

Res judicata precludes relitigation of claims that have been finally adjudicated, and claims that arise out of the same subject matter that *could* have been litigated in the prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628, 631 (Tex. 1992). The elements of res judicata are: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); *see also Houtex Ready Mix Concrete & Materials v.*

---

[10] *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979) (noting when offensive collateral estoppel may be unfair); *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 7 (Tex. 1986) (holding when fairness factors are applicable); *Goldstein v. Comm'n for Lawyer Discipline*, 109 S.W.3d 810, 813 (Tex. App.—Dallas 2003, pet. denied) (observing the factors when offensive collateral estoppel may be applied); *Tankersley v. Durish*, 855 S.W.2d 241, 245-46 (Tex. App.—Austin 1993, writ denied) (noting applicable fairness factors).

*Eagle Const. & Envtl. Servs., L.P.*, 226 S.W.3d 514, 519 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

### *Element 1: there is a final judgment on the merits*

The January 27, 2015 Order is a final judgment on the merits of tracing the Woodforest social security account. Tab 15, at p. 6, lns. 4-10. It specifically and correctly states, "the Woodforest account ending in 404 holds, exclusively, social security benefit proceeds of Kenneth C. McAfee." Tab 9.

The wrongful death and estate administration claims, if any, are and/or will be separate actions. In the wrongful death action, a final judgment was entered against K. McAfee on March 21, 2014, that disposed of all parties and was appealable. Tab 2. The Foltyns' *Application for Writ of Garnishment* was initiated in the wrongful death proceeding on October 9, 2014 to collect on the judgment. Tab 3. The Probate Court had jurisdiction over the garnishment proceedings because there were garnishment pleadings and notices (Tab 3), not because the wrongful death action was on-going. Thereafter, Storer's *Motion to Quash Writs of Garnishment* was filed in the garnishment proceeding and the Probate Court properly acted on those pleadings after two hearings on the merits. Tab 9.

When the Probate Court signed the January 27, 2015 *Order Partially Granting Motion to Quash Writs of Garnishment*, there were no more issues pending in the garnishment proceeding, however the Court did direct the

temporary injunction to be lifted as to the GMS accounts in favor of the Foltyns, even though the temporary injunction was in a separate proceeding. Tab 9, at p. 3. (The remaining accounts were still subject to the temporary injunction in the separate estate administration cause, just as they were before the Foltyns' *Application for Writ of Garnishment* was filed.) On March 16, 2015, the Probate Court signed its *Order Partially Releasing Temporary Injunction* in regards to the GMS accounts in favor of the Foltyns, (Tab 9), and the January 27, 2015 became final as it disposed of all issues and parties in the garnishment proceeding.

This January 27, 2015 judgment was never appealed, and cannot be appealed now. The judgment is also not interlocutory because "a probate order is final if it adjudicates a substantial right and disposes of all issues in the phase of the proceeding for which is was brought, even though multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *Crowson v. Wakeham*, 897 S.W.2d 779, 781-82 (Tex. 1995); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192-93 (Tex. 2001); *Logan v. McDaniel*, 21 S.W.3d 683, 688 (Tex. App.—Austin 2000, pet. denied) ("An order rendered in a probate proceeding need not finally dispose of the entire proceeding…A probate proceeding consists of a continuing series of events, in which the probate court may make decisions at various points in the administration of the estate on which later decisions will be based."). Although the Estate Independent Administration is still open (without

Court supervision), the January 27, 2015 *Order* resolved all issues and pleadings in the garnishment proceeding, in which it participated. Therefore, even if the garnishment proceeding had been tied to the Estate administration, which it was not, this phase of the garnishment proceeding has been disposed of and is final, even though the Estate independent administration may continue.

Because there is a final judgment on the merits of tracing the Woodforest account, the first element of res judicata has been met.

### Element 2: same parties

As discussed above, the same parties involved today actually participated in the garnishment proceedings that resulted in the January 27, 2015 Order, and the Estate is "in privity" with the Foltyns. *See* collateral estoppel, element 3 above.

Because the same parties are involved in both proceedings, the second element of re judicata has been met.

### Element 3: same claims

Res judicata provides broader relief than collateral estoppel since it allows preclusion of claims that not only were adjudicated, but claims that could have been litigated in the prior suit. *Rexrode*, 937 S.W.2d at 616 ("unlike the broader res judicata doctrine, collateral estoppel analysis does not focus on what could have been litigated, but what was actually litigated").

"A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit." *Barr*, 837 S.W.2d at 631. "A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation. It requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action. Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit." *Id.* at 630.

The *Barr* standard "is substantially similar to the rule of compulsory counterclaims embodied in the rules of civil procedure. A party defending a claim must bring as a counterclaim any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Id.*; TEX. R. CIV. P. 97.

While the issue of tracing was actually litigated on more than one occasion, the Estate still has never filed its community property claims. The garnishment proceeding was the proper time to have brought such claims. As discussed above, the issue in the garnishment proceeding was to trace the funds in the Woodforest account as solely K. McAfee's social security benefits in order to protect the entire account from garnishment. The Estate's purported claim seeks to re-trace the funds in the Woodforest account to see if the funds are all K. McAfee's social

security benefits, or if the funds have been comingled with community property. While the purpose for tracing may be different, the issues, facts and evidence that make up both claims are identical—what is the character of the funds in the Woodforest account?

The issue of the Estate's potential community property claims was known and discussed in the garnishment proceedings. Tab 7, at p. 8, lns. 15-25; Tab 8, at p. 4, lns. 1-7; at p. 5, lns. 5-19; at p. 8, lns. 2-4; at p. 9, lns. 14-19; at p. 11, lns. 4-16; at p. 12, lns. 10-25; at p. 13, lns. 1-11; at p. 14, lns. 15-19; at p. 17, lns. 18-25; at p. 18, lns. 1-24. The Estate argued for the protection of its community property claims against the 401(k) account, yet made no mention of potential claims to the social security account. Tab 8. Knowing that tracing in the garnishment proceeding directly affected the Estate's community property interests, the Estate had the burden to bring its claim at the time the issue of tracing was first before the Court. It is not enough to merely say they want to litigate the claims in the future.

Because the same claims that the Estate alleges now could have been litigated in the prior suit, the third element of res judicata has been met.

V. **The Estate's claims cannot be satisfied from the Woodforest social security account and continued obstruction of these funds violates due process and constitutes an abuse of discretion.**

K. McAfee's social security benefits are his separate, federally protected property that cannot be used to satisfy the Estate's alleged community property

claims. 42 U.S.C. 407 ("none of the moneys paid or payable…shall be subject to execution, levy, attachment, garnishment, or other legal process….").  Storer has explained this protection provided by the Social Security Act, and its lack of exceptions, in great detail.[11]

The Foltyns and the Estate do not disagree that any funds that are social security benefits are protected. *See* Tab 7, at p. 4, lns. 1-6; Tab 8, at p. 18, lns. 13-18; *see* Tab 12, at p. 3, lns. 15-17; at p. 9, lns. 1-7; at p. 15, lns. 11-13; at p. 17, lns. 6-10; *see* Tab 15, at p. 14, lns. 17-19; at p. 24, lns. 16-18.  Since the nature of the funds in the Woodforest account have already been traced, and found to be social security benefits, there is nothing left to fight over.  If the Estate has claims, they can only be satisfied from other accounts made up of community property assets of Janet and K. McAfee, not from the Woodforest account that holds only K. McAfee's social security benefits.  Tab 15, at p. 9, lns. 18-22; at p. 13, lns. 1-17; at p. 13, lns. 2-25; at p. 14, lns.1-15; at p. 17, lns. 8-11.

The Court's continued obstruction of these funds violates due process rights and the supremacy clause. *Dionne v. Bouley*, 757 F.2d 1344, 1354 (1st Cir. 1985) (social security account was exempt from attachment, procedural issues that prevented access to the account violated due process right and perhaps even the

---

[11] *See Storer's Motion to Quash Writs of Garnishment*, Tab 4, ¶'s 11-29; Tab 7, at p. 5, lns. 2-17; at p. 11, lns. 2-4; at p. 18, lns. 9-23; Tab 8, at p. 5, lns. 20-25; at p. 6, lns. 1-24; Tab 14, at p. 9; Tab 12 and Tab 15.

supremacy clause.) These violations are further reason why the May 18, 2015 Order should be set aside and the temporary injunction dissolved.

Last, the Probate Court has abused its discretion by failing to correctly analyze and apply the law in regards to Storer's arguments of lack of jurisdiction, no pleadings being on file, and no cause being set for trial. *See In re Pierce*, No. 13-12-00125-CV, 2012 WL 3525638, at *2 (Tex. App.—Corpus Christi Aug. 10, 2012, orig. proceeding) (mem. op.) (citing *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding)) (court abuses its discretion "if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law." ).

## PRAYER

For the reasons stated above, Relator, respectfully requests that the Court grant his *Petition for Writ of Mandamus*; direct the Honorable Loyd Wright to set aside the May 18, 2015 *Order on First Amended Motion for Reconsideration of March 16, 2015, Order Partially Releasing Temporary Injunction, First Amended Motion for Entry of Order Releasing Social Security Proceeds from Injunction and Motion for Sanction*; direct the Honorable Loyd Wright to dissolve the June 8, 2011 *Agreed Order for Temporary Injunction*, and grant Relator such other relief, at law or in equity, to which Relator may be justly entitled.

Respectfully Submitted,

ANDERSON PFEIFFER, PC

*/s/ Esther Anderson*

Esther Anderson
SBN: 00792332
Robert Teir (of Counsel)
SBN: 00797940
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Telephone: (281) 488-6535
Facsimile:   (281) 488-0625
Email: esther@probateguardianship.com

***Attorneys for Relator, Charles Storer, Power of Attorney for Kenneth Cooper McAfee***

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing *Petition for Writ of Mandamus* was delivered via the electronic service provider and/or certified mail, return receipt requested on this 1st day of October, 2015, to all parties/and or counsel of record:

cc:    Honorable Loyd Wright
Judge, Probate Court No. 1
Harris County, Texas
201 Caroline, 6th Floor
Houston, Texas 77002

Dean M. Blumrosen, Esq.
4615 Southwest Freeway, Suite 850
Houston Texas 77027
***Counsel for Rosemary Foltyn and Jake Foltyn***

Mary Elizabeth Duff
210 Main Street
Richmond, Texas 77469
***Counsel for Rosemary Foltyn,***
***Administratrix of the Estate of Janet Foltyn McAfee, Deceased***

*/s/ Esther Anderson*
Esther Anderson

# CERTIFICATE OF COMPLIANCE WITH RULE 9.4(i)

This brief complies with the word limitation of Tex. R. App. P. 9.4 (i) because the brief contains 10,912 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point Times New Roman font.

Dated: October 1, 2015.

*/s/ Esther Anderson*

Esther Anderson

## RULE 52.3(j) CERTIFICATION

    I have reviewed the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record.


*/s/ Esther Anderson*

Esther Anderson

# APPENDIX TO PETITION FOR WRIT OF MANDAMUS

## Tab

1. Agreed Order for Temporary Injunction

2. Order

3. Application for Writ of Garnishment

4. Motion to Quash Writs of Garnishment

5. Notice to Court

6. Response to Charles Storer's Motion to Quash Writs of Garnishment

7. January 18, 2015 Transcript

8. January 22, 2015 Transcript

9. Order Partially Granting Motion to Quash Writs of Garnishment

10. Motion to Partially Release Temporary Injunction

11. Motion to Partially Release Temporary Injunction

12. March 12, 2015 Transcript

13. Order Partially Releasing Temporary Injunction

14. First Amended Motion for Reconsideration of March 16, 2015, Order Partially Releasing Temporary Injunction, First Amended Motion for Entry of Order Releasing Social Security Proceeds from Injunction and Motion for Sanctions

15. May 14, 2015 Transcript

16. Inventory, Appraisement and List of Claims

17. Order on First Amended Motion for Reconsideration of March 16, 2015 Order Partially Releasing Temporary Injunction, First Amended Motion for Entry of Order Releasing Social Security Proceeds from Injunction and Motion for Sanctions

18. Application for Temporary Restraining Order and Temporary Injunction

# TAB 1

Agreed Order for Temporary
Injunction

PROBATE COURT 1



998797                          No. 396,935

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JANET FOLTYN MCAFEE, | § | NO. 1 |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

## AGREED ORDER FOR TEMPORARY INJUNCTION

On March 31, 2011 the Application for a Temporary Restraining Order of Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee (the "Estate"), was heard and granted before this Court.

On April 14 and May 5, 2011 the Court ultimately ordered the Temporary Restraining Order be extended and Temporary Injunction hearing be rescheduled to June 9, 2011 at 2:00 P.M.

On May 18, 2011 the Application for a Supplemental Temporary Restraining Order of Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee, was heard and granted before this Court. The Temporary Injunction hearing was scheduled for June 1, 2011 at 12:00 PM.

On June 1, 2011 the Court ordered the Supplemental Temporary Restraining Order be extended and Temporary Injunction be extended and Temporary Injunction hearing be rescheduled to June 9, 2011 at 2:00 P.M.

On June 7, 2011, the parties agreed to the entry of a Temporary Injunction, and to pass on the hearing on June 9, 2011. This agreement is evidenced by counsels' signatures below.

The Court finds that all necessary prerequisites of the law have been legally satisfied and that the Court has jurisdiction in this case and of all the parties. The Court finds that Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee, is entitled to a Temporary Injunction.

Agreed Temporary Injunction                    1 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III                    Deputy

**IT IS THEREFORE ORDERED** that Kenneth McAfee and all of his officers, agents, servants, employees, agents, servants, successors, assigns, representatives, and attorneys are ordered to immediately cease and desist from the use and control of the following accounts and property:

### THE GMS GROUP, LLC

1.      Any and all funds in GMS Group, LLC accounts, including but not limited to the following, all of which are presumed to contain community funds and/or funds belonging to the Estate:

        a.  55H-004628

        b.  55H-056008

        c.  55L-660606

        d.  55H-003612

        e.  55H-034914

        f.  55H-850012

        g.  55H-042479

        h.  55H-008207

        i.  989-03491

        j.  996-66060

        k.  989-03500

2.      Any and all funds in GMS Group, LLC accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v)

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III _____Deputy



under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

1. PO Box 66352, Houston Texas, 77266

2. PO Box 460786 Houston, Texas, 77056

3. 6650 Fairfield Street Houston, Texas, 77023

4. 2119 Tangley Houston, Texas, 77005

## WOODFOREST NATIONAL BANK

3.      Any and all funds in Woodforest National Bank accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

a. PO Box 66352, Houston Texas, 77266

b. PO Box 460786 Houston, Texas, 77056

c. 6650 Fairfield Street Houston, Texas, 77023

d. 2119 Tangley Houston, Texas, 77005

Agreed Temporary Injunction         3 of 10

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



## BANK OF AMERICA, N.A.

4. Any and all funds in Bank of America, N.A. accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

    a. PO Box 66352, Houston Texas, 77266

    b. PO Box 460786 Houston, Texas, 77056

    c. 6650 Fairfield Street Houston, Texas, 77023

    d. 2119 Tangley Houston, Texas, 77005

### BBVA COMPASS BANK

5. Any and all funds in BBVA Compass accounts, including Laredo National Bank, including but not limited to the following, all of which are presumed to contain community funds and/or funds belonging to the Estate:

    a. 113010547049-023

    b. 00810028023

6. Any and all funds in BBVA Compass accounts, including Laredo National Bank, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet

Agreed Temporary Injunction      4 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

    a. PO Box 66352, Houston Texas, 77266

    b. PO Box 460786 Houston, Texas, 77056

    c. 6650 Fairfield Street Houston, Texas, 77023

    d. 2119 Tangley Houston, Texas, 77005

### WELLS FARGO BANK, N.A.

7. Any and all funds in Wells Fargo Bank, N.A. accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

    a. PO Box 66352, Houston Texas, 77266

    b. PO Box 460786 Houston, Texas, 77056

    c. 6650 Fairfield Street Houston, Texas, 77023

Agreed Temporary Injunction       5 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Sterling G. Senechal III



        d. 2119 Tangley Houston, Texas, 77005

## CITIZENS FINANCIAL GROUP, INC.

8. Any and all funds in Citizens Financial Group, Inc. accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

        a. PO Box 66352, Houston Texas, 77266

        b. PO Box 460786 Houston, Texas, 77056

        c. 6650 Fairfield Street Houston, Texas, 77023

        d. 2119 Tangley Houston, Texas, 77005

## PERSHING LLC

9. Any and all funds in Pershing, LLC accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v)

Agreed Temporary Injunction         6 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Sterling G. Senechal III

under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

    a.  PO Box 66352, Houston Texas, 77266

    b.  PO Box 460786 Houston, Texas, 77056

    c.  6650 Fairfield Street Houston, Texas, 77023

    d.  2119 Tangley Houston, Texas, 77005

### GRUNTAL & CO., INC.

10. Any and all funds in Gruntal & Co., Inc. accounts, including any Gruntal & Co., Inc. subsidiaries or affiliates, including but not limited to the following, all of which are presumed to contain community funds and/or funds belonging to the Estate:

    a.  989-03491

    b.  989-05600

11. Any and all funds in Gruntal & Co., Inc. accounts, , including any Gruntal & Co., Inc. subsidiaries or affiliates, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was

Agreed Temporary Injunction         7 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal II



owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

    a.  PO Box 66352, Houston Texas, 77266

    b.  PO Box 460786 Houston, Texas, 77056

    c.  6650 Fairfield Street Houston, Texas, 77023

    d.  2119 Tangley Houston, Texas, 77005

## OTHER ACCOUNTS

12.    Any and all accounts presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly;. (iii) which name them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee, including, but not limited to the following:

    a.  PO Box 66352, Houston Texas, 77266

    b.  PO Box 460786 Houston, Texas, 77056

    c.  6650 Fairfield Street Houston, Texas, 77023

    d.  2119 Tangley Houston, Texas, 77005

which contain:

    (i)    Funds transferred from or that can be traced to the accounts described herein, including but limited to accounts at The GMS Group, LLC,

Agreed Temporary Injunction            8 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



Woodforest National Bank, Bank of America, N.A., BBVA Compass Bank, Wells Fargo Bank, N.A., Citizens Financial Group, Inc., Pershing LLC, and Grutnal & Co., Inc.; and/or

(ii) Any and all additional funds and assets which are presumed to contain community funds and/or funds belonging to the Estate.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that any entity or individual, including but not limited to The GMS Group, LLC, Woodforest National Bank, Bank of America, N.A., BBVA Compass Bank, Wells Fargo Bank, N.A., Citizens Financial Group, Inc., Pershing LLC, and Grutnal & Co., Inc., which contains, controls, or possesses funds presumed to belong to the community and/or Estate, is ordered by the Court to effectuate the terms of this Temporary Injunction should Kenneth McAfee, or any officers, agents, servants, employees, agents, servants, successors, assigns, representatives, and/or attorneys acting on his behalf, attempt to access or obtain accounts or property within that entity or individual's control or possession, which may contain community funds and/or funds that belong to the Estate.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this Temporary Injunction Order is effective immediately and shall continue in force and effect until the Court makes a determination of what property belongs to the Estate or the Court renders a full and final judgment is in the pending wrongful death suit associated with this matter, which ever is later, or by further order of this Court. This order shall be binding on Kenneth McAfee, or any officers, employees, agents, servants, successors, assigns, representatives, attorneys acting on his behalf, and on those persons in active concert or participation with him. The bond posted by the Administratrix is required to remain posted.

Agreed Temporary Injunction 9 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

SIGNED on June 8, 2011 at 12:00 p. m.



JUDGE PRESIDING

APPROVED AS TO FORM:

Mary Elizabeth Duff
Texas Bar No. 06166880
210 Main Street
Richmond, TX 77469
Tel. (281)341-1718
Fax. (281)341-5517
Attorney for Independent Administratrix
Rosemary Foltyn

By:_____
DEAN M. BLUMROSEN, ESQ.
State Bar No. 02517900
4615 Southwest Freeway, Suite 850
Houston, Texas 77027
713.524.2225- Telephone
713.524.5570- Facsimile
Attorney for Heirs of Janet Foltyn McAfee

By:_____
Alexander Forrest
State Bar No. 24065241
801 Congress, #350
Houston, Texas 77002
Tel. (713)598-0339
Fax (713)224-3111
Attorney for Kenneth McAfee

Agreed Temporary Injunction                    10 of 10

FILED 2011 JAN -9 PH 9:31

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was
found to be inadequate for the best photographic
reproduction because of illegibility, carbon or
photo copy, discolored paper, etc. All blockouts,
additions and changes were present at the time
the instrument was filed and recorded.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ **Deputy**
Sterling G. Senechal III



# Tab 2

Order

NO. 396,935-401

| | | |
|---|---|---|
| ROSEMARY FOLTYN, Individually | § | IN THE PROBATE COURT ONE |
| And as Independent Administratrix of the | § | |
| Estate of Janet Foltyn McAfee, Deceased; | § | |
| AND JAKE FOLTYN, Individually | § | |
| *Plaintiffs* | § | |
| | § | |
| | § | |
| | § | |
| | § | OF |
| VS. | § | |
| | § | |
| KENNETH COOPER MCAFEE | § | |
| *Defendant* | § | HARRIS COUNTY, TEXAS |



## ORDER

On this day the Court considered the Plaintiffs' Second Amended Motion for Summary Judgment on Plaintiffs wrongful death claim. The Court, after considering the pleadings, the motion, the response, if any, and the arguments of counsel, is of the opinion that the Plaintiffs' Second Amended Motion for Summary Judgment is hereby **GRANTED.** Defendant, Kenneth Cooper McAfee is liable to the individual Plaintiffs for causing the death of their daughter, Janet McAfee.

ORDERED, ADJUDGED and DECREED that Plaintiff, Rosemary Foltyn, Individually, recover from Defendant, Kenneth Cooper McAfee, after all offsets and credits, judgment in the amount of $1,000,000.00 for her

1

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

emotional pain and suffering due to the death of her daughter, Janet McAfee.

It is further, **ORDERED**, **ADJUDGED** and **DECREED** that Plaintiff, Jake Foltyn, Individually, recover from Defendant, Kenneth Cooper McAfee, after all offsets and credits, judgment in the amount of $1,000,000.00 for his emotional pain and suffering due to the death of his daughter, Janet McAfee. This judgment shall accrue together with interest thereon at the rate of 5% per annum from the date this suit was filed on February 23, 2011, until the date of judgment, post-judgment interest at the rate of 5% per annum, and for all costs of Court expended in this cause, for which let execution issue. This Judgment finally disposes of all parties and is appealable.

SIGNED this ___21ˢᵀ___ day of ___March___, 2014.

_____

JUDGE LOYD WRIGHT

2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



# Tab 3

## Application for Writ of Garnishment

FILED
10/9/2014 10:18:51 AM
Stan Stanart
County Clerk
Harris County

JANET F. MCAFEE, DECEASED     396935-401

NO. _____

| | |
|---|---|
| ROSEMARY FOLTYN, Individually§<br>AND JAKE FOLTYN, Individually §<br><center>*Plaintiffs*</center>§<br>§<br>§<br>§<br>§<br>§<br>§<br>VS.             §<br>§<br>THE GMS GROUP, L.L.C. AND  §<br>WOODFOREST NATIONAL   §<br>BANK                  §<br><center>*Defendants*</center> | **IN THE PROBATE COURT<br>ONE**<br><br><br>**OF**<br><br><br><br>**HARRIS COUNTY, TEXAS** |

1 PER WRIT BY CERTIFIED MAILED

<u>**APPLICATION FOR WRIT OF GARNISHMENT**</u>1 PER WRIT IN

10-9-2014

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Rosemary and Jake Foltyn (hereinafter referred to as "Garnishors") and makes this Application for Writ of Garnishment against The GMS Group, L.L.C., and Woodforest National Bank, (hereinafter referred to as "Garnishees") and, in support hereof, Garnishors would show the Court the following:

<center>I.</center>

1.    Plaintiffs/Garnishors are Rosemary and Jake Foltyn ("Garnishors").

---

Application for Writ of Garnishment                  Page 1

C-PERSONAL  OCT 1 3 2014

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



2. Defendant/Garnishee, The GMS Group, L.L.C., is a limited liability company doing business in Texas and may be served by serving its registered agent, via certified mail, return receipt requested, Corporation Service Company, D/B/A CSC –Lawyers Inco, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3. Defendant/Garnishee, Woodforest National Bank is a privately held bank doing business in Texas and may be served by personally serving its registered agent, James D. Dreibelbis, 25231 Grogan's Mill Road, Suite 100, The Woodlands, Teas 77380.

4. Venue is appropriate in Harris County, Texas because the Judgment was rendered in Harris County, Texas.

II.

5. On or about March 21, 2014, this Court, in case number 396,935-401 styled *Rosemary Foltyn, Individually and as Independent Administratrix of the Estate of Janet Foltyn McAfee, Deceased; and Jake Foltyn, Individually v. Kenneth Cooper McAfee* entered a Judgment against Defendant, *Kenneth Cooper McAfee* in the amount of $2,000,000.00, plus pre and post judgment interest, plus costs of Court ("Judgment"). A true and correct copy of the

---

Application for Writ of Garnishment                                    Page 2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas


Sterling G. Senechal III
 Deputy

Judgment is attached hereto as Exhibit "A" and incorporated herein by reference for all purposes. This Judgment is just, due, unpaid, and remains unsatisfied.

### III.

6. To the best of Garnishors' knowledge, the debtor, *Kenneth Cooper McAfee* does not possess property in Texas subject to execution that is sufficient to satisfy the above-described claim. Plaintiffs served post-judgment discovery on Mr. McAfee on April 21, 2014. Defendant did not produce any documents establishing his ownership of property in Texas sufficient to satisfy the judgment against him.

### IV.

7. Garnishors have reason to believe, and do believe, that Garnishees, The GMS Group, L.L.C., and Woodforest National Bank, may be indebted to *Kenneth Cooper McAfee* by maintaining or holding one or more bank accounts. Garnishors believe *Kenneth Cooper McAfee*'s social security number to be 454-82-XXXX. Garnishors are not seeking to injure or harass the Garnishees or the Judgment Debtor by sending out a Writ of Garnishment. Rather, Garnishors are attempting to collect on a Judgment. Garnishors request that if Garnishees, The GMS Group, L.L.C., and Woodforest National

---

Application for Writ of Garnishment                    Page 3

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Sterling G. Senechal III



Bank are indebted to *Kenneth Cooper McAfee* by any account or otherwise, that Garnishees hold and allow Garnishors to garnish said belongings. Garnishors also request that if Garnishees hold possessions in a safety deposit box at any branch that Garnishees hold and allow Garnishors to garnish said belongings as permitted by law.

V.

8. This Application is supported by the Affidavit of Dean M. Blumrosen attached hereto as Exhibit "B" and incorporated herein by reference for all purposes.

WHEREFORE, PREMISES CONSIDERED, Rosemary and Jake Foltyn, request that a Writ of Garnishment be issued as above described and that Garnishors have judgment to partially satisfy the claim above-mentioned as provided by law, together with all costs of Court incurred in this proceedings, and other such relief to which Garnishors may be justly entitled.

Application for Writ of Garnishment                                     Page 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy



Respectfully submitted,

By: _____

DEAN M. BLUMROSEN, ESQ.
State Bar No. 02517900
4615 Southwest Freeway, Suite 850
Houston, Texas 77027
713.524.2225- Telephone
713.524.5570- Facsimile
Dblumrosenlaw@aol.com
ATTORNEY FOR PLAINTIFFS

---

Application for Writ of Garnishment                                    Page 5

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ **Deputy**

Sterling G. Senechal III



# EXHIBIT A

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy

Sterling G. Senechal III

NO. 396,935-401

ROSEMARY FOLTYN, Individually     §     IN THE PROBATE COURT ONE
And as Independent Administratrix of the §
Estate of Janet Foltyn McAfee, Deceased; §
AND JAKE FOLTYN, Individually     §
        *Plaintiffs*     §
        §
        §           OF
        §
VS.         §
        §
KENNETH COOPER MCAFEE     §
        *Defendant*     §     HARRIS COUNTY, TEXAS

## ORDER

On this day the Court considered the Plaintiffs' Second Amended

Motion for Summary Judgment on Plaintiffs wrongful death claim. The

Court, after considering the pleadings, the motion, the response, if any,

and the arguments of counsel, is of the opinion that the Plaintiffs'

Second Amended Motion for Summary Judgment is hereby

**GRANTED.** Defendant, Kenneth Cooper McAfee is liable to the

individual Plaintiffs for causing the death of their daughter, Janet

McAfee.

ORDERED, ADJUDGED and DECREED that Plaintiff, Rosemary

Foltyn, Individually, recover from Defendant, Kenneth Cooper McAfee, after

all offsets and credits, judgment in the amount of $1,000.000.00, for her

1

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy

Sterling G. Senechal III



emotional pain and suffering due to the death of her daughter, Janet McAfee.

It is further, ORDERED, ADJUDGED and DECREED that Plaintiff, Jake Foltyn, Individually, recover from Defendant, Kenneth Cooper McAfee, after all offsets and credits, judgment in the amount of $1,000.000.00, for his emotional pain and suffering due to the death of his daughter, Janet McAfee. This Judgment shall accrue together with interest thereon at the rate of 5% per annum from the date this suit was filed on February 23, 2011, until the date of judgment, post-judgment interest at the rate of 5% per annum, and for all costs of Court expended in this cause, for which let execution issue. This Judgment finally disposes of all parties and is appealable.

SIGNED this ___21ˢᵗ___ day of ___March___, 2014.

_____
JUDGE LOYD WRIGHT

2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



# EXHIBIT B

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Sterling G. Senechai III

## AFFIDAVIT OF DEAN M. BLUMROSEN

STATE OF TEXAS §
§
COUNTY OF HARRIS §

BEFORE ME, the undersigned official, on this day, personally appeared before me, Dean M. Blumrosen, who after being duly sworn, did depose and state as follows:

1. "My name is Dean M. Blumrosen. I am over 21 years of age, of sound mind, have never been convinced of a felony and am capable of making this affidavit.

2. "I am an attorney for Rosemary and Jake Foltyn., Garnishors in this Garnishment.

3. "I have personal knowledge of the facts as stated in Garnishors' Application for Writ of Garnishment and they are true and correct

DEAN M. BLUMROSEN

Subscribed and sworn to before me on this 8th day of October, 2014

Notary Public, in and For
The State of Texas

MICHELLE GABRIELA FORSTEN
My Commission Expires
October 1, 2018

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

# Tab 4

Motion to Quash Writs of Garnishment

DATA ENTRY
PICK UP THIS DATE

PROBATE COURT 1

FILED
11/19/2014 4:12:25 PM
Stan Stanart
County Clerk
Harris County

522CAUSE NO. 396935-401

| | | |
|---|---|---|
| IN RE | § | IN THE PROBATE COURT |
| JANET F. McAFEE, | § | |
| Deceased | § | NUMBER ONE |
| | § | |
| ROSEMARY FOLYN and | § | |
| JAKE FOLYN | § | |
| | § | |
| v. | § | OF |
| | § | |
| THE GMS GROUP, LLC and | § | |
| WOODFOREST NATIONAL BANK, | § | HARRIS COUNTY, TEXAS |
| Defendants | § | |

## MOTION TO QUASH WRITS OF GARNISHMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Charles Storer, Power of Attorney for Charles McAfee, Defendant herein, and holder of the accounts Plaintiffs seeks via the Writs of Garnishment issued by this Court, who moves to quash (dissolve) the two Writs of Garnishment issued post-judgment in this cause (to Woodforest National Bank and GMS Group), as the Writs reach accounts and/or assets that are wholly exempt from the reach of judgment creditors (indeed from the reach of all creditors). In support of this *Motion*, Mr. Storer, would show the following:[1]

### I. INTRODUCTION AND SUMMARY

1. This Court issued two writs of garnishment at the request of Plaintiffs. While a judgment creditor has a right to pursue collection on their judgment, including via garnishment upon depository accounts, Texas and federal law sharply limit what property of a judgment debtor may be taken. Here, both of the accounts are

---

[1] Mr. McAfee designated a Power of Attorney because he is incarcerated.

MOTION TO QUASH WRITS OF GARNISHMENT
Page 1

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



entirely and undividedly, protected from the reach of all creditors. Because these accounts may not be taken by any creditor, with any judgment, the two Writs issued while the Court was unknowing of the exempt status of these accounts, should and must be quashed.

## II. FACTS AND PROCEDURAL HISTORY

2. Mr. McAfee was convicted of a criminal offense involving the death of the decedent, Janet Foltyn McAfee, and is currently serving his sentence at a Texas correctional institution. The underlying claim was a wrongful death action against Mr. McAfee. This Court found for the Plaintiffs in the wrongful death action.

3. Post-judgment, the Plaintiffs sought from this Court, and received, two Writs of Garnishment. The Application for Writs of Garnishment made no mention of the exempt status of either account. Rather, the Application simply noted that the garnishees, both Woodforest and GMS, may be indebted to the Defendant "by maintaining or holding one or more bank accounts." Application for Writ of Garnishment, ¶7.

4. The first Writ of Garnishment reached Mr. McAfee's depository account at Woodforest National Bank ("Woodforest"). This account, however, is beyond the reach of all creditors, including the judgment creditors in this cause, because the account was opened to receive, received, and is now holding funds received pursuant to the federal Social Security Disability Insurance ("SSDI") system. The account contains no funds other than those received as Social Security benefits.

5. The second Writ of Garnishment reached Mr. McAfee's depository account held by his former employer, GMS Group, L.L.C. ("GMS"). This account is also

<div align="center">
MOTION TO QUASH WRITS OF GARNISHMENT<br>
Page 2
</div>

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



beyond the reach of all creditors, including the judgment creditors in this cause, because the account is Mr. McAfee's tax-deferred retirement benefit account arising from his employment with GMS.

6. In lieu of an Answer, GMS reported to this Court that it is holding depository accounts belonging to Mr. McAfee. *See* letter from Matthew F. Lipman, Esq. (counsel for GMS Group) to Stan Stanart, County Clerk (Oct. 23, 2014), which is a part of this Court's file and is incorporated herein by reference. See Exhibit "C." GMS' response indicates that the account in question is a retirement account qualified under IRS rules for tax deferment. *Id* @ Exhibit "2."

7. Garnishee Woodforest National Bank has yet to answer its Writ.

### III. ARGUMENT AND AUTHORITIES

8. All social security benefits, including SSDI, are exempt from collection actions, and beyond the reach of debtors, pursuant to a federal statute that was a central component of the original depression-era Social Security Act. *See* 42 U.S.C. §407; H. R. 7260 (1935); *see also In re Franklin*, 506 B.R. 765, 769 (Bankr., C.D. Ill. 2014) ("These proscriptions have been part of the Social Security Act since 1935").[2]

9. The absolute nature of the social security benefit exemption has been recognized by the United States Supreme Court, which observed that 42 U.S.C. §407(a) "unambiguously rules out any attempt to attach Social Security benefits." *Bennett v. Arkansas*, 485 U.S. 395, 397, 108 S.Ct. 1204, 1205, 909 L.Ed2d 455

---

[2] The exemption reaches Social Security retirement income, disability benefits, and supplemental security income, amongst other benefits. *See Townsel v. Dish Network*, 668 F.3d 967, 968 (7th Cir. 2012). Veterans' benefits are exempt and treated the same way. *See Christensen v. Peck*, 122 Nev. 1309, 149 P.3d 40, 48 (Nev. 2006).

MOTION TO QUASH WRITS OF GARNISHMENT
Page 3

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



(1988).

10. The same complete exemption also reaches accounts that qualify for deferment of federal income tax, including Mr. McAfee's 401(k) account that is the subject of the GMS garnishment. IRS qualified retirement accounts are exempt from collection actions, and beyond the reach of debtors, pursuant to Texas law. *See* Tex. Prop. Code, §2.0021. The legal issue, and exempt nature, regarding both accounts is neither controversial nor a close call.

### IV. EXEMPTION OF THE WOODFOREST (SOCIAL SECURITY) ACCOUNT

#### A. The Exemption for Social Security Benefits is Statutory and Contains No Exceptions

11. The federal statute protecting federal social security benefits from the reach of creditors, including those on deposit, is unequivocal and sweeping in its scope. It is so protective of federal benefits, it goes as far as to prohibit recipients of these benefits from voluntarily choosing to assign or alienate these benefits, even for valuable consideration. *See* 42 U.S.C. §407. Indeed, the sole manner these funds can be put into the hands of others is through standard purchases of goods and services after the benefits have been cashed or deposited. These funds may not be assigned to creditors, including by the involuntary means of garnishment. *See Townsel v. Dish Network*, 668 F.3d 967, 968 (7th Cir. 2012) ("A creditor that tried to garnish or attach Social Security benefits ... would encounter a §407 defense).[3]

---

[3] The statute creates three separate protections for social security benefits. It forbids assignments of such benefits. *See* 42 U.S.C. §407(a). Second, it makes these benefits beyond the reach of a bankruptcy trustee. *See Id.* Third, and relevant here, it exempts these benefits from state or federal judicial action. *See Id.* ("none of the moneys paid or payable or rights existing under this subchapter shall be

MOTION TO QUASH WRITS OF GARNISHMENT
Page 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



12. The absolute nature of the exemption is based on Congress' insistence on firm and secure protection for "beneficiaries and those dependent on beneficiaries from the claims of creditors." *Reams v. Oklahoma*, 411 F.3d 1164, 1172 (10th Cir. 2005); *see also In re Greene*, 27 B.R. 462, 464 (Bankr., E.D. Va. 1983) (§407 "deals with the rights of social security recipients and seeks to protect their benefits from the reach of creditors").

13. In fact, Congress wanted to protect beneficiaries "from seizure in the legal process." *Id.* By doing so, Congress ensured that the underlying purpose of social security benefits, to provide a minimum level of support and financial stability, cannot be hindered by creditors, regardless of the merits of the creditors' claim. *See id.; see also In re Buren*, 6 B.R. 744, 746 (Bankr., M.D. Tenn, 1980) ("The purpose of the Social Security Act of 1935 was to provide a minimal level of economic security for the unemployed, the elderly, the homeless, and the blind").

14. The Woodforest account that Plaintiffs seek to garnish is funded with social security deposits. *See* Deposit/Transaction record of Woodforest National Bank (showing monthly direct deposits as received from "SOC SEC US TREASURY").[4]

15. While Mr. Afee is disabled, he is admittedly not homeless, elderly, or blind. The lack of a destitute state, however, as well as the existence of other means of support, such as the Texas Department of Corrections, does not cause the

---

subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law").

[4] A spreadsheet showing all deposits into the account since December of 2009 is attached to this pleading as Exhibit A. The Woodforest-generated statement of account activity is attached to this pleading as Exhibit B. The account activity ceases in November, 2010 except for the exclusive continuing Social Security benefits directly deposited and interest on the account. *See id.*

MOTION TO QUASH WRITS OF GARNISHMENT
Page 5

Confidential information may have been reducted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

shedding of the exemption of these funds from garnishment or collections. The Social Security Act uses absolute language, devoid of any exceptions, for any circumstances. *See Philpott v. Essex County Welfare Board*, 409 U.S. 413, 415, 93 S.Ct. 590, 34 L.Ed2d 608 (1973) (because "the language is all-inclusive," the Social Security Act prohibits any state from reaching federal disability benefits); *Id.*, 409 U.S. at 416 ("it imposes a broad bar against the use of any legal process to reach social security benefits").[5] There is, therefore, no need-testing for the exemption to apply. *Cf. Reams v. Oklahoma*, 411 F.3d at 1172 ("To tinker with that scheme could open the door for a loss of protection down the road").

16. Rather, the exemption is absolute. The statutory language, the United States Supreme Court noted, "is broad enough to reach all security benefits," no matter the cause of the benefits or the situation of the beneficiary." *Philpott v. Essex County Welfare Board*, 409 U.S. at 417; *see also In re Carpenter*, 614 F.3d 930, 932 (8th Cir. 2010) (exemption statute is unambiguous, and therefore courts have no need for legislative history or implied exceptions); *accord, In re Ragos*, 700 F.3d 220, 222-224 (5th Cir. 2012).[6]

17. The statute, therefore, is an unyielding prohibition on the garnishment sought in this case. *See N.L.R.B. v. HH# Trucking, Inc.*, 755 F.3d 468 (7th Cir. 2014) ("Social Security benefits ... cannot be garnished or otherwise attached after

---

[5] *Philpott* was an unanimous decision/opinion of the Supreme Court.

[6] There was, for a brief, time an implied exception, in just one federal circuit, for beneficiaries who did not need the social security funds for their sustenance. *See Citronelle-Mobile Gathering v. Watkins*, 934 F.2d 1180 (11th Cir. 1991). Not one of the *Citronelle* court's sister circuit courts adopted that holding given the absolute language of the statute. *Citronelle's* reach, in any event, terminated at the hand of the Supreme Court. *See Law v. Siegel*, — U.S. —, 134 S.Ct. 1188, 1196,188 L.Ed2d 146, 82 USLW 4140 (March 2014).

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

receipt"); *NCNB Financial Services v. Shumate*, 829 F.Supp. 178, 180 (W.D. Va. 1993) (statute "prohibits attachment, levy, or garnishment on such benefits"); *In re Franklin*, 506 B.R. 765, 773 (Bankr., C.D. Ill.2014) (exemption provision is not tied to Bankruptcy Code and is assertable defensibly including against garnishments). *In re Miller*, 445 B.R. 504, 507 (Bankr., D.S.C. 2011) (the statute "contains no limiting language" and therefore extends to all social security income); *id.*, ("section 407(a) operates as a complete bar to the forced inclusion of past and future social security proceeds in the bankruptcy estate") [quoting *In re Carpenter*, 615 F.3d 930, 946 (8th Cir. 2010)]; *see also Bennett v. Arkansas*, 485 U.S. 395, 398, 108 S.Ct. 1204, 1205-06, 99 L.Ed2d 455 (state may not attach social security benefits of state prisoners) (*per curiam*); *Marengo v. First Massachusetts Bank*, 152 F.Supp.2d 92 (D. Mass. 2001) (efforts to reach account contained benefit deposits violated Social Security Act).

18.  Judicial interference with these funds, indeed, is so disfavored, it has been held to implicate the constitutional due process rights of social security beneficiaries. See *Dionne v. Boulay*, 757 F.2d 1344, 1350 (1st Cir. 1985) ("It is also clear that Dionne's interest in retaining her exempt social security funds free from attachment was the kind of property interest that is entitled to due process protection").

19.  Earlier this year, the United States Supreme Court once again held that the statute means what it says:

> § 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate. Rather, the statute exhaustively specifies the criteria that will render property exempt.

MOTION TO QUASH WRITS OF GARNISHMENT
Page 7

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



*Law v. Siegel*, — U.S. —, 134 S.Ct. 1188, 1196, 188 L.Ed2d 146, 82 USLW 4140 (March 2014); *see also id.* ("courts are not authorized to create additional exceptions"); *In re Franklin*, 506 B.R. at 773 ("Congress has strongly expressed its policy of protecting social security benefits, and it is not for the courts to read an implied exception" into the exempting statute).

20. The mountain of precedent and the unambiguous wording of the federal statute mandate the quashing of the Woodforest writ. Social security funds can never be used to pay creditors, except when received, turned into cash, and become the subject of voluntary spending by the debtor. *See In re McFarland*, 481 B.R. 242, 250 (Bankr., S.D. Ga. 2012) (social security benefits remain exempt from creditors after they are "received by the Social Security recipient and deposited into the bank"); *In re Moore*, 214 B.R. 628, 630 (Bankr., D. Kan. 1997) (the funds do not lose their exempt status when deposited into a bank account"); *see also S & S Diversified Services v. Taylor*, 897 F.Supp. 549, 552 (D. Wyo. 1995) (Social Security benefits remain exempt when deposited into joint bank account).[7]

21. These benefits, and the Woodforest Bank account, are, absolutely and entirely, beyond the reach of any creditors, and therefore an impermissible object of a writ of garnishment. *See NCNB Financial Services v. Shumate*, 829 F.Supp. at 180 (W.D. Va. 1993) (statute "prohibits attachment, levy, or garnishment on such

---

[7] One creditor can get at social security benefits: the government of the United States. *See Lockhart v. United States*, 546 U.S. 142, 145, 126 S.Ct. 699, 701, 163 L.Ed2d 557 (2005) (federal government may attach social security benefits of federal student loan debtors. Congress, however, explicitly passed an exception to the no-attachment provision of the Social Security Act to achieve that result. *See* 31 U.S.C. § 3716(c)(3)(A)(i). The fact that Congress had to twice-amend the debt collection legislation, and specifically override the anti-creditor provision of the Social Security Act, demonstrates how steadfast this protection remains.

MOTION TO QUASH WRITS OF GARNISHMENT
Page 8

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
St      G. Senechal III

benefits"); *In re Franklin*, 506 B.R. at 773 (Bankr., C.D. Ill.2014) (exemption provision is not tied to Bankruptcy Code and is assertable defensibly including against garnishments). To ensure that the congressional/statutory protection of social security benefits is achieved, writs of garnishment inadvertently issued without the Court's knowledge of the exempt status of these funds, must be quashed. *See NCNB Financial Services v. Shumate*, 829 F.Supp. at 181 (quashing writ to the extent it reached exempt funds).[8]

## B. COMINGLING OF SOCIAL SECURITY BENEFITS DOES NOT AFFECT THEIR EXEMPT STATUS, AND ANY SUCH COMINGLING IN THE WOODFOREST ACCOUNT CEASED YEARS AGO

22. It may be true that the Woodforest Account was occasionally used to hold other assets of Mr. McAfee, unrelated to his social security benefits. This has no bearing on the protected status of the account and of the social security funds within it. *See NCNB Financial Services v. Scumate*, 829 F.Supp. 178, 180 (W.D. Va. 1993) ("Social security benefits are protected even if they are commingled in a savings or checking account with funds from other sources"); *In re Lichtenberger*, 337 B.R. 322, 325 (Bankr., C.D. Ill 2006) (same).

23. While courts may differ in the accounting method used to calculate protected funds in a comingled account, no court has questioned the protected status of

---

[8] While the federal regulations insist that banks calculate the "lookback" amount, reaching two months of deposits, that small period of time only addresses the bank's requirements. None of the deposits of federal benefit funds are reachable by creditors, no matter how long ago the deposit occurred. *See* 31. C.F.R. §212.6 (duty to determine an amount that the financial institution must protect from creditors); *id.*, §212.9 (safe harbor for financial institutions form liability claims). The regulations do not, and cannot, change the blanket exemption of federal benefit funds from the reach of creditors. *See id.*, §212.6 ("Nothing in this part shall be construed to limit an individual's right under Federal law to assert against a creditor a further exemption from garnishment in excess of the protected amount, or to alter the exempt status of funds that may be protected from garnishment under federal law.

MOTION TO QUASH WRITS OF GARNISHMENT
Page 9

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy
Sten       Senechal III

social security benefits in a comingled account. On the contrary, the protected status is 'black-letter law,' nationally. *See Philpott v. Essex County Welfare Board*, 409 U.S. 413, 416-17, 93 S.Ct. 590, 592-93, 34 L.Ed2d 608 (1973) (funds exempt so long as they maintain the character of money); *In re King*, 508 B.R. 71, 78 (Bankr., N.D. Ind. 2014) ("commingling of an earned income credit refund with other funds does not affect the ability to claim the statutory earned income credit exemption"); *In re Lantz*, 451 B.R. 843, 847 (Bankr., N.D. Ill. 2011) (depositing funds into an account that contains other funds does not lose exempt status for social security funds, if the latter can be traced); *see generally* 2A Soc. Sec. Law & Prac. §34.8 (Sept. 2014).

24.    Because the account may have received, and may have comingled funds on deposit, this Court can hold a hearing to trace the protected assets, if the Garnishor deems such a hearing worth the time and expense. *See Philpott*, 409 U.S. at 416-17, 93 S.Ct at 592-93; *see also Christensen v. Peck*, 149 P.3d at 48 (it "defies logic" to argue that exempt benefits lose that status with comingling).[9]

25.    In the present case, the Court need not be concerned about choosing the best method, as the bank records for the account show that the funds now on deposit came exclusively from the Social Security Administration. *See In re Hensley*, 393 B.R. 186, 198 (Bankr., E.D. Tenn. 2008) (accepting testimony that entire

---

[9] Tracing can be done through the last in/first out method (LIFO), last in/last out (LIFO), and other means. All calculations are "an equitable substitute for the impossibility of specific identification." *In re Lantz*, 451 B.R. at 848; *In re Lichtenberger*, 337 B.R. 322, 325 (Bankr., C.D. Ill. 2006) (selection of methods should be guided by the principle that exemptions are to be interpreted liberally, in favor of the debtor). In other instances, courts have chosen a pro-rata basis by measuring the percentage of deposits that came from the exempt source. *See Neilson v. McGuire*, 2006 WL 1875383, at *4 (D. Nebr. 2006).

MOTION TO QUASH WRITS OF GARNISHMENT
Page 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Genechal III



source of funds in bank account except for one gift were social security benefits).[10]

### V. EXEMPTION OF THE GMS (IRA) ACCOUNT

26. The exemption for IRS qualified tax-deferred retirement accounts, such as Mr. McAfee's GMS account, comes from state law. *See* Tex. Prop. Code, §42.0021(a) (including within exemptions "a person's right to the assets held in or to receive payments, whether vested or not, under any stock bonus, pension, annuity, deferred compensation, profit-sharing, or similar plan"). Such funds and such accounts are "exempt from attachment, execution, and seizure for the satisfaction of debts" so long as the account is exempt from immediate federal income taxation. *Id.*; *see also Lozano v. Lozano*, 875 S.W.2d 63, 66 (Tex.App. – Houston [14[th]] 1998). IRAs have been exempt from the reach of creditors in Texas, including judgment creditors, since 1987. *See Williams v. Texas Commerce Bank*, 766 S.W.2d 344, 346 (Tex.App. – El Paso 1989).

27. The GMS account is, was intended to be, and is set forth by GMS as a tax-deferred retirement account, and qualifies for exemption under §42.0021(a). *See* Letter from Matthew E. Lipman (counsel for GMS) to County Clerk (Oct. 23, 2014) (Exhibit 2) (describing garnished account as a "DLJ Qualified Retirement Plan"); *see also* Summary Plan Description for GMS Group, L.L.C. Salary

---

[10] A spreadsheet showing all deposits into the account since December of 2009 is attached to this pleading as Exhibit A.

MOTION TO QUASH WRITS OF GARNISHMENT
Page 11

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



Savings Plan, at p. 3, ¶6 (describing employee contributions as 401(k) tax-deferred contributions).[11]

28. The GMS account, therefore, may not be turned over to a creditor, including by garnishment. *See Bergman v. Bergmen*, 888 S.W.2d 580, 586 (Tex.App. – El Paso 1994) (reversing turnover order because account was exempt); accord *Nu-Way Energy Corp. v. Delp*, 205 S.W.3d 667, 679 (Tex.App. – Waco 2006); *Kent v. Holmes*, 139 S.W.3d 120, 131 (Tex.App. – Texarkana 2004); *Bergman v. Begman*, 888 S.W.2d 580, 586 (Tex.App. – El Paso 1994); *Morgan v. Horton*, 675 S.W.2d 602, 604 (Tex.App. – Dallas 1984). The unanimous voice of the courts results from the clear legislative purpose to "protect the interests in the retirement fund from creditors and assignees" *Kent v. Holmes*, 139 S.W.3d at 131.

29. Like with social security benefits, the exemption for tax-deferred retirement accounts is read without neither exemptions nor narrowness, to fulfill a state policy favoring debtors that has existed since the nineteenth Century. *See Bergman v. Bergman*, 888 S.W.2d 580, 586 (Tex.App. – El Paso 1994) *id.*, 888 S.W.2d at 585 ("the long standing public policy of Texas has favored debtors over creditors) [citing *Bell v. Indian Live-stock Co.*, 11 S.W. 344, 346 (Texas 1889)].

30. There can be little doubt that a firm such as GMS, which represents itself as a full service brokerage house, and advises people on planning for their retirement, presented their employees with anything other than an IRS-qualified plan for their

---

[11] The chart of accounts included in Mr. Lipman's letter (Exhibit 2 to that letter) is attached to this pleading as Exhibit C. The Plan Description is attached to this pleading as Exhibit D.

<div align="center">MOTION TO QUASH WRITS OF GARNISHMENT<br>Page 12</div>

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

retirement benefit. *See In re Youngblood*, 29 F.3d 225, 228 (5th Cir. 1994) (tax treatment of account is determinative inquiry under §42.0021); *see also id.*, 29 F.3d at 229 ("the legislature intended for its own state courts ... to defer to the IRS in determining whether a retirement plan is 'qualified' under the Internal Revenue Code"); *Lozano v. Lozano*, 975 S.W.2d at 67 ("evidence that an account is an individual retirement annuity is sufficient to establish that it is exempt").[12]

31.  While Mr. Storer has, and can put on evidence showing the tax-exempt nature of the GMS account, that exemption is clear from the facial descriptions of the account issued by GMS. In any event, garnishment has no basis in Texas' common law, and is purely statutory. Consequently, a party claiming an entitlement to garnishment has to prove that the property he is after is subject to the procedure. *See Del-Phi Engineering Associates v. Texas Commerce Bank*, 771 S.W.2d 589, 591 (Tex.App. – Beaumont 1989) (Burgess, J., dissenting) (motion to dissolve writ joins the issue, and then party seeking garnishment must put on proof that they are entitled to the funds).

32.  That burden cannot be met by the Plaintiffs in this cause, as the GMS account is, beyond question, a tax-deferred retirement account and beyond the reach of all creditors.[13]

---

[12] Moreover, unlike with social security benefits, it is the account that is exempt; the source of the funds is irrelevant. *See id.*, 975 S.W.2d at 66.
[13] If the burden is placed on Mr. Storer, as the party claiming the exemption, he can easily do so if permitted an evidentiary hearing with sufficient time to subpoena the needed records.

MOTION TO QUASH WRITS OF GARNISHMENT
Page 13

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Sanschal III



## PRAYER

WHEREFORE, PREMISES CONSIDERED, Charles Storer, Power of Attorney for Defendant, Charles McAfee, respectfully prays that the Court enters an Order quashing (dissolving) the two Writs of Garnishment issued in this cause as reaching exempt assets that cannot be garnished, for any reason, and further prays for such other and further relief to which he or Mr. McAfee may be entitled, in law or in equity.

Respectfully submitted,

ANDERSON PFEIFFER, PC

*/s/ Esther Anderson*
By:    Esther Anderson
SBN: 00792332
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 281.488.6535
Facsimile: 281.614.5205
Email: esther@probateguardianship.com

Of counsel on the Pleading:

*/s/ Robert Teir*
Robert Teir
Robert Teir, PLLC
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 832.365.1191
Facsimile: 832.550.2700
Email: rob@teirlaw.com

Attorneys for Mr. Charles Storer

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Seneohal III

I, Robert Teir, undersigned below, hereby certify that a true and correct copy of the following has been forwarded to all parties and/or counsel of record through our electronic service provider and/or facsimile on this 19th day of November, 2014.

/s/ Robert Teir
Robert Teir

cc:    Matthew E. Lipman
Faust Oppenheim LLP
488 Madison Avenue              Via Electronic Service Provider &
New York, New York 10022    Facsimile 212-371-8410

Dean M. Blumrosen, Esq.
4615 Southwest Freeway, Suite 850    Via Electronic Service Provider &
Houston Texas 77027                   Facsimile 713-524-5570

Defendant Woodforest National Bank
(as counsel is not known as this party has not
yet answered)

N:\Storer, Charles\Pleadings, Motions, Applications\Motion to Quash writ of garnishment.docx

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III




EXHIBIT H

| Date | Balance on Account | SSDI | Other Deposits | Source / Withdrawal | Source / Chk# |
|---|---|---|---|---|---|
| 12/28/09 | $4,413.03 | | | | |
| 01/19/10 | $4,413.03 | | | | |
| 01/27/10 | $6,597.03 | $2,184.00 | | SSDI | |
| 01/27/10 | $6,572.03 | | | $25.00 | Acct Fee |
| 02/04/10 | $6,576.38 | | $4.35 | Interest | |
| 02/16/10 | $6,576.38 | | | | |
| 02/27/10 | $4,576.38 | | | $2,000.00 | #1007 |
| 02/27/10 | $6,760.38 | $2,184.00 | | SSDI | |
| 03/02/10 | $6,765.41 | | $5.03 | Interest | |
| 03/03/10 | $6,765.41 | | | | |
| 03/05/10 | $6,108.56 | | | $658.55 | #1008 |
| 03/18/10 | $5,783.86 | | | $325.00 | #1010 |
| 03/27/10 | $3,783.66 | | | $2,000.00 | |
| 03/27/10 | $5,967.66 | $2,184.00 | | SSDI | |
| 03/31/10 | $5,968.06 | | $0.20 | Interest | |
| 03/29/10 | $3,968.06 | | | $2,000.00 | #10011 |
| 04/06/10 | $3,773.88 | | | $194.08 | #1012 |
| 04/19/10 | $3,303.98 | | | $390.00 | #1013 |
| 04/20/10 | $3,193.98 | | | $180.00 | #1014 |
| 04/23/10 | $5,377.98 | $2,184.00 | | SSDI | |
| 04/23/10 | $30,540.64 | | $25,162.66 | Wire Tran | |
| 04/27/10 | $30,530.64 | | | $10.00 | Wire fee |
| 04/27/10 | $30,530.99 | | $0.35 | Interest | |
| 05/04/10 | $28,530.99 | | | $2,000.00 | #1015 |
| 05/05/10 | $38,266.91 | | $9,735.92 | WT | |
| 05/05/10 | $38,256.91 | | | $10.00 | TF |
| 05/12/10 | $37,956.91 | | | $300.00 | #1018 |
| 05/15/10 | $36,956.91 | | | $1,000.00 | #1019 |
| 05/27/10 | $39,140.91 | $2,184.00 | | SSDI | |
| 06/15/10 | $39,142.41 | | $1.50 | Interest | |
| 06/15/10 | $41,326.41 | $2,184.00 | | SSDI | |
| 06/28/10 | $41,328.17 | | $1.76 | Interest | |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
Stan Stanart, County Clerk
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



| Date | Date | Balance | Deposit | Interest | Type | Amount | Check # |
|---|---|---|---|---|---|---|---|
| | 7/5/201 | $41,328.17 | | | | | |
| 07/27/10 | 07/07/10 | $26,328.17 | $2,184.00 | $0.93 | SSDI | $15,000.00 | #1027 |
| | 07/20/10 | $16,328.17 | | | Interest | $10,000.00 | #1026 |
| | 07/27/10 | $18,512.17 | | | | | |
| | 08/17/10 | $18,513.10 | | | | | |
| 8/27/200 | 08/23/10 | $18,513.10 | $2,184.00 | $0.78 | SSDI | $6,000.00 | #1028 |
| | 08/27/10 | $20,697.70 | | | Interest | | |
| | 09/14/10 | $14,697.10 | | | | | |
| 8/27/201 | 09/27/10 | $14,697.88 | $2,184.00 | $0.67 | SSDI | | |
| | | $14,697.88 | | | Interest | | |
| | 10/19/10 | $16,881.88 | | | | | |
| 10/27/10 | 10/27/10 | $16,882.55 | $2,184.00 | $0.72 | SSDI | | |
| | | $16,882.55 | | | Interest | | |
| | 11/16/201 | $19,066.55 | | | | | |
| 11/27/10 | 11/18/201 | $19,067.27 | $2,184.00 | $0.84 | SSDI | $55.00 | #1029 |
| | 11/27/10 | $21,251.27 | | | Interest | $19,024.63 | #1031 |
| | | $21,196.27 | | | | | |
| 12/27/10 | 11/29/10 | $21,197.11 | $2,184.00 | $0.16 | SSDI | | |
| | 12/14/10 | $2,172.48 | | | Interest | | |
| | 12/27/10 | $4,356.48 | | | | | |
| 01/27/11 | 01/19/11 | $4,356.64 | $1,842.90 | $0.21 | SSDI | | |
| | 01/27/11 | $4,356.64 | | | Interest | | |
| | 02/15/11 | $6,199.54 | | | | | |
| 02/28/11 | 02/28/11 | $6,199.75 | $1,842.90 | $0.31 | SSDI | | |
| | | $6,199.75 | | | Interest | | |
| | 03/15/11 | $8,042.65 | | | | | |
| 03/28/11 | 03/28/11 | $8,042.96 | $1,842.90 | $0.34 | SSDI | | |
| | | $8,042.96 | | | Interest | | |
| | 04/19/11 | $9,885.86 | | | | | |
| 04/27/11 | 04/27/11 | $9,886.20 | $1,842.90 | $0.43 | SSDI | | |
| | 05/17/11 | $9,886.20 | | | Interest | | |
| | 05/27/11 | $11,729.10 | | | | | |
| | | $11,729.53 | $1,842.90 | $0.51 | SSDI | | |
| | | $11,729.53 | | | Interest | | |
| | | $13,572.43 | | | | | |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



Sterling G. Seneschal III

_____ Deputy



| Date | Posted | Balance | Amount | | Type |
|---|---|---|---|---|---|
| 05/27/11 | 06/14/11 | $13,572.94 | | | |
| | 06/27/11 | $13,572.94 | $1,842.90 | $0.61 | SSDI / Interest |
| 06/27/11 | 07/19/11 | $15,415.84 | | | |
| | 07/27/11 | $15,416.45 | $1,842.90 | $0.66 | SSDI / Interest |
| 07/27/11 | 07/28/11 | $17,259.35 | | | |
| | 08/16/11 | $17,260.01 | $5.00 | | ESI |
| | 08/27/11 | $17,255.01 | $1,842.90 | $0.76 | SSDI / Interest |
| 08/27/11 | 09/20/11 | $19,107.91 | | | |
| | 09/27/11 | $19,108.67 | $1,842.90 | $0.83 | SSDI / Interest |
| 09/27/11 | 10/18/11 | $19,108.67 | | | |
| | 10/27/11 | $20,951.57 | $1,842.90 | $0.89 | SSDI / Interest |
| 10/27/11 | 10/31/11 | $20,952.40 | $3,758.70 | | Soc Sec ? |
| | 11/15/11 | $22,795.30 | $1,842.90 | $1.18 | SSDI / Interest |
| 11/27/11 | 12/20/11 | $22,796.19 | | | |
| | 12/27/11 | $25,554.89 | $2,184.00 | $1.15 | SSDI / Interest |
| 12/27/11 | 01/05/12 | $28,397.79 | $56.40 | | Soc Sec ? |
| | 01/17/12 | $28,398.97 | $1,976.50 | $1.33 | SSDI / Interest |
| | 01/27/12 | $28,398.97 | | | |
| 01/27/12 | 02/14/12 | $30,582.97 | $2,043.00 | $1.42 | SSDI / Interest |
| | 02/07/12 | $30,584.12 | | | |
| 02/27/12 | 03/05/12 | $30,584.12 | | | |
| | 03/20/12 | $30,650.52 | $2,043.00 | | SSDI |
| | 03/23/12 | $32,627.12 | | | Interest |
| | 03/27/12 | $32,628.45 | | | |
| 03/27/12 | 04/17/12 | $32,628.45 | $2,043.00 | $1.37 | SSDI / Interest |
| | | $34,671.45 | | | |
| | | $34,672.87 | | | |
| | | $34,672.87 | | | |
| | | $34,572.87 | | | |
| | | $36,615.87 | $100.00 | | IRS Processing Fee |
| | | $32,930.07 | $3,685.80 | | Treasury Levy |
| | | $32,931.44 | | | |
| | | $32,931.44 | | | |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Sterling G. Senechal III



| Date | Date | Balance | Amount | Interest | Type |
|---|---|---|---|---|---|
| 04/27/12 | 04/27/12 | $34,974.44 | $2,043.00 | $1.43 | Interest |
| | 05/15/12 | $34,975.87 | | $1.52 | SSDI |
| 05/27/12 | | $34,975.87 | | | Interest |
| | 06/19/12 | $37,018.87 | | $1.54 | SSDI |
| 06/27/12 | 06/27/12 | $37,020.39 | $2,043.00 | | Interest |
| | | $37,020.39 | | | |
| | | $39,063.39 | | | |
| 07/27/12 | 07/17/12 | $39,064.93 | $2,043.00 | $1.63 | SSDI |
| | 07/27/12 | $39,064.93 | | | Interest |
| | | $41,107.93 | | | |
| 08/27/12 | 08/14/12 | $41,108.56 | $2,043.00 | $1.78 | SSDI |
| | 08/27/12 | $41,109.56 | | | Interest |
| | | $43,152.56 | | | |
| 09/27/12 | 09/18/12 | $43,154.34 | $2,043.00 | $1.86 | SSDI |
| | 09/27/12 | $43,154.34 | | | Interest |
| | | $45,197.34 | | | |
| 10/27/12 | 10/16/12 | $45,199.20 | $2,043.00 | $1.88 | SSDI |
| | 10/27/12 | $45,199.20 | | | Interest |
| | | $47,242.20 | | | |
| 11/27/12 | 11/20/12 | $47,244.08 | $2,043.00 | $2.02 | SSDI |
| | 11/27/12 | $47,244.08 | | | Interest |
| | | $49,287.08 | | | |
| 12/27/12 | 12/18/12 | $49,289.10 | $2,043.00 | $2.05 | SSDI |
| | | $49,289.10 | | | Interest |
| | | $51,332.10 | | | |
| 01/28/13 | 01/15/13 | $51,334.15 | $2,067.00 | $2.29 | SSDI |
| | 01/28/13 | $51,334.15 | | | Interest |
| | | $53,401.15 | | | |
| 02/27/13 | 02/19/13 | $53,403.44 | $2,067.00 | $2.22 | SSDI |
| | 02/27/13 | $53,403.44 | | | Interest |
| | | $55,470.44 | | | |
| 03/27/13 | 03/19/13 | $55,472.65 | $2,067.00 | $2.15 | SSDI |
| | | $55,472.66 | | | Interest |
| | | $57,539.66 | | | |
| | 04/16/13 | $57,541.81 | $2,067.00 | $2.48 | SSDI |
| | 04/27/13 | $57,541.81 | | | Interest |
| | | $59,608.81 | | | |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



| Date | Date | Balance | Payment | Interest | Type |
|---|---|---|---|---|---|
| 04/27/13 | 05/14/13 | $59,611.29 | $2,067.00 | | SSDI |
| | | $59,611.29 | | $2.49 | Interest |
| | | $61,878.29 | | | |
| 05/27/13 | 06/18/13 | $61,680.78 | $1,756.95 | | SSDI |
| | | $63,437.73 | | $2.64 | Interest |
| 06/27/13 | 07/16/13 | $63,440.37 | $2,067.00 | | SSDI |
| | | $63,440.37 | | $2.64 | Interest |
| | | $65,507.37 | | | |
| 07/27/13 | 08/20/13 | $65,510.01 | $2,067.00 | | SSDI |
| | 08/27/13 | $65,510.01 | | $2.60 | Interest |
| | | $67,577.01 | | | |
| 08/27/13 | 09/17/13 | $67,579.81 | $2,067.00 | | SSDI |
| | 09/27/13 | $67,579.81 | | $2.90 | Interest |
| | | $69,646.81 | | | |
| 09/27/13 | 10/15/13 | $69,649.71 | $2,067.00 | | SSDI |
| | 10/27/13 | $71,716.71 | | $2.90 | Interest |
| | | $71,719.61 | | | |
| 10/27/13 | 10/31/13 | $71,719.61 | $2,538.80 | | SSDI |
| | 11/19/13 | $74,258.41 | $2,067.00 | | SSDI |
| | 11/27/13 | $78,325.41 | | $3.17 | Interest |
| 11/27/13 | 12/27/13 | $76,328.50 | | $3.14 | Interest |
| | | $76,328.50 | | | |
| 12/27/13 | 01/27/14 | $76,331.72 | | $3.24 | Interest |
| | | $78,331.72 | | | |
| 01/27/14 | 02/27/14 | $76,334.96 | | $3.24 | Interest |
| | | $76,334.96 | | | |
| 02/27/14 | | $76,336.20 | | | |

Total SS Payments $101,904.35

Shortage $25,566.15

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senschal III



DDA-1501323404   0

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX  77023

*C2583973*   1

12-28-09   01-27-10

DEMAND   1501323404        4,413.03        25.00       2,188.35       6,576.38

PERSONAL PLATINUM PLUS

    ANNUAL PERCENTAGE YIELD EARNED: 1.05%
    AVERAGE COLLECTED BALANCE FOR APY: $5068.23
    INTEREST EARNED FOR PERIOD: 14.35
    NUMBER OF DAYS IN PERIOD: 30

DEMAND   1501323404
    DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
    01-19          2,184.00  ACH-SOC SEC US TREASURY 303
    01-27              4.35  INTEREST PAID

    DATE.............AMOUNT..WITHDRAWALS AND OTHER DEBITS
    01-27             25.00  MAINTENANCE FEE              SVC CH*

AVERAGE BALANCE $5,068.23
AVERAGE COLLECTED BALANCE $5,068.23
MINIMUM BALANCE OF $4,413.03  OCCURRED ON 12-29-09
YEAR-TO-DATE INTEREST PAID $4.35

                   DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE  DATE...........BALANCE  DATE...........BALANCE
12-29          4,413.03  01-19          6,597.03  01-27          6,576.38

```
┌─────────────┐
│   EXHIBIT    │
│      B       │
└─────────────┘
```

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____  Deputy

Sterling G. Senechal III



COA-1501323404    1

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

*02603973*    1

01-27-10    02-27-10

DEMAND    1501323404    6,576.38    2,000.00    2,189.03    6,765.41

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 1.01%
AVERAGE COLLECTED BALANCE FOR APY: $58/3.41
INTEREST EARNED FOR PERIOD: $5.03
NUMBER OF DAYS IN PERIOD: 31

DEMAND    1501323404    1 ENCLOSURES

DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
02-16    2,184.00  ACH-SOC SEC US TREASURY 303
02-27       5.03  INTEREST PAID

DATE..CHECK NO .............AMOUNT    DATE..CHECK NO..............AMOUNT
02-04 1007         2,000.00

1 CHECKS PAID FOR A TOTAL OF $2,000.00

AVERAGE BALANCE $5,873.41
AVERAGE COLLECTED BALANCE $5,873.41
MINIMUM BALANCE OF $4,576.38  OCCURRED ON 02-04-10
YEAR-TO-DATE INTEREST PAID $9.38

DAILY CLOSING BALANCE SUMMARY

DATE.............BALANCE  DATE.............BALANCE  DATE.............BALANCE
01-28       6,576.38  02-04       4,576.38  02-16       6,760.38
02-27       6,765.41

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

DDA-1501323404 :

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

*02687973* 2

01-27-10     02-27-10

DEMAND   1501323404      6,576.38      2,000.00      2,189.03      6,765.41

EFFECTIVE FEBRUARY 27, 2010, OUR EXPEDITED FUNDS AVAILABILITY ACT POLICY
WILL BE CHANGING. OUR POLICY IS TO ALLOW YOU TO WITHDRAW FUNDS DEPOSITED
IN YOUR ACCOUNT ON THE SAME DAY WE RECEIVE YOUR DEPOSIT; HOWEVER, IN
SPECIAL CIRCUMSTANCES LONGER DELAYS MAY APPLY. WHEN DELAYS ARE REQUIRED,
SOME WILL BE SHORTENED AS THE ELEVEN DAY HOLD FOR NON-LOCAL CHECKS HAS BEEN
ELIMINATED. THIS CHANGE IS A RESULT OF RECENT CONSOLIDATIONS BY THE
FEDERAL RESERVE BANK. FOR THE FULL DISCLOSURE PLEASE CONTACT YOUR LOCAL
BRANCH OR CALL THE NUMBER FOUND ON THE FRONT OF THIS STATEMENT.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

COA-1501323404       2

*02683973*      1

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

02-27-10    03-27-10

DEMAND   1501323404        6,765.41    2,981.55    2,184.20    5,968.06

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $5170.56
INTEREST EARNED FOR PERIOD: $0.20
NUMBER OF DAYS IN PERIOD: 28

DEMAND   1501323404        2 ENCLOSURES

DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
03-16        2,184.00  ACH-SOC SEC US TREASURY 303
03-27            0.20  INTEREST PAID

DATE.............AMOUNT..WITHDRAWALS AND OTHER DEBITS
03-03          656.55  ACH-#1008 ARC PMT AMERICAN EXPRESS

DATE..CHECK NO .............AMOUNT     DATE..CHECK NO.............AMOUNT
03-02 1009               325.00     03-05 1010             2,000.00

2 CHECKS PAID FOR A TOTAL OF $2,325.00

AVERAGE BALANCE $5,170.56
AVERAGE COLLECTED BALANCE $5,170.56
MINIMUM BALANCE OF $3,783.86 OCCURRED ON 03-05-10
YEAR-TO-DATE INTEREST PAID $9.58

DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE   DATE...........BALANCE   DATE...........BALANCE
02-28        6,765.41   03-02        6,440.41   03-03        5,783.86
03-05        3,783.86   03-16        5,967.86   03-27        5,968.06

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

DDA-1501323404  2

*026803973*  2

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

02-27-10  03-27-10

DEMAND  1501323404  6,765.41  2,981.55  2,184.20  5,968.05

EFFECTIVE 5-17-2010 THE CONTINUOUS OVERDRAFT FEE IS
CHANGING. WHEN YOUR ACCOUNT HAS BEEN OVERDRAWN FOR 8 OR
MORE CONSECUTIVE DAYS YOU WILL BE CHARGED ONE $35 FEE.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404    3

*026603973*    1

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

03-27-10    04-27-10

DEMAND    1501323404    5,968.06    2,784.08    27,347.01    30,530.99

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $8262.35
INTEREST EARNED FOR PERIOD: $0.35
NUMBER OF DAYS IN PERIOD: 31

DEMAND    1501323404    3 ENCLOSURES

| DATE | AMOUNT | DEPOSITS AND OTHER CREDITS | |
|------|--------|---------------------------|---|
| 04-20 | 2,184.00 | ACH-SOC SEC US TREASURY 303 | |
| 04-23 | 25,162.66 | TRF    0114125301 INCOMING | WIRE CR |
| 04-27 | 0.35 | INTEREST PAID | |

| DATE | AMOUNT | WITHDRAWALS AND OTHER DEBITS | |
|------|--------|-----------------------------|---|
| 03-29 | 194.08 | ACH-#1012 CHECK PYMT CHASE | |
| 04-23 | 10.00 | TRF    0114125400 WIRE TRANS | FEE |

| DATE..CHECK NO | AMOUNT | DATE..CHECK NO | AMOUNT |
|----------------|--------|----------------|--------|
| 03-31 1011 | 2,000.00 | 04-19 1014 | 190.00 |
| 04-06 1013* | 390.00 | | |

3 CHECKS PAID FOR A TOTAL OF $2,580.00

AVERAGE BALANCE $8,262.35
AVERAGE COLLECTED BALANCE $8,262.35
MINIMUM BALANCE OF $3,193.98 OCCURRED ON 04-19-10
YEAR-TO-DATE INTEREST PAID $9.93

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

CDA-1501323404    3

*02663973*    2

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

03-27-10    04-27-10

DEMAND    1501323404    5,968.06    2,784.08    27,347.01    30,530.99

DAILY CLOSING BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 03-28 | 5,968.06 | 03-29 | 5,773.98 | 03-31 | 3,773.98 |
| 04-06 | 3,383.98 | 04-19 | 3,193.98 | 04-20 | 5,377.98 |
| 04-23 | 30,530.64 | 04-27 | 30,530.99 | | |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



```
                                        DDA-1501323404        3

           KENNETH C MCAFEE              *02683973*           1
           6729 MEADOWLAWN
           HOUSTON TX  77023
                                         04-27-10    05-27-10

   DEMAND   1501323404      30,530.99    3,310.00    11,921.42    39,142.41
```

PERSONAL STERLING ADVANTAGE ACCOUNT

```
        ANNUAL PERCENTAGE YIELD EARNED: 0.06%
        AVERAGE COLLECTED BALANCE FOR APY: 136409.73
        INTEREST EARNED FOR PERIOD: $1.50
        NUMBER OF DAYS IN PERIOD: 30

   DEMAND   1501323404      3 ENCLOSURES

        DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
        05-04          9,735.92  TRF     0110363700 INCOMING    WIRE CR
        05-18          2,184.00  ACH-SOC SEC US TREASURY 303
        05-27              1.50  INTEREST PAID

        DATE.............AMOUNT..WITHDRAWALS AND OTHER DEBITS
        05-04             10.00  TRF     0110363701 WIRE TRANS   FEE

        DATE..CHECK NO .............AMOUNT    DATE..CHECK NO.............AMOUNT
        04-30 1015               2,000.00    05-05 1018               300.00
        05-12 1017*              1,000.00

        3 CHECKS PAID FOR A TOTAL OF $3,300.00

        AVERAGE BALANCE 136,409.73
        AVERAGE COLLECTED BALANCE 136,409.73
        MINIMUM BALANCE OF $28,530.99  OCCURRED ON 04-30-10
        YEAR-TO-DATE INTEREST PAID $11.43
```

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

DDA-1501323404  3

*02683973*  2

KENNETH G MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

04-27-10    05-27-10

DEMAND   1501323404      30,530.99      3,310.00      11,521.42      39,142.41

DAILY CLOSING BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 04-28 | 30,530.99 | 04-30 | 28,530.99 | 05-04 | 38,256.91 |
| 05-05 | 37,956.91 | 05-12 | 36,956.91 | 05-18 | 39,140.91 |
| 05-27 | 39,142.41 | | | | |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404    0

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX  77023

*02683973*    1

05-27-10    06-28-10

DEMAND   1501323404       39,142.41        0.00       2,185.78      41,328.17


PERSONAL STERLING ADVANTAGE ACCOUNT
DEMAND   1501323404

     ANNUAL PERCENTAGE YIELD EARNED: 0.05%
     AVERAGE COLLECTED BALANCE FOR APY: $40097.91
     INTEREST EARNED FOR PERIOD: $1.76
     NUMBER OF DAYS IN PERIOD: 32

     DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
     06-15          2,184.00  ACH-SOC SEC US TREASURY 303
     06-28             1.76   INTEREST PAID

AVERAGE BALANCE $40,097.91
AVERAGE COLLECTED BALANCE $40,097.91
MINIMUM BALANCE OF $39,142.41 OCCURED ON 05-28-10
YEAR-TO-DATE INTEREST PAID $13.19

                    DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE   DATE............BALANCE   DATE...........BALANCE
05-28         39,142.41   06-15          41,326.41   06-28         41,328.17


Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404     2

*02683973*     1

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX  77023

06-28-10     07-27-10

DEMAND  1501323404     41,328.17     25,000.00     2,184.93     16,513.10


PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $23309.96
INTEREST EARNED FOR PERIOD: 10.93
NUMBER OF DAYS IN PERIOD: 29

DEMAND  1501323404     2 ENCLOSURES

DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
07-20           2,184.00  ACH-SOC SEC US TREASURY 303
07-27              0.93   INTEREST PAID

DATE..CHECK NO ....  ........AMOUNT     DATE..CHECK NO..............AMOUNT
07-07 1026              10,000.00       07-06 1027              15,000.00

  2 CHECKS PAID FOR A TOTAL OF $25,000.00

AVERAGE BALANCE $23,309.96
AVERAGE COLLECTED BALANCE $23,309.96
MINIMUM BALANCE OF $16,328.17  OCCURRED ON 07-07-10
YEAR-TO-DATE INTEREST PAID $14.12

                    DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE   DATE...........BALANCE   DATE...........BALANCE
06-29        41,328.17   07-06        26,328.17   07-07        16,328.17
07-20        18,512.17   07-27        16,513.10


Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

DDA-1501323404    1

KENNETH C MCAFEE
6650 FAIRFIELD ST
HOUSTON TX 77023

*02683973*    1

07-27-10    08-27-10

DEMAND    1501323404    18,513.10    6,000.00    2,184.78    14,697.88

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $18320.33
INTEREST EARNED FOR PERIOD: $0.78
NUMBER OF DAYS IN PERIOD: 31

DEMAND    1501323404    1 ENCLOSURES

DATE............AMOUNT..DEPOSITS AND OTHER CREDITS
08-17         2,184.00  ACH-SOC SEC US TREASURY 303
08-27             0.78  INTEREST PAID

DATE..CHECK NO .............AMOUNT    DATE..CHECK NO..............AMOUNT
08-23 1029         6,000.00

1 CHECKS PAID FOR A TOTAL OF $6,000.00

AVERAGE BALANCE $18,320.33
AVERAGE COLLECTED BALANCE $18,320.33
MINIMUM BALANCE OF $14,697.10 OCCURRED ON 08-23-10
YEAR-TO-DATE INTEREST PAID $14.90

DAILY CLOSING BALANCE SUMMARY

DATE............BALANCE   DATE............BALANCE   DATE...........BALANCE
07-78      18,513.10      08-17      20,697.10      08-23      14,697.10
08-27      14,697.68

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Seneschal III

COA-1501323404    0

KENNETH C MCAFEE
6650 FAIRFIELD ST
HOUSTON TX 77021

"02680973"    1

08-27-10   09-27-10

DCMANC  1501323404    14,697.88    0.30    2,184.67    16,882.55

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $15684.20
INTEREST EARNED FOR PERIOD: $0.67
NUMBER OF DAYS IN PERIOD: 31

GCMANO  1501323404

DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
09-14      2,184.00  ACH-SOC SEC US TREASURY 303
09-27      0.67  INTEREST PAID

AVERAGE BALANCE $15,684.20
AVERAGE COLLECTED BALANCE $15,684.20
MINIMUM BALANCE OF $14,697.88 OCCURRED ON 08-28-10
YEAR-TO-DATE INTEREST PAID $15.57

DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE  DATE...........BALANCE  DATE...........BALANCE
08-28    14,697.88  09-14    16,881.88  09-27    16,882.55

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



UDA-1501323404    0

*02683973*    1

KENNETH C MCAFEE
6650 FAIRFIELD ST
HOUSTON TX 77023

09-27-10  10-27-10

DEMAND  1501323404    16,882.55    0.00    2,184.72    19,067.27

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $17537.75
INTEREST EARNED FOR PERIOD: 10.72
NUMBER OF DAYS IN PERIOD: 30

DEMAND  1501323404

DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
10-19    2,184.00  ACH-SOC SEC US TREASURY 303
10-27      0.72  INTEREST PAID

AVERAGE BALANCE $17,537.75
AVERAGE COLLECTED BALANCE $17,537.75
MINIMUM BALANCE OF $16,882.55 OCCURRED ON 09-28-10
YEAR-TO-DATE INTEREST PAID $16.29

DAILY CLOSING BALANCE SUMMARY

DATE............BALANCE  DATE..........BALANCE  DATE...........BALANCE
09-28    16,882.55  10-19    19,066.55  10-27    19,067.27

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



DDA-1501323404　　1

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

*026803973*　　1

10-27-10　　11-27-10

DEMAND　1501323404　　19,067.27　　55.00　　2,184.84　　21,197.11


PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $19896.72
INTEREST EARNED FOR PERIOD: $0.84
NUMBER OF DAYS IN PERIOD: 31

DEMAND　1501323404　　1 ENCLOSURES

DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
11-16　　2,184.00　ACH-SOC SEC US TREASURY 303
11-27　　0.84　INTEREST PAID

DATE..CHECK NO .............AMOUNT　　DATE..CHECK NO..............AMOUNT
11-19 1029　　55.00

1 CHECKS PAID FOR A TOTAL OF $55.00

AVERAGE BALANCE $19,896.72
AVERAGE COLLECTED BALANCE $19,896.72
MINIMUM BALANCE OF $19,067.27 OCCURRED ON 10-28-10
YEAR-TO-DATE INTEREST PAID $17.13

DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE　DATE...........BALANCE　DATE...........BALANCE
10-28　　19,067.27　　11-16　　21,251.27　　11-19　　21,196.27
11-27　　21,197.11

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Seneschal III



DDA-1501323404    1

*02683973*    1

KENNETH C MCAFEE
5729 MEADOWLAWN
HOUSTON TX 77023

11-27-10   12-27-10

DEMAND  1501323404    21,197.11   19,024.63   2,184.16   4,356.64

PERSONAL STERLING ADVANTAGE ACCOUNT

    ANNUAL PERCENTAGE YIELD EARNED: 0.05%
    AVERAGE COLLECTED BALANCE FOR APY: $3825.83
    INTEREST EARNED FOR PERIOD: $0.16
    NUMBER OF DAYS IN PERIOD: 30

DEMAND  1501323404    1 ENCLOSURES

    DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
    12-14     2,184.00  ACH-SOC SEC US TREASURY 303
    12-27       0.16  INTEREST PAID

DATE..CHECK NO ..............AMOUNT    DATE..CHECK NO..............AMOUNT
11-29 1031      19,024.63

  1 CHECKS PAID FOR A TOTAL OF $19,024.63

AVERAGE BALANCE $3,825.83
AVERAGE COLLECTED BALANCE $3,825.83
MINIMUM BALANCE OF $2,172.48 OCCURRED ON 11-29-10
YEAR-TO-DATE INTEREST PAID $17.29

      DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE  DATE...........BALANCE  DATE...........BALANCE
11-28     21,197.11  11-29    2,172.48  12-14    4,356.48
12-27     4,356.64

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



COA-1501323404    0

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX  77023

*02683973*    1

12-27-10   01-27-11

DEMAND   1501323404      4,356.64      0.00     1,843.11    6,199.75

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $4951.12
INTEREST EARNED FOR PERIOD: $0.21
NUMBER OF DAYS IN PERIOD: 31

DEMAND   1501323404

DATE...............AMOUNT..DEPOSITS AND OTHER CREDITS
01-18           1,842.90  ACH-SOC SEC US TREASURY 303
01-27               0.21  INTEREST PAID

AVERAGE BALANCE $4,951.12
AVERAGE COLLECTED BALANCE $4,951.12
MINIMUM BALANCE OF $4,356.64  OCCURRED ON 12-28-10
YEAR-TO-DATE INTEREST PAID $0.21

DAILY CLOSING BALANCE SUMMARY

DATE............BALANCE   DATE............BALANCE   DATE............BALANCE
12-28         4,356.64    01-18          6,199.54   01-27          6,199.75

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling C. Senechal III



DDA-1501323404    0

*02683973*    1

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

01-27-11    02-28-11

DEMAND   1501323404     6,199.75     0.00     1,843.21     8,042.96

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $7006.02
INTEREST EARNED FOR PERIOD: $0.31
NUMBER OF DAYS IN PERIOD: 32

DEMAND   1501323404

DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
02-15     1,842.90   ACH-SOC SEC US TREASURY 303
02-28     0.31   INTEREST PAID

AVERAGE BALANCE $7,006.02
AVERAGE COLLECTED BALANCE $7,006.02
MINIMUM BALANCE OF $6,199.75 OCCURRED ON 01-28-11
YEAR-TO-DATE INTEREST PAID $0.52

DAILY CLOSING BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 01-28 | 6,199.75 | 02-15 | 8,042.65 | 02-28 | 8,042.96 |

EFFECTIVE APRIL 1, 2011, TRAVELERS CHEQUES WILL NO LONGER
BE OFFERED AT NO CHARGE. REGARDLESS OF ACCOUNT TYPE.
TRAVELERS CHEQUES ARE NOT AVAILABLE AT ALL LOCATIONS.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterlin ?. Senechal III

DDA-1501323404          0

*02683973*              1

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

02-28-11    03-28-11

DEMAND    1501323404        8,042.96        0.00        1,843.24      9,886.20

PERSONAL STERLING ADVANTAGE ACCOUNT

    ANNUAL PERCENTAGE YIELD EARNED: 0.05%
    AVERAGE COLLECTED BALANCE FOR APY: $8964.41
    INTEREST EARNED FOR PERIOD: $0.34
    NUMBER OF DAYS IN PERIOD: 28

DEMAND    1501323404

    DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
    03-15            1,842.90  ACH-SOC SEC US TREASURY 303
    03-28                0.34  INTEREST PAID

    AVERAGE BALANCE $8,964.41
    AVERAGE COLLECTED BALANCE $8,964.41
    MINIMUM BALANCE OF $8,042.96 OCCURRED ON 03-01-11
    YEAR-TO-DATE INTEREST PAID $0.86

           DAILY CLOSING BALANCE SUMMARY

    DATE...........BALANCE  DATE...........BALANCE  DATE...........BALANCE
    03-01          8,042.96  03-15          9,885.86  03-28          9,886.20

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

DDA-1501323404   0

*026830973*   2

02-28-11   03-28-11

DEMAND   1501323404   8,042.96   0.00   1,843.24   9,886.20

EFFECTIVE APRIL 1, 2011, TRAVELERS CHEQUES WILL NO LONGER
BE OFFERED AT NO CHARGE, REGARDLESS OF ACCOUNT TYPE.
TRAVELERS CHEQUES ARE NOT AVAILABLE AT ALL LOCATIONS.
***
BEGINNING APRIL 1, 2011 WE WILL UPDATE PENDING TRANSACTIONS THROUGHOUT
THE DAY TO INCLUDE CHECKS THAT WILL BE POSTING TO YOUR ACCOUNT THAT NIGHT.
PENDING CHECK TRANSACTIONS REDUCE YOUR AVAILABLE BALANCE. THIS NEW
FEATURE IS ANOTHER WAY WOODFOREST IS COMMITTED TO PROVIDING YOU THE BEST
INFORMATION POSSIBLE TO ASSIST YOU IN RESPONSIBLE ACCOUNT MANAGEMENT.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

DDA-1501323404    0

KENNETH C MCAFEE
6729 MEADOW/LAWN
HOUSTON TX 77023

*02683973*    1

03-28-11    04-27-11

DEMAND    1501323404     9,886.20     0.00     1,843.33     11,729.53

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $10439.07
INTEREST EARNED FOR PERIOD: $0.43
NUMBER OF DAYS IN PERIOD: 30

DEMAND    1501323404

DATE............AMOUNT..DEPOSITS AND OTHER CREDITS
04-19      1,842.90   ACH-XISOC SEC US TREASURY 303
04-27       0.43   INTEREST PAID

AVERAGE BALANCE $10,439.07
AVERAGE COLLECTED BALANCE $10,439.07
MINIMUM BALANCE OF $9,886.20 OCCURRED ON 03-29-11
YEAR-TO-DATE INTEREST PAID $1.29

DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE   DATE...........BALANCE   DATE...........BALANCE
03-29     9,886.20   04-19    11,729.10   04-27    11,729.53

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



DDA-1501323404 0

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

*02683973* 1

04-27-11  05-27-11

DEMAND  1501323404   11,729.53   0.00   1,843.41   13,572.94

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $12405.26
INTEREST EARNED FOR PERIOD: 10.51
NUMBER OF DAYS IN PERIOD: 30

DEMAND  1501323404

DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
05-17          1,842.90  ACH-XXSOC SEC US TREASURY 303
05-27              0.51  INTEREST PAID

AVERAGE BALANCE $12,405.26
AVERAGE COLLECTED BALANCE $12,405.26
MINIMUM BALANCE OF $11,729.53 OCCURRED ON 04-28-11
YEAR-TO-DATE INTEREST PAID $1.80

DAILY CLOSING BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 04-28 | 11,729.53 | 05-17 | 13,572.43 | 05-27 | 13,572.94 |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

DDA-150L3Z3404    0

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

*02683973*    2

04-27-11    05-27-11

DEMAND    1501323404    11,729.53    0.00    1,843.41    13,572.94

EFFECTIVE JUNE 5, 2011, OUR FUNDS AVAILABILITY POLICY WILL BE
CHANGING. GENERALLY, FUNDS FROM DEPOSITS MADE AT A PROPRIETARY ATM
WILL BE AVAILABLE AS FOLLOWS: THE CASH PORTION OF ANY DEPOSIT WILL BE
AVAILABLE TO YOU ON THE DAY WE RECEIVE YOUR DEPOSIT. THE FIRST $200
OF ALL CHECKS DEPOSITED WILL BE AVAILABLE TO YOU ON THE NEXT BUSINESS
DAY AFTER THE DAY OF YOUR DEPOSIT. THE REMAINING FUNDS FROM ALL CHECKS
DEPOSITED WILL BE AVAILABLE TO YOU ON THE SECOND BUSINESS DAY
AFTER THE DAY OF YOUR DEPOSIT, UNLESS AN EXCEPTION APPLIES.
FOR THE FULL DISCLOSURE PLEASE CONTACT YOUR LOCAL BRANCH.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404          0

*02683973*          1

KENNETH C MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

05-27-11     06-27-11

DEMAND   1501323404        13,572.94        0.00     1,843.51     15,416.45

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $14405.22
INTEREST EARNED FOR PERIOD: $0.61
NUMBER OF DAYS IN PERIOD: 31

DEMAND   1501323404

DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
06-14              1,842.90  ACH-USSOC SEC US TREASURY 303
06-27                 0.61  INTEREST PAID

AVERAGE BALANCE $14,405.22
AVERAGE COLLECTED BALANCE $14,405.22
MINIMUM BALANCE OF $13,572.94 OCCURRED ON 05-28-11
YEAR-TO-DATE INTEREST PAID $2.41

DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE   DATE...........BALANCE   DATE...........BALANCE
05-28          13,572.94  06-14          15,415.84  06-27          15,416.45

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404     0

KENNETH C MCAFEE          *026B3973*     1
BRENDA H MCAFEE
5729 MEADOWLAWN
HOUSTON TX 77023

06-27-11   07-27-11

DEMAND   1501323404    15,416.45    0.00    1,843.56    17,260.01

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $15969.32
INTEREST EARNED FOR PERIOD: $0.66
NUMBER OF DAYS IN PERIOD: 30

DEMAND   1501323404

DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
07-19          1,842.90  ACH-XXSOC SEC US TREASURY 303
07-27             0.66  INTEREST PAID

AVERAGE BALANCE $15,969.32
AVERAGE COLLECTED BALANCE $15,969.32
MINIMUM BALANCE OF $15,416.45 OCCURRED ON 06-28-11
YEAR-TO-DATE INTEREST PAID $3.07

DAILY CLOSING BALANCE SUMMARY

DATE... ........BALANCE  DATE...........BALANCE  DATE...........BALANCE
06-28         15,416.45  07-19         17,259.35  07-27         17,260.01

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404     0

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77073

*02680973*     1

07-27-11    08-27-11

DEMAND   1501323404     17,260.01     0.00     1,848.66     19,108.67

PERSONAL STERLING ADVANTAGE ACCOUNT

    ANNUAL PERCENTAGE YIELD EARNED: 0.05%
    AVERAGE COLLECTED BALANCE FOR APY: $17978.39
    INTEREST EARNED FOR PERIOD: $0.76
    NUMBER OF DAYS IN PERIOD: 31

DEMAND   1501323404

    DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
    07-28        5.00   E-STATEMENT INCENTIVE     INT PD
    08-16     1,842.90   ACH-IXSOC SEC US TREASURY 303
    08-27        0.76   INTEREST PAID

  AVERAGE BALANCE $17,978.39
  AVERAGE COLLECTED BALANCE $17,978.39
  MINIMUM BALANCE OF $17,265.01 OCCURRED ON 07-28-11
  YEAR-TO-DATE INTEREST PAID $8.83

           DAILY CLOSING BALANCE SUMMARY

  DATE.........BALANCE   DATE.........BALANCE   DATE.....BALANCE
  07-28     17,265.01   08-16     19,107.91   08-27     19,108.67

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

DDA-1501323404    0

\*02683973\*    I

KENNETH C MCAFEE
BRENDA H MCAFEE
8729 MEADOWLAWN
HOUSTON TX 77023

08-27-11   09-27-11

DEMAND  1501323404    19,108.67    0.00    1,843.73    20,952.40

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $19584.26
INTEREST EARNED FOR PERIOD: $0.83
NUMBER OF DAYS IN PERIOD: 31

DEMAND  1501323404

DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
09-20    1,842.90  ACH-XYSOC SEC US TREASURY 303
09-27    0.83  INTEREST PAID

AVERAGE BALANCE $19,584.26
AVERAGE COLLECTED BALANCE $19,584.26
MINIMUM BALANCE OF $19,108.67 OCCURRED ON 08-28-11
YEAR-TO-DATE INTEREST PAID $9.66

DAILY CLOSING BALANCE SUMMARY

DATE............BALANCE  DATE............BALANCE  DATE............BALANCE
08-28    19,108.67  09-20    20,951.57  09-27    20,952.40

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404    C

*02683973*    1

KENNETH E MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX  77023

09-27-11    10-27-11

DEMAND   1501323404      20,952.40      0.00      1,843.79      22,796.19

PERSONAL STERLING ADVANTAGE ACCOUNT

    ANNUAL PERCENTAGE YIELD EARNED: 0.05%
    AVERAGE COLLECTED BALANCE FOR APY: $21566.70
    INTEREST EARNED FOR PERIOD: $0.89
    NUMBER OF DAYS IN PERIOD: 30

DEMAND   1501323404

    DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
    10-18       1,842.90  ACH-JKSOC SEC US TREASURY 303
    10-27          0.89  INTEREST PAID

AVERAGE BALANCE $21,566.70
AVERAGE COLLECTED BALANCE $21,566.70
MINIMUM BALANCE OF $20,952.40  OCCURRED ON 09-28-11
YEAR-TO-DATE INTEREST PAID $10.55

                DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE  DATE...........BALANCE  DATE...........BALANCE
09-28       20,952.40  10-18       22,795.30  10-27       22,796.19

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



COA-1501323404   0

*02683973*   1

KENNETH C MCAFEE
BRENDA N MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

10-27-11   11-28-11

DEMAND  1501323404   22,796.19   0.00   5,602.78   28,398.97

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $27008.78
INTEREST EARNED FOR PERIOD: $1.18
NUMBER OF DAYS IN PERIOD: 32

DEMAND  1501323404

DATE...... ......AMOUNT..DEPOSITS AND OTHER CREDITS
10-31   3,758.70  ACH-XXSOC SEC US TREASURY 303
11-15   1,842.90  ACH-XXSOC SEC US TREASURY 303
11-28     1.18  INTEREST PAID

AVERAGE BALANCE $27,008.78
AVERAGE COLLECTED BALANCE $27,008.78
MINIMUM BALANCE OF $22,796.19 OCCURRED ON 10-28-11
YEAR-TO-DATE INTEREST PAID $11.73

DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE  DATE...........BALANCE  DATE...........BALANCE
10-28   22,796.19  10-31   26,554.89  11-15   28,397.79
11-28   28,398.97

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404     0

KENNETH C MCAFEE
BRENDA M MCAFEE
6729 MEADOW LAWN
HOUSTON TX 77023

*02683973*     1

11-28-11   12-27-11

DEMAND   1501323404          28,398.97          0.00      2,185.15      30,584.12

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $29001.45
INTEREST EARNED FOR PERIOD: $1.15
NUMBER OF DAYS IN PERIOD: 29

DEMAND   1501323404

DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
12-20          2,184.00  ACH-XXSOC SEC US TREASURY 303
12-27             1.15   INTEREST PAID

AVERAGE BALANCE $29,001.45
AVERAGE COLLECTED BALANCE $29,001.45
MINIMUM BALANCE OF $28,398.97  OCCURRED ON 11-29-11
YEAR-TO-DATE INTEREST PAID $12.80

DAILY CLOSING BALANCE SUMMARY

DATE.... ......BALANCE  DATE...........BALANCE  DATE..........BALANCE
11-29         28,398.97  12-20        30,582.97  12-27      30,584.12

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404    D

*026B3973*    1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

12-27-11    01-27-12

DEMAND  1501323404    30,584.12    0.00    2,044.33    32,628.45

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $31332.62
INTEREST EARNED FOR PERIOD: $1.33
NUMBER OF DAYS IN PERIOD: 31

DEMAND  1501323404

DATE............AMOUNT..DEPOSITS AND OTHER CREDITS
01-06          66.40   ACH-XXSOC SEC US TREASURY 303
01-17       1,976.60   ACH-XXSOC SEC US TREASURY 303
01-27           1.33   INTEREST PAID

AVERAGE BALANCE $31,332.62
AVERAGE COLLECTED BALANCE $31,332.62
MINIMUM BALANCE OF $30,584.12  OCCURRED ON 12-28-11
YEAR-TO-DATE INTEREST PAID $1.33

DAILY CLOSING BALANCE SUMMARY

DATE............BALANCE  DATE............BALANCE  DATE............BALANCE
12-28      30,584.12  01-06      30,650.52  01-17      32,627.12
01-27      32,628.45

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Seneshal III

DDA-1501323404    0

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

*02683973*    1

01-27-12    02-27-12

DEMAND    1501323404    32,628.45    0.00    7,044.42    34,672.87

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $33551.10
INTEREST EARNED FOR PERIOD: $1.42
NUMBER OF DAYS IN PERIOD: 31

DEMAND    1501323404

DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
02-14    7,043.00    ACH-XXSOC SEC US TREASURY 303
02-27    1.42    INTEREST PAID

AVERAGE BALANCE $33,551.10
AVERAGE COLLECTED BALANCE $33,551.10
MINIMUM BALANCE OF $32,628.45 OCCURRED ON 01-28-12
YEAR-TO-DATE INTEREST PAID $2.75

DAILY CLOSING BALANCE SUMMARY

DATE............BALANCE    DATE............BALANCE    DATE............BALANCE
01-28    32,628.45    02-14    34,671.45    02-27    34,672.87

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Seneschal III

DDA-1501323404   0

*02683973*   2

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

01-27-12   02-27-12

DEMAND   1501323404   32,628.45   0.00   2,044.42   34,672.87

EFFECTIVE APRIL 1, 2012:
INSUFFICIENT ITEM.................$32.00
OVERDRAFT ITEM....................$32.00
STOP PAYMENT......................$35.00
DEBIT MASTERCARD ANNUAL...........$-0-
OFFICIAL CHECK CLAIM..............$35.00
          ***

EFFECTIVE FEBRUARY 1, 2012:
DEBIT MASTERCARD SETUP FEE........$15.00
DEBIT MASTERCARD REPLACEMENT......$10.00

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404     0

*02683973*    1

KENNETH C MCAFEE
BRENDA M MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

02-27-12   03-27-12

DEMAND  1501323404    34,672.87    3,765.88    2,044.37    32,931.44

PERSONAL STERLING ADVANTAGE ACCOUNT

    ANNUAL PERCENTAGE YIELD EARNED: 0.05%
    AVERAGE COLLECTED BALANCE FOR APY: $34521.66
    INTEREST EARNED FOR PERIOD: $1.37
    NUMBER OF DAYS IN PERIOD: 29

DEMAND  1501323404

    DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
    03-20     2,043.00  ACH-XXSOC SEC US TREASURY 303
    03-27        1.37  INTEREST PAID

    DATE..............AMOUNT..WITHDRAWALS AND OTHER DEBITS
    03-05      100.00  LEGAL PROCESSING FEE/ IRS    MISC DB
    03-23    3,685.80  US TREASURY LEVY          MISC DB

AVERAGE BALANCE $34,521.66
AVERAGE COLLECTED BALANCE $34,521.66
MINIMUM BALANCE OF $32,930.07 OCCURRED ON 03-23-12
YEAR-TO-DATE INTEREST PAID $4.12

          DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE  DATE...........BALANCE  DATE...........BALANCE
02-28     34,672.87  03-05     34,572.87  03-20     36,615.87
03-23     32,930.07  03-27     32,931.44

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

DDA-1507323404          0

KENNETH C MCAFEE                    *02683973*          2
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023
                                   02-27-12   03-27-12

DEMAND   1501323404      34,672.87      3,785.80     2,044.37     32,931.44


        EFFECTIVE APRIL 1, 2012:
        INSUFFICIENT ITEM................$32.00
        OVERDRAFT ITEM..................$32.00
        STOP PAYMENT....................$35.00
        DEBIT MASTERCARD ANNUAL..........$-0-
        OFFICIAL CHECK CLAIM............$35.00
                      ***

        EFFECTIVE FEBRUARY 1, 2012:
        DEBIT MASTERCARD SETUP FEE.......$15.00
        DEBIT MASTERCARD REPLACEMENT.....$10.00

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

COA-1501323404    0

*02683973*    1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

03-27-12    04-27-12

DEMAND    1501323404    32,931.44    0.00    2,044.43    34,975.87

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $33656.38
INTEREST EARNED FOR PERIOD: $1.43
NUMBER OF DAYS IN PERIOD: 31

DEMAND    1501323404

DATE............AMOUNT..DEPOSITS AND OTHER CREDITS
04-17        2,043.00  ACH-XXSOC SEC US TREASURY 303
04-27           1.43  INTEREST PAID

AVERAGE BALANCE $33,656.38
AVERAGE COLLECTED BALANCE $33,656.38
MINIMUM BALANCE OF $32,931.44 OCCURRED ON 03-28-12
YEAR-TO-DATE INTEREST PAID $5.55

DAILY CLOSING BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 03-28 | 32,931.44 | 04-17 | 34,974.44 | 04-27 | 34,975.87 |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Seneshal III

DDA-1501323404     0

KENNETH C MCAFEE
BRENDA N MCAFEE
E729 MEADOWLAWN
HOUSTON TX 77023

*02683973*     1

04-27-12   05-28-12

DEMAND   1501323404        34,975.87        0.00     2,044.52    37,020.39

PERSONAL STERLING ADVANTAGE ACCOUNT

    ANNUAL PERCENTAGE YIELD EARNED: 0.05%
    AVERAGE COLLECTED BALANCE FOR APY: $35898.52
    INTEREST EARNED FOR PERIOD: $1.52
    NUMBER OF DAYS IN PERIOD: 31

DEMAND   1501323404

    DATE............AMOUNT..DEPOSITS AND OTHER CREDITS
    05-15         2,043.00  ACH-XXSOC SEC US TREASURY 303
    05-28             1.52  INTEREST PAID

AVERAGE BALANCE $35,898.52
AVERAGE COLLECTED BALANCE $35,898.52
MINIMUM BALANCE OF $34,975.87  OCCURRED ON 04-28-12
YEAR-TO-DATE INTEREST PAID $7.07

         DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE   DATE...........BALANCE   DATE...........BALANCE
04-28        34,975.87   05-15        37,018.87   05-28        37,020.39

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404          0

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77073

                                                *026B3973*        1

                                                05-28-12   06-27-12

DEMAND   1501323404        37,020.39        0.00    2,044.54    39,064.93

PERSONAL STERLING ADVANTAGE ACCOUNT

       ANNUAL PERCENTAGE YIELD EARNED: 0.05%
       AVERAGE COLLECTED BALANCE FOR APY: $37633.29
       INTEREST EARNED FOR PERIOD: $1.54
       NUMBER OF DAYS IN PERIOD: 30

DEMAND   1501323404

       DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
       06-19            2,043.00  ACH-XXSDC SEC US TREASURY 303
       06-27                1.54  INTEREST PAID

   AVERAGE BALANCE $37,633.29
   AVERAGE COLLECTED BALANCE $37,633.29
   MINIMUM BALANCE OF $37,020.39 OCCURRED ON 05-29-12
   YEAR-TO-DATE INTEREST PAID $8.61

                      DAILY CLOSING BALANCE SUMMARY

       DATE...........BALANCE   DATE...........BALANCE   DATE...........BALANCE
       05-29        37,020.39   06-19        39,063.39   06-27        39,064.93

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

DDA-1501323404   0

"02683973"   1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

06-27-12   07-27-12

DEMAND  1501323404   39,064.93    0.00   2,044.63   41,109.56

PERSONAL STERLING ADVANTAGE ACCOUNT

   ANNUAL PERCENTAGE YIELD EARNED: 0.05%
   AVERAGE COLLECTED BALANCE FOR APY: $39814.03
   INTEREST EARNED FOR PERIOD: $1.63
   NUMBER OF DAYS IN PERIOD: 30

DEMAND  1501323404

   DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
   07-17      2,043.00  ACH-XXSOC SEC US TREASURY 303
   07-27        1.63  INTEREST PAID

   AVERAGE BALANCE $39,814.03
   AVERAGE COLLECTED BALANCE $39,814.03
   MINIMUM BALANCE OF $39,064.93 OCCURRED ON 06-28-12
   YEAR-TO-DATE INTEREST PAID $10.24

         DAILY CLOSING BALANCE SUMMARY

   DATE...........BALANCE  DATE............BALANCE  DATE...........BALANCE
   06-28     39,064.93  07-17    41,107.93  07-27   41,109.56

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling C. Senechal III     Deputy



COA-1501323404          0

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

*02883973*          1

07-27-12    08-27-12

DEMAND    1501323404        41,109.56        0.00      2,044.78      43,154.34

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $42032.21
INTEREST EARNED FOR PERIOD: $1.78
NUMBER OF DAYS IN PERIOD: 31

DEMAND    1501323404

DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
08-14        2,043.00   ACH-XXSOC SEC US TREASURY 303
08-27            1.78   INTEREST PAID

AVERAGE BALANCE $42,032.21
AVERAGE COLLECTED BALANCE $42,032.21
MINIMUM BALANCE OF $41,109.56 OCCURRED ON 07-28-12
YEAR-TO-DATE INTEREST PAID $12.02

DAILY CLOSING BALANCE SUMMARY

DATE.............BALANCE   DATE.............BALANCE   DATE.............BALANCE
07-28        41,109.56    08-14        43,152.56    08-27        43,154.34

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

DDA·1501323404          0

*02683973*          1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX  77023

08-27-12     09-27-12

DEMAND   1501323404          43,154.34          0.00          2,044.86     45,199.20

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $43813.37
INTEREST EARNED FOR PERIOD: $1.86
NUMBER OF DAYS IN PERIOD: 31

DEMAND   1501323404

DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
09-18          2,043.00   ACH-XXSOC SEC US TREASURY 303
09-27             1.86   INTEREST PAID

AVERAGE BALANCE $43,813.37
AVERAGE COLLECTED BALANCE $43,813.37
MINIMUM BALANCE OF $43,154.34  OCCURRED ON 08-28-12
YEAR-TO-DATE INTEREST PAID $13.88

DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE   DATE...........BALANCE   DATE...........BALANCE
08-28          43,154.34   09-18          45,197.34   09-27          45,199.20

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

DDA-1501323404    0

KENNETH C MCAFEE
BRENDA M MCAFEE
5729 MEADOWLAWN
HOUSTON TX  77023

*02683973*    1

09-27-12   10-27-12

DEMAND   1501323404      45,199.20        0.00     2,044.88     47,244.08

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $46016.40
INTEREST EARNED FOR PERIOD: $1.88
NUMBER OF DAYS IN PERIOD: 30

DEMAND   1501323404

DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
10-15         2,043.00  ACH-XXSOC SEC SSA TREAS 310 N1*T1*
                        \N1*BC* *34*000004352\
10-27            1.88  INTEREST PAID

AVERAGE BALANCE $46,016.40
AVERAGE COLLECTED BALANCE $46,016.40
MINIMUM BALANCE OF $45,199.20  OCCURRED ON 09-28-12
YEAR-TO-DATE INTEREST PAID $15.76

DAILY CLOSING BALANCE SUMMARY

DATE.........BALANCE   DATE.........BALANCE   DATE.........BALANCE
09-28       45,199.20  10-16       47,242.20  10-27       47,244.08

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



DDA-1501323404     0

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

*02603973*     1

10-27-12     11-27-12

DEMAND   1501323404        47,244.08        0.00        2,045.02        49,289.10

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $47771.31
INTEREST EARNED FOR PERIOD: $2.02
NUMBER OF DAYS IN PERIOD: 31

DEMAND   1501323404

DATE............AMOUNT..DEPOSITS AND OTHER CREDITS
11-20         2,043.00  ACH-IXSOC SEC SSA TREAS 310
11-27            2.02   INTEREST PAID

AVERAGE BALANCE $47,771.31
AVERAGE COLLECTED BALANCE $47,771.31
MINIMUM BALANCE OF $47,244.08 OCCURRED ON 10-28-12
YEAR-TO-DATE INTEREST PAID $17.78

DAILY CLOSING BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 10-28 | 47,244.08 | 11-20 | 49,287.08 | 11-27 | 49,289.10 |

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



COA-1501323404    0

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

*02683973*    1

11-27-12    12-27-12

DEMAND    1501323404    49,289.10    0.00    2,045.05    51,334.15

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $49970.10
INTEREST EARNED FOR PERIOD: $2.05
NUMBER OF DAYS IN PERIOD: 30

DEMAND    1501323404

DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
12-18            2,043.00  ACH-XXSOC SEC SSA TREAS 310
                           CO109031736039 CO109031736039
                           CO109031736039 CO109031736039
                           CO109031736039
12-27            2.05     INTEREST PAID

AVERAGE BALANCE $49,970.10
AVERAGE COLLECTED BALANCE $49,970.10
MINIMUM BALANCE OF $49,289.10 OCCURRED ON 11-28-12
YEAR-TO-DATE INTEREST PAID $19.83

DAILY CLOSING BALANCE SUMMARY

DATE.............BALANCE  DATE.............BALANCE  DATE.............BALANCE
11-28            49,289.10  12-18           51,332.10  12-27           51,334.15

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404    0

*07683973*    2

KENNETH E MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

11-27-12    12-27-12

DEMAND    1501323404    49,289.10    0.00    2,045.05    51,334.15

NOTICE: By federal law, as of 1/1/2013,
funds in a noninterest-bearing transaction account(including an IOLTA/IOLA)
will no longer receive unlimited deposit insurance coverage, but
will be FDIC-insured to the legal maximum of $250,000
for each ownership category. For more information, visit
http://www.fdic.gov/deposit/deposits/unlimited/expiration.html

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



DDA-1501323404   0

*02663973*   1

KENNETH C MCAFEE
BRENDA H MCAFEE
8729 MEADOWLAWN
HOUSTON TX 77023

12-27-12  01-28-13

DEMAND  1501323404    51,334.15      0.00    2,069.29   53,403.44

PERSONAL STERLING ADVANTAGE ACCOUNT

    ANNUAL PERCENTAGE YIELD EARNED: 0.05%
    AVERAGE COLLECTED BALANCE FOR APY: $52238.46
    INTEREST EARNED FOR PERIOD: $2.29
    NUMBER OF DAYS IN PERIOD: 32

DEMAND  1501323404

    DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
    01-15      2,067.00  ACH-XXSOC SEC SSA TREAS 310
                        CO1D9031736026 CO1D9031736026
                        CO1D9031736026 CO1D9031736026
                        CO1D9031736026
    01-28         2.29  INTEREST PAID

AVERAGE BALANCE $52,238.46
AVERAGE COLLECTED BALANCE $52,238.46
MINIMUM BALANCE OF $51,334.15 OCCURRED ON 12-28-12
YEAR-TO-DATE INTEREST PAID $2.29

           DAILY CLOSING BALANCE SUMMARY

DATE.............BALANCE  DATE.............BALANCE  DATE.............BALANCE
12-28     51,334.15  01-15     53,401.15  01-28     53,403.44

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



KENNETH C MCAFEE
BRENDA N MCAFEE
5729 MEADOWLAWN
HOUSTON TX 77023

DDA-1501323404    0

*02583973*    2

12-27-12   01-28-13

DEMAND   1501323404    51,334.15    0.00    2,069.29    53,403.44

NOTICE: By federal law, as of 1/1/2013,
funds in a noninterest-bearing transaction account(including an IOLTA/IOLA)
will no longer receive unlimited deposit insurance coverage, but
will be FDIC-insured to the legal maximum of $250,000
for each ownership category. For more information, visit
http://www.fdic.gov/deposit/deposits/unlimited/expiration.html

+++++++++++++++++++++++++++++++++++++++++++++++++++++++++
Effective March 1, 2013
Debit MasterCard® Cash Advance Fee..$2.00 per transaction
+++++++++++++++++++++++++++++++++++++++++++++++++++++++++

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

DDA-1501323404        0

*02683973*          1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX  77023

01-28-13    02-27-13

DDMAND   1501323404      53,403.44      0.00      2,069.22      55,472.66


PERSONAL STERLING ADVANTAGE ACCOUNT

        ANNUAL PERCENTAGE YIELD EARNED: 0.05%
        AVERAGE COLLECTED BALANCE FOR APY: 154023.54
        INTEREST EARNED FOR PERIOD: $2.27
        NUMBER OF DAYS IN PERIOD: 30

DEMAND   1501323404

        DATE........... ...AMOUNT..DEPOSITS AND OTHER CREDITS
        02-19             2,067.00  ACH-XXSOC SEC SSA TREAS 310
                                    CO1D9031736026 CO1D9031736026
                                    CO1D9031736026 CO1D9031736026
                                    CO1D9031736026 CO1D9031736026
        02-27                2.22  INTEREST PAID

    AVERAGE BALANCE $54,023.54
    AVERAGE COLLECTED BALANCE $54,023.54
    MINIMUM BALANCE OF $53,403.44  OCCURRED ON 01-29-13
    YEAR-TO-DATE INTEREST PAID $4.51

                    DAILY CLOSING BALANCE SUMMARY

    DATE...........BALANCE  DATE...........BALANCE  DATE...........BALANCE
    01-29       53,403.44   02-19       55,470.44   02-27       55,472.66

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling Q. Benschal III



DOA-1501323404   0

KENNETH C MCAFEE
BRENDA W MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

*02583973*   2

01-28-13  02-27-13

DEMAND  1501323404   53,403.44   0.00   2,069.22   55,472.66

NOTICE: By federal law, as of 1/1/2013,
funds in a noninterest-bearing transaction account(including an IOLTA/IOLA)
will no longer receive unlimited deposit insurance coverage, but
will be FDIC-insured to the legal maximum of $250,000
for each ownership category. For more information, visit
http://www.fdic.gov/deposit/deposits/unlimited/expiration.html

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
Effective March 1, 2013
Debit MasterCard Cash Advance Fee,.$2.00 per transaction
++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

00A-1501323404    0

*02683973*    1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

02-27-13    03-27-13

DEMAND    1501323404    55,472.66    0.00    2,069.15    57,541.81

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $56137.05
INTEREST EARNED FOR PERIOD: $2.15
NUMBER OF DAYS IN PERIOD: 28

DEMAND    1501323404

DATE...............AMOUNT..DEPOSITS AND OTHER CREDITS
03-19              2,067.00  ACH-XXSOC SEC SSA TREAS 310
                             C0109031736013 C0109031736013
                             C0109031736013 C0109031736013
                             C0109031736013
03-27                 2.16  INTEREST PAID

AVERAGE BALANCE $56,137.05
AVERAGE COLLECTED BALANCE $56,137.05
MINIMUM BALANCE OF $55,472.66 OCCURRED ON 02-28-13
YEAR-TO-DATE INTEREST PAID $6.66

DAILY CLOSING BALANCE SUMMARY

DATE............BALANCE  DATE............BALANCE  DATE............BALANCE
07-28        55,472.66  03-19        57,539.66  03-27        57,541.81

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III _____ Deputy



DDA-1501323404   0

*02683973*   1

KENNETH C MCAFEE
BRENDA N MCAFEE
6729 MEADOWLAWN
HOUSTON TX  77023

03-27-13   04-27-13

DEMAND   1501323404   57,541.81   0.00   2,069.48   59,611.29

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: 158341.94
INTEREST EARNED FOR PERIOD: $2.48
NUMBER OF DAYS IN PERIOD: 31

DEMAND   1501323404

DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
04-16             2,067.00  ACH-XXSOC SEC SSA TREAS 310
                            COID9031736026 COID9031736026
                            COID9031736026 COID9031736026
                            COID9031736026
04-27                2.48  INTEREST PAID

AVERAGE BALANCE 158,341.94
AVERAGE COLLECTED BALANCE 158,341.94
MINIMUM BALANCE OF $57,541.81 OCCURRED ON 03-28-13
YEAR-TO-DATE INTEREST PAID $9.14

DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE  DATE............BALANCE  DATE...........BALANCE
03-28        57,541.81  04-16       59,608.81  04-27        59,611.29

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404　　0

*026B3973*　　1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

04-27-13　05-27-13

DEMAND　1501323404　59,611.29　0.00　2,069.49　61,680.78

PERSONAL STERLING ADVANTAGE ACCOUNT

　　ANNUAL PERCENTAGE YIELD EARNED: 0.05%
　　AVERAGE COLLECTED BALANCE FOR APY: $60575.89
　　INTEREST EARNED FOR PERIOD: $2.49
　　NUMBER OF DAYS IN PERIOD: 30

DEMAND　1501323404

　　DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
　　05-14　　　　2,067.00　ACH-XXSOC SEC SSA TREAS 310
　　　　　　　　　　　　　　　COID9031736026 COID9031736026
　　　　　　　　　　　　　　　COID9031736026 COID9031736026
　　　　　　　　　　　　　　　COID9031736026
　　05-27　　　　　2.49　INTEREST PAID

AVERAGE BALANCE $60,575.89
AVERAGE COLLECTED BALANCE $60,575.89
MINIMUM BALANCE OF $59,611.29  OCCURRED ON 04-28-13
YEAR-TO-DATE INTEREST PAID $11.63

　　　　　　　DAILY CLOSING BALANCE SUMMARY

DATE............BALANCE　DATE............BALANCE　DATE............BALANCE
04-28　　　59,611.29　05-14　　　61,678.29　05-27　　　61,680.78

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

00A-1501323404        0

*02683973*        1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX  77023

05-27-13   06-27-13

DEMAND  1501323404      61,680.78       0.00     1,759.59    63,440.37

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: 162247.54
INTEREST EARNED FOR PERIOD: 17.64
NUMBER OF DAYS IN PERIOD: 31

DEMAND  1501323404

DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
96-18          1,756.95   ACH-XXSOC SEC TCS TREAS 449
                          COID9062736011 COID9062736011
                          COID9062736011 COID9062736011
                          COID9062736011 COID90627360.1
06-27             2.64    INTEREST PAID

AVERAGE BALANCE 162,247.54
AVERAGE COLLECTED BALANCE 162,247.54
MINIMUM BALANCE OF 161,680.78 OCCURRED ON 05-28-13
YEAR-TO-DATE INTEREST PAID 114.27

                DAILY CLOSING BALANCE SUMMARY

DATE.........BALANCE  DATE...........BALANCE  DATE...........BALANCE
05-28    61,680.78    06-18      63,437.73    05-27      63,440.37

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

DDA-1501323404   0

*02683973*   1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

06-27-13   07-27-13

DEMAND   1501323404   63,440.37   0.00   2,069.64   65,510.01

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $64267.17
INTEREST EARNED FOR PERIOD: $2.64
NUMBER OF DAYS IN PERIOD: 30

DEMAND   1501323404

DATE............AMOUNT..DEPOSITS AND OTHER CREDITS
07-16           2,067.00  ACH-XXSOC SEC SSA TREAS 310
                          CO1D9031736013 CO1D9031736013
                          CO1D9031736013 CO1D9031736013
                          CO1D9031736013
07-27           2.64  INTEREST PAID

AVERAGE BALANCE $64,267.17
AVERAGE COLLECTED BALANCE $64,267.17
MINIMUM BALANCE OF $63,440.37 OCCURRED ON 06-28-13
YEAR-TO-DATE INTEREST PAID $16.91

DAILY CLOSING BALANCE SUMMARY

DATE............BALANCE  DATE............BALANCE  DATE............BALANCE
06-28           63,440.37  07-16           65,507.37  07-27           65,510.01

The following fees are changing as noted:
Effective July 1, 2013:
Insufficient Item              $30.00
Overdraft Item                 $30.00

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

DDA-1501323404    0

*02683973*    1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

07-27-13  08-27-13

DEMAND  1501323404    65,510.01    0.00    2,069.80    67,579.81

PERSONAL STERLING ADVANTAGE ACCOUNT

    ANNUAL PERCENTAGE YIELD EARNED: 0.05%
    AVERAGE COLLECTED BALANCE FOR APY: $66043.43
    INTEREST EARNED FOR PERIOD: $2.80
    NUMBER OF DAYS IN PERIOD: 31

DEMAND  1501323404

    DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
    08-20    2,067.00  ACH-XXSOC SEC SSA TREAS 310
                        CO1D9031736013
    08-27      2.80  INTEREST PAID

AVERAGE BALANCE $66,043.43
AVERAGE COLLECTED BALANCE $66,043.43
MINIMUM BALANCE OF $65,510.01 OCCURRED ON 07-29-13
YEAR-TO-DATE INTEREST PAID $19.71

             DAILY CLOSING BALANCE SUMMARY

DATE............BALANCE  DATE............BALANCE  DATE..........BALANCE
07-28    65,510.01  08-20    67,577.01  08-27    67,579.81

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404          0

*02680973*          1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX  77023

08-27-13    09-27-13

DEMAND   1501323404        67,579.81        0.00      2,069.90      69,649.71

PERSONAL STERLING ADVANTAGE ACCOUNT

     ANNUAL PERCENTAGE YIELD EARNED: 0.05%
     AVERAGE COLLECTED BALANCE FOR APY: $68313.26
     INTEREST EARNED FOR PERIOD: $2.90
     NUMBER OF DAYS IN PERIOD: 31

DEMAND   1501323404

     DATE...............AMOUNT..DEPOSITS AND OTHER CREDITS
     09-17           2,067.00  ACH-XXSOC SEC SSA TREAS 310
     09-27               2.90  INTEREST PAID

AVERAGE BALANCE $68,313.26
AVERAGE COLLECTED BALANCE $68,313.26
MINIMUM BALANCE OF $67,579.81  OCCURRED ON 08-28-13
YEAR-TO-DATE INTEREST PAID $22.61

          DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE   DATE...........BALANCE   DATE...........BALANCE
08-28         67,579.81   09-17         69,646.81   09-27         69,649.71

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

OOA-1501323404   0

\*026839734   2

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

08-27-13  09-27-13

DEMAND  1501323404    67,579.81      0.00    2,069.90   69,649.71

EFFECTIVE SEPTEMBER 4, 2013, OUR FUNDS AVAILABILITY POLICY HAS CHANGED.
FUNDS FROM DEPOSITS MADE AT A WOODFOREST ATM WILL BE AVAILABLE AS FOLLOWS:

CASH DEPOSITS-AVAILABLE IMMEDIATELY
CHECK DEPOSITS-AVAILABLE ON THE SAME BUSINESS DAY,
TYPICALLY WITHIN TWO HOURS, UNLESS AN EXCEPTION APPLIES.

PLEASE NOTE THAT NOT ALL WOODFOREST ATMS ACCEPT DEPOSITS.

FOR THE FULL DISCLOSURE PLEASE CONTACT YOUR LOCAL BRANCH.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Benschel III



DDA-1501323404    0

*02683973*    1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

09-27-13    10-27-13

DEMAND    1501323404    69,649.71    0.00    2,069.90    71,719.61

PERSONAL STERLING ADVANTAGE ACCOUNT

    ANNUAL PERCENTAGE YIELD EARNED: 0.05%
    AVERAGE COLLECTED BALANCE FOR APY: $70545.41
    INTEREST EARNED FOR PERIOD: $2.90
    NUMBER OF DAYS IN PERIOD: 30

DEMAND    1501323404

    DATE............AMOUNT..DEPOSITS AND OTHER CREDITS
    10-15    2,067.00   ACH-XXSOC SEC SSA TREAS 310
    10-27    2.90   INTEREST PAID

AVERAGE BALANCE $70,545.41
AVERAGE COLLECTED BALANCE $70,545.41
MINIMUM BALANCE OF $69,649.71 OCCURRED ON 09-28-13
YEAR-TO-DATE INTEREST PAID $25.51

      DAILY CLOSING BALANCE SUMMARY

DATE.......... BALANCE    DATE.......... BALANCE    DATE.......... BALANCE
09-28    69,649.71    10-15    71,716.71    10-27    71,719.61

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

COA-1501323404        0

KENNETH C MCAFEE                   *02683973*        2
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX  77023
                                  09-27-13    10-27-13

DEMAND   1501323404      69,649.71        0.00      2,069.90    71,719.61

EFFECTIVE SEPTEMBER 4, 2013, OUR FUNDS AVAILABILITY POLICY HAS CHANGED.
FUNDS FROM DEPOSITS MADE AT A WOODFOREST ATM WILL BE AVAILABLE AS FOLLOWS:

CASH DEPOSITS-AVAILABLE IMMEDIATELY
CHECK DEPOSITS-AVAILABLE ON THE SAME BUSINESS DAY,
TYPICALLY WITHIN TWO HOURS, UNLESS AN EXCEPTION APPLIES.

PLEASE NOTE THAT NOT ALL WOODFOREST ATMS ACCEPT DEPOSITS.

FOR THE FULL DISCLOSURE PLEASE CONTACT YOUR LOCAL BRANCH.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DDA-1501323404          0

*02683973*              1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX  77023

10-27-13   11-27-13

DEMAND   1501323404      71,719.61      0.00    4,608.97   76,328.58

PERSONAL STERLING ADVANTAGE ACCOUNT

    ANNUAL PERCENTAGE YIELD EARNED: 0.05%
    AVERAGE COLLECTED BALANCE FOR APY: $74,612.82
    INTEREST EARNED FOR PERIOD: $3.17
    NUMBER OF DAYS IN PERIOD: 31

DEMAND   1501323404

    DATE............AMOUNT..DEPOSITS AND OTHER CREDITS
    10-31          2,538.80  ACH-XXSOC SEC SSA TREAS 310
    11-19          2,067.00  ACH-XXSOC SEC SSA TREAS 310
    11-27              3.17  INTEREST PAID

AVERAGE BALANCE $74,612.82
AVERAGE COLLECTED BALANCE $74,612.82
MINIMUM BALANCE OF $71,719.61  OCCURRED ON 10-28-13
YEAR-TO-DATE INTEREST PAID $29.68

              DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE  DATE...........BALANCE  DATE...........BALANCE
10-28        71,719.61  10-31      74,258.41  11-19      75,325.41
11-27        76,328.58

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

DDA-1501323404    0

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

*026839/3*    2

10-27-13  11-27-13

DEMAND  1501323404    71,719.61    0.00    4,608.97    76,328.58

EFFECTIVE SEPTEMBER 4, 2013, OUR FUNDS AVAILABILITY POLICY HAS CHANGED.
FUNDS FROM DEPOSITS MADE AT A WOODFOREST ATM WILL BE AVAILABLE AS FOLLOWS:

CASH DEPOSITS-AVAILABLE IMMEDIATELY
CHECK DEPOSITS-AVAILABLE ON THE SAME BUSINESS DAY.
TYPICALLY WITHIN TWO HOURS, UNLESS AN EXCEPTION APPLIES.

PLEASE NOTE THAT NOT ALL WOODFOREST ATMS ACCEPT DEPOSITS.

FOR THE FULL DISCLOSURE PLEASE CONTACT YOUR LOCAL BRANCH.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III      Deputy



DDA-1501323404    0

KENYETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

*02603973*    1

11-27-13    12-27-13

DEMAND    1501323404    76,328.58    0.00    3.14    76,331.72

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $76328.58
INTEREST EARNED FOR PERIOD: $3.14
NUMBER OF DAYS IN PERIOD: 30

DEMAND    1501323404

DATE.............AMOUNT..DEPOSITS AND OTHER CREDITS
12-27           3.14    INTEREST PAID

AVERAGE BALANCE $76,328.58
AVERAGE COLLECTED BALANCE $76,328.58
MINIMUM BALANCE OF $76,328.58  OCCURRED ON 11-28-13
YEAR-TO-DATE INTEREST PAID $31.82

DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE  DATE.... ........BALANCE  DATE............BALANCE
11-28          76,328.58  12-27          76,331.72

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

DOA-1501323404    0

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX  77023

*02683973*    1

12-27-13   01-27-14

DEMAND   1501323404        76,331.72        0 00        3.24      76,334.96

PERSONAL STERLING ADVANTAGE ACCOUNT

ANNUAL PERCENTAGE YIELD EARNED: 0.05%
AVERAGE COLLECTED BALANCE FOR APY: $76,331.72
INTEREST EARNED FOR PERIOD: $3.24
NUMBER OF DAYS IN PERIOD: 31

DEMAND   1501323404

DATE...............AMOUNT..DEPOSITS AND OTHER CREDITS
01-27              3.24  INTEREST PAID

AVERAGE BALANCE $76,331.72
AVERAGE COLLECTED BALANCE $76,331.72
MINIMUM BALANCE OF $76,331.72  OCCURRED ON 12-28-13
YEAR-TO-DATE INTEREST PAID $3.24

DAILY CLOSING BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 12-28 | 76,331.72 | 01-27 | 76,334.96 | | |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Ganschel III

DDA-1501323404    0

*02683973*    1

KENNETH C MCAFEE
BRENDA H MCAFEE
6729 MEADOWLAWN
HOUSTON TX 77023

01-27-14  02-27-14

DEMAND  1501323404    76,334.96    0.00    3.24    76,338.20

PERSONAL STERLING ADVANTAGE ACCOUNT

    ANNUAL PERCENTAGE YIELD EARNED: 0.05%
    AVERAGE COLLECTED BALANCE FOR APY: $76334.96
    INTEREST EARNED FOR PERIOD: $3.24
    NUMBER OF DAYS IN PERIOD: 31

DEMAND  1501323404

    DATE..............AMOUNT..DEPOSITS AND OTHER CREDITS
    02-27          3.24  INTEREST PAID

AVERAGE BALANCE $76,334.96
AVERAGE COLLECTED BALANCE $76,334.96
MINIMUM BALANCE OF $76,334.96 OCCURRED ON 01-28-14
YEAR-TO-DATE INTEREST PAID $6.48

                DAILY CLOSING BALANCE SUMMARY

DATE...........BALANCE  DATE...........BALANCE  DATE...........BALANCE
01-28      76,334.96  02-27      76,338.20

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

**FAUST OPPENHEIM LLP**
ATTORNEYS AT LAW
485 MADISON AVENUE
NEW YORK, NEW YORK 10022
WEBSITE: www.frolaw.com

WRITER'S DIRECT E-MAIL
matthewlipman@frolaw.com

TELEPHONE (212) 751-7700
FACSIMILE (212) 371-8410

October 23, 2014

*VIA CERTIFIED MAIL/RRR*

Stan Stanart, County Clerk
Harris County, Texas
Probate Courts Department
P.O. Box 1525
Houston, TX 77251-1525

Re:  Writ of Garnishment – After Judgment
Docket No. 396935-401; Estate of Janet F. McAfee, Deceased

To whom it may concern:

We are counsel for The GMS Group, LLC ("GMS"), Garnishee in the above referenced matter. GMS received the Writ of Garnishment (Exhibit 1) with an order to appear at the Harris County Probate Court. According to the clerk with whom I spoke to today, a hearing with regard to the Writ of Garnishment has yet to be scheduled in this matter.

GMS is headquartered in Livingston, New Jersey and our firm is located in New York, New York. In lieu of appearing at the hearing in Houston, we request that the Court accept the attached list (Exhibit 2) of effects (assets) which belong or may belong to the Defendant, Kenneth Cooper McAfee, held at GMS. Based upon a diligent review of GMS records, these are the only accounts that GMS is aware of. There are other accounts which belong only to the deceased.

Until a determination is made by the Court as to the ownership of these assets, GMS has placed a freeze on these accounts. Upon receipt of a determination by the Court, GMS will release the assets as so Ordered by the Court.



**EXHIBIT**
*C*

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Sonechal III

Stan Stanart, County Clerk
October 23, 2014
Page 2

We appreciate your assistance and please do not hesitate to contact us with any questions.

Very truly yours,

FAUST OPPENHEIM LLP

By:_____
Matthew E. Lipman

cc: Dean M. Blumrosen, Esq.
    Charles R. Storer, Esq.
    Timothy Donohue, EVP, The GMS Group, LLC

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



11202014::1150::P0303

# EXHIBIT 1

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III





**STAN STANART**
COUNTY CLERK, HARRIS COUNTY, TEXAS
PROBATE COURTS DEPARTMENT

PROBATE COURT NO. One (1)

WRIT OF GARNISHMENT – AFTER JUDGMENT

| THE STATE OF TEXAS | ( | DOCKET NO: 396935-401 | RECEIPT NO. CERTIFIED MAIL |
| COUNTY OF HARRIS | ( | ESTATE OF: JANET F. MCAFEE, DECEASED | |

TO: THE 'GMS GROUP, L.L.C., GARNISHEE, BY AND THROUGH ITS REGISTERED AGENT, CORPORATION SERVICE COMPANY, D/B/A CSC-LAWYERS INCO, 211 E. 7TH STREET, SUITE 620, AUSTIN, TEXAS 78701.

Greetings:

Whereas, in the Probate Court No. One (1), of Harris County, Texas, in a certain cause wherein ROSEMARY AND JAKE FOLTYN, Plaintiffs, Jointly and severally, KENNETH COOPER MCAFEE, Defendant; the Plaintiffs on March 21, 2014, secured a judgment against said defendant in the amount of TWO MILLION DOLLARS, ($2,000,000.00), plus interest and costs of suit, has applied for a Writ of Garnishment against you, the said Garnishee;

Therefore, you are hereby commanded to be and appear before said court at Houston, in said County at 10:00 o'clock a.m., on the Monday next following expiration of twenty days from the date of service hereof, then and there to answer upon oath what, if anything, you are indebted to the said ROSEMARY and JAKE FOLTYN , and were, when this writ was served upon you, and what effects, if any, of said KENNETH COOPER MCAFEE you have in your possession, and had when this writ was served on you, and what other persons, if any, within your knowledge, are indebted to said Defendant, or having effects belonging to Defendant in their possession, when this Writ was served.

TO: KENNETH COOPER MCAFEE, DEFENDANT:

You are hereby notified that certain properties alleged to be owned by you have been garnished. If you claim any rights in such property, you are advised:

"You have the right to regain possession of the property by filing a Replevy Bond. You have a right to seek to regain possession of the property by filing with the court a Motion to dissolve this Writ"

P.O. Box 1525 • Houston, TX 77251-1525 • (713) 755-6425
www.cclerk.hctx.net

Form No. J-03-175 (Rev. 10/05/2011)

Page 1 of 1

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



OFFICER'S RETURN

THE STATE OF TEXAS §
COUNTY OF _____ §

PERSONALLY APPEARED before me, the undersigned authority, _____

_____ who being by me duly sworn, deposes and says that in
(Name of Serving Officer)

the County of _____, State of Texas, on _____ day of _____, _____,

came to hand a true copy of the Citation, together with the _____ was
delivered to the person directed to be served at the following time(s) and place(s), to-wit

| NAME | DATE | | | TIME | | PLACE |
|---|---|---|---|---|---|---|
| | Month | Day | Year | Hour | Min. | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

_____ Sheriff
Constable _____ County, Texas

Sworn to and subscribed before me, this _____ day of _____

(SEAL)

_____
(Give name and official capacity such as Notary Public)

Fees for Serving: $ _____

OFFICER'S RETURN

Came to hand on _____, at _____ o'clock _____ M. and

executed on _____, at _____ o'clock _____ M. by

causing a true copy hereof to be published one time at least 10 days before the return day hereof in the _____

_____ a newspaper published at _____ in Harris
County,
Texas. This return is accompanied by the affidavit of the publisher of said newspaper as required by law.

_____
Sheriff-Constable, Harris County, Texas

Fee: $ _____ By _____ Deputy

OFFICER'S RETURN

Came to hand on _____, at _____ o'clock _____ M. and

executed on _____, at _____ o'clock _____ M. by
posting a true copy of the above Citation for ten days, exclusive of the day of posting, before the return day thereof, at the Courthouse door,
of County of Harris, State of Texas, to-wit:

_____ date _____

_____
Sheriff-Constable, Harris County, Texas

Fee: $ _____ By _____ Deputy

Form No. I-72-79 (Rev. 09/21/2011)

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



Herein fail not but make due answer as the law directs.

Issued and given under my hand of said court, at Houston, Texas, this 13th day of October, 2014.

(SEAL)

STAN STANART, County Clerk
Probate Court No. One (1)
201 Caroline, Room 800
Harris County, Texas

Charlene G. Rosser
Deputy County Clerk

ATTORNEY:   DEAN M. BLUMROSEN
4615 SOUTHWEST FREEWAY, SUITE 850
HOUSTON, TEXAS 77027
713-524-2225

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



**OFFICER'S RETURN**

THE STATE OF TEXAS
COUNTY OF _____

PERSONALLY APPEARED before me, the undersigned authority, _____

_____ who being by me duly sworn, deposes and says that he
(Name of Serving Officer)

the County of _____, State of Texas, on day of _____,

came to hand a true copy of the Citation, together with the _____, was
delivered to the person directed to be served at the following time(s) and place(s), to-wit:

| NAME | DATE | | | TIME | | PLACE |
|------|------|------|------|------|------|-------|
| | Month | Day | Year | Hour | Min. | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

                                                    Sheriff
Constable _____ _____ County, Texas

Sworn to and subscribed before me, this _____ day of _____

(SEAL)

Fees for Serving: $_____

                    (One name and official capacity such as Notary Public)
**OFFICER'S RETURN**

Came to hand on _____, at _____ o'clock _____M. and

executed on _____, at _____ o'clock _____M. by

posting a true copy hereof to be published one time at least 10 days before the return day hereof in the _____

_____, a newspaper published at _____ in Harris

County,
Texas. This return is accompanied by the affidavit of the publisher of said newspaper as required by law.

Sheriff-Constable, Harris County, Texas

Fees $_____                        By _____ Deputy
                    **OFFICER'S RETURN**

Came to hand on _____, at _____ o'clock _____M. and

executed on _____, at _____ o'clock _____M. by
posting a true copy of the above Citation for ten days, exclusive of the day of posting, before the return day thereof, at the Courthouse door,
of County of Harris, State of Texas, to-wit:

_____ thru _____

Sheriff-Constable, Harris County, Texas

Fees $_____                        By _____ Deputy

Form No. J-03-19 (Rev. 09/16/2015)

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



DM

JANET F. MCAFEE, DECEASED  NO. _____ 396935-401

FILED
10/9/2014 10:18:21 AM
Stan Stanart
County Clerk
Harris County

ROSEMARY FOLTYN, Individually§
AND JAKE FOLTYN, Individually §
Plaintiffs

VS.

THE GMS GROUP, L.L.C. AND
WOODFOREST NATIONAL
BANK
Defendants

IN THE PROBATE COURT
ONE

OF

HARRIS COUNTY, TEXAS

1 PER WRIT BY CERTIFIED MAILED
1 PER WRIT to by ple
10-9-2014

## APPLICATION FOR WRIT OF GARNISHMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Rosemary and Jake Foltyn (hereinafter referred to as "Garnishors") and makes this Application for Writ of Garnishment against The GMS Group, L.L.C., and Woodforest National Bank, (hereinafter referred to as "Garnishees") and, in support hereof, Garnishors would show the Court the following:

I.

1. Plaintiffs/Garnishors are Rosemary and Jake Foltyn ("Garnishors").

Application for Writ of Garnishment                    Page 1

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling Q. Senechal III



2. Defendant/Garnishee, The GMS Group, L.L.C., is a limited liability company doing business in Texas and may be served by serving its registered agent, via certified mail, return receipt requested, Corporation Service Company, D/B/A CSC –Lawyers Inco, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3. Defendant/Garnishee, Woodforest National Bank is a privately held bank doing business in Texas and may be served by personally serving its registered agent, James D. Dreibelbis, 25231 Grogan's Mill Road, Suite 100, The Woodlands, Texas 77380.

4. Venue is appropriate in Harris County, Texas because the Judgment was rendered in Harris County, Texas.

II.

5. On or about March 21, 2014, this Court, in case number 396,935-401 styled *Rosemary Foltyn, Individually and as Independent Administratrix of the Estate of Janet Foltyn McAfee, Deceased; and Jake Foltyn, Individually v. Kenneth Cooper McAfee* entered a Judgment against Defendant, *Kenneth Cooper McAfee* in the amount of $2,000,000.00, plus pre and post judgment interest, plus costs of Court ("Judgment"). A true and correct copy of the

---

Application for Writ of Garnishment                                    Page 2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



Sterling G. Senechal III
_____ Deputy



Judgment is attached hereto as Exhibit "A" and incorporated herein by reference for all purposes. This Judgment is just, due, unpaid, and remains unsatisfied.

III.

6. To the best of Garnishors' knowledge, the debtor, *Kenneth Cooper McAfee* does not possess property in Texas subject to execution that is sufficient to satisfy the above-described claim. Plaintiffs served post-judgment discovery on Mr. McAfee on April 21, 2014. Defendant did not produce any documents establishing his ownership of property in Texas sufficient to satisfy the judgment against him.

IV.

7. Garnishors have reason to believe, and do believe, that Garnishees, The GMS Group, L.L.C., and Woodforest National Bank, may be indebted to *Kenneth Cooper McAfee* by maintaining or holding one or more bank accounts. Garnishors believe *Kenneth Cooper McAfee*'s social security number to be 454-82-XXXX. Garnishors are not seeking to injure or harass the Garnishees or the Judgment Debtor by sending out a Writ of Garnishment. Rather, Garnishors are attempting to collect on a Judgment. Garnishors request that if Garnishees, The GMS Group, L.L.C., and Woodforest National

Application for Writ of Garnishment          Page 3

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



Bank are indebted to *Kenneth Cooper McAfee* by any account or otherwise, that Garnishees hold and allow Garnishors to garnish said belongings. Garnishors also request that if Garnishees hold possessions in a safety deposit box at any branch that Garnishees hold and allow Garnishors to garnish said belongings as permitted by law.

V.

8. This Application is supported by the Affidavit of Dean M. Blumrosen attached hereto as Exhibit "B" and incorporated herein by reference for all purposes.

WHEREFORE, PREMISES CONSIDERED, Rosemary and Jake Foltyn, request that a Writ of Garnishment be issued as above described and that Garnishors have Judgment to partially satisfy the claim above-mentioned as provided by law, together with all costs of Court incurred in this proceedings, and other such relief to which Garnishors may be justly entitled.

Application for Writ of Garnishment                                      Page 4

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



Respectfully submitted,

By: _____
DEAN M. BLUMROSEN, ESQ.
State Bar No. 02517900
4615 Southwest Freeway, Suite 850
Houston, Texas 77027
713.524.2225- Telephone
713.524.5570- Facsimile
Dblumrosenlaw@aol.com
ATTORNEY FOR PLAINTIFFS

Application for Writ of Garnishment          Page 5

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

112620141150:P0313

# EXHIBIT A

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

NO. 396,935-401

| | | |
|---|---|---|
| ROSEMARY FOLTYN, Individually And as Independent Administratrix of the Estate of Janet Foltyn McAfee, Deceased; AND JAKE FOLTYN, Individually | § § § § § | IN THE PROBATE COURT ONE |
| *Plaintiffs* | § § § | |
| | § § | OF |
| VS. | § § | |
| KENNETH COOPER MCAFEE | § § § | |
| *Defendant* | § | HARRIS COUNTY, TEXAS |

## ORDER

On this day the Court considered the Plaintiffs' Second Amended Motion for Summary Judgment on Plaintiffs wrongful death claim. The Court, after considering the pleadings, the motion, the response, if any, and the arguments of counsel, is of the opinion that the Plaintiffs' Second Amended Motion for Summary Judgment is hereby GRANTED. Defendant, Kenneth Cooper McAfee is liable to the individual Plaintiffs for causing the death of their daughter, Janet McAfee.

ORDERED, ADJUDGED and DECREED that Plaintiff, Rosemary Foltyn, Individually, recover from Defendant, Kenneth Cooper McAfee, after all offsets and credits, judgment in the amount of $1,000,000.00, for her

1

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



emotional pain and suffering due to the death of her daughter, Janet McAfee. It is further, ORDERED, ADJUDGED and DECREED that Plaintiff, Jake Foltyn, Individually, recover from Defendant, Kenneth Cooper McAfee, after all offsets and credits, judgment in the amount of $1,000,000.00, for his emotional pain and suffering due to the death of his daughter, Janet McAfee. This judgment shall accrue together with interest thereon at the rate of 5% per annum from the date this suit was filed on February 23, 2011, until the date of judgment, post-judgment interest at the rate of 5% per annum, and for all costs of Court expended in this cause, for which let execution issue. This Judgment finally disposes of all parties and is appealable.

SIGNED this 21ˢᵗ day of _March_, 2014.

JUDGE LOYD WRIGHT

2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



# EXHIBIT B

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



## AFFIDAVIT OF DEAN M. BLUMROSEN

STATE OF TEXAS

COUNTY OF HARRIS

BEFORE ME, the undersigned official, on this day, personally appeared before me, Dean M. Blumrosen, who after being duly sworn, did depose and state as follows:

1. "My name is Dean M. Blumrosen. I am over 21 years of age, of sound mind, have never been convinced of a felony and am capable of making this affidavit.

2. "I am an attorney for Rosemary and Jake Foltyn, Garnishors in this Garnishment.

3. "I have personal knowledge of the facts as stated in Garnishors' Application for Writ of Garnishment and they are true and correct."



_____
DEAN M. BLUMROSEN

Subscribed and sworn to before me on this 8th day of October, 2014

_____
Notary Public, in and For
The State of Texas

MICHELLE GABRIELA FORSTEN
My Commission Expires
October 1, 2018

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
~~Sterling C. Ceneschel III~~




STAN STANART
COUNTY CLERK, HARRIS COUNTY
POST OFFICE BOX 1525
HOUSTON, TEXAS 77251-1525


CERTIFIED MAIL

7007 2560 0001 4466 5946





TO:                                    RETURN POSTAGE GUARANTEED

The GMS Group, LLC
c/o Corporation Service Company
d/b/a CSC Lawyers Inco
211 E. 7th St., Suite 620
Austin, Texas 78701

**Confidential information may have been redacted from the document in compliance with the Public Information Act.**

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



# EXHIBIT 2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



Sterling G. Senechal III                    Deputy

| Short Name | Account # | SSN/TIN | Title | Status | Acct. Open Date | Account Type | Net Worth |
|---|---|---|---|---|---|---|---|
| MCAFEE | 5SL660606 | ...4352 | JERRY KORN TRUSTEE SALARY SAVINGS PLAN FBD KENNETH MCAFEE 5 REGENT ST STE 513 07039-1692 THE GMS GROUP PLAN FBD KENNETH MCAFEE LIVINGSTON NJ | Open | 04/29/1998 | DLJ QUALIFIED RETIREMENT PLAN | $228,228.47 |
| MCAFEE-KEN | 5SH056008 | ...4352 | KENNETH C MCAFEE JT TEN PO BOX 66352 HOUSTON TX 77266-6352 JANET F MCAFEE | Open | 04/29/1998 | JOINT | $6,694.39 |
| MCAFEE | 5SH004628 | ...4352 | MCAFEE INHERITANCE ACCOUNT TOD DTD 6/20/01 6650 FAIRFIELD ST HOUSTON TX 77023-4002 | Open | 09/27/1999 | INDIVIDUAL | $1,661.15 |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



Summary Annual Report

for

THE GMS GROUP LLC SALARY SAVINGS PLAN

This is a summary of the annual report for the THE GMS GROUP LLC SALARY SAVINGS PLAN, (Employer Identification No. 22-3505264, Plan No. 051) for the period January 1, 2013 to December 31, 2013. The annual report has been filed with the Employee Benefits Security Administration, as required under the Employee Retirement Income Security Act of 1974 (ERISA).

BASIC FINANCIAL STATEMENT

Benefits under the plan are provided by a trust (benefits are provided in whole from trust funds). Plan expenses were $948,504. These expenses included $948,504 in benefits paid to participants and beneficiaries. A total of 198 persons were participants in or beneficiaries of the plan at the end of the plan year, although not all of these persons had yet earned the right to receive benefits.

The value of plan assets, after subtracting liabilities of the plan, was $23,353,213 as of December 31, 2013 compared to $20,380,393 as of January 1, 2013. During the plan year the plan experienced an increase in its net assets of $2,972,820. This increase includes unrealized appreciation or depreciation in the value of plan assets; that is, the difference between the value of the plan's assets at the end of the year and the value of the assets at the beginning of the year, or the cost of assets acquired during the year. The plan had total income of $3,921,324, including employer contributions of $69,800, employee contributions of $1,263,191, gains of $213,476 from the sale of assets and earnings from investments of $2,374,857.

YOUR RIGHTS TO ADDITIONAL INFORMATION

You have the right to receive a copy of the full annual report, or any part thereof, on request. The items listed below are included in that report:

1. An accountant's report; and
2. Assets held for investment.



EXHIBIT
D

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

To obtain a copy of the full annual report, or any part
thereof, write or call the office of

    Mr. Jerry Korn
    5N Regent Street, Suite 513
    Livingston, NJ  07039

You also have the right to receive from the plan
administrator, on request and at no charge, a statement of the
assets and liabilities of the plan and accompanying notes, or
a statement of income and expenses of the plan and
accompanying notes, or both.  If you request a copy of the
full annual report from the plan administrator, these two
statements and accompanying notes will be included as part of
that report.  These portions of the report are furnished
without charge.

You also have the legally protected right to examine the
annual report at the main office of the plan:

    5N Regent Street, Suite 513
    Livingston, NJ  07039

and at the U.S. Department of Labor in Washington, D.C., or to
obtain a copy from the U.S. Department of Labor upon payment
of copying costs.  Requests to the Department should be
addressed to:  U.S. Department of Labor, Employee Benefits
Security Administration, Public Disclosure Room, 200
Constitution Avenue, NW, Suite N-1513, Washington, D.C.
20210.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

The GMB Group Salary Savings Plan
KENNETH MCAFEE
For the Twelve Months Ending December 31, 2013

KENNETH MCAFEE

## ASSETS

| | | | |
|---|---|---|---|
| 1035 | FEDERATED CAPITAL RESERVES | $204,166.44 | |
| | TOTAL CASH AND MONEY MARKET FUNDS | | 204,166.44 |
| 1140 | PUTNAM EQUITY INCOME FUND | 14,893.03 | |
| | TOTAL MUTUAL FUNDS | | 14,893.03 |
| 19545 | PORTLAND GEN ELEC CO | 942.32 | |
| 20340 | GENERAL MOTORS CO | 4,251.35 | |
| 20390 | GENERAL MOTORS CO WTS EXP 7/10/16 | 7,958.30 | |
| 20391 | GENERAL MOTORS CO WTS EXP 7/10/19 | 2,196.40 | |
| 20563 | MOTORS LIQ CO GUC TR | 803.75 | |
| | TOTAL STOCKS | | 11,192.12 |
| | TOTAL ASSETS | | 250,251.59 |

LIABILITIES AND PARTICIPANTS ACCOUNT BALANCE

### PARTICIPANTS ACCOUNT BALANCE

| | | |
|---|---|---|
| 2730 | PARTICIPANT ACCOUNT BALANCE-ER | 222,570.54 |
| 2750 | YTD NET INCREASE IN ACCOUNT | 7,681.05 |
| | TOTAL PARTICIPANTS ACCOUNT BALANCES | 230,251.59 |
| | LIABILITIES AND PARTICIPANTS ACCOUNT BALANCE | 230,251.59 |

## ACCOUNT CHANGE WAS THE RESULT OF THE FOLLOWING:

| | | |
|---|---|---|
| 3010 | UNREALIZED ADJUSTMENT TO MKT | 7,310.65 |
| 3070 | DIVIDEND INCOME | 370.40 |
| | NET ACCOUNT CHANGE | 7,681.05 |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



SUMMARY PLAN DESCRIPTION
FOR
THE GMS GROUP, L.L.C. SALARY SAVINGS PLAN

December, 2010

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| 1. | PLAN PROFILE | 2 |
| 2. | TRUST AND TRUSTEES | 2 |
| 3. | ADMINISTRATION OF THE PLAN | 2 |
| 4. | ELIGIBILITY FOR PARTICIPATION | 2 |
| 5. | SERVICE WITH THE COMPANY | 3 |
| 6. | CONTRIBUTIONS | 3 |
| 7. | WITHDRAWALS | 5 |
| 8. | RETIREMENT BENEFITS | 6 |
| 9. | DEATH BENEFITS | 7 |
| 10. | DISABILITY BENEFITS | 7 |
| 11. | DEFERRED RETIREMENT | 7 |
| 12. | TERMINATION OF EMPLOYMENT | 7 |
| 13. | TERMINATION AND AMENDMENT OF PLAN | 7 |
| 14. | INFORMATION ABOUT TEFRA | 7 |
| 15. | LOANS TO PARTICIPANTS | 8 |
| 16. | ROLLOVERS OR TRANSFERS | 8 |
| 17. | PARTICIPANT'S MANAGEMENT ACCOUNTS | 9 |
| 18. | DOMESTIC RELATIONS ORDERS | 9 |
| 19. | CLAIMS PROCEDURES | 9 |
| 20. | PARTICIPANTS' RIGHTS | 10 |
| 21. | PLAN TERMINATION INSURANCE | 11 |
| 22. | MILITARY SERVICE | 11 |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy
Sterling G. Senechal III

## INTRODUCTION

A 401(k) Savings Plan ("Plan") was established for eligible employees effective January 1, 1984. It has been amended and restated to comply with the final provisions and effective dates of the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA") and the provisions of the Job Creation and Worker Assistance Act of 2002 ("JCWAA").

This Summary furnishes you with a description of the Plan and the benefits provided thereunder. The Plan represents a substantial and important financial program. Therefore, you are urged to read this Summary carefully and to keep it for future reference.

The continuation of this Plan is based upon the condition that the Plan is approved and qualified under the Internal Revenue Code ("Code") and regulations thereunder, so as to permit contributions made under the Plan to be deductible for Federal income tax purposes.

THIS SUMMARY OUTLINES THE WORKINGS OF THE PLAN AND IS NOT INTENDED TO RESTATE THE TERMS OF THE PLAN. THE RIGHTS OF PARTICIPANTS UNDER THE PLAN WILL BE DETERMINED SOLELY BY THE PROVISIONS OF THE PLAN DOCUMENT. IF THERE IS A CONFLICT BETWEEN THIS SUMMARY AND THE PLAN, THEN THE TERMS OF THE PLAN WILL GOVERN.

A copy of the Plan document, which legally governs all Plan operations, is on file at the Company. The Plan may be read during normal working hours by contacting the Human Resources Department at the Company's Livingston office.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



## 1. PLAN PROFILE

NAME OF PLAN: THE GMS GROUP, L.L.C. SALARY SAVINGS PLAN

ADOPTING EMPLOYER: THE GMS GROUP, L.L.C.

EMPLOYER I.D. NO.: 77-0606720

PLAN SERIAL NO.: 001

PLAN ADMINISTRATOR: THE GMS GROUP, L.L.C.
5 North Regent Street, Suite 513
Livingston, NJ 07039
973-535-5000

ANNIVERSARY DATE: December 31st

PLAN YEAR: For purposes of maintaining the Plan's financial and other records, the Plan Year is a 12-month period, ending on the above Anniversary Date.

## 2. TRUST AND TRUSTEES

A Trust has been established to receive contributions made under the Plan. At the time this Summary was prepared, the following individuals were serving as the Trustees of the Trust:

| NAME | BUSINESS ADDRESS |
|------|-------------------|
| JERRY KORN | 5 North Regent Street, Suite 513 |
| TIMOTHY J. DONOHUE | Livingston, NJ 07039 |

The Trustees will hold the assets of the Plan in the Trust for the exclusive benefit of the Participants.

## 3. ADMINISTRATION OF THE PLAN

The Plan Administrator will administer the Plan and will be responsible for keeping the records of the Plan and filing all necessary government forms. The Trustees and the Plan Administrator are designated as agents for service of legal process at the addresses indicated above.

## 4. ELIGIBILITY FOR PARTICIPATION

If you are not currently participating in the Plan, if you have attained age twenty-one (21) and you are not a union Employee of the Company, a leased Employee of the Company or a non-resident alien, you will be eligible to become a Participant on the Entry Date (the first day of January, April, July and October of each year) following the date you complete six (6) months of continuous service with the Company.

2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



## 5. SERVICE WITH THE COMPANY

Generally, a Year of Service means a twelve (12) month period in which you have completed one thousand (1,000) hours of service. An hour of service shall mean each hour for which an employee is directly or indirectly paid, or entitled to payment, for the performance of duties and for reasons other than for the performance of duties. For example, the term hour of service will include regular time, overtime, vacations, holidays, sickness, disability, lay-off, back pay and similar pay periods.

For purposes of an Employee's eligibility to commence participation in the Plan, six (6) months of continuous service with the Company shall be credited from your date of hire by the Company.

## 6. CONTRIBUTIONS

### (a) EMPLOYEE DEFERRALS

When you become a Participant in the Plan, you must also authorize the amount of your salary you wish to defer as a contribution to the Plan. These contributions are whatever portion of your compensation you choose to defer up to a maximum of fifty (50%) percent of your Compensation [but in no event shall your 401(k) salary deferral contribution in a calendar year exceed Sixteen Thousand Five Hundred ($16,500) Dollars for 2010 and 2011]. The Company, at its discretion, may impose a lower maximum percentage of Compensation that you may be permitted to contribute to the Plan in any year. The Company will discontinue your deferrals during each Plan Year once you have deferred a maximum of Sixteen Thousand Five Hundred [$16,500] Dollars for 2010 and 2011. Any amounts in excess of these limits will be returned to you no later than April 15th of the following year and will be considered as part of your taxable income for the year in which the deferral was made. It should be noted that these limitations are subject to future cost-of-living adjustments by the Department of Treasury.

If you are age fifty (50) or older or shall attain the age of fifty (50) before the last day of the Plan Year, you may be entitled to make additional 401(k) salary deferral contributions to the Plan over and above either the percentage or the dollar limits mentioned above. If you will or have attained the age of fifty (50) before the last day of the Plan Year, you are eligible to make 401(k) salary deferral "catch-up contributions" to the Plan in the amount of Five Thousand Five Hundred ($5,500) Dollars for the 2010 and 2011 calendar years. These limitations are subject to future cost-of-living adjustments by the Department of Treasury.

If you are eligible and are interested in making 401(k) salary deferral catch-up contributions, please contact the Plan Administrator.

Your 401(k) salary deferral contributions to the Plan will be withheld from the compensation otherwise payable to you by the Company. You may change the amount to be deferred by filing a special withholding change form with the Plan Administrator ten (10) days or such other time period declared by the Plan Administrator, before any withholding change date (the first day of January, April, July and October of each year).

You may suspend payroll withholding authorization by filing a waiver with the Plan Administrator at least ten (10) days or such other time period declared by the Plan Administrator, before the first day of the payroll period for which the suspension of 401(k) salary deferral contributions is to become effective. If you suspend withholding authorization, you may elect to resume 401(k) salary deferral contributions at any Entry Date (the first day of January, April, July and October of each year), by notifying the Plan Administrator in writing at least ten (10) days or such other time period declared by the Plan Administrator, prior to the next Entry Date for which the election to resume salary deferral contributions is to be effective.

3

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



In accordance with the Department of Labor's requirements, 401(k) salary deferral contributions made by you will be forwarded to the Trustees for investment as promptly as possible after they have been withheld and credited to your salary deferral account under the Plan.

The Code places a limit on the amount of 401(k) salary deferral contributions which may be made in any one Plan Year by highly compensated participants. If you are affected, you will be advised of the limit in effect for each Plan Year and any amounts contributed to your salary deferral account will be adjusted accordingly. Any amounts deferred in excess of the established limits will be returned to you within two and one-half (2½) months after the end of the Plan Year and will be considered taxable income for the year in which the deferral was made. If you have attained the age of fifty (50) and have not made 401(k) catch-up contributions to the Plan, you will be eligible to have the excess deferrals reclassified as 401(k) catch-up contributions so that they may remain in the Plan.

You will be considered highly compensated if at any time during the Plan Year or the preceding Plan Year you are:

- an Employee who during the Plan Year or preceding Plan Year owned more than five (5%) percent of the Company, or possessed more than five (5%) percent of the total voting power of the Company;

- an Employee who during the preceding Plan Year had annual Compensation from the Company on a calendar year basis in excess of One Hundred and Ten Thousand ($110,000) Dollars for Compensation earned in 2009, 2010 and in 2011 for the purpose of performing the discrimination tests as set forth under Sections 401(k) and 401(m) of the Code only, was among the top paid twenty (20%) percent of all employees.

*This amount may be adjusted for future cost-of-living increases mandated by the Department of Treasury.

(b) **EMPLOYER CONTRIBUTIONS**

(i) *Matching Company Contributions* - If you are a salaried employee (as defined below) and you are employed on the last day of the Plan Year, the Company may elect to make a matching contribution to the Plan on your behalf. Matching Company Contribution shall be calculated separately for each payroll period during the Plan Year and shall be equal to up to fifty (50%) percent of the first ten (10%) percent of your compensation contributed to the Plan as 401(k) salary deferral contributions.

(ii) *Discretionary Company Contributions* - In addition, the Company may make additional discretionary profit sharing contributions to the Plan based on the Company's performance during that year. These additional discretionary company contributions, if any, shall be allocated based upon the proportion that your eligible compensation bears to the eligible compensation of all of the Plan's Participants.

You must be employed on the last day of the Plan Year and have completed a Year of Service during the Plan Year to be entitled to share in any Company discretionary profit sharing contribution for that year. In addition, if you terminate your employment during the Plan Year due to attainment of your normal retirement age, death or disability, you will share in the contribution for that year regardless of your date of termination.

4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



For purposes of this Plan "salaried employee" shall mean any non-highly compensated employee (See definition of highly compensated employee in Section 6a) whose Compensation from the Company is salary based, and commission, override or other payments received by the employee which is based on production of income for the Company, does not place the employee's total compensation above the non-highly compensated employee level.

The maximum amount of compensation that may be taken into account in determining and/or allocating Company contributions to the Plan shall be Two Hundred and Forty-Five Thousand ($245,000) Dollars for the 2010 Plan Year and may be adjusted by the Department of Treasury for cost-of-living increases). For the purpose of calculating an Employee's 401(k) Salary Deferral Contributions to the Plan, for allocating Employer contributions to the Plan and for performing the discrimination tests as set forth under Sections 401(k) and 401(m) of the Code, but not for, if applicable, calculating top-heavy minimum contributions to the Plan, compensation shall be limited to compensation earned during the period within the Plan Year in which you are a Participant in the Plan and/or eligible to make 401(k) Salary Deferral Contributions to the Plan.

### 7. WITHDRAWALS

#### (a) HARDSHIP DISTRIBUTIONS

If you have a Hardship and are in need of funds to meet an immediate and heavy financial need such as tuition for post-secondary education for a dependent, nonreimbursed medical expenses, purchase of a primary residence, burial or funeral expenses for your spouse, child or dependent, amounts necessary to prevent eviction from your principal residence, or amounts to cover expenses to repair damage to your principal residence which expenses would qualify for a casualty loss deduction under Section 165 of the Code (determined without regard to whether the loss exceeds ten (10%) percent of your adjusted gross income); you may request in writing to the Plan Administrator approval of a Hardship distribution from the Plan in an amount not in excess of your 401(k) salary deferral contributions to the Plan. Earnings on your 401(k) salary deferral contribution may not be distribution from the Plan as a Hardship distribution.

In order to qualify for a Hardship distribution, you must represent to the Plan Administrator that your immediate heavy financial need cannot be relieved through liquidation of your personal assets, suspending 401(k) salary deferral contributions, and personal loans. It should be noted that upon receipt of such a Hardship distribution, the safe harbor rules of the Treasury Regulations under Section 401(k) of the Code require that you be suspended from making 401(k) salary deferral contributions to the Plan for a period of six (6) months. Thereafter, you may re-enter the Plan on the first Entry Date (the first day of January, April, July and October of each year) after the mandatory six (6) month suspension.

#### (b) AGE 59½ DISTRIBUTIONS

If you have attained the age of fifty-nine and one-half (59½), you may request in writing that the Plan Administrator approve the withdrawal from the Plan of an amount not in excess of your 401(k) salary deferral account in the Plan (your 401(k) salary deferral contribution to the Plan and the earnings thereon).

#### (c) WITHDRAWALS AFTER NORMAL RETIREMENT AGE

At the discretion of the Plan Administrator, if you have attained your Normal Retirement Age and are still employed by the Company, once every Plan Year you may request that the Plan Administrator authorize the Trustees to distribute all or a portion of your Account Balance in the Plan.

5

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



**(d)   EXCISE TAXES**

It should be noted that the Internal Revenue Service imposes a ten (10%) percent premature distribution excise tax on all early withdrawals from all qualified plans that are includible in income. Amounts that are not taxable because they are rolled over into an individual retirement account or another qualified plan shall not be subject to this excise tax. See subsection (e) below with respect to mandatory income tax withholding on distributions that are not directly transferred to another qualified retirement plan or an individual retirement account.

Distributions that shall not be subject to the excise tax are as follows:

- Distributions made on or after attainment of age fifty-nine and one-half (59½);

- Distributions as a result of the Participant's death;

- Distributions as a result of the Participant's permanent disability;

- Distributions from the Plan after your separation from service that are paid to you in the form of substantial equal periodic payments for your life based on your life expectancy or joint life expectancy of you and your spouse;

- Distributions which are made to a Participant after separation from service, after attainment of age fifty-five (55), on account of early retirement;

- Distributions from the Plan associated with medical expenses to the extent that the expenses exceed seven and one-half (7.5%) percent of your adjusted gross income and, therefore, would be deductible on your individual income tax return;

- Distributions from the Plan to an alternative payee under a qualified domestic relations order pursuant to a divorce; and

- Distributions from the Plan which are as a result of your deferring in excess of Sixteen Thousand Five Hundred ($16,500) Dollars in 2010 and 2011 (or such higher dollar amount in effect in the year the deferral was made).

- Under certain circumstances, distributions of 401(k) salary deferral contributions to "qualified reservists" called to active military duty.

**(e)   UNEMPLOYMENT COMPENSATION AMENDMENTS OF 1992 - TAX WITHHOLDING**

If the distribution is not transferred directly to another qualified retirement plan or to an Individual Retirement Account, the Unemployment Compensation Amendments of 1992 requires that the Trustees withhold twenty (20%) percent of the distribution for income taxes. Under certain circumstances, all or a portion of a distribution may not qualify for a direct transfer or rollover to another plan or Individual Retirement Account. Prior to receiving a distribution from the Plan, the Plan Administrator will deliver to you a more detailed explanation of the distribution options available under the Plan. You should consult with a qualified tax counsel before making a choice regarding any distribution.

6

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

**8.** _RETIREMENT BENEFITS_

Your normal retirement date for purposes of the Plan is your sixty-fifth (65th) birthday. At retirement, you will be entitled to receive the full amount credited to your account.

The Plan provides that distributions at retirement may be made in the form of a lump-sum distribution. The amount to be distributed is the amount credited to your Account as of the Valuation Date preceding your distribution. SINCE EACH INDIVIDUAL'S SITUATION IS UNIQUE, IT IS RECOMMENDED THAT YOU CONSULT WITH YOUR TAX/FINANCIAL ADVISOR AS TO THE TIMING OF YOUR DISTRIBUTION FROM THE PLAN.

**9.** _DEATH BENEFITS_

Upon your death, the entire amount credited to your Account under the Plan will be distributed to your beneficiary in the form of a lump-sum distribution.

You will be provided with a form on which to designate a beneficiary, however, if you are married, at the time of your death, your beneficiary will automatically be your spouse unless you elect otherwise with the specific written consent of your spouse. The Plan is controlled by federal law and as such the Plan's definition of spouse, a person of the opposite sex who is lawfully married to you, is defined as in the Defense of Marriage Act (Pub L. No 104-199, 110 Stat. 2419).

This beneficiary designation may be changed from time to time as long as the proper forms are completed. If no designation is made, such amount will be paid to your spouse, if living, otherwise to your children, and if there be none, then to your estate.

If there has been a change in your marital status, it is your responsibility to file a change of beneficiary form with the Human Resource Department. Death benefits under the Plan will be paid in accordance with the most current beneficiary designation form on file.

**10.** _DISABILITY BENEFITS_

In the event that you become incapable of performing any employment which would be appropriate for your prior physical status, intellectual ability and experience, due to mental or physical disability and which will have been certified to by an independent physician, you will be considered to be retired.

**11.** _DEFERRED RETIREMENT_

If you postpone your retirement beyond your normal retirement date, you may continue to make 401(k) salary deferral contributions to the Plan and will continue to receive your share of any employer contributions made to the Plan. Payment of benefits, however, will be postponed until your actual retirement. However, if you are a five (5%) percent or more owner of the Company, your benefits must commence by April 1st of the calendar year following the calendar year in which you turn age seventy and one-half (70½). However, once you retire from the company, your Account Balance in the Plan must be distributed.

7

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



## 12. TERMINATION OF EMPLOYMENT

You are always one hundred (100%) percent vested in your account balance in the Plan. As such, if your employment is terminated, you will be entitled to receive one hundred (100%) percent of your account balance in the Plan.

## 13. TERMINATION AND AMENDMENT OF PLAN

It is intended that the Plan will continue indefinitely. However, the Company does reserve the right to terminate the Plan in the event of adverse business conditions or for other business reasons. If the Plan is terminated, the amounts credited to the Employer Contribution Accounts of all the Participants will become one hundred (100%) percent vested. The Plan may also be amended at any time.

## 14. INFORMATION ABOUT TEFRA

The Tax Equity and Fiscal Responsibility Act (TEFRA) was enacted in 1982 and brought about major changes in the retirement plan area. The provisions of TEFRA require the Employer to provide a minimum contribution for all employees participating in a Plan that is deemed to be "top-heavy". If, during any given year, sixty (60%) percent or more of the total account balances of all Participants are for the benefit of key employees (i.e., officers or substantial owners) the plan will be deemed to be top-heavy.

## 15. LOANS TO PARTICIPANTS

With the consent of the Plan's Trustees, you will be entitled to borrow from the Plan against the value of your account balance in the Plan. The minimum amount you will be entitled to borrow from the Plan is One Thousand ($1,000) Dollars. The maximum amount you will be entitled to borrow from the Plan will be the lesser of:

- Fifty (50%) percent of the vested amount of your Account Balance as of the valuation date prior to the date you apply for the loan; or

- Fifty Thousand ($50,000) Dollars. Notwithstanding anything to the contrary, the Fifty Thousand ($50,000) Dollar amount shall be reduced by the highest outstanding balance of your loans from the Plan during the twelve (12) month period ending on the day before the loan is made.

All loans must be repaid by payroll withholding with interest set at the prevailing market value for similar loans under terms established by the Trustees in a non-discriminatory manner. Interest and principal must be paid at a minimum of at least quarterly. The loan including periods of renewals, must be repaid within five (5) years of the original date.

Participants who separate from service with an outstanding loan from the Plan will have the option to either repay the loan in its entirety upon separation or to continue to make payments to the Plan based on the loan's amortization schedule.

All loans must be adequately secured. A loan shall be deemed to be adequately secured if the aggregate amount of all such loans to you does not exceed the vested amount of your Account Balance in the Plan as of the valuation date immediately preceding the loan. If at any time such aggregate amount of loans does

8

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

exceed that limitation, then the Trustees shall require you to either repay the amount or to adequately secure that amount as determined by the Trustees.

YOU WILL BE RESPONSIBLE FOR ALL FEES INCURRED WITH RESPECT TO YOUR APPLICATION TO THE TRUSTEES TO BORROW FROM THE TRUST FUND.

THE PLAN ADMINISTRATOR, THE TRUSTEES, AND THE INVESTMENT COMPANY INVESTING THE PLAN'S ASSETS MAY ESTABLISH ADDITIONAL RULES AND PROCEDURES WITH RESPECT TO LOANS FROM THE PLAN.

16. **ROLLOVERS OR TRANSFERS**

If you have received or are entitled to receive a distribution from another qualified plan, under certain conditions, you may be entitled to have these amounts transferred directly to the Plan. You may also be entitled to rollover amounts you currently maintain in a rollover Individual Retirement Account.

If you are interested in availing yourself of this Plan option, you should notify the Plan Administrator immediately in order to determine whether the amounts you wish rolled over or transferred qualify for such treatment.

All amounts which are rolled over or transferred into the Plan will be one hundred (100%) percent vested at all times and will be maintained in a separate bookkeeping account in your name. Upon request, the Plan Administrator will provide you with appropriate election forms.

17. **PARTICIPANT'S MANAGEMENT ACCOUNTS**

The Plan is intended to comply with Section 404(c) of the Employee Retirement Income Security Act of 1974 ("ERISA"). As such, you have an opportunity to choose from a broad range of investment options that have different risk and return characteristics. You are allowed to invest your account balance in the Plan in a variety of investment vehicles you choose subject to investment limitations and administrative limitations established by the Plan and Trust. If you have not made an investment election under the Plan, your account shall be invested in either a life-cycle fund, target retirement date fund or a balanced fund, until you decide to provide instructions as to how your account shall be invested. Under Section 404(c) of ERISA, fiduciaries of your Plan are relieved of liability for any losses which are the direct and necessary result of investment instructions given by Participants.

18. **DOMESTIC RELATIONS ORDERS**

Generally, your interest in your Account Balance under the Plan may not be alienated, meaning that it cannot be sold, used as collateral for a loan, given away or otherwise transferred. In addition, your Account Balance is protected from creditors as long as your Account Balance remains a part of the Plan.

However, the Plan Administrator may be required by law to recognize obligations you incur as a result of court ordered child support, alimony payments or property settlement as a result of a divorce decree. The Plan Administrator must honor a "qualified domestic relations order", which is defined as a decree or order issued by a court that obligates you to pay child support or alimony, or otherwise allocates a portion of your assets in the Plan to your spouse, former spouse, child or other dependent. If a qualified domestic relations order is received by the Plan Administrator, all or a portion of your benefits may be used to satisfy the obligation. The Plan Administrator will determine the validity of any domestic relations order received.

9

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

You or your beneficiaries have the right to examine or obtain, without charge, a copy of the procedures the Plan Administrator uses in determining the validity of any domestic relations order it receives.

19. **CLAIMS PROCEDURES**

Any Plan Participant or beneficiary of a Participant ("claimant") may make a request for Plan benefits by delivering a written notice setting forth such claim for benefits to the Plan Administrator. The notice shall indicate the name of the claimant and the type of benefit for which the claim is made.

Within ninety (90) days of receiving the written notice, the Plan Administrator must inform the claimant whether the claim will be satisfied or wholly or partially denied, unless special circumstances require an extension of time for processing the claim. If such an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial ninety (90) day period. In no event shall such extension exceed a period of ninety (90) days from the end of such initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Plan Administrator expects to render the final decision. If there is a denial, the notice shall set forth the following.

- The specific reason or reasons for the denial.

- Specific reference to the pertinent Plan provisions on which the denial is based.

- A description of any material and information necessary to perfect the claim and an explanation of why such material and information is necessary.

- An explanation of the Plan's claim review procedure.

Within sixty (60) days of receiving a notice denying a claim wholly or partially, the claimant may appeal such denial to the Plan Administrator for review. The request for a review must be in writing and contain the reasons for which such claim is made. The claimant may review all documents regarding the Plan for purposes of preparing his request for a review. The Plan Administrator shall review the appeal of the claimant and, if necessary, hold a hearing, at which the claimant may present his reasons for objecting to the denial of the claim.

The Plan Administrator must render a decision regarding the appeal of the claimant not later than sixty (60) days after the claimant's request for review was received. However, if there is a need to hold a hearing, a decision must be rendered no later than one hundred and twenty (120) days after receipt of the request for review.

The decision on review of the Plan Administrator must be in writing, must include specific reasons for the decision and must make reference to the pertinent Plan provisions on which the decision was based.

20. **PARTICIPANTS' RIGHTS**

As a participant in the Plan, you are entitled to certain rights and protections under ERISA, the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA provides that all Plan participants are entitled to:

- Examine, without charge, at the Trustees's office and at other specified locations, such as work sites and union halls, all plan documents, including insurance contracts, collective

10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

- Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

- Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

- Obtain a statement telling you whether you have a right to receive a pension at your normal retirement date, and if so, what your benefits would be at your normal retirement date if you stop working under the Plan now. If you do not have a right to a pension, the statement will tell you how many more years you have to work to get a right to a pension. This statement must be requested in writing and is not required to be given more than once every twelve (12) months. The Plan must provide the statement free of charge.

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries.

No one, including the Company, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a retirement benefit or exercising your rights under ERISA.

If your claim for a retirement benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within thirty (30) days, you may file suit in a federal court. In such a case, the court may require the Trustees to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for the benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. In addition, if you disagree with the Plan Administrator's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in federal court.

If it should happen that plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim frivolous.

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest Area Office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications,

11

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

**11.  PLAN TERMINATION INSURANCE**

Under the plan termination insurance provisions of ERISA, the benefits provided for under the Plan are not insured by the Pension Benefit Guaranty Corporation, 1200 K Street NW, Washington, DC, 20005-4026.

**22.  MILITARY SERVICE**

You or your beneficiaries may be entitled to certain benefits under Plan with respect to periods during which you perform qualified military service. Please consult with the Plan Administrator if you think you may be affected by the new rules.

THIS BOOKLET IS INTENDED AS A GENERAL SUMMARY OF THOSE PROVISIONS OF THE PLAN OF PRIMARY GENERAL INTEREST. IT IS NOT PART OF NOR DOES IT MODIFY ANY PROVISIONS OF THE PLAN. IT DOES NOT ALTER OR AFFECT IN ANY WAY THE RIGHTS OF ANY PARTICIPANT OF THE PLAN.

THE LEGAL RIGHTS AND OBLIGATIONS OF ANY PERSON HAVING ANY INTEREST IN THE PLAN ARE DETERMINED BY THE PROVISIONS OF THE PLAN.

THE PLAN IS AVAILABLE FOR EXAMINATION AT THE COMPANY'S PERSONNEL OFFICE IN LIVINGSTON.

12

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



1 202014:1150:P0338

## THE GMS GROUP, L.L.C. SALARY SAVINGS PLAN

### Notice Regarding Participant Directed Investments

Under our Plan, participants self-direct the investment of all contributions and funds maintained in their accounts. Accordingly, it is the intent of the Plan and its fiduciaries to comply with the applicable provisions of Section 404(c) of ERISA (the Employee Retirement Income Security Act of 1974). Under Section 404(c) of ERISA, fiduciaries of your Plan are relieved of any liability for any losses you incur as a result of your investment instructions and decisions. To obtain this relief, the Plan must meet certain conditions. These conditions are summarized below.

**Broad Range of Investment Alternatives.** To comply with Section 404(c) of ERISA, participants must have an opportunity to choose from a broad range of investment options that represent a reasonable diversification of risk and return characteristics.

Under the Plan, participants are allowed to invest their funds in any investment vehicle they choose (e.g., stocks, bonds, mutual funds, cash, etc.). You may do 36 transactions at any time during the calendar year. You may invest in Investment Grade Bonds and any Mutual Fund that is networked by Pershing. You can also invest in Stocks that are listed on a nationally recognized exchange (such as the New York Stock Exchange) or the National NASDAQ if over $2.00. You can write covered calls against your position. If you do not put the money in use, it will be put into a Money Market Fund.

The Company and Plan fiduciaries will make all reasonable attempts to prevent a prohibited investment from occurring and will notify participants as soon as any prohibited investment is discovered. However, if you have any concerns regarding a particular investment, please contact the Compliance Department.

Please note that contributions made to the Plan are initially deposited in your account in a money market fund and remain in the money market fund time until you decide to invest such funds in another investment.

**Investment Information.** To comply with Section 404(c) of ERISA, participants must be provided sufficient information to make informed investment decisions.

Since the Plan does NOT provide a pre-determined fixed list of investment choices, you - the participant, are reminded that you should request and obtain all necessary and relevant information regarding any investment you are considering and/or choosing (e.g., prospectus, performance history, investment objectives, expenses and fees, volatility, etc.). Before you make any investment decision, you should read and study carefully all of the information regarding the investment. Remember, you are the one legally responsible for your investment decisions.

**Investment Advice.** Since neither the Plan Administrator (the Company) nor the Trustee(s) are responsible for the investment performance of the funds selected by each participant, the Plan Administrator and the Trustee(s) do NOT offer any advice with respect to the investment of your account maintained under the Plan. All investment decisions belong to the participant and should be based on each participant's short and long-term financial goals and needs.

**Processing Your Investment Instructions.** Your account activity and account statements may be viewed by accessing your account through the office system.

If you are working in the Jersey City, New Jersey office or the Houston, Texas office, you can have your investment elections processed through the operations desk located in your office.

13

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

If you are working in any of the offices listed below, you can have your investment instructions processed through the Livingston Operations Department. This can be accomplished by calling the main number at (800) 453-6230, the local number at (973) 535-5000, or the special stock line number at (973) 548-2597.

Livingston, New Jersey
Jersey City, New Jersey
Boca Raton, Florida
Greenwich, Connecticut
Miami, Florida
Springfield, Pennsylvania

Account Fees. There are various expenses and fees associated with your investment instructions (e.g. processing of a trade) which will be charged and deducted from your account under the Plan. Be sure to consider the fees and expenses in making your investment decisions.

If you have any questions regarding this Notice, please contact Timothy J. Donohue at (800) 463-6230.

14

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

# Tab 5

## Notice to Court

FILED
1/7/2015 4:32:36 PM
Stan Stanart
County Clerk
Harris County

— ι••∆ ΤΑ**ΙΤRY**
DATA ENTRY **IS DATE**
PICK UP THIS DATE

ANM

PROBATE COURT 1

522 Cause No. 396935-401

| | | |
|---|---|---|
| IN RE | § | IN THE PROBATE COURT |
| JANET F. McAFEE, | § | |
| Deceased | § | |
| | § | |
| ROSEMARY FOLTYN and | § | NO. 1 |
| JAKE FOLTYN | § | |
| | § | |
| v. | § | |
| THE GMS GROUP, LLC and | § | |
| WOODFOREST NATIONAL BANK, | § | |
| Defendants | § | HARRIS COUNTY, TEXAS |

### NOTICE TO COURT

Comes now, M. Elizabeth Duff, counsel for the Estate of Janet Foltyn McAfee, Deceased. It has come to the attention of the Estate that Charles Storer, Power of Attorney for Charles McAfee, Defendant, herein is trying to access funds of the Estate in its Motion to Quash Writs of Garnishment, as set for hearing January 8, 2015 at 11:00 a.m. The Estate objects to the Motion as the Estate claims an interest in these funds. Please see the attached *Order Approving Inventory* filed and approved by this Court on May 21, 2014, referenced herein as *Exhibit A*. The Estate respectfully requests the Motion to Quash Writs of Garnishments be denied or stayed until all matters may be heard as the Motions all involve the characterization of the funds. Counsel for the Estate, M. Elizabeth Duff is in the process of preparing the Motion to Release Funds frozen by the *Agreed Order for Temporary Injunctions* in Cause No. 396935 of this Court, referenced herein as *Exhibit B*. There has been no opposition by Mr. McAfee or his counsel to the Inventory or division of the funds. It is in the best interest of the parties to hear all matters contemporaneously. Further, counsel for the Estate, M. Elizabeth Duff, was not notified of the January 8, 2015 Hearing in this

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Sterling G. Senechal III

Court. Please see the attached *Notice of Hearing*, referenced herein as *Exhibit C*. M. Elizabeth Duff is unable to attend the Hearing however is available by telephone.

Respectfully submitted,

Mitchell & Duff, LLC

By: _____
Mary Elizabeth Duff
Texas Bar No. 06166880
210 Main Street
Richmond, Texas 77469
Tel. (281) 341-1718
Fax. (281) 341-5517
Email: eduff@mitchellandduff.com
Attorney for Estate of Rosemary F. McAfee, Deceased

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
**Harris County, Texas**

_____ **Deputy**
Sterling G Senechal III

**Certificate of Service**

I certify that on January 7, 2015 a true and correct copy of the Motion to Release Temporary Injunction was served on all parties.

M. Elizabeth Duff

**Esther Anderson**
Anderson Pfeiffer, PC
845 FM 517 West, Suite 200
Dickinson, TX 77539
*Via Fax: (281) 614-5205*

**Matthew Lipman**
Faust Oppenheim, LLP
488 Madison Ave.
New York, NY 10022
*Via Fax: (212) 371-8410*

**Dean M. Blumrosen, Esq.**
4615 Southwest Freeway, Suite 850
Houston, TX 77027
*Via Fax: (713) 524-5570*

**Woodforest National Bank**
Registered Agent: James D. Dreibelbis
25231 Grogan's Mill Road, Suite 100
The Woodlands, TX 77380
*Via CMRRR# 7014051000086589226*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III _____ Deputy



 

**DROP**
PICK UP THIS DATE

No. 396935

IN THE ESTATE OF

JANET FOLTYN MCAFEE,

DECEASED

§ IN THE PROBATE COURT
§
§ NO. 1
§
§ HARRIS COUNTY, TEXAS

**ORDER APPROVING FOURTH AMENDED INVENTORY, APPRAISEMENT & LIST**

**OF CLAIMS**

The foregoing Fourth Amended Inventory, Appraisement and List of Claims of the above estate having been filed and presented; there having been no objections made thereto; and the Court having considered and examined the same, is satisfied that it should be approved.

IT IS THEREFORE ORDERED that the foregoing Fourth Amended Inventory, Appraisement and List of Claims is in all respects approved and ORDERED entered of record.

SIGNED on the 21st day of May, 2014.

_____
JUDGE PRESIDING

APPROVED AS TO FORM:

_____
Mary Elizabeth Duff
State Bar No.: 06165880
Carla K. Freeman
Attorney for Rosemary Foltyn,
Independent Administratrix of the Estate of Janet Foltyn McAfee, Deceased
210 Main Street
Richmond, TX 77469
Telephone: (281) 341-1718
Facsimile: (281) 341-5517



Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 8/20/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Consuelo Arroyo

EXHIBIT
A

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ **Deputy**
Sterling G. Senechal III

No. 396,935

| IN THE ESTATE OF | | IN THE PROBATE COURT |
| JANET FOLTYN MCAFEE, | | NO. 1 |
| DECEASED | | HARRIS COUNTY, TEXAS |

## FOURTH AMENDED INVENTORY, APPRAISEMENT AND LIST OF CLAIMS

### Date of Death: May 8, 2010

The following is a fourth amended full, true, and complete Inventory and Appraisement of all real property situated in the State of Texas and of all personal property wherever situated, together with a List of Claims due and owing to this Estate as of the date of death, which have come to the possession or knowledge of the undersigned.

### INVENTORY AND APPRAISEMENT

| COMMUNITY PROPERTY | VALUE |
|---|---|
| 1. **CASH IN BANKS:** | |

Account #1
Institution: The OMS Group, LLC
Account type: Brokerage Account
Account/CD No: xxx - xxx678
Total value of asset: $53,749.42 on date of death
Less surviving spouse share: $<26,874.71>     $26,874.71
Co-owners: None
Decedent's interest: 50%

Account #2
Institution: The OMS Group, LLC
Account type: Brokerage Account
Account/CD No: xxx - xxx008
Total value of asset: $6,772.52 on date of death
Less surviving spouse share: $<3,386.26>     $3,386.26
Co-owners: None
Decedent's interest: 50%

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 8/20/2014
**Stan Stanart, County Clerk**
Harris County, Texas

*Consuelo Arroyo* _____ Deputy
Consuelo Arroyo



---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

**A Certified Copy**
**Attest: 9/29/2015**
**Stan Stanart, County Clerk**
**Harris County, Texas**



_____ **Deputy**
Sterling G. Senechal III



Account #3
Institution: The OMS Group, LLC
Account type: Brokerage Account
Account/CD No: xxx – xxx914
Total value of asset: $0.00 on date of death
Less surviving spouse share: $0.00
Co-owners: None
Decedent's interest: 50%

$0.00

Account #4
Institution: The OMS Group, LLC
Account type: Brokerage Account
Account/CD No: xxx – xxx612
Total value of asset: $0.00 on date of death
Less surviving spouse share: $0.00
Co-owners: None
Decedent's interest: 50%

$0.00

Account #5
Institution: The OMS Group, LLC
Account type: Brokerage Account
Account/CD No: xxx - xxx606
Total value of asset: $425,034.70 on date of death
Less surviving spouse share: $<254,381.85>
Co-owners: None
Decedent's interest: 50% of community minus $83,729.86
(Spouses Separate property)

$170,652.85

Account #6
Institution: Wells Fargo National Bank
Account type: Checking
Account/CD No: xxxxxx184
Total value of asset: $589.76 on date of death
Less surviving spouse share: $<294.88>
Co-owners: None
Decedent's interest: 50%

$294.88

Account #7
Institution: Wood Forest National Bank
Account type: Checking, opened by Kenneth McAfee during marriage with Janet, on September 29, 2009.
Account/CD No: xxxxxxx404
Total value of asset: $38,256.91 on date of death
Less surviving spouse share: $<19,128.46>
Co-owners: At date of death, none.
Decedent's interest: 50%

$19,128.46

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 8/20/2014
Stan Stanart, County Clerk
Harris County, Texas

_____ Deputy



Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



**2. MOTOR VEHICLES:**

Vehicle #1
Description: 2006 Mazda Miata (MX-5)
VIN #: xxxxxxxxxxxxx539
Total Value: $12,830.00 on date of death
Less surviving spouse share: $<6,415.00>                          $6,415.00
Co-owners: None
Decedent's interest: 50%

Vehicle #2
Description: 1959 Mercedes Model 190, 4 door
VIN #: xxxxxxx510
Total Value: $5,050.00 on date of death
Less surviving spouse share: $<2,525.00>                          $2,525.00
Co-owners: None
Decedent's interest: 50%

Vehicle #3
Description: 2007 or 2008 Suzuki Motorcycle
VIN #: xxxxxxxxxxxxx547
Total Value: $4,490.00 on date of death
Less surviving spouse share: $<2,245.00>                          $2,245.00
Co-owners: None
Decedent's interest: 50%

**3. HOUSEHOLD FURNISHINGS:**

Household furniture and furnishings            $14,000.00
Total Value: $14,000 on date of death
Less surviving spouse share: $<7,000.00>                          $7,000
Co-owners: None
Decedent's interest: 50%

**TOTAL COMMUNITY PROPERTY**                          $238,522.15
on date of death

**SEPARATE PROPERTY**                                  VALUE

**1. REAL PROPERTY:**

Parcel #1
LEGAL DESCRIPTION:
Lot 12 Block 16 of South Hampton Place, a subdivision in Harris County, Texas according to
the map or plat thereof, recorded in Vol. 6, Page 52 of the Map Records of Harris County,
Texas, commonly known as 2119 Tangley Street, Houston, Texas Harris County

---

*Confidential information may have been redacted from the document in compliance with the Public Information Act.*

A Certified Copy
Attest: 8/20/2014
**Stan Stanart, County Clerk**
Harris County, Texas

 _Deputy
Consuelo Arroyo

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

 Deputy
Sterling G. Senechal III

Total Value: $537,701.00 *
Less remaining Chase Bank mortgage balance: ($114,246.90)        $423,454.10
Co-owners: None
Decedent's interest: 100%
* Note that Kenneth McAfee gifted his interest in the property to Janet Foltyn McAfee via gift deed on July 11, 2008, making it her separate property.

**Parcel #2**
LEGAL DESCRIPTION:
Ten (10) acre tract of land situated in Matagorda County, Texas in the GJ Williams League, Abstract No. 103, being a portion of Lot No. 55 of the Elmston Farms Subdivision, and being out of the Southwest corner thereof, the map of said subdivision being recorded in the County Clerk's Office in Matagorda County, Texas, and said Lot No. 55 being conveyed by B.W. Trul et ux to B.B. Adametik by deed dated February 9, 1932, recorded in Vol. 94, Page 211 of the Matagorda County Deed Records, Geographical ID 0103-0000-0031B0, CAD ID 16154
Total Value: $2,500.00        $2,500.00
Co-owners: None
Decedent's interest: 100%

**Parcel #3**
LEGAL DESCRIPTION:
Mineral Interest i in Matagorda County – 0.003136,0010602 Saha – Peterson #1, Square Mile Energy, Geographic al ID 9801-0602-7089461, CAD ID 93256
Total Value: $54,590.00        $54,590.00
Co-owners: None
Decedent's interest 100%

**Parcel #4**
LEGAL DESCRIPTION:
Mineral Interest in Matagorda County – 0.003136, 0010693, Saha-Peterson GU W3, Square Mile Energy, Geographical ID 9801-0693-7089461, CAD ID 101637
Total Value: $64,550.00        $64,550.00
Co-owners: None
Decedent's interest: 100%

**Parcel #5**
LEGAL DESCRIPTION:
Mineral Interest in Matagorda County – 0.003136, 0010619, Saha-Peterson Gas Unit #2, Square Mile Energy, Geographical ID 9801-0619-7089461, CAD ID 98165
Total Value: $7,480.00        $7,480.00
Co-owners: None
Decedent's interest: 100%

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 8/20/2014
Stan Stanart, County Clerk
Harris County, Texas

_Connuela Arroyo_ Deputy
Consuela Arroyo



Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
Stan Stanart, County Clerk
Harris County, Texas

Deputy
Sterling G. Senechal III

2. **HOUSEHOLD FURNISHINGS:**
   Artwork — $17,900.00
   Electronics — $1,850.00
   Jewelry — $5,000.00
   Firearms - .25 cal. pistol — $300.00
   Misc. Items — $3,500.00
   Total Value: $28,550.00 — $28,550.00
   Co-owners: None
   Decedent's Interest: 100%

3. **MOTOR VEHICLES:**

   Vehicle #1
   Description: 2006 Hummer H3 (4x4)
   VIN #: xxxxxxxxxxxxx109
   Total Value: $18,100.00 — $18,100.00
   Co-owners: None
   Decedent's Interest: 100%

   Vehicle #2
   Description: 2007 Honda Shadow Motorcycle
   VIN #: xxxxxxxxxxxxxx977
   Total Value: $3,495.00 — $3,495.00
   Co-owners: None
   Decedent's Interest: 100%

4. **CASH IN BANKS:**

   Account #1
   Institution: The GMS Group, LLC
   Account type: Brokerage Account
   Account/CD No: xxx - xxx479
   Total Value: $3,440.02 — $3,440.02
   Co-owners: None
   Decedent's Interest: 100%

   Account #2
   Institution: The GMS Group, LLC
   Account type: Brokerage Account
   Account/CD No: xxx - xxx012
   Total Value: $36,420.66 — $36,420.66
   Co-owners: None
   Decedent's Interest: 100%

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 8/20/2014
Stan Stanart, County Clerk
Harris County, Texas

_____ Deputy



Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

Account #3
Institution: The CME Group, LLC
Account type: Brokerage Account
Account/CD No: xxx – xxx428
Total Value: $0                                        $0
Co-owner: None
Decedent's Interest: 100%

Account #4
Institution: Devon Energy Corporation
Account type: Incentive Savings Plan
Account/CD No.: xxxxxxx4405
Total value: $58,717.59                              $58,717.59
Co-owner: None
Decedent's Interest: 100%

TOTAL SEPARATE PROPERTY                          $581,397.37

### TOTAL VALUE OF ESTATE

The total value of the Estate of Janet Foltyn McAfee, Deceased is $919,819.52

The Independent Administratrix asks the Court that foregoing Fourth Amended Inventory,

Appraisement and List of Claims be approved and entered of record.

_Rosemary Foltyn_
Rosemary Foltyn
Independent Administratrix of the Estate of Janet
Foltyn McAfee, Deceased

_Carla Freeman_
M. Elizabeth Duff
State Bar No.: 06166380
Carla K. Freeman
State Bar No. 24074230
Attorney for Rosemary Foltyn as Independent
Administratrix of the Estate of Janet Foltyn McAfee,
Deceased
210 Main Street
Richmond, TX 77469
Telephone: (281) 341-1718
Facsimile: (281) 341-33

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 8/20/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_Consuelo Arroyo_  Deputy
Consuelo Arrovo



Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____  **Deputy**
Sterling G. Senechal III

RECEIVED 01/13/2014 08:47   1792484148   ERNEST OPOLLA   P.008/009
01/13/2014  08:11 Mitchell & Duff Attorneys at Law   FAX:2813010717

STATE OF TEXAS

COUNTY OF HARRIS

I, Rosemary Foltyn, having been duly sworn, hereby state on oath that the said Fourth Amended Inventory and List of Claims are a true and complete statement of property and claims of the estate that have come to my knowledge.

_Rosemary Foltyn_
Rosemary Foltyn
Independent Administratrix of the Estate of Jewel Foltyn McAfee, Deceased

SWORN TO AND SUBSCRIBED BEFORE ME on this the ____ day of _____ 2014 by Rosemary Foltyn, to certify which witness my hand and seal of office.

_Notary signature_
Notary Public, State of Texas

GABY LEAH CHRISTENSEN
MY COMMISSION EXPIRES
June 27, 2017

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 8/20/2014
Stan Stanart, County Clerk
Harris County, Texas

_Consuelo Arroyo_ Deputy
Consuelo Arroyo

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
Stan Stanart, County Clerk
Harris County, Texas

_Sterling Senechal signature_ Deputy
Sterling G. Senechal III

**PROBATE COURT 1**

998797

No. 396,935

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JANET FOLTYN MCAFEE, | § | NO. 1 |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

### AGREED ORDER FOR TEMPORARY INJUNCTION

On March 31, 2011 the Application for a Temporary Restraining Order of Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee (the "Estate"), was heard and granted before this Court.

On April 14 and May 5, 2011 the Court ultimately ordered the Temporary Restraining Order be extended and Temporary Injunction hearing be rescheduled to June 9, 2011 at 2:00 P.M.

On May 18, 2011 the Application for a Supplemental Temporary Restraining Order of Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee, was heard and granted before this Court. The Temporary Injunction hearing was scheduled for June 1, 2011 at 12:00 PM.

On June 1, 2011 the Court ordered the Supplemental Temporary Restraining Order be extended and Temporary Injunction be extended and Temporary Injunction hearing be rescheduled to June 9, 2011 at 2:00 P.M.

On June 7, 2011, the parties agreed to the entry of a Temporary Injunction, and to pass on the hearing on June 9, 2011. This agreement is evidenced by counsels' signatures below.

The Court finds that all necessary prerequisites of the law have been legally satisfied and that the Court has jurisdiction in this case and of all the parties. The Court finds that Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee, is entitled to a Temporary Injunction.

Agreed Temporary Injunction        1 of 10


EXHIBIT
B

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



IT IS THEREFORE ORDERED that Kenneth McAfee and all of his officers, agents, servants, employees, agents, servants, successors, assigns, representatives, and attorneys are ordered to immediately cease and desist from the use and control of the following accounts and property:

## THE GMS GROUP, LLC

1. Any and all funds in GMS Group, LLC accounts, including but not limited to the following, all of which are presumed to contain community funds and/or funds belonging to the Estate:

   a. 55H-004628
   b. 55H-056008
   c. 55L-660606
   d. 55H-003612
   e. 55H-034914
   f. 55H-850012
   g. 55H-042479
   h. 55H-008207
   i. 989-03491
   j. 996-66060
   k. 989-03500

2. Any and all funds in GMS Group, LLC accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v)

Agreed Temporary Injunction        3 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

1. PO Box 66352, Houston Texas, 77266

2. PO Box 460786 Houston, Texas, 77056

3. 6650 Fairfield Street Houston, Texas, 77023

4. 2119 Tangley Houston, Texas, 77005

### WOODFOREST NATIONAL BANK

3. Any and all funds in Woodforest National Bank accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

a. PO Box 66352, Houston Texas, 77266

b. PO Box 460786 Houston, Texas, 77056

c. 6650 Fairfield Street Houston, Texas, 77023

d. 2119 Tangley Houston, Texas, 77005

Agreed Temporary Injunction      3 of 10

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



## BANK OF AMERICA, N.A.

4. Any and all funds in Bank of America, N.A. accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

   a. PO Box 66352, Houston Texas, 77266

   b. PO Box 460786 Houston, Texas, 77056

   c. 6650 Fairfield Street Houston, Texas, 77023

   d. 2119 Tangley Houston, Texas, 77005

## BBVA COMPASS BANK

5. Any and all funds in BBVA Compass accounts, including Laredo National Bank, including but not limited to the following, all of which are presumed to contain community funds and/or funds belonging to the Estate:

   a. 113010547049-023

   b. 00810028023

6. Any and all funds in BBVA Compass accounts, including Laredo National Bank, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet

Agreed Temporary Injunction 4 of 10

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

    a.  PO Box 66352, Houston Texas, 77266

    b.  PO Box 460786 Houston, Texas, 77056

    c.  6650 Fairfield Street Houston, Texas, 77023

    d.  2119 Tangley Houston, Texas, 77005

### WELLS FARGO BANK, N.A.

7.    Any and all funds in Wells Fargo Bank, N.A. accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

    a.  PO Box 66352, Houston Texas, 77266

    b.  PO Box 460786 Houston, Texas, 77056

    c.  6650 Fairfield Street Houston, Texas, 77023

Agreed Temporary Injunction    5 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

d.  2119 Tangley Houston, Texas, 77005

## CITIZENS FINANCIAL GROUP, INC.

8.    Any and all funds in Citizens Financial Group, Inc. accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

a.  PO Box 66352, Houston Texas, 77266

b.  PO Box 460786 Houston, Texas, 77056

c.  6650 Fairfield Street Houston, Texas, 77023

d.  2119 Tangley Houston, Texas, 77005

## PERSHING LLC

9.    Any and all funds in Pershing, LLC accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v)

Agreed Temporary Injunction    6 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

  a. PO Box 66352, Houston Texas, 77266

  b. PO Box 460786 Houston, Texas, 77056

  c. 6650 Fairfield Street Houston, Texas, 77023

  d. 2119 Tangley Houston, Texas, 77005

### GRUNTAL & CO., INC.

10. Any and all funds in Gruntal & Co., Inc. accounts, including any Gruntal & Co., Inc. subsidiaries or affiliates, including but not limited to the following, all of which are presumed to contain community funds and/or funds belonging to the Estate:

  a. 989-03491

  b. 989-05600

11. Any and all funds in Gruntal & Co., Inc. accounts, , including any Gruntal & Co., Inc. subsidiaries or affiliates, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

    a. PO Box 66352, Houston Texas, 77266 ·

    b. PO Box 460786 Houston, Texas, 77056

    c. 6650 Fairfield Street Houston, Texas, 77023

    d. 2119 Tangley Houston, Texas, 77005

## OTHER ACCOUNTS

12. Any and all accounts presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which name them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee, including, but not limited to the following:

    a. PO Box 66352, Houston Texas, 77266

    b. PO Box 460786 Houston, Texas, 77056

    c. 6650 Fairfield Street Houston, Texas, 77023

    d. 2119 Tangley Houston, Texas, 77005

which contain:

    (i) Funds transferred from or that can be traced to the accounts described herein, including but limited to accounts at The GMS Group, LLC,

Agreed Temporary Injunction                    8 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



Sterling G. Senechal III _____ Deputy



Woodforest National Bank, Bank of America, N.A., BBVA Compass Bank, Wells Fargo Bank, N.A., Citizens Financial Group, Inc., Pershing LLC, and Grutnal & Co., Inc.; and/or

(ii)     Any and all additional funds and assets which are presumed to contain community funds and/or funds belonging to the Estate.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that any entity or individual, including but not limited to The GMS Group, LLC, Woodforest National Bank, Bank of America, N.A., BBVA Compass Bank, Wells Fargo Bank, N.A., Citizens Financial Group, Inc., Pershing LLC, and Grutnal & Co., Inc., which contains, controls, or possesses funds presumed to belong to the community and/or Estate, is ordered by the Court to effectuate the terms of this Temporary Injunction should Kenneth McAfee, or any officers, agents, servants, employees, agents, servants, successors, assigns, representatives, and/or attorneys acting on his behalf, attempt to access or obtain accounts or property within that entity or individual's control or possession, which may contain community funds and/or funds that belong to the Estate.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this Temporary Injunction Order is effective immediately and shall continue in force and effect until the Court makes a determination of what property belongs to the Estate or the Court renders a full and final judgment is in the pending wrongful death suit associated with this matter, which ever is later, or by further order of this Court. This order shall be binding on Kenneth McAfee, or any officers, employees, agents, servants, successors, assigns, representatives, attorneys acting on his behalf, and on those persons in active concert or participation with him. The bond posted by the Administratrix is required to remain posted.

Agreed Temporary Injunction          9 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

SIGNED on June 8, 2011 at 2:00 p.m.

_____
JUDGE PRESIDING

APPROVED AS TO FORM:

_____
Mary Elizabeth Duff
Texas Bar No. 06166880
210 Main Street
Richmond, TX 77469
Tel. (281)341-1718
Fax. (281)341-5517
Attorney for Independent Administratrix
Rosemary Foltyn

By:_____
DEAN M. BLUMROSEN, ESQ.
State Bar No. 02517900
4615 Southwest Freeway, Suite 850
Houston, Texas 77027
713.524.2225- Telephone
713.524.5570- Facsimile
Attorney for Heirs of Janet Foltyn McAfee

By:_____
Alexander Forrest
State Bar No. 24065241
801 Congress, #350
Houston, Texas 77002
Tel. (713) 598-0339
Fax (713) 224-3111
Attorney for Kenneth McAfee

Agreed Temporary Injunction          10 of 10

FILED
2011 JUN -9 PM 12:31

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Sterling G. Senechal III



PROBATE COURT 1

**CAUSE NO. 396935-401**

| | | |
|---|---|---|
| IN RE | § | IN THE PROBATE COURT |
| JANET F. McAFEE, | § | |
| Deceased | § | NUMBER ONE |
| | § | |
| ROSEMARY FOLYN and | § | |
| JAKE FOLYN | § | |
| | § | |
| v. | § | OF |
| | § | |
| THE GMS GROUP, LLC and | § | |
| WOODFOREST NATIONAL BANK, | § | HARRIS COUNTY, TEXAS |
| Defendants | § | |

### NOTICE OF ORAL HEARING

Notice is hereby given that the following has been set for oral hearing on Thursday, January 8, 2015, at 11:00 a.m., in the Probate Court No. 1 of Harris County Texas, located at 201 Caroline Street, 6th Floor, Houston, Texas 77002:

1.    Motion to Quash Writs of Garnishment.

Respectfully submitted,

ANDERSON PFEIFFER, PC

By:    Esther Anderson
SBN: 00792332
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 281.488.6535
Facsimile: 281.614.5205
Email: esther@probateguardianship.com

NOTICE OF HEARING
Page 1 of 2



EXHIBIT
C

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



Of counsel on the Pleading:

*/s/ Robert Teir*
Robert Teir
Robert Teir, PLLC
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 832.365.1191
Facsimile: 832.550.2700
Email: rob@probateguardianship.com
Attorneys for Mr. Charles Storer

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to all parties and/or counsel of record through our electronic service provider, certified mail, return receipt requested and/or facsimile on this _22nd_ day of December, 2014.

Esther Anderson

cc:     Matthew E. Lipman
        Faust Oppenheim LLP
        488 Madison Avenue
        New York, New York 10022          **Via Electronic Service Provider &**
                                          **Facsimile 212-971-8410**

        Dean M. Blumrosen, Esq.
        4615 Southwest Freeway, Suite 850  **Via Electronic Service Provider &**
        Houston Texas 77027                **Facsimile 713-524-5570**

        Woodforest National Bank,
        through their registered agent
        James D. Dreibelbis
        25231 Grogan's Mill Road, Suite 100
        The Woodlands, Texas 77380         **Via CMRRR** 9414 7102 0082944536408 87

N:\Storer, Charles\Notices\not of hearing.1.doc

NOTICE OF HEARING
Page 2 of 2

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

# Tab 6

Response to Charles Storer's Motion to Quash Writs of Garnishment

FILED
1/7/2015 2:19:49 PM
Stan Stanart
County Clerk
Harris County

NO. 396935-401    **PROBATE COURT 1**

| | |
|---|---|
| ROSEMARY FOLTYN, Individually§<br>AND JAKE FOLTYN, Individually §<br>*Plaintiffs* § | IN THE PROBATE COURT<br>ONE |
| §<br>§<br>§<br>§ | |
| § | OF |
| §<br>VS. §<br>§ | |
| THE GMS GROUP, L.L.C. AND §<br>WOODFOREST NATIONAL §<br>BANK § | |
| *Defendants* | HARRIS COUNTY, TEXAS |

## RESPONSE TO CHARLES STORER'S MOTION TO QUASH WRITS OF GARNISHMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Rosemary and Jake Foltyn (hereinafter referred to as "Garnishors") and files this Response to Charles Storer's Motion to Quash Writs of Garnishment and, in support hereof, Garnishors would show the Court the following:

I.

---

Response to Motion to Quash Writs of
Garnishment                                                    Page 1

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



1. Plaintiffs/Garnishors are Rosemary and Jake Foltyn are underlying judgment creditors to the wrongful death case in this cause number.

2. Defendant/Garnishee, The GMS Group, L.L.C., is a limited liability company doing business in Texas and may be served by serving its registered agent, via certified mail, return receipt requested, Corporation Service Company, D/B/A CSC –Lawyers Inco, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3. Defendant/Garnishee, Woodforest National Bank is a privately held bank doing business in Texas and may be served by personally serving its registered agent, James D. Dreibelbis, 25231 Grogan's Mill Road, Suite 100, The Woodlands, Teas 77380.

4. On or about March 21, 2014, this Court, in case number 396,935-401 styled *Rosemary Foltyn, Individually and as Independent Administratrix of the Estate of Janet Foltyn McAfee, Deceased; and Jake Foltyn, Individually v. Kenneth Cooper McAfee* entered a Judgment against Defendant, *Kenneth Cooper McAfee* in the amount of $2,000,000.00, plus pre and post judgment interest, plus costs of Court ("Judgment"). A true and correct copy of the

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

Judgment is attached to the Application for Garnishment as Exhibit "A" and incorporated herein by reference for all purposes. This Judgment is just, due, unpaid, and remains unsatisfied.

## II. LACK OF STANDING

5. Charles Storer is the person who filed the Motion to Quash Writs of Garnishment. Mr. Storer is not a party to the underlying case, nor is he a party to the garnishment proceedings. He has not filed any pleading seeking to intervene in this matter and thus, is not a party to these proceedings. Thus, Mr. Storer has no standing to assert anything in this case. The Motion to Quash should be denied on this basis alone.

## III. MOTION TO ABATE

6. After a hearing, this court signed an Order on June 26, 2014, compelling Kenneth McAfee to fully answer plaintiff's post judgment interrogatories and produce all responsive documents that are responsive to plaintiff's post-judgment request for production. Subsequently, Mr. McAfee's attorneys filed motions to withdraw and both did in fact withdraw. At Mr. Bennett's hearing on his Motion to Withdraw he represented to the court that Mr. McAfee had no assets to satisfy the underlying judgment.

Response to Motion to Quash Writs of
Garnishment                                    Page 3

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



Further, at no time did Mr. McAfee answer the post-judgment interrogatories or produce one single document pursuant to the Court's Order

7. Thus, Mr. McAfee is picking and choosing what court proceedings he will decide to participate in. Mr. McAfee's attorneys withdrew and never provided the post-judgment discovery they were Ordered to produce. In an effort to circumvent the legal process, Mr. McAfee seeks to avoid the court's June 26, 2014, Order and proceed directly to only proceedings he wishes to partake, such as a Motion to Quash.

8. Had Mr. McAfee responded to the post-judgment discovery Ordered by this Court, Plaintiffs would be in a much better position regarding the characterization of Mr. McAfee's assets. This court vigorously protected Mr. McAfee's Fifth Amendment right during the entire trial court proceeding. While Mr. McAfee has and was granted all protections he was entitled, he is not above the law, like any other judgment debtor. He is required to abide by this Court's Orders as they pertain to the judgment entered against him.

9. Plaintiffs request this Court abate any ruling on the Motion to Quash the Writs of Garnishment until Mr. McAfee has complied with this Court's June 26, 2014, Order compelling him to fully respond to the post-judgment discovery.

---

Response to Motion to Quash Writs of
Garnishment                                    Page 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

 Deputy

Sterling G. Senechal III

## IV. ESTATE HAS CLAIMS AGAINST FUNDS

10.     Separate and apart from the wrongful death action and any assets plaintiffs may be entitled to, the Estate of Janet Foltyn McAfee has claims against the funds at issue in this garnishment proceeding. Rosemary Foltyn, as Independent Administratrix of the Estate of Janet Foltyn McAfee has asserted these claims in the probate cause number for this matter. Plaintiffs request that the Court wait until those issues are litigated by the probate attorneys before making any determination regarding any funds involved in this matter.

WHEREFORE, PREMISES CONSIDERED, Rosemary and Jake Foltyn, request that the Motion to Quash Writs of Garnishment be denied; further issue an Order that Charles Storer does not have standing ins this matter and in the alternative, issue a stay of this matter until Mr. McAfee has complied with this Court's June 26, 2014, Order compelling him to fully respond to the post-judgment discovery, and other such relief to which Garnishors may be justly entitled.

---

Response to Motion to Quash Writs of
Garnishment                                                    Page 5

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Sterling G. Senechal III



Respectfully submitted,

By: /s/ Dean M. Blumrosen
          DEAN M. BLUMROSEN, ESQ.
          State Bar No. 02517900
          4615 Southwest Freeway, Suite 850
          Houston, Texas 77027
          713.524.2225- Telephone
          713.524.5570- Facsimile
          Dblumrosenlaw@aol.com
          ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVCE

I certify that a true and correct copy of this document has been forwarded to all counsel of record through the electronic service provider and/or via facsimile on this 7th day of January 2015.

/s/ Dean M. Blumrosen
DEAN M. BLUMROSEN

Response to Motion to Quash Writs of
Garnishment
                                    Page 6

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy
Sterling G. Senechal III

| | |
|---|---|
| ROSEMARY FOLTYN, Individually§<br>AND JAKE FOLTYN, Individually §<br>*Plaintiffs* § | IN THE PROBATE COURT<br>ONE |
| §<br>§<br>§<br>§<br>§<br>§ | |
| § | OF |
| §<br>VS. §<br>§ | |
| THE GMS GROUP, L.L.C. AND §<br>WOODFOREST NATIONAL §<br>BANK §<br>*Defendants* | HARRIS COUNTY, TEXAS |

## ORDER

On the _____ day of January, 2015, came on to be heard Charles Storer's Motion to Quash Writs of Garnishment and after having considered the pleadings on file and the arguments of counsel, is of the opinion that the Motion should be in all things, **DENIED**. It is further **ORDERED** that Charles Storer lacks standing to assert claims in this matter on behalf of Defendant, Kenneth C. McAfee.

In the alternative, the Motion to Quash is abated and shall not be heard until Defendant, Kenneth McAfee, fully answers Plaintiffs' Post-Judgment Interrogatories and produces all documents that are responsive to Plaintiffs' Post-Judgment Requests for Production.

---

Response to Motion to Quash Writs of
Garnishment                                             Page 1

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Sterling G. Senechal III



SIGNED on the \_\_\_day of _____, 2015.

_____
JUDGE LOYD WRIGHT

Response to Motion to Quash Writs of
Garnishment

Page 2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy

Sterling G. Senechal III



# Tab 7

January 18, 2015 Transcript

*REPORTER'S RECORD*

TRIAL COURT CAUSE NO. 396,935


IN THE ESTATE OF              )       IN THE PROBATE COURT
                             )
                             )
                             )
JANET F. MCAFEE,             )       NUMBER 1 (ONE)
                             )
                             )
                             )
DECEASED                     )       HARRIS COUNTY, TEXAS


_____

**HEARING ON MOTION TO QUASH WRITS OF GARNISHMENT**
_____


On the 8th day of January, 2015, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Loyd Wright, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by computerized stenotype machine.

# APPEARANCES

**MR. DEAN MILES BLUMROSEN**
Bar Card Number: 02517900
Law Offices of Dean Miles Blumrosen
4615 Southwest Fwy Ste 850
Houston, TX 77027-7162
Telephone:   713.524.2225

                                Counsel for Plaintiffs

**MS. ESTHER GARZA ANDERSON**
Bar Card Number: 00792332
Anderson Pfeiffer PC
845 FM 517 Rd W Ste 200
Dickinson, TX 77539-2903
Telephone:   281.488.6535

                                Counsel for Charles Store,
                                Power of Attorney for
                                Charles Mcafee

**MR. ROBERT 'ROB TEIR' TEIR**
Bar Card Number: 00797940
Robert Teir, PLLC
845 FM 517 West, Suite 200
Dickinson, TX 77539-2903
Telephone:   832.365.1191

                                Counsel for Charles Store,
                                Power of Attorney for
                                Charles Mcafee

*(Proceedings commence.)*

THE COURT: Okay. The Mcafee Estate.

MR. BLUMROSEN: Good morning. Happy New Year to you.

THE COURT: Happy New Year.

MS. ANDERSON: Good morning, Judge.

THE COURT: Good morning.

MS. ANDERSON: How are you doing?

THE COURT: I'm good.

MR. WATERS: Good morning, Your Honor.

THE COURT: The coffee is cold, but I'm good. All right. So what, we have a --

MS. ANDERSON: Yeah. And I think --

THE COURT: -- garnishment?

MS. ANDERSON: Right. I think we can sum up this part. Let me just show you.

THE COURT: Make announcements just to make sure the court reporter --

MS. ANDERSON: Right. Esther Anderson and Robert Teir. We represent Charles *Store, who is the Power of Attorney for Charles Mcafee.

MR. BLUMROSEN: Good morning, Your Honor. Dean Blumrosen on behalf of the Plaintiffs.

UNIDENTIFIED MALE: Good morning, sir.

THE COURT: Good morning.

*MS. ANDERSON:* And Judge, on this matter, Mr. Blumrosen and I have spoken. And I think that we agree that as far as the writs, that there is no authority to attach the I.R.A. account or the Social Security benefits. And in his response there's really no objection to what we've put forth.

However, he does have insurance with regard to discovery, and I have volunteered to answer any questions that he has. I'll put my client under oath, whatever it is that he needs to be done. But I don't think that that's an issue for today, to -- to use this hearing to compel a previous order of the Court with regard to discovery. And I'll let him speak to that.

But there's also one other issue, which is a notice that was filed with the court yesterday evening by Ms. Duff, and she is the attorney who represents the Estate, and saying that she's not available for today. One, she said she didn't receive notice of today's hearing, and she's not available for the hearing.

When I noticed the hearing, it was only as to the Writ of Garnishment. So it was only the two banks and Mr. --

*MR. BLUMROSEN:* Blumrosen.

*MS. ANDERSON:* I'm sorry. I'm gonna leave that right there (indicating) so I can read your name -- as to Mr. Blumrosen, because they were the only parties on

the -- on the Writ.

And so I'm ready to proceed with an argument if the Court needs one. Like I said, there's no opposition to the basis of the law, which is that they're protected. There are no exceptions to the Social Security benefits or the I.R.A. benefits. One is governed by federal law; the other is governed by state law.

As a matter of fact, I don't even think the Court has any authority to deal with any of those according to the -- the federal law. Everything is exempt from state and federal judicial action.

And so we're asking for the writs to be quashed. And we can go through that in detail if you'd like. I have my client here, and we can prove up the records and prove that the benefits are Social Security and I.R.A. funds.

MR. BLUMROSEN: And Your Honor, I don't think that would be necessary. And I certainly appreciate them coming in on this case. As you know it's been going on for almost -- a little over four years, and it's hard to put this into a vacuum the way that they're doing.

The issue that the Plaintiffs have, Your Honor, as you're we'll aware, is we filed post-judgment discovery. And before I go there, the first argument that I would make to the Court, and it's in my response, is Mr. Store has no standing to bring any claim in this proceeding.

He says he's Power of Attorney for -- I believe he says Charles Mcafee, which I'm not even sure who that is. But maybe that's a typo, but that's also in the order. But I don't believe -- they haven't intervened.

They -- they appear to be making an appearance on behalf of someone who claims to have the Power of Attorney for Mr. Mcafee. If that's the case, they should have intervened in that capacity, but they didn't do that.

Substantively, on -- on her motion, I think she represented to the Court accurately if, in fact, those funds are his retirement account and if, in fact, those funds are his Social Security benefits, then I'm -- I'm not arguing with that.

Where I have an argument, Your Honor, is we filed post-judgment discovery after we got the $2 million verdict against Mr. Mcafee. And as you're well aware, they didn't respond to it. That's the point in time where the Defendant has the ability to characterize his assets, to tell us what he has, what the character of them is, and ask very detailed questions about that.

As you're aware, Mr. Bennett and Mr. Forrest (phonetic) both wanted to withdraw. And what they said was, "We're not getting paid. We're not getting along with our client. He doesn't have any money. We want to withdraw." I objected and we had a hearing on that, because there was pending

post-judgment discovery.

And all of them asked about his assets, including his retirement benefits, everything characterizing all of his assets. Well, the Court granted the Motions to Withdraw, but you also granted our Motion to Compel on June the 26th of 2014, ordering Mr. Mcafee to produce all documents, because they never filed any objections to it, and to answer the Interrogatories.

Well, Mr. Mcafee has never answered any of the Interrogatories that were ordered to be answered, all, again, asking to characterize his assets.

Mr. Bennett, on July 10th, did respond to the Court's order to -- the Request for Production. And what he said in every single Response to Request for Production is, "No documents are available." So I find it quite fantastic and miraculous that when we then proceed to garnishment, all the sudden, apparently Mr. Mcafee does have money to hire counsel, he does have documents available to characterize his assets.

So they then file their Motions to Quash the Garnishments. I assume that she's not here doing this of her own free will. I assume she's getting paid, which she should get paid.

But as a judgment creditor of a man who's been convicted of murder and who has a judgment against him, he

should be required to comply with all the civil rules as any other judgment defendant. And part of that is to answer the post-judgment discovery.

What I would ask the Court to do, if the Court should find Mr. Store has standing, which I don't believe he does, is to abate this hearing, force -- if they're entering on behalf of Mr. Mcafee, force Mr. Mcafee to comply with the court order that was entered on June 26th and provide us with all of his assets, not just the ones that he wants to protect and make sure that he can hire lawyers to protect them.

He should be required to tell us -- and we've asked him for transfers, because we -- we have suspicion that money has been transferred.

Finally, and I put this in my response and I believe Ms. Duff put this in her Notice to the Court that she filed yesterday, and I've -- I've shared this this morning: As the Court is aware, we have a wrongful death judgment, and we're only entitled to some assets.

We don't believe we are entitled to his retirement account as judgment creditors on a wrongful death case. Ms. Duff has explained to me that the Estate does, in fact, have claims against the retirement account. I'm not sure whether or not she has -- the Estate has claims on their Social Security benefits or not.

But what she was fearful of, and I believe that's why she filed something yesterday and I put it in my response, we certainly don't want the Court to release any funds.

We're not asking the Court to release any funds to us here today, but we don't want the Court to release the funds that are held in the retirement account or the Social Security account. And as I understand it, in the Estate they already have a freeze on those accounts, anyway.

So what we would prefer to do is if they are making appearance on behalf of Mr. Mcafee, not -- not Charles Store, that they provide us with the documents that have been ordered to provide, that would characterize his assets.

And at that point in time, once we have a global picture of what his assets are, including documents and transfers and things of that nature, and that the Estate has come to a resolution as to what they believe they're entitled to of the retirement benefits and the Social Security benefits, I believe we can agree that -- on -- on most of it.

There are some assets at least that G.M.S. provided to the Court, that I don't think are in a retirement account. But again I -- I don't think it's the appropriate time to get into garnishment yet since they haven't told us what their assets are.

MS. ANDERSON: May I respond, Your Honor?

*THE COURT:* Yes.

*MS. ANDERSON:* And just so that it's clear, we do represent Mr. Store as the agent for Mr. Mcafee only, not Mr. Mcafee directly. With regard to standing, we believe that the agent does have standing. Before filing this, we filed an entry of appearance in this cause. There -- there's nothing to intervene in, because there is no pending action.

My understanding is that the wrongful death suit is over. There was a final judgment. They were awarded damages in the millions of dollars. So there -- there's nothing to intervene in.

But I did want y'all to know that we were here and were open to working with you, and so there was an Entry of Appearance filed. And there was no objection to that Entry of Appearance. We then filed the Motion to Quash the Writs of Garnishment.

Moving past that, I mean, I've explained to Mr. Blumstrum (sic) I've hoped that he was happy that we were here, because we're more than willing to help and get everything resolved. But that's not what today is about. That's a separate issue.

Mr. Blumrosen filed these Writs of Garnishment. He sent them to the banks. We're responding to the Writ of Garnishment, and that's the only thing that's before the

Court.

He agrees that they are not entitled to the I.R.A. assets or the Social Security assets, so we expect that the Court will enter the order quashing the two Writs.

With regard to the discovery -- and keep in mind, Judge, that we only learned of these things yesterday upon receiving the two -- the filings. I think it was mid-afternoon and -- and yesterday evening that we were doing this.

So in looking at the timeline as to what happened in the underlying case, it is correct that there was post-judgment discovery served by Mr. Blumrosen for the Plaintiffs, not the Estate.

With that, the -- there were two attorneys who represented Mr. Mcafee, and both filed a Motion to Withdraw. This was after the discovery was served. Then there was an objection to that because -- and this is very important -- in the Application to Withdraw, Mr. Mcafee did not put in that there was outstanding discovery. He listed other things, but he didn't put that in.

Mr. Blumrosen objected to that, but, of course, Mr. Mcafee is in prison and isn't hearing all of this. I don't know whether the attorney ever communicated that to him or not. Our agent's position is that he knew nothing about the discovery.

After that, the second attorney -- the Court let him go. Then the second attorney filed another Application to Withdraw. And in that order, Judge, it was written that any future notices needed to go directly to the Defendant.

And so there has been no communication by Mr. Blumrosen or his office, that I'm aware of, and I'm sure you'll correct me if I'm wrong, directly to the Defendant saying, "Hey, you -- there's this order. You haven't complied with the order. Give me responses to the discovery."

There has been no action on Mr. Blumrosen's part to attempt to follow up on the discovery with Mr. Mcafee.

THE COURT: So what have -- what have you filed in this cause, just the Motion to Quash?

MS. ANDERSON: A Motion to Quash the two Writs. That's it.

THE COURT: And where's the Power of Attorney? Has that ever been produced or referenced -- well, I mean, I know it's referenced, but where is it?

MS. ANDERSON: And quite frankly, I didn't think that my or Mr. Store's word would be questioned. But yes, we'll -- we'll certainly --

THE COURT: Oh, yeah.

MS. ANDERSON: -- show --

THE COURT: Oh, yeah.

MS. ANDERSON: We'll certainly show --

*THE COURT:* And not -- not that it's you.

*MS. ANDERSON:* -- a copy.

*THE COURT:* But I mean, you're -- I mean, you're coming into court on a basis of a certain document. I mean, I --

*MS. ANDERSON:* And Your Honor, I understand that. It's just this is --

*THE COURT:* You know, I don't think -- you know, you're an attorney and everybody is a professional and all that, but -- but I don't think I could operate if I just sat there and said, "Okay. I believe everybody and everything everybody says, and you don't have to support some of the things" -- I mean, when -- have you ever -- when's the first time you heard of Mr. Store?

*MR. BLUMROSEN:* I've heard of Mr. Store because Mr. Bennett, in his hearing, referenced him.

*THE COURT:* He was a previous person referenced and --

*MR. BLUMROSEN:* He referenced him, but I'll -- I'll just leave it at that.

*THE COURT:* Okay.

*MR. BLUMROSEN:* I've heard of Mr. Store because I've been working on the case for four years.

*THE COURT:* Well, I --

*MR. BLUMROSEN:* I've known for a long time

who he was.

THE COURT: Well, here's my --

MS. ANDERSON: And Judge, we filed this a pretty good ways back and gave plenty of notice, and then I get this yesterday afternoon, you know, this standing question. I -- you know, had he just called or asked --

THE COURT: Well, I mean, I'm -- I'm inclined to abate this for two weeks and see what y'all can discuss with each other. I mean, it seems to me Ms. Anderson may actually facilitate something that you haven't learned yet; I mean, may actually help you get what you should have gotten under your Motions to Compel.

MS. ANDERSON: Well -- and Your Honor, so that we don't come here and just talk about it again in two weeks --

THE COURT: Because --

MS. ANDERSON: -- I will let the Court know that I have told Mr. Blumrosen everything I have. One, the Estate has filed four inventories. They have all of the information. My client knows of nothing else.

And -- and I was saddened to hear you make the representation that we say we don't have anything, yet we filed something with our Writ.

I explained to him that my client went to the bank, as the agent, and obtained those documents. He didn't have any

documents, ever, to turn over, and he knew that before he just said that to the Court, so -- that he didn't --

THE COURT: Well, I'm going to --

MS. ANDERSON: -- and he doesn't.

MR. BLUMROSEN: Just to make sure that you understand, I'm talking about the previous attorneys said they didn't have any documents. I wasn't referencing you.

MS. ANDERSON: Uh-huh.

MR. BLUMROSEN: I want to make sure you understand that.

THE COURT: Okay.

MR. BLUMROSEN: I'm just talking about --

MS. ANDERSON: But it showed up in the document that I filed.

MR. BLUMROSEN: I'm just simply saying that the Court was here when Mr. Bennett said, "We don't have any documents. We don't have any discovery. We have nothing." And I just find it amazing that apparently, Mr. Mcafee has money to pay new attorneys. And when they need documents, you -- you -- I understand Mr. Store went to the banks and got the documents.

THE COURT: Well, it --

MS. ANDERSON: Well, let -- and let me just --

THE COURT: Aside -- let's go backtrack. It

seems to me there ought to be some kind of Motion to Enter Appearance on Mr. Store's behalf that sort of explains, maybe even verified, how he is officially involved in all this, how he is now standing in the shoes of Mr. Mcafee.

And then secondarily there's a -- there's a $2 million judgment, and Mr. Mcafee is going to do everything he's required to do to produce documents or answer for one way or the other about what his assets are and what the transactions have been, what he's been involved in.

There's going to be full disclosure. I don't know how -- I mean, it has been a four-year --

MS. ANDERSON: Well, and here --

THE COURT: -- ordeal.

MS. ANDERSON: -- here's -- here's what can happen, though, after this hearing -- I've made it clear that I represent the agent. And if it's --

THE COURT: I know.

MS. ANDERSON: And -- and --

THE COURT: But you're -- you're saying that as though it somehow insulates you from --

MS. ANDERSON: No, no, no.

THE COURT: -- the fact that he is connected to a guy convicted of murder, with a $2 million judgment, civil judgment against him.

MS. ANDERSON: I'm not here to --

THE COURT: It doesn't. I mean --

MS. ANDERSON: -- retry that issue.

THE COURT: -- if you're going to stand in those shoes, I'm going to treat you as though he was Mr. Mcafee, essentially.

MS. ANDERSON: Okay. And I don't --

THE COURT: If that's --

MS. ANDERSON: I don't have a problem with that, Judge. But I made an entry of appearance with regard to the only thing that was pending in this court, which were the two Writs of Garnishment.

THE COURT: Right. And -- and the garnishment --

MS. ANDERSON: Okay. And so that's what I --

THE COURT: -- was not necessarily -- I don't think -- maybe -- correct me if I'm wrong, but when you did it, you didn't say, "I'm trying to garnish Social Security and I.R.A. benefits."

MR. BLUMROSEN: No, Your Honor.

MS. ANDERSON: We had no -- we know we didn't do it, Judge.

THE COURT: So he -- he --

MS. ANDERSON: We're not here to --

THE COURT: No, but he's -- so you're saying -- I think you're telling me that all these accounts

are either Social Security or I.R.A.

*MS. ANDERSON:* No.

*UNIDENTIFIED MALE:* Not all, Your Honor.

*MS. ANDERSON:* No.

*THE COURT:* Okay. So then why is his Writ --

*MS. ANDERSON:* Judge, I'm not --

*THE COURT:* -- not good as to these non-exempt assets?

*MS. ANDERSON:* Well, because in our order -- and we asked if you wanted the order ahead of time and were instructed to just bring it. But we went ahead and filed one yesterday. It only talks about the Social Security account and the I.R.A. We have no claim, under the Writs, to the other accounts. We know that they are attachable.

All I'm talking about are two accounts, the Social Security and the I.R.A. And I -- I -- I thought -- you know, in the Motion, it only talks about Paragraph A as a Social Security account and Paragraph B is the I.R.A. account. Those are the only two ones.

And if I need to make it clearer, I certainly would -- would do that. I put the G.M.S. account in an Individual Retirement Account that qualifies for the end -- end -- federal income tax deferral.

*THE COURT:* So what you're -- and just to make it clear, what G.M.S. filed with the Court -- and the

last page has these three accounts on it, one of them is the 228,000 --

MS. ANDERSON: Uh-huh.

THE COURT: -- which is the retirement account. The other one is the 6,694, which I don't believe is a retirement account.

MS. ANDERSON: And we have no claim --

THE COURT: And the other one is the $1600.00, which I don't believe is a retirement account, either. And so that -- I don't think those are at issue. I think we are eventually going to get those.

But one issue that the Court has hit on, that also -- you've referenced our conversations in the hallway. You know, you had also referenced if we're -- you know, you're here only on the garnishment. You're here for that only.

And -- and the Court has hit on exactly what our problem is. You know, she wants to make an appearance on behalf of the agent, on behalf of Mr. Mcafee, but "I don't want to have to answer all these other discovery things that are" -- you know, to say that there's not an ongoing case, we have an ongoing case that she has intervened in -- well, hasn't intervened in but has filed a Notice of Appearance in. The ongoing case is post-judgment discovery in this matter.

MS. ANDERSON: And Judge --

*THE COURT:* And so what I --

*MR. BLUMROSEN:* Is that really your position, that you're just here on this garnishment?

*MS. ANDERSON:* Until yesterday, the garnishment is the only thing --

*UNIDENTIFIED MALE:* That's (inaudible) --

*MS. ANDERSON:* -- that I knew about -- excuse me? What did you say?

*UNIDENTIFIED MALE:* That -- that's (inaudible) --

*THE COURT:* Just talk to me.

*MS. ANDERSON:* I'm -- I'm trying to listen to him, too, Judge. The only thing that I knew about were the two citations on the Writs of Garnishment. That is all that is addressed in the Motion. That's all that's addressed in the order.

Now, yesterday afternoon and early evening, we received a response from Mr. Blumrosen and the other document from the estate attorney. So we looked into it.

What I'm saying is that, you know, we talk about, "How does he have money to pay me," which is really none of anyone's business, but I'm going to address it because it puts a false light.

Mr. Mcafee is not paying me. I've not been paid anything from Mr. Mcafee's assets. Okay? So he's not

paying. He doesn't have access to any money. And so I was retained by the agent, with his funds, to address a particular issue. And so when I'm saying --

THE COURT: Wow.

MS. ANDERSON: -- "How can I come into this" or --

THE COURT: Gosh. That just --

MS. ANDERSON: -- "How am I going to take over this whole project and solve the problems of the world and be as generous as I'm being, if there's no money to pay me" --

THE COURT: Well, I mean, it just -- you know, I don't know. It just seems like kind of cherry picking where you want to be and where you don't want to be. And -- and again, I think -- actually, I think there should be a Motion to Show Authority, and we should address all that -- that issue about your client's standing to be here at all.

So that's why I want to abate this. If y'all want to talk in the next two weeks, I'm not -- I'm just going to put it on hold. And y'all can talk and decide and figure out where everybody stands. And then maybe you can address this issue about what your involvement really will be and the Power of Attorney's authority to even be here.

MS. ANDERSON: And -- and you know -- and

if -- and if we're --

THE COURT: And so I --

MS. ANDERSON: -- not involved --

THE COURT: -- that's what I'm doing.

MS. ANDERSON: Judge, if we're not involved, and that's fine, the Court does have these documents before it. It's clear under the federal and state law. So I mean, it could be --

THE COURT: Well, I don't think --

MS. ANDERSON: -- that the problems --

THE COURT: -- we have any argument about that. I'm just --

MS. ANDERSON: Right.

THE COURT: -- saying that --

MS. ANDERSON: So if we're not involved, the -- the issues don't get resolved.

THE COURT: But the garnishment is good as to non-exempt assets.

MS. ANDERSON: That's all we're looking for, two accounts.

THE COURT: And so --

MS. ANDERSON: I mean, that's not going to change now or two weeks from now or two years from now, no matter what the discussions are.

THE COURT: Right. But when I -- when I --

it's not a complete quash if -- if certain assets are --

*MS. ANDERSON:* I'm not asking --

*THE COURT:* -- seizable.

*MS. ANDERSON:* -- for a complete quash, Judge.

*THE COURT:* Okay.

*MS. ANDERSON:* And -- and if I've not made that clear, then I'll look at it again.

*THE COURT:* But it -- let me look at your order. Frankly, I'd rather -- because you seem to be saying that you have this intention to cooperate in terms of enlightening Mr. Blumrosen about Mr. Mcafee's assets, maybe I'm misstating that.

But I think that's -- that's the first impediment, is for -- for Mr. Blumrosen to have an understanding, and even the Executor or Administrator of the Estate, to have a complete understanding about what potential assets are there and what belongs to the Estate or what would be available, that Mr. Mcafee owns, to satisfy a $2 million judgment --

*MS. ANDERSON:* I think it --

*THE COURT:* -- on behalf of the parents.

*MS. ANDERSON:* Yeah. I understand using that as leverage. You know, going two weeks, not signing the Writ, is leverage, so I'll do that.

*THE COURT:* No, I don't -- I'm not trying to

use it as leverage. I'm -- four years and you -- you know, like you said, you just walked in here and that's fine. But I mean, four years have gone by. Is it four years?

MR. BLUMROSEN: She was killed in May of 2010.

THE COURT: And what was the judgment -- when was the judgment entered, though?

MR. BLUMROSEN: April of 2014.

THE COURT: Okay. So judgment April 2014, I guess we'll be pushing -- or getting close to a year pretty soon.

MS. ANDERSON: And -- and let me just say --

THE COURT: But, I mean, nothing is -- you have a guy sitting in prison, who's sort of insulated himself from disclosure for a judgment that was based on an act of murder. And I mean, it's offensive. It's extremely offensive to me.

I mean, I want -- I've -- I've told everybody this: I mean, I'm a full disclosure guy. Put the cards on the table, and what's there is there. And I -- I think Mr. Blumrosen is entitled to know all transactions, all things that Mr. Mcafee may have orchestrated or not relating to his assets.

MS. ANDERSON: And I agree.

THE COURT: And he's in the dark. He's been

in the dark, and he continues to be in the dark, except now we know there are two exempt assets.

MS. ANDERSON: Here -- here's the deal, Judge: If he has no money, he can't afford me to help him.

THE COURT: I know.

MS. ANDERSON: If -- and if the Writ --

THE COURT: I get it; I get it. But now you're coming in on a --

MS. ANDERSON: But if the Writ is granted --

THE COURT: -- on the certain protective basis for an individual who claims to have a Power of Attorney, and you're going to sort of say, "I can -- I can come in and cherry pick when I'm going to respond and when I'm not going to respond. But if you want something else, I'm going to stand in the shoes of Mr. Mcafee for this, but I'm not going to stand in his shoes for that. I'm just going to kind of" --

MS. ANDERSON: Well --

THE COURT: -- "cherry pick where I want to be."

MS. ANDERSON: Well, to make it clear, Judge --

THE COURT: I -- I just don't -- if the Power of Attorney says that he has full authority to stand in the shoes of Mr. Mcafee, then that's the way it's going to be.

MS. ANDERSON: Yeah. And I need the Court to understand I have not cherry picked anything.

THE COURT: I'm -- look, it's -- yeah, you have, but I don't -- I'm not saying --

MS. ANDERSON: I didn't even know about this --

THE COURT: -- there's something nefarious --

MS. ANDERSON: -- until he filed yesterday.

THE COURT: I'm not saying there's something nefarious in what you did or anything. But I'm saying as I look at it right now, that either he's -- he's -- either the Power of Attorney is all in or he's all out. That's my position.

MS. ANDERSON: Okay. So --

THE COURT: So --

MS. ANDERSON: Do you want a revised order or not?

THE COURT: No. I just want to abate it for two weeks, and then y'all -- I'm going to ask y'all to come back and we'll sort of call it a status report.

MR. BLUMROSEN: Thank you, Your Honor.

THE COURT: All right.

MS. ANDERSON: And in the meantime -- in the meantime, I assume the Writs will just float? I mean, you're not going to go push to collect on them.

MR. BLUMROSEN: Absolutely not. I wouldn't do that.

THE COURT: Okay. So on the record --

MR. BLUMROSEN: No.

THE COURT: -- we're just maintaining status quo for two weeks. We're going to see if there's any -- first of all, you're going to have to clarify your authority as to this case and this matter, and then y'all can communicate as you choose.

MS. ANDERSON: And if -- and if it's -- just so that you understand, because I know what I'm hired for.

THE COURT: I know. I'm not -- I'm not really crude. I'm just saying there's going to be --

MS. ANDERSON: Well, I mean, there --

THE COURT: I think, from my perspective --

MS. ANDERSON: I may not be here in two weeks --

THE COURT: -- it's going to --

MS. ANDERSON: -- is what I'm saying --

THE COURT: -- be all in or all out.

MS. ANDERSON: -- you know. Right. All in or all out.

THE COURT: And so you're going to have to figure out where you stand, too.

MS. ANDERSON: As long as y'all understand

that --

THE COURT: Okay.

MS. ANDERSON: -- that I'm, you know --

THE COURT: And -- and I --

MS. ANDERSON: -- with no money. So --

THE COURT: I understand.

MR. BLUMROSEN: To make sure it's clear on the record, I have no intention of doing anything on these Writs until we have an order from the Court.

MR. TEIR: All right. Thank you.

THE COURT: Thank y'all. Thank y'all for coming.

(Proceedings concluded.)

STATE OF TEXAS

COUNTY OF HARRIS

I, Sheryl E. Stapp, Deputy Official Reporter in and for the Probate Number 1 Court of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered, admitted, and/or requested by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $ 225.00 and was paid by _____Anderson Pfeiffer, PC_____.

WITNESS MY OFFICIAL HAND on this the __4th__ day of _____August_____, 2015.

SHERYL E. STAPP, C.S.R., R.P.R.
Texas C.S.R. #6227 -- Exp. 12/31/16
Deputy Official Court Reporter
Probate Court Number One
201 Caroline, 6th Floor
Houston, Texas 77002
Telephone: 713-368-6700

**$**

$1600.00 [1] 19/9
$2 [4] 6/15 16/5 16/23 23/19
$2 million [1] 6/15

**'**

'ROB [1] 2/19

**0**

00792332 [1] 2/11
00797940 [1] 2/19
02517900 [1] 2/4

**1**

10th [1] 7/12
12/31/16 [1] 29/23
16 [1] 29/23

**2**

200 [2] 2/12 2/20
201 [1] 29/24
2010 [1] 24/5
2014 [3] 7/6 24/8 24/9
2015 [2] 1/19 29/20
225.00 [1] 29/17
228,000 [1] 19/2
26th [2] 7/5 8/8
281.488.6535 [1] 2/13
2903 [2] 2/13 2/21

**3**

396,935 [1] 1/2

**4**

4615 [1] 2/5
4th [1] 29/19

**5**

517 [2] 2/12 2/20

**6**

6,694 [1] 19/5
6227 [1] 29/23
6700 [1] 29/25
6th [1] 29/24

**7**

713-368-6700 [1] 29/25
713.524.2225 [1] 2/6
7162 [1] 2/6
77002 [1] 29/25
77027-7162 [1] 2/6
77539-2903 [2] 2/13 2/21

**8**

832.365.1191 [1] 2/21
845 [2] 2/12 2/20
850 [1] 2/5
8th [1] 1/19

**A**

abate [4] 8/6 14/8 21/19 26/18
ability [1] 6/18
about [20] 6/20 7/2 10/21 11/25 14/14 15/6
 15/12 16/8 18/12 18/15 18/17 20/7 20/13
 20/20 21/17 21/23 22/11 23/12 23/17 26/5
above [3] 1/20 29/6 29/10
above-styled [1] 29/10
above-titled [1] 1/20
Absolutely [1] 27/1
access [1] 21/1
according [1] 5/9
account [15] 4/4 6/11 8/21 8/23 9/6 9/7 9/21

18/13 18/18 18/19 18/21 18/22 19/5 19/6
 19/9
accounts [6] 9/8 17/25 18/14 18/15 19/1
 22/20
accurately [1] 6/10
act [1] 24/16
action [3] 5/11 10/8 12/10
actually [3] 14/10 14/11 21/15
address [4] 20/22 21/2 21/16 21/22
addressed [2] 20/15 20/15
Administrator [1] 23/16
admitted [1] 29/14
afford [1] 25/4
after [4] 6/15 11/16 12/1 16/15
afternoon [3] 11/8 14/5 20/17
again [5] 7/11 9/22 14/14 21/15 23/8
against [4] 6/16 7/25 8/23 16/24
agent [6] 10/3 10/5 14/25 16/16 19/18 21/2
agent's [1] 11/24
agree [3] 4/2 9/18 24/24
agrees [1] 11/2
ahead [2] 18/10 18/11
all [34]
almost [1] 5/19
along [1] 6/23
already [1] 9/8
also [5] 4/14 6/3 7/5 19/12 19/14
am [1] 21/8
amazing [1] 15/18
and/or [1] 29/14
ANDERSON [5] 2/11 2/12 3/19 14/9 29/18
announcements [1] 3/17
another [1] 12/2
answer [5] 4/8 7/7 8/2 16/7 19/19
answered [2] 7/9 7/10
any [19] 4/8 5/9 5/9 5/25 6/24 7/7 7/9 8/1 9/3
 9/4 12/3 14/25 15/7 15/16 15/17 21/1 22/11
 27/6 29/14
anyone's [1] 20/22
anything [5] 14/22 20/25 26/2 26/10 28/8
anyway [1] 9/8
apparently [2] 7/17 15/18
appear [1] 6/5
appearance [9] 6/5 9/10 10/6 10/15 10/16
 16/2 17/9 19/17 19/22
APPEARANCES [1] 2/1
Application [2] 11/18 12/2
appreciate [1] 5/17
appropriate [1] 9/22
April [2] 24/8 24/9
are [26] 3/8 5/5 5/15 6/11 6/11 7/15 8/20 9/6
 9/9 9/14 9/20 9/21 9/24 11/2 16/8 18/1 18/14
 18/15 18/19 19/10 19/11 19/20 22/24 23/1
 23/17 25/2
arguing [1] 6/12
argument [4] 5/2 5/23 6/14 22/11
as [32]
Aside [1] 15/25
ask [3] 6/19 8/4 26/19
asked [4] 7/2 8/12 14/6 18/10
asking [4] 5/12 7/11 9/4 23/2
assets [22] 6/18 7/2 7/4 7/11 7/19 8/9 8/19
 9/12 9/14 9/20 9/24 11/3 11/3 16/8 18/8
 20/25 22/18 23/1 23/12 23/17 24/23 25/2
assume [3] 7/21 7/22 26/24
attach [1] 4/4
attachable [1] 18/14
attempt [1] 12/11
attorney [15] 2/15 2/23 3/21 4/16 6/1 6/6
 11/23 12/1 12/2 12/17 13/9 20/19 25/12
 25/24 26/12
Attorney's [1] 21/24
attorneys [3] 11/14 15/6 15/19

August [1] 29/20
authority [6] 4/3 5/9 21/16 21/24 25/24 27/7
available [5] 4/17 4/19 7/15 7/18 23/18
awarded [1] 10/10
aware [5] 5/22 6/16 6/21 8/18 12/6

**B**

back [2] 14/4 26/20
backtrack [1] 15/25
bank [1] 14/24
banks [3] 4/21 10/24 15/20
Bar [3] 2/4 2/11 2/19
based [1] 24/15
basis [3] 5/4 13/4 25/11
be [29] 1/20 4/10 5/12 5/17 6/5 7/10 8/1 8/12
 12/20 16/1 16/10 21/10 21/14 21/14 21/16
 21/17 21/23 21/24 22/8 23/10 23/18 24/10
 25/1 25/20 25/25 27/13 27/16 27/20 29/9
because [14] 4/25 6/25 7/7 8/13 10/7 10/20
 11/17 13/16 13/23 14/16 18/9 20/22 23/10
 27/11
been [13] 5/18 7/24 8/14 9/12 12/5 12/10
 12/17 13/23 16/9 16/11 20/24 24/25
before [6] 1/21 5/23 10/5 10/25 15/1 22/6
behalf [8] 3/23 6/6 8/7 9/10 16/2 19/18 19/18
 23/21
being [1] 21/10
believe [12] 6/1 6/4 8/5 8/15 8/20 9/1 9/16
 9/18 10/5 13/11 19/5 19/9
belongs [1] 23/18
benefits [10] 4/4 5/5 5/6 5/15 6/12 7/3 8/25
 9/17 9/18 17/18
Bennett [4] 6/21 7/12 13/16 15/16
BLUMROSEN [15] 2/4 2/5 3/23 4/2 4/22
 4/25 10/23 11/12 11/21 12/5 14/18 20/18
 23/12 23/15 24/21
Blumrosen's [1] 12/10
Blumstrum [1] 10/19
both [2] 6/22 11/15
bring [2] 5/25 18/11
business [1] 20/22

**C**

C.S.R [2] 29/22 29/23
call [1] 26/20
called [1] 14/6
came [1] 1/20
can [14] 3/15 4/24 5/13 5/14 8/10 9/18 14/8
 16/14 21/5 21/21 21/22 25/12 25/12 27/8
can't [1] 25/4
capacity [1] 6/8
Card [3] 2/4 2/11 2/19
cards [1] 24/19
Caroline [1] 29/24
case [9] 5/18 6/7 8/21 11/11 13/23 19/20
 19/21 19/23 27/8
cause [5] 1/2 1/20 10/6 12/13 29/10
certain [3] 13/4 23/1 25/10
certainly [5] 5/17 9/3 12/21 12/25 18/20
certify [3] 29/6 29/12 29/16
chambers [1] 29/11
change [1] 22/23
character [1] 6/19
characterize [4] 6/18 7/11 7/18 9/12
characterizing [1] 7/3
Charles [8] 2/15 2/16 2/23 2/24 3/20 3/21
 6/2 9/10
cherry [4] 21/13 25/13 25/19 26/2
choose [1] 27/9
citations [1] 20/14
civil [2] 8/1 16/24
claim [3] 5/25 18/13 19/7
claims [4] 6/6 8/23 8/24 25/11

## C

clarify [1] 27/7
clear [7] 10/2 16/15 18/25 22/7 23/8 25/21 28/7
clearer [1] 18/20
client [5] 4/9 5/14 6/23 14/20 14/24
client's [1] 21/17
close [1] 24/10
coffee [1] 3/11
cold [1] 3/11
collect [1] 26/25
come [5] 9/16 14/14 21/5 25/13 26/19
coming [4] 5/18 13/4 25/8 28/12
commence [1] 3/1
communicate [1] 27/9
communicated [1] 11/23
communication [1] 12/5
compel [3] 4/11 7/5 14/12
complete [3] 23/1 23/4 23/17
complied [1] 12/8
comply [2] 8/1 8/7
computerized [1] 1/23
concluded [1] 28/13
connected [1] 16/22
contains [1] 29/6
continues [1] 25/1
conversations [1] 19/13
convicted [2] 7/25 16/23
cooperate [1] 23/11
copy [1] 13/2
correct [4] 11/11 12/7 17/16 29/7
correctly [1] 29/13
cost [1] 29/16
could [2] 13/10 22/8
counsel [5] 2/8 2/15 2/23 7/18 29/8
COUNTY [4] 1/9 1/22 29/2 29/5
course [1] 11/21
court [37]
Court's [1] 7/12
creditor [1] 7/24
creditors [1] 8/21
crude [1] 27/13

## D

damages [1] 10/11
dark [3] 24/25 25/1 25/1
day [2] 1/19 29/19
deal [2] 5/9 25/3
DEAN [3] 2/4 2/5 3/23
death [3] 8/18 8/21 10/9
DECEASED [1] 1/9
decide [1] 21/21
defendant [4] 6/17 8/2 12/4 12/7
deferral [1] 18/23
Deputy [2] 29/4 29/23
detail [1] 5/13
detailed [1] 6/19
Dickinson [2] 2/13 2/21
did [6] 7/12 10/13 11/18 17/16 20/8 26/10
didn't [11] 4/18 6/8 6/16 11/20 12/19 14/25 15/2 15/7 17/17 17/20 26/5
directly [3] 10/4 12/4 12/7
disclosure [3] 16/10 24/15 24/19
discovery [16] 4/8 4/12 5/22 6/15 7/1 8/3 11/5 11/12 11/16 11/19 11/25 12/9 12/11 15/17 19/19 19/23
discuss [1] 14/8
discussions [1] 22/24
do [12] 6/8 8/4 9/9 10/3 16/6 16/7 17/21 18/21 23/24 26/16 27/2 29/6
document [3] 13/4 15/14 20/18
documents [13] 7/6 7/15 7/18 9/11 9/14 14/25 15/1 15/7 15/17 15/19 15/21 16/7 22/6
does [8] 4/7 7/17 7/18 8/5 8/22 10/5 20/21 22/6
doesn't [4] 6/24 15/4 17/1 21/1
doing [6] 3/8 5/20 7/21 11/9 22/4 28/8
dollars [1] 10/11
don't [33]
done [1] 4/10
Duff [3] 4/15 8/16 8/22

## E

each [1] 14/9
early [1] 20/17
either [4] 18/1 19/10 26/11 26/11
else [2] 14/20 25/14
end [2] 18/22 18/22
enlightening [1] 23/12
enter [2] 11/4 16/1
entered [2] 8/8 24/7
entering [1] 8/6
entitled [5] 8/19 8/20 9/17 11/2 24/21
entry [4] 10/6 10/14 10/15 17/9
essentially [1] 17/5
estate [12] 1/5 3/2 4/16 8/22 8/24 9/7 9/15 11/13 14/19 20/19 23/16 23/18
ESTHER [2] 2/11 3/19
even [6] 5/8 6/2 16/3 21/24 23/15 26/5
evening [3] 4/15 11/8 20/17
eventually [1] 19/11
ever [4] 11/23 12/17 13/13 15/1
every [1] 7/14
everybody [5] 13/9 13/11 13/12 21/22 24/18
everything [6] 5/10 7/3 10/21 13/12 14/18 16/6
evidence [1] 29/7
exactly [1] 19/16
except [1] 25/1
exceptions [1] 5/5
excuse [1] 20/7
Executor [1] 23/16
exempt [4] 5/10 18/8 22/18 25/2
exhibits [1] 29/13
Exp [1] 29/23
expect [1] 11/3
explained [3] 8/22 10/18 14/24
explains [1] 16/2
extremely [1] 24/16

## F

facilitate [1] 14/10
fact [5] 5/8 6/10 6/11 8/22 16/22
false [1] 20/23
fantastic [1] 7/15
far [1] 4/3
fearful [1] 9/1
federal [5] 5/6 5/10 5/11 18/23 22/7
figure [2] 21/21 27/24
file [1] 7/20
filed [21] 4/15 5/22 6/14 7/7 8/16 9/2 10/6 10/15 10/16 10/23 11/15 12/2 12/13 14/3 14/19 14/23 15/14 18/11 18/25 19/22 26/8
filing [1] 10/5
filings [1] 11/7
final [1] 10/10
Finally [1] 8/15
find [3] 7/15 8/5 15/18
fine [2] 22/6 24/2
first [4] 5/23 13/14 23/14 27/7
float [1] 26/24
Floor [1] 29/24
FM [2] 2/12 2/20
follow [1] 12/11
following [1] 1/19

## G (continued from right column)

force [2] 8/6 8/7
foregoing [1] 29/6
Forrest [1] 6/21
forth [1] 4/6
four [7] 5/19 13/23 14/19 16/11 24/1 24/3 24/3
four-year [1] 16/11
frankly [2] 12/19 23/10
free [1] 7/22
freeze [1] 9/8
full [3] 16/10 24/19 25/24
funds [7] 5/15 6/10 6/11 9/3 9/4 9/5 21/2
further [2] 29/12 29/16
future [1] 12/4
Fwy [1] 2/5

## G

G.M.S [3] 9/20 18/21 18/25
garnish [1] 17/17
garnishment [15] 1/14 3/14 4/21 7/16 9/23 10/17 10/23 10/25 17/11 17/13 19/15 20/3 20/5 20/14 22/17
Garnishments [1] 7/21
GARZA [1] 2/11
gave [1] 14/4
generous [1] 21/10
get [9] 7/23 9/23 10/20 14/5 14/11 19/11 22/16 25/7 25/7
getting [4] 6/23 6/23 7/22 24/10
Give [1] 12/9
global [1] 9/13
go [6] 5/13 5/23 12/2 12/4 15/25 26/25
going [26] 5/18 15/3 16/6 16/10 17/3 17/4 19/11 20/22 21/8 21/20 22/22 23/23 25/12 25/13 25/14 25/15 25/17 25/25 26/19 26/25 27/6 27/7 27/13 27/18 27/23
gone [1] 24/3
gonna [1] 4/23
good [12] 3/3 3/6 3/7 3/9 3/10 3/11 3/22 3/24 3/25 14/4 18/7 22/17
Gosh [1] 21/7
got [2] 6/15 15/21
gotten [1] 14/12
governed [2] 5/6 5/7
granted [3] 7/4 7/5 25/9
guess [1] 24/10
guy [3] 16/23 24/14 24/19

## H

had [4] 6/25 14/6 17/20 19/14
hallway [1] 19/13
HAND [1] 29/19
happen [1] 16/15
happened [1] 11/10
happy [3] 3/3 3/5 10/19
hard [1] 5/19
HARRIS [4] 1/9 1/22 29/2 29/5
has [26] 4/9 5/8 5/24 6/18 6/19 7/9 7/25 8/5 8/14 8/22 8/24 8/24 9/15 12/5 12/10 12/17 14/19 15/18 16/11 19/1 19/12 19/16 19/21 19/22 25/4 25/24
hasn't [1] 19/22
have [56]
haven't [4] 6/4 9/23 12/8 14/10
he [42]
he's [10] 6/1 16/6 16/9 17/24 20/25 24/25 24/25 26/11 26/11 26/12
hear [1] 14/21
heard [3] 13/14 13/15 13/22
hearing [10] 1/14 4/11 4/18 4/19 4/20 6/25 8/6 11/22 13/16 16/15
held [3] 1/20 1/21 9/6
help [3] 10/20 14/11 25/4

# H

her [3] 6/9 7/22 8/16
here [18] 5/14 7/21 9/5 10/13 10/20 14/14
15/16 16/12 16/25 17/23 19/15 19/15 20/3
21/17 21/24 24/2 25/3 27/16
here's [4] 14/2 16/14 16/14 25/3
hereby [1] 29/6
Hey [1] 12/8
him [11] 4/13 7/25 8/12 11/24 12/1 13/16
13/19 14/24 16/24 20/13 25/4
himself [1] 24/15
hire [2] 7/17 8/10
hired [1] 27/11
his [20] 4/5 6/11 6/12 6/18 7/2 7/2 7/3 7/11
7/19 8/9 8/20 9/12 9/14 12/6 13/16 16/8 18/5
21/2 24/23 25/16
hit [2] 19/12 19/16
hold [1] 21/21
Honor [11] 3/10 3/22 5/16 5/21 6/14 9/25
13/6 14/13 17/19 18/3 26/21
Honorable [1] 1/21
hoped [1] 10/19
Houston [3] 1/22 2/6 29/25
how [7] 3/8 16/3 16/4 16/11 20/20 21/5 21/8
However [1] 4/7
huh [2] 15/8 19/3

# I

I'd [1] 23/10
I'll [6] 4/9 4/13 13/20 13/20 23/8 23/24
I'm [55]
I've [13] 8/17 8/17 10/18 10/19 13/15 13/22
13/23 13/25 16/15 20/24 23/7 24/18 24/18
I.R.A [9] 4/4 5/6 5/15 11/2 17/18 18/1 18/13
18/16 18/18
impediment [1] 23/14
important [1] 11/17
inaudible [2] 20/6 20/10
inclined [1] 14/7
included [1] 29/9
including [2] 7/2 9/14
income [1] 18/23
indicating [1] 4/24
individual [2] 18/21 25/11
information [1] 14/20
instructed [1] 18/11
insulated [1] 24/14
insulates [1] 16/20
insurance [1] 4/7
intention [2] 23/11 28/8
Interrogatories [2] 7/8 7/10
intervene [2] 10/7 10/12
intervened [4] 6/4 6/8 19/21 19/22
inventories [1] 14/19
involved [5] 16/3 16/9 22/3 22/5 22/15
involvement [1] 21/23
is [63]
isn't [1] 11/22
issue [10] 4/11 4/14 5/21 10/22 17/2 19/10
19/12 21/3 21/17 21/23
issues [1] 22/16
it [52]
it's [18] 5/18 5/19 5/24 9/22 10/2 12/18 13/1
13/7 16/16 22/7 23/1 24/16 24/16 25/25 26/3
27/10 27/18 28/7

# J

JANET [1] 1/7
January [1] 1/19
Judge [15] 1/21 3/6 4/1 11/6 12/3 14/3 17/9
17/21 18/6 19/25 20/13 22/5 23/5 25/4 25/22
judgment [20] 5/22 6/15 7/1 7/24 7/25 8/2

8/3 8/18 8/21 10/10 11/12 16/6 16/23 16/24
19/23 23/19 24/6 24/7 24/9 24/15
judicial [1] 5/11
July [1] 7/12
June [2] 7/5 8/8
June 26th [1] 8/8
just [34]

# K

keep [1] 11/5
killed [1] 24/4
kind [3] 16/1 21/13 25/17
knew [4] 11/24 15/1 20/7 20/13
know [32]
known [1] 13/25
knows [1] 14/20

# L

last [1] 19/1
law [6] 2/5 5/4 5/6 5/7 5/10 22/7
lawyers [1] 8/10
learned [2] 11/6 14/10
least [1] 9/20
leave [2] 4/23 13/20
let [8] 3/16 4/13 12/1 14/17 15/23 15/23 23/9
24/12
let's [1] 15/25
leverage [3] 23/23 23/24 24/1
light [1] 20/23
like [4] 5/3 5/13 21/13 24/2
listed [1] 11/19
listen [1] 20/12
little [1] 5/19
long [2] 13/25 27/25
look [4] 23/8 23/9 26/3 26/11
looked [1] 20/19
looking [2] 11/10 22/19
Loyd [1] 1/21

# M

machine [1] 1/23
made [3] 16/15 17/9 23/7
maintaining [1] 27/5
make [12] 3/17 3/17 5/23 8/10 14/21 15/5
15/9 18/20 18/25 19/17 25/21 28/7
making [2] 6/5 9/9
MALE [4] 3/24 18/3 20/6 20/9
man [1] 7/24
matter [5] 4/1 5/8 19/24 22/24 27/8
may [6] 9/25 14/9 14/11 24/4 24/22 27/16
May of [1] 24/4
maybe [5] 6/3 16/3 17/16 21/22 23/12
MCAFEE [30]
Mcafee's [2] 20/25 23/12
me [19] 3/16 8/22 12/7 12/9 14/9 15/23 16/1
17/16 17/25 20/8 20/11 20/21 20/24 21/11
23/9 24/12 24/17 25/4 29/11
mean [21] 10/18 12/18 13/3 13/3 13/5 13/13
14/7 14/9 14/11 16/11 17/1 21/12 22/7 22/22
24/3 24/13 24/16 24/18 24/19 26/24 27/14
meantime [2] 26/23 26/24
mid [1] 11/8
mid-afternoon [1] 11/8
MILES [2] 2/4 2/5
million [4] 6/15 16/5 16/23 23/19
millions [1] 10/11
mind [1] 11/5
miraculous [1] 7/16
misstating [1] 23/13
money [9] 6/24 7/17 8/13 15/19 20/21 21/1
21/10 25/4 28/5
more [1] 10/20
morning [8] 3/3 3/6 3/7 3/10 3/22 3/24 3/25

8/17
most [1] 9/19
motion [11] 1/14 6/9 7/5 10/16 11/15 12/13
12/14 16/1 18/17 20/15 21/16
Motions [3] 7/4 7/20 14/12
Moving [1] 10/18
MR [27] 2/4 2/19 4/2 4/21 6/7 6/21 7/6 7/9
7/17 8/7 8/7 10/3 10/4 11/22 12/11 13/22
15/16 15/18 16/6 17/5 19/18 20/18 20/24
20/25 23/19 25/15 25/25
Mr. [29] 4/25 5/24 6/16 6/21 7/12 8/5 9/10
10/3 10/19 10/23 11/12 11/15 11/18 11/21
12/5 12/10 12/20 13/14 13/15 13/16 14/18
15/20 16/2 16/4 23/12 23/12 23/15 24/21
24/22
Mr. Bennett [3] 6/21 7/12 13/16
Mr. Blumrosen [9] 4/25 10/23 11/12 11/21
12/5 14/18 23/12 23/15 24/21
Mr. Blumrosen's [1] 12/10
Mr. Blumstrum [1] 10/19
Mr. Mcafee [6] 6/16 9/10 11/15 11/18 16/4
24/22
Mr. Mcafee's [1] 23/12
Mr. Store [6] 5/24 8/5 10/3 13/14 13/15
15/20
Mr. Store's [2] 12/20 16/2
MS [1] 2/11
Ms. [4] 4/15 8/16 8/22 14/9
Ms. Anderson [1] 14/9
Ms. Duff [3] 4/15 8/16 8/22
murder [3] 7/25 16/23 24/16
my [13] 4/9 5/13 5/24 8/15 9/2 10/9 12/20
14/2 14/20 14/24 26/12 27/15 29/19

# N

name [1] 4/24
nature [1] 9/15
necessarily [1] 17/15
necessary [1] 5/17
need [3] 15/19 18/20 26/1
needed [1] 12/4
needs [2] 4/10 5/3
nefarious [2] 26/7 26/10
never [2] 7/7 7/9
new [3] 3/3 3/5 15/19
next [1] 21/20
no [29] 1/2 4/3 4/5 5/3 5/5 5/24 7/14 10/8
10/15 12/5 12/10 16/21 16/21 16/21 17/19
17/20 17/24 18/2 18/4 18/13 19/7 21/10
22/23 23/25 25/4 26/18 27/4 28/5 28/8
non [2] 18/8 22/18
non-exempt [2] 18/8 22/18
none [1] 20/21
not [54]
nothing [6] 10/7 10/12 11/24 14/20 15/17
24/13
notice [5] 4/14 4/18 8/16 14/4 19/22
noticed [1] 4/20
notices [1] 12/4
now [8] 16/4 20/17 22/23 22/23 22/23 25/1
25/7 26/11
NUMBER [6] 1/7 2/4 2/11 2/19 29/5 29/24
numbered [2] 1/20 29/10

# O

oath [1] 4/9
objected [2] 6/24 11/21
objection [3] 4/5 10/15 11/17
objections [1] 7/7
obtained [1] 14/25
occurred [1] 29/10
offensive [2] 24/16 24/17
offered [1] 29/14

## O

office [1]  12/6
Offices [1]  2/5
Official [3]  29/4 29/19 29/23
officially [1]  16/3
Oh [2]  12/22 12/24
Okay [13]  3/2 13/11 13/21 15/11 17/6 17/14 18/5 20/25 23/6 24/9 26/14 27/3 28/2
once [1]  9/13
one [13]  1/7 4/14 4/17 5/3 5/6 14/18 16/7 18/12 19/1 19/5 19/8 19/12 29/24
ones [2]  8/9 18/19
ongoing [3]  19/20 19/21 19/23
only [15]  4/20 4/21 4/25 8/19 10/3 10/25 11/6 17/10 18/12 18/17 18/19 19/15 19/15 20/5 20/13
open [2]  10/14 29/11
operate [1]  13/10
opposition [1]  5/3
orchestrated [1]  24/22
ordeal [1]  16/13
order [14]  4/12 6/3 7/13 8/8 11/4 12/3 12/8 12/9 18/9 18/10 20/16 23/10 26/16 28/9
ordered [2]  7/10 9/12
ordering [1]  7/6
other [12]  4/14 5/6 8/2 11/19 14/9 16/8 18/14 19/5 19/8 19/19 20/18 29/8
ought [1]  16/1
our [7]  6/23 7/5 11/24 14/23 18/9 19/13 19/16
out [5]  21/21 26/12 27/20 27/22 27/24
outstanding [1]  11/19
over [4]  5/19 10/10 15/1 21/9
own [1]  7/22
owns [1]  23/19

## P

page [1]  19/1
paid [5]  6/23 7/22 7/23 20/24 29/18
Paragraph [2]  18/17 18/18
parents [1]  23/21
part [3]  3/16 8/2 12/10
particular [1]  21/3
parties [3]  4/25 29/9 29/15
past [1]  10/18
pay [3]  15/19 20/21 21/10
paying [2]  20/24 21/1
PC [2]  2/12 29/18
pending [3]  6/25 10/8 17/10
person [1]  13/17
perspective [1]  27/15
Pfeiffer [2]  2/12 29/18
phonetic [1]  6/21
pick [2]  25/13 25/19
picked [1]  26/2
picking [1]  21/14
picture [1]  9/14
Plaintiffs [4]  2/8 3/23 5/21 11/13
plenty [1]  14/4
PLLC [1]  2/20
point [2]  6/17 9/13
portions [1]  29/7
position [3]  11/24 20/2 26/13
post [6]  5/22 6/15 7/1 8/3 11/12 19/23
post-judgment [6]  5/22 6/15 7/1 8/3 11/12 19/23
potential [1]  23/17
Power [10]  2/15 2/23 3/20 6/1 6/6 12/16 21/24 25/11 25/23 26/12
prefer [1]  9/9
preparation [1]  29/17
Presiding [1]  1/21

pretty [2]  14/4 24/10
previous [3]  4/12 13/17 15/6
prison [2]  11/22 24/14
PROBATE [3]  1/5 29/5 29/24
problem [2]  17/8 19/17
problems [2]  21/9 22/10
proceed [2]  5/2 7/16
proceeding [1]  5/25
proceedings [6]  1/19 1/23 3/1 28/13 29/8 29/13
produce [2]  7/6 16/7
produced [1]  12/17
Production [2]  7/13 7/14
professional [1]  13/9
project [1]  21/9
protect [2]  8/10 8/10
protected [1]  5/4
protective [1]  25/10
prove [2]  5/14 5/14
provide [3]  8/8 9/11 9/12
provided [1]  9/20
push [1]  26/25
pushing [1]  24/10
put [11]  4/6 4/9 5/19 8/15 8/16 9/2 11/18 11/20 18/21 21/20 24/19
puts [1]  20/23

## Q

qualifies [1]  18/22
quash [7]  1/14 7/20 10/16 12/13 12/14 23/1 23/4
quashed [1]  5/12
quashing [1]  11/4
question [1]  14/6
questioned [1]  12/20
questions [2]  4/8 6/20
quite [2]  7/15 12/19
quo [1]  27/6

## R

R.P.R [1]  29/22
rather [1]  23/10
Rd [1]  2/12
read [1]  4/24
ready [1]  5/2
really [5]  4/5 20/2 20/21 21/23 27/13
receive [1]  4/18
received [1]  20/17
receiving [1]  11/7
record [6]  1/1 27/3 28/8 29/9 29/12 29/17
records [1]  5/14
referenced [7]  12/17 12/18 13/16 13/18 13/19 19/13 19/14
referencing [1]  15/7
reflects [1]  29/13
regard [5]  4/7 4/12 10/4 11/5 17/9
relating [1]  24/22
release [3]  9/3 9/4 9/5
report [1]  26/20
reported [2]  1/23 29/11
reporter [3]  3/18 29/4 29/23
REPORTER'S [4]  1/1 29/9 29/12 29/17
represent [3]  3/20 10/3 16/16
representation [1]  14/22
represented [2]  6/10 11/15
represents [1]  4/16
Request [2]  7/13 7/14
requested [2]  29/8 29/14
required [3]  8/1 8/12 16/7
resolution [1]  9/16
resolved [2]  10/21 22/16
respective [1]  29/14
respond [5]  6/17 7/12 9/25 25/13 25/14

responding [1]  10/24
response [6]  4/5 5/24 7/14 8/15 9/2 20/18
responses [1]  12/9
retained [1]  21/2
retirement [11]  6/11 7/3 8/20 8/23 9/6 9/17 9/21 18/22 19/4 19/6 19/9
retry [1]  17/2
revised [1]  26/16
right [11]  3/12 3/15 3/19 4/24 17/12 22/13 22/25 26/11 26/22 27/21 28/10
ROBERT [3]  2/19 2/20 3/20
rules [1]  8/1

## S

saddened [1]  14/21
said [9]  4/17 5/3 6/22 7/13 13/11 15/2 15/6 15/16 24/2
sat [1]  13/11
satisfy [1]  23/19
say [6]  14/22 17/17 19/20 20/8 24/12 25/12
saying [14]  4/17 12/7 15/15 16/19 17/25 20/20 21/3 22/14 23/10 26/4 26/9 26/10 27/13 27/19
says [4]  6/1 6/1 13/12 25/24
second [2]  12/1 12/2
secondarily [1]  16/5
Security [13]  4/4 5/5 5/15 6/12 8/25 9/7 9/18 11/3 17/17 18/1 18/12 18/16 18/18
see [2]  14/8 27/6
seem [1]  23/10
seems [3]  14/9 16/1 21/13
seizable [1]  23/3
sent [1]  10/24
separate [1]  10/22
served [2]  11/12 11/16
shared [1]  8/17
she [12]  4/16 4/17 4/18 6/9 7/22 8/16 8/24 9/1 9/2 19/17 19/21 24/4
she's [4]  4/17 4/18 7/21 7/22
Sheryl [2]  29/4 29/22
shoes [5]  16/4 17/4 25/15 25/16 25/25
should [8]  6/7 7/23 8/1 8/4 8/12 14/11 21/15 21/16
show [4]  3/16 12/23 12/25 21/16
showed [1]  15/13
sic [1]  10/19
signing [1]  23/23
simply [1]  15/15
since [1]  9/23
single [1]  7/14
sir [1]  3/24
sitting [1]  24/14
so [41]
Social [13]  4/4 5/5 5/15 6/12 8/25 9/6 9/17 11/3 17/17 18/1 18/12 18/15 18/18
solve [1]  21/9
some [4]  8/19 9/20 13/13 16/1
somehow [1]  16/20
someone [1]  6/6
something [6]  9/2 14/10 14/23 25/14 26/7 26/9
soon [1]  24/11
sorry [1]  4/23
sort [4]  16/2 24/14 25/12 26/20
Southwest [1]  2/5
speak [1]  4/13
spoken [1]  4/2
stand [5]  17/3 25/15 25/16 25/24 27/24
standing [7]  5/25 8/5 10/4 10/5 14/5 16/4 21/17
stands [1]  21/22
Stapp [2]  29/4 29/22
state [5]  5/7 5/10 22/7 29/1 29/5

**S**

status [2]  26/20 27/5
Ste [2]  2/5 2/12
stenotype [1]  1/23
Store [11]  2/15 2/23 3/20 5/24 8/5 9/11 10/3 13/14 13/15 13/22 15/20
Store's [2]  12/20 16/2
styled [1]  29/10
Substantively [1]  6/9
sudden [1]  7/17
suit [1]  10/9
Suite [1]  2/20
sum [1]  3/15
support [1]  13/12
sure [8]  3/18 6/2 8/10 8/23 12/6 15/5 15/9 28/7
suspicion [1]  8/13

**T**

table [1]  24/20
take [1]  21/8
talk [5]  14/14 20/11 20/20 21/20 21/21
talking [3]  15/6 15/12 18/15
talks [2]  18/12 18/17
tax [1]  18/23
TEIR [3]  2/19 2/20 3/20
TEIR' [1]  2/19
Telephone [4]  2/6 2/13 2/21 29/25
tell [2]  6/18 8/12
telling [1]  17/25
terms [1]  23/11
TEXAS [6]  1/9 1/22 29/1 29/6 29/23 29/25
than [1]  10/20
Thank [4]  26/21 28/10 28/11 28/11
that [136]
that's [27]  4/10 6/3 6/3 6/7 6/17 9/1 10/21 10/22 10/25 10/25 12/15 17/7 17/14 20/6 20/9 20/15 20/15 21/19 22/4 22/6 22/19 22/22 23/14 23/14 24/2 25/25 26/12
their [3]  7/20 8/24 9/24
them [7]  5/17 6/19 7/2 8/11 10/24 19/1 26/25
then [14]  6/12 7/16 7/20 10/16 11/16 12/2 14/4 16/5 18/5 21/22 23/8 25/25 26/19 27/8
there [26]  4/3 4/24 5/4 5/23 6/25 9/20 10/7 10/7 10/10 10/11 10/14 10/15 11/11 11/14 11/16 11/19 12/5 12/10 13/11 16/1 21/15 23/17 24/20 24/20 25/2 27/14
there's [15]  4/5 4/14 5/3 10/7 10/11 12/8 16/5 16/5 16/10 19/20 21/10 26/7 26/9 27/6 27/13
these [8]  10/23 11/6 17/25 18/7 19/1 19/19 22/6 28/8
they [21]  4/25 6/4 6/5 6/5 6/7 6/8 6/16 6/22 7/7 7/20 9/8 9/9 9/11 9/16 9/23 10/10 11/2 14/19 15/7 15/19 18/14
they're [4]  5/4 5/20 8/6 9/16
thing [4]  10/25 17/10 20/5 20/13
things [6]  9/15 11/6 11/20 13/13 19/19 24/22
think [24]  3/13 3/15 4/2 4/10 5/8 5/16 6/9 9/21 9/22 11/7 12/20 13/8 13/10 17/16 17/25 19/10 19/11 21/15 21/15 22/9 23/14 23/20 24/20 27/15
this [44]
those [9]  5/9 6/10 6/11 9/8 14/25 17/4 18/19 19/10 19/11
though [4]  16/15 16/20 17/4 24/7
thought [1]  18/16
three [1]  19/1
through [1]  5/13
time [6]  6/17 9/13 9/22 13/14 13/25 18/10
timeline [1]  11/10
titled [1]  1/20

today [4]  4/11 4/17 9/5 10/21
today's [1]  4/18
told [3]  9/23 14/18 24/18
too [2]  20/13 27/24
total [1]  29/16
transactions [2]  16/9 24/21
transcription [1]  29/7
transferred [1]  8/14
transfers [2]  8/13 9/15
treat [1]  17/4
TRIAL [1]  1/2
true [1]  29/7
truly [1]  29/13
trying [3]  17/17 20/12 23/25
turn [1]  15/1
two [20]  4/21 11/4 11/7 11/14 12/14 14/8 14/14 17/11 18/15 18/19 20/14 21/20 22/20 22/23 22/23 23/23 25/2 26/19 27/6 27/16
TX [3]  2/6 2/13 2/21
typo [1]  6/3

**U**

Uh [2]  15/8 19/3
Uh-huh [2]  15/8 19/3
under [4]  4/9 14/12 18/13 22/7
underlying [1]  11/11
understand [10]  9/7 13/6 15/6 15/10 15/20 23/22 26/2 27/11 27/25 28/6
understanding [3]  10/9 23/15 23/17
UNIDENTIFIED [4]  3/24 18/3 20/6 20/9
until [3]  20/4 26/8 28/9
up [4]  3/15 5/14 12/11 15/13
upon [1]  11/6
us [6]  6/18 8/8 8/12 9/4 9/11 9/23
use [2]  4/11 24/1
using [1]  23/22

**V**

vacuum [1]  5/20
verdict [1]  6/15
verified [1]  16/3
very [2]  6/19 11/17
volume [1]  29/9
volunteered [1]  4/8

**W**

walked [1]  24/2
want [15]  6/24 9/3 9/5 10/13 15/9 19/19 21/14 21/14 21/19 21/19 24/18 25/14 25/19 26/16 26/18
wanted [2]  6/22 18/10
wants [2]  8/9 19/17
was [31]
wasn't [1]  15/7
way [3]  5/20 16/7 25/25
ways [1]  14/4
we [56]
we'll [6]  5/22 12/21 12/21 12/25 24/10 26/20
we're [15]  5/12 6/22 6/23 8/19 9/4 10/20 10/24 17/23 19/14 22/1 22/5 22/15 22/19 27/5 27/6
we've [2]  4/6 8/12
weeks [8]  14/8 14/15 21/20 22/23 23/23 26/19 27/6 27/17
well [19]  6/16 7/4 7/9 12/18 13/24 14/2 14/7 14/13 15/3 15/22 15/23 16/12 18/9 19/21 21/12 22/9 25/18 25/21 27/14
went [3]  14/24 15/20 18/11
were [12]  4/25 7/10 10/10 10/13 10/13 10/20 11/8 11/14 17/10 18/10 20/13 29/11
West [1]  2/20
what [39]
what's [1]  24/20

whatever [1]  4/9
when [12]  4/20 7/16 13/13 15/16 15/19 17/16 21/3 22/25 22/25 24/6 25/13 25/13
when's [1]  13/14
where [8]  6/14 6/17 12/18 21/14 21/14 21/22 25/19 27/24
where's [1]  12/16
whether [2]  8/24 11/23
which [11]  4/14 5/4 6/2 7/22 8/5 17/10 19/4 19/5 19/9 20/21 29/10
who [8]  3/20 4/16 6/2 6/6 7/25 11/14 14/1 25/11
who's [2]  7/24 24/14
whole [1]  21/9
why [3]  9/1 18/5 21/19
will [5]  7/22 11/4 14/17 21/23 26/24
willing [1]  10/20
withdraw [6]  6/22 6/24 7/4 11/15 11/18 12/3
WITNESS [1]  29/19
word [1]  12/20
working [2]  10/14 13/23
world [1]  21/9
would [9]  5/17 5/23 8/4 9/9 9/12 12/20 18/20 18/21 23/18
wouldn't [1]  27/1
Wow [1]  21/4
Wright [1]  1/21
Writ [8]  4/20 5/1 10/24 14/23 18/5 23/24 25/6 25/9
writing [1]  29/8
writs [12]  1/14 4/3 5/12 10/16 10/23 11/4 12/15 17/11 18/13 20/14 26/24 28/9
written [1]  12/3
wrong [2]  12/7 17/16
wrongful [3]  8/18 8/21 10/9

**Y**

y'all [10]  10/13 14/8 21/19 21/21 26/19 26/19 27/8 27/25 28/11 28/11
yeah [6]  3/13 12/22 12/24 23/22 26/1 26/3
year [4]  3/3 3/5 16/11 24/10
years [6]  5/19 13/23 22/23 24/1 24/3 24/3
yes [2]  10/1 12/21
yesterday [10]  4/15 8/17 9/2 11/6 11/8 14/5 18/12 20/4 20/17 26/8
yet [3]  9/23 14/10 14/22
you [63]
you'd [1]  5/13
you'll [1]  12/6
you're [20]  5/22 6/16 6/21 13/3 13/4 13/9 16/19 16/19 17/3 17/24 17/25 18/24 19/14 19/15 20/3 25/8 25/12 26/25 27/7 27/23
you've [1]  19/13
your [18]  3/10 3/22 4/24 5/16 5/21 6/14 9/25 13/6 14/12 14/13 17/19 18/3 20/2 21/17 21/23 23/9 26/21 27/7

# Tab 8

January 22, 2015 Transcript

TRIAL COURT CAUSE NUMBER 396,835-401

| | | |
|---|---|---|
| IN RE:  THE ESTATE OF JANET FOLTYN McAFEE, | * * * | IN  THE PROBATE COURT OF |
| ROSEMARY FOLTYN and Jake Foltyn | * * | HARRIS COUNTY, T E X A S |
| THE GMS GROUP, LLC and WOODFOREST NATIONAL BANK, Defendants | * * * * | COURT   NUMBER  (1)  ONE |

STATUS CONFERENCE AND MOTION TO QUASH
WRIT OF GARNISHMENT HEARING

Came to be heard on this the 22nd day of January, 2015, Status Conference and Motion to Quash Wright of Garnishment Hearing, in the above-entitled and numbered cause, and all parties appeared in person and/or being represented by Counsel of Record, before the Honorable Loyd Wright, Judge Presiding.

VOLUME _1_ OF _1_

O R I G I N A L

APPEARANCES

ATTORNEY FOR CHARLES STORER:

Esther Anderson
State Bar No. 00792332
845 FM 517, Suite 200
Dickinson, Texas 77539
Telephone:  831-365-1191

ATTORNEY FOR PLAINTIFFS, ROSEMARY FOLTYN AND
JAKE FOLTYN:

Dean Blumrosen
State Bar No. 02517900
4615 Southwest Freeway, Suite 850
Houston, Texas 77027
Telephone:  713-524-2225

ATTORNEY FOR THE ESTATE OF
ROSEMARY F. McAFEE, DECEASED:

Mary Elizabeth Duff
State Bar No. 06166880
210 Main St.
Richmond, Texas 77469
Telephone:  281-341-1718

THE COURT: The McAfee Estate.

MR. BLUMROSEN: Yes, Your Honor.

THE COURT: So, this was sort of a continuance or a rehearing of the status of where we are?

MR. BLUMROSEN: Yes, Your Honor. We filed an Order which we believe adequately disposes of the garnishment issue that's in the garnishment case. There would be one change that we have spoken with counsel about that we would make and it would be on the paragraph 3 where it says shall immediately send the payment to me and I guess address, and I would put a paren -- make sure I understand -- I'm telling the Court this is not agreed to. We tried an Agreed Order and we didn't agree on it so this is an Order that we are proposing and I know that counsel will share the Order that she is proposing.

THE COURT: Okay.

MR. BLUMROSEN: The only thing that we would add on the end that would just say, "Upon release of the Temporary Injunction in Cause No. 396,935." The stuff is here on the behalf of the Estate. These are -- the garnishment is only related to the wrongful death case. We believe that some of the findings that counsel is asking the Court to make an Order that she is proposing could potentially prejudice claims that Ms. Duff may make in the Estate case regarding the 401K, and I don't think she has had a complete community to review and look

at everything on the Woodforest account. But I think just what we are asking for is very simple, the only relief that was granted by the Order that we propose is the two accounts that everybody agrees that are subject to garnishment and all other relief is denied, meaning that in the garnishment action we are not getting anything from Woodforest. We are not getting anything from the retirement account. We are only getting the two accounts that everybody agrees are subject to garnishment. It's a very simply, straightforward Order.

THE COURT: Is this a new Order you have or is it the one I'm looking at? The one, January 7th, that's the old Order, isn't it?

MR. BLUMROSEN: Yes. I filed this. It was accepted. I filed it yesterday.

THE COURT: Okay.

MR. BLUMROSEN: That's it. And the only change I'm making where I wrote in. I've shown it to counsel where I'm asking --

THE COURT: Okay.

MR. BLUMROSEN: Because there is a Temporary Injunction in place in the Estate matter that has frozen everything and so that Order, the way I have it reading, asks GMS to release the funds immediately. And I put at the end, "upon release of the Temporary Injunction." I spoke to Mr. Lipman yesterday. He is counsel for GMS. As far as he is

concerned, he is just saying whatever the Court orders us to do, that's what we will do with the two accounts that y'all are talking about.

THE COURT: Okay.

MS. DUFF: And Your Honor, I'm working on the release of the Temporary Injunction to get all the remaining assets to the correct place. We have a -- I think the only -- probably the only contention is going to be with regard to the 401K and what portion of that goes to the Estate. And I need to get with my client on that. And, unfortunately, after I spoke with Ms. Anderson, I had the creeping, crawling crud for a little while and haven't been able to get with my client on this, so I apologize.

THE COURT: So your 401K issues are more community property issues?

MS. DUFF: Yes. The question is how much is community that belongs to her, the Decedent, and how much remains with him.

THE COURT: Okay.

MS. ANDERSON: And Judge, if you will recall, it was the POA's Motion to Quash the Writs, and so the Order I'm proposing, and I'm sorry, I only have one with me and I will hand it to you in just a second, this is an Order partially granting the Motion to Quash. I mean, that's what the motion was and that's what they are trying to avoid, is any negative

connotation that they may have done something that was improper. This -- we were asked to draft the Order. I drafted it. This is the third Order. And until yesterday, I didn't receive any response and until today they hand wrote in, you know, pending the release of the Temporary Injunction. And so, you know, we did the work. No one says anything until the day before and the day of and then it's not good enough. This includes his language. I took his Order and put it in this Proposed Order. What this also does though is it covers Mr. McAfee's two accounts. His Order doesn't even address Woodforest, it only addresses GMS. This one explains the GMS account. It explains the account numbers that go to Mr. McAfee, not just the account numbers that go to Mr. Blumrosen. So this one addresses Mr. McAfee's account numbers and it addresses Mr. Blumrosen's client's account numbers, which go to which. In this one, what I had proposed was that everyone has agreed to release the Temporary Injunctions and the other the cause number. We want their client to get her money. We are not going to contest it. We are not going to oppose it, and it's a substantial amount of money, a substantial amount, and so they won't agree to release it until after we discuss, well, you know, how are you getting this per court order but the release, I mean, the Injunction applies to Mr. McAfee but not to you? And that's what led to his change.

The other thing, Judge, is I don't even think

there is a Temporary Injunction in place. I think everyone has honored it because everyone understood what the intent was of the parties and the intent of the Court but I can't even learn what the base lawsuit is that the Temporary Injunction was filed for. It's my understanding also that there is no ending to the Temporary Injunction and the only way one can be valid is if there is a final trial date that says on this date this Temporary Injunction ends and will either go away or turn into a Permanent Injunction. So I believe there is not even a Temporary Injunction in place. I will go along with what's been going on but we were here two weeks ago and the issue garnishment was decided. That's over. The only thing that needed to be added was to make the payment to Mr. Blumrosen and/or his client. That's been done. And so this is the Proposed Order that covers both parties and both banks in the garnishment proceeding.

MS. DUFF: Your Honor, if I may, I have never even been served with any of these documents from Ms. Anderson. I'm down here at Mr. Blumrosen's request.

THE COURT: Do you -- and have you seen this?

MR. BLUMROSEN: Yes. And the reason that we have objected to it, and I want it to just respond to a couple of things that Ms. Anderson said. Her co-counsel, Mr. Teir, I believe, left me a voicemail that same day, sent me an Order, and I since faxed him back. We have been going back and forth

on different things. It wasn't the first time was yesterday. We have sent changes. We don't agree with what she is proposing because it could potentially prejudice what the Estate might want to do. What she is doing, and again, Your Honor, we still have the same issue. I don't think she has any standing at all to even be doing this. She is still -- she just told a minute ago she only represents Mr. Storer. She doesn't represent Mr. McAfee. And I thought the Court was pretty clear last time that you don't get to cherry pick. You are either in this case or you are not in this case. She is here to help. We believe that the Order that we proposed does exactly what she is asking for, we don't get the garnishment of the 401K. We don't garnish the Woodforest account. All we get are the two accounts everybody has agreed to and everything else is left that way. All other relief that's requested in the -- in that case under our garnishments is denied. So I believe it accomplishes the goal and the discretion that the Court has and what the counsel wants the Court to do is to bend over backwards to give any discretion the Court might have to her client when her client really has not participated in these proceedings since the judgment was entered and continues not to participate in the post-judgment discovery.

MS. ANDERSON: Judge, first, with regard to Ms. Duff and the notice, and I was curious about the standing of the garnishment proceeding and did research because we did talk

about that at our last hearing, the garnishment proceeding is a separate and distinct case from the underlying case. There is no doubt about that. Our notice went to Mr. Blumrosen because he is the person who issued the writs on behalf of his client and, of course, the two banks. That was all it had to do, and I don't mean to be rude with Ms. Duff, but she wasn't entitled to notice. I'm trying to let her know so that she can participate so that we can try and resolve everything. The idea about Mr. McAfee not participating in this, he is in jail. There is nothing stopping either of these attorneys from going to jail and deposing him or subpoenaing a release and having him come here to compel him to do whatever. They are in a position now where there is an agent trying to resolve these issues. And I think we have made a lot of progress to where everything is resolved except one account, everything, and so I'm wanting to release it to her, give it to her and, instead, they are wanting to maintain it for whatever reason. I don't know, they all agree that Social Security is his separate property. It will never go to her.

With regard to the 401K plan, if she has a claim against it, so be it. Make the claim or let's work something out. If she prevails on the claim, she is going to get a judgment. If she gets a judgment, she is a judgment creditor and --

THE COURT: The 401K, what's the, I mean, is it

an asset that accumulated during marriage?

MS. ANDERSON: There was a portion of it.

THE COURT: So that's the problem, there was a portion of it.

MS. ANDERSON: And determining that dollar amount. Now, Ms. Duff and I have spoken, I thought we were on the same page that we are going to get to that dollar amount. It just couldn't get done by today.

THE COURT: What I'm doing here today, either way, how much am I allowing you to garnish?

MR. BLUMROSEN: Eight thousand and something dollars and change. It's the two accounts that we agree are subject to garnishment.

THE COURT: And so you don't -- you think -- and what's wrong with her comprehensive, I mean, it almost sounds like there is a settlement proposal, but --

MS. ANDERSON: I'm trying to give it all to them, Judge. They just won't take it.

THE COURT: So what do you -- is there a concern that what they are offering really isn't all that you are entitled to?

MR. BLUMROSEN: No. There is a question about, I mean, they are making bold statements in the judgment about accounts that may or may not -- they had something worked out and she is kind of combining the --

MS. ANDERSON: But what bold statement?

THE COURT: She is just being comprehensive and it may spill over into your area and --

MR. BLUMROSEN: And I don't want to -- whatever they -- either they are going to be able resolve the 401K, or they are not, there may be a hearing, I don't know, but I just think the Order that I proposed is generic enough, it accomplishes the goal of letting us garnish the $8,000 and change while still leaving the issue, that everything else is denied. We are not trying to get Woodforest account. We are not trying to go after the other account. It's very clear by that Order we are not doing that. But it still leaves open whatever fight there may be, and they may work it out and they may settle it, but we don't want to have any Order entered that may prejudice what the Estate is trying to do with regard to the 401K.

MS. ANDERSON: Judge, those statements are just the facts. They don't prejudice the Estate in any -- it's just facts, that he has an account number, it's this number, that it's not subject to garnishment. He has got another account number. It's this number. It's not subject to garnishment. Those are facts. And those are true facts, and so it doesn't affect the Estate at all. And I'm here as an officer of the Court saying over and over and over again, I understand there is an issue to the 401K plan. I understand we began talks

about it and I anticipate and hope we can just resolve that. What I can't get is, why won't they take everything else now? The only reason I can think of is because that means that he would also get access to his Social Security account. He has zero access. He is depending on other people to even give him that money for whatever that account is in prison, you know, and people can't afford that. He has Social Security assets that he could use but it continues to tie up his assets only because they don't want their millions now.

MS. DUFF: Your Honor, actually, mine is a little bit more blanket. I don't want to cherry pick on the release of the TRO as it goes to GMS, which is where the vast majority of the accounts are and just say -- I don't want that to be confused. I actually have an Order releasing that. I just need to go over with my client and make sure everything is correct, deal with the 401K, and I think it whole TRO can be released to my client. I want specific language that those accounts are going to Ms. Foltyn, Mr. and Mrs. Foltyn's will go directly to her. And I want specific language in there. I think this can be wrapped up very quickly. In fact, I was planning on filing my Motion to Release and then this garnishment issue came up which has held up the process a little bit.

THE COURT: Okay. So, you are on the Estate side trying to do what you normally do in an Estate and you

have got the lawsuit, and it doesn't matter what character he is saying, you want whatever assets, well, except exempt assets, of course, you want whatever you think you are entitled to or can get to?

MR. BLUMROSEN: Yes, sir.

THE COURT: And you are trying --

MS. ANDERSON: Trying to give it to them.

THE COURT: -- mostly trying to protect the exempt assets?

MS. ANDERSON: Two accounts, and give them everything else. And I will say, Judge --

THE COURT: And have you ever -- is the Power of Attorney any part of this? Has it been filed?

MS. ANDERSON: Yeah, the day that we were -- it's filed in, I want to say, the real property records or maybe probate records.

THE COURT: But can't you do like a Notice of Appearance?

MS. ANDERSON: I did, Judge.

THE COURT: Oh, you did?

MS. ANDERSON: I did a Notice of Appearance. I gave Mr. Blumrosen a copy of the Power of Attorney when we were here last time.

THE COURT: So that he could scrutinize it and --

MS. ANDERSON: And I specifically wrote asking, when we do this discovery, because he is going to do it as the agent, is that going to be okay with you or are you going to raise the standing issue again? My guy doesn't want to go through the expense and the work if, when he gives it to him, he says, you don't have standing as the agent under the Power of Attorney. I haven't gotten an answer. I got my answer today, I guess there is still a standing issue. You see? So there is no way I can go, you know, if I'm giving it to them, I have standing. If I don't do it exactly correct, I don't have standing. And so what we are doing is everything that's being asked for. My guy has already gone to the prison once. He is there this morning to verify and get the Answer signed. And they are getting it. And that's all we have. What there is is all we have. I don't know what else we can do. The only thing that we are wanting is the release of the Social Security money and the 401K plan. If there is an issue over the 401K, so be it, don't release it. Just release it all to her except the 401K plan because we have an issue on it. And then everyone gets their money. A lot of it.

THE COURT: Okay. All right, well, let me, I mean, all I can do is just scrutinize both proposals and just decide like which one and look at the distinctions. I just want to be clear on the nuances of each one and why it's, you know, see if I can really agree one way or the other that it's,

you know, one is harmful or one is not or one does something that it shouldn't do at this point, so that's what I need to look at.

MS. ANDERSON: And please keep in mind, because you are a lawyer too, not just a judge, you are going to see why he wants it his way and why I want it my way as far as --

THE COURT: Well, tell me. I mean --

MS. ANDERSON: There is a question of whether or not --

THE COURT: Because right now I'm thinking that one is a little more detailed and gives him what he wants, Mr. Blumrosen, and one is not as detailed and more generic and gives him what he wants.

MS. ANDERSON: Right. And nothing gives this side what it needs, which is the relief I came to you with, which is a Motion to Quash, and so we are partially quashing and leaving the rest.

THE COURT: Quash as to exempt assets.

MS. ANDERSON: Correct.

THE COURT: And that's what you were limiting it to?

MS. ANDERSON: That's it. And describing those accounts.

THE COURT: I will look at it.

MS. Anderson: And those facts are true. I will

tell you with the nuance, there are questions that I don't want to, and I have spoken with Ms. Duff, our side doesn't want to get into them if we enter a fair and proper Settlement Agreement. But whether or not that garnishment was even proper to begin with is an issue. We don't care so long as we can get this over with. But if they are going to, you know, I have got a ten-day letter, they are going to sue the ex-wife and son now, you know, if I didn't respond within ten days. Well, I don't represent them and I don't get callbacks, so I can't even meet his deadline. So, you know, if they are going to start that kind of stuff where they are going to be suing people again, then, yeah, I'm going to look into the question as to whether or not what his client did was proper, among other things. So those are the nuances. You know, we are getting hit with more than what's before the Court that you are not aware of and these are new threats, new lawsuits, and I'm just here to try and end it.

THE COURT: The allegation would be that the ex-wife or son may have received assets they have gotten pending -- while a $2 million judgment was outstanding?

MS. ANDERSON: Right. Before the judgment was entered and before the Temporary Injunction was entered, they used $25,000 to buy the 16-year-old a truck.

THE COURT: Okay.

MS. DUFF: And I believe that all was out of the

Woodforest account.

THE COURT:  Well, let me look at each one.

MR. BLUMROSEN:  Judge, I'm trying to bite my tongue based on here four-and-a-half years later and making allegations about something being improper and I will just leave it at that.  It's hard to sit here and listen to that. We are trying to do post-judgment collection on Mr. McAfee.

THE COURT:  Well, to me, obviously, I want to follow the law, but to me, I mean, it seems that one way or the other, this eight thousand plus dollars is something you are going to get.  So to exacerbate or to make that into a bigger fight, it doesn't seem prudent, but the rest of it, you know, I just -- how close, I mean, do you -- are you hearing things that make you think that this is going to get resolved easily or is there something outstanding that he may have that's going to be really -- turn this into more complicated than it already is?

MS. DUFF:  I think the only complexity is going to come up with the 401K.

THE COURT:  Okay.

MS. DUFF:  I think the only complexity is going to come with the 401K, and that's whether or not we can work out something as to what percentage interest my client would have a claim to.

THE COURT:  So you're thinking that you have,

and I'm not trying to hold you to this, but that you have a good understanding of what's out there or is there still --

MS. DUFF: We have, over the last four years --

THE COURT: -- an idea, well, we kind of know some defined assets but we are not clear on a lot of things that may impact what has transpired over these years?

MS. DUFF: I am reasonably sure that we have found, if not all, at least the vast majority of the assets. That's all we could find.

THE COURT: That can be enjoined?

MS. DUFF: Yes.

THE COURT: Okay.

MS. DUFF: And I am reasonably sure that we have everything. I am reasonably sure that the Inventory accurately reflects what was out there. The two issues, which one we could see, the Woodforest, is that's all SSI money. My client has no claim to that. We can see that. As long as that's an accurate statement, it's all SSI. The 401K, I think which is where the majority of the assets at GMS are, I believe that is where there will have to do some negotiating, and it depends on what my client wants to do. And the rest of the assets, I think that my client what's reflected in the Inventory he has a claim to.

THE COURT: Okay.

MS. DUFF: I believe that it's accurately

reflected. She may complain that there was several different Inventories that we had to go through, a lot.

THE COURT: And yours may be more difficult in the sense that, whether this is true or not, I don't know, obviously, but that you have really tracked down everything that's out there to satisfy a judgment?

MR. BLUMROSEN: I can't -- we are attempting to do that but that's obviously the point of post-judgment discovery which has never been responded to.

THE COURT: Okay. All right, well --

MS. ANDERSON: Judge, if I could just clarify that on the assets, and of course our position is as far as I know that's everything, but they have been correct since their original inventory, which is X amount of years ago. Okay? So they may have changed the characterization, they may have changed the values, but as far as, you know, maybe there is a little account here or a little account there that they added but there are no major differences. I mean, they have been correct since the beginning other than the values. And that's concerning because of course, you know, if something is really worth $800,000 and they only put it for $400,000, then there is only a credit of 200,000 toward the judgment. And so there may be disagreement on the values. I don't care. In the end, it's only going to affect Mr. Blumrosen on how much goes into his pocket. So as long as we can settle that, then there shouldn't

be any issues, any other issues.

THE COURT: All right.

MS. DUFF: And, Your Honor, with regard to the Inventory, this Inventory was created with, what, a week of discovery without any participation by the previous attorneys for Mr. McAfee. This was done by a lot of discovery on our part on looking for assets.

THE COURT: Right.

MS. DUFF: That's how we created the Inventory.

THE COURT: Right.

MR. BLUMROSEN: I think it's important for the Court to know that because at the present time that Mr. McAfee was charged with murder he used the fifth amendment, which was fine, but I'm just saying to say that we have done everything and know everything without any participation from Mr. McAfee, so if there are assets out there that he has hidden, we don't know about that.

THE COURT: Well, that's what I was going to say is, I mean, I just sort of wanted to get a feel for where you were, but I understand that this thing is going to continue at least in some respects until there is a comfort level with what may be out there and how these things can get resolved in some fashion.

MR. BLUMROSEN: As the Court knows, assuming that we at least get the eight thousand and change on the

wrongful death action, that doesn't come close to covering it, so the post-judgment, the abstract, the writ of execution, it's all still out there, so if we ever, in five years, six years, come across an asset, we will still be there trying to collect on it.

THE COURT: I understand. All right, I think I -- let me look at these proposed judgments or order and I will do something, hopefully, by tomorrow afternoon.

MS. ANDERSON: Sounds good. Thank you, Judge.

THE COURT: Thank y'all.

MR. BLUMROSEN: Thank you, Judge.

MS. DUFF: Thank you, Judge.

C E R T I F I C A T E

COUNTY   OF   HARRIS   *
STATE   OF   TEXAS   *

I, Donald G. Pylant, Official Court Reporter in and for Probate Court No. 1 of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record truly and correctly reflects the exhibits, if any, admitted, tendered in an offer of proof or offered into evidence by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is __$154.00__ and will be paid by __Esther Anderson__.

Given under my hand and seal of office this the _7th_ day of _August_, 2015.

/s/Donald G. Pylant
Donald G. Pylant, C.S.R.
Official Court Reporter
in and for the County of
Harris and the State of
T E X A S.

Certification No. 668    Exp. Date: 12-31-2016
Probate Court No. One 201 Caroline Street, 6th fl.
Houston, Texas 77002 (713) 368-6692

# Tab 9

Order Partially Granting Motion
to Quash Writs of Garnishment

CAUSE NO. 396935-401

| | | |
|---|---|---|
| IN RE<br>JANET F. McAFEE,<br>Deceased | § § § § | IN THE PROBATE COURT |
| ROSEMARY FOLYN and<br>JAKE FOLYN | § § § | NUMBER ONE |
| v. | § § | OF |
| THE GMS GROUP, LLC and<br>WOODFOREST NATIONAL BANK,<br>Defendants | § § § | HARRIS COUNTY, TEXAS |

### ORDER PARTIALLY GRANTING MOTION TO QUASH WRITS OF GARNISHMENT ~~AND DISSOLVING INJUNCTIONS.~~

On this day came to be considered the *Motion to Quash Writs of Garnishment* filed by Charles Storer, Power of Attorney for Kenneth Cooper McAfee. After review and consideration of said *Motion*, the evidence, the responses, and the arguments of counsel, the Court finds the following:

1. Judgment for damages in the amount of $2,000,000.00 plus pre and post judgment interest and court costs was entered by this Court on March 21, 2014 in Cause Number 396,935-401; *Rosemary Foltyn, Individually and as Independent Administratirix of the Estate of Janet Foltyn McAfee, Deceased; and Jake Foltyn, Individually v. Kenneth Cooper McAfee* Plaintiffs/Garnishors herein executed two writs of garnishment directed at The GMS Group, LLC, ("GMS") and Woodforest National Bank ("Woodforest").

2. The GMS account ending in 606 (SSN xxx-xx-4352) and the Woodforest account ending in 404, hold assets in the name of or for the benefit of Kenneth Cooper McAfee.

3. The GMS account ending in 606 (SSN xxx-xx-4352) is an individual retirement

ORDER
PAGE 1

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



account for the benefit of Kenneth McAfee that qualifies for federal income tax deferral. Such account holds, exclusively, funds exempt from garnishment under Tex. Prop. Code. §42.0021(a). Because such account is exempt from garnishment, the writ directed to the GMS as to Kenneth McAfee's account ending in 606 (SSN xxx-xx-4352) should be quashed. All other accounts at GMS that hold assets of, or are for the benefit of, Kenneth C. McAfee or Kenneth McAfee remain subject to the writ.

4. Further, GMS Group, L.L.C., is indebted to Kenneth Cooper McAfee ("Judgment Debtor") in the amount of $6,694.39 and account number 55HO56008 and $1,661.15 in account number 55HOO4628 for a total of $8,355.54.

5. The Woodforest account ending in 404 holds, exclusively, social security benefit proceeds of Kenneth C. McAfee which benefits are exempt from garnishment under 42 U.S.C. §407. 42 U.S.C. provides an absolute exemption and there are no statutory exceptions to same. Because the Woodforest account ending in 404 contains only funds exempted from garnishment, the writ directed at Woodforest as to Kenneth McAfee's account ending in 404 should be quashed. All other accounts at Woodforest that hold assets of or for the benefit of Kenneth C. McAfee or Kenneth McAfee remain subject to the writ. It is therefore,

ORDERED, ADJUDGED AND DECREED that the writs of garnishment directed at (i) GMS Group, LLC, for the account number ending with 606 (SSN xxx-xx-4352) in the name of and belonging to Kenneth McAfee, and (ii) Woodforest National Bank for the account number ending with 404 in the name of and belonging to Kenneth C. McAfee are QUASHED. It is further,

ORDER
PAGE 2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Sterling G. Senechal III

ORDERED, ADJUDGED AND DECREED that all other accounts at GMS Group LLC, and Woodforest National Bank that hold assets in the name of Kenneth McAfee or for the benefit of Kenneth C. McAfee remain subject to the writs. Specifically, Garnishors, Rosemary and Jake Foltyn shall recover against the GMS Group, L.L.C., the sum of $8,355.54, such sum to be credited to the judgment entered in the wrongful death judgment. It is further,

ORDREED, ADJUDGED AND DECREED that the payment of such sums as set forth above shall issue from funds of the judgment debtor, Kenneth Cooper McAfee, currently being held by Garnishee, the GMS Group, L.L.C., from the following accounts: $6,694.39 in account number 55HO56008 and $1,661.15 in account number 55HOO4628 for a total of $8,355.54, *upon receipt of an order releasing the* it is further,

ORDERED, ADJUDGED AND DECREED that Garnishee, The GMS Group, L.L.C., shall immediately send $8,355.54 payable to Deam M. Blumrosen, Attorney, at 4615 Southwest Freeway, Suite 850, Houston, Texas 77027.It is further,

~~ORDERED, ADJUDGED AND DECREED that~~ the *Agreed Order for Temporary Injunctions* in Cause No. 396,935; In the Estate of Janet Foltyn McAfee, Deceased, dated June 8, 2011, ~~is dissolved and all assets described therein, and in particular, the GMS account ending in 606 and the Woodforest account ending in 404, are released.~~

ORDER
PAGE 3

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



SIGNED this ___27th___ day of January, 2015.

~~~~~~~~~~~~~~~~~~~~~~~
JUDGE PRESIDING

ANDERSON PFEIFFER, PC

*Esther Anderson*

By:   Esther Anderson
SBN: 00792332
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 281.488.6535
Facsimile: 281.614.5205
Email: *esther@probateguardianship.com*

Of Counsel:
Robert Teir, PLLC

*Robert Teir, w/ perm by EA*

By:   Robert Teir
SBN: 00797940
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 832.365.1191
Facsimile: 832.550.2700
Email: *rob@teirlaw.com*
Attorneys for Charles Storer,
POA for Kenneth Cooper McAfee

Mitchell & Duff, LLC

_____
By:   Mary Elizabeth Duff
SBN: 06166880
210 Main Street
Richmond, Texas 77469
Office: 281-341-1718
Office: 281-341-5517
Attorney for Estate of Rosemary F. McAfee, Deceased

_____
By:   Dean M. Blumrosen
SBN: 02517900
4615 Southwest Freeway, Suite 850
Houston, Texas 77027
Office: 713-524-2225
Facsimile: 713-524-5570
Attorney for Plaintiffs/Garnishors, Rosemary and Jake Foltyn

N:\Storer, Charles\Orders\Order Granting Motion to Quash (not agreed).docx

ORDER
PAGE 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



# Tab 10

Motion to Partially Release
Temporary Injunction

FILED
2/10/2015 2:08:22 PM
Stan Stanart
County Clerk
Harris County

DATA-ENTRY
PICK UP THIS DATE

PROBATE COURT 1

CAUSE NO. 396,935 – 401

| IN THE ESTATE OF | § | IN THE PROBATE COURT |
|---|---|---|
| | § | |
| JANET F. McAFEE, | § | NUMBER ONE |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

## MOTION TO PARTIALLY RELEASE TEMPORARY INJUNCTION

COMES NOW Charles Storer, Power of Attorney for Kenneth McAfee, and files this is *Motion to Release Injunction* and would show the Court the following.

All Exhibits referenced are attached and incorporated herein by reference as if set out in full for all purposes.

### BACKGROUND

1. On June 8, 2011, all parties to the above stated cause entered an *Agreed Order for Temporary Injunction.* See Exhibit "1."

2. On January 27, 2015, the Court entered an *Order Partially Granting Motion to Quash Writs of Garnishment* as to two accounts:

   a. Woodforest account ending in 404, in the name of Kenneth Cooper McAfee exclusively holding social security assets of Kenneth Cooper McAfee; and

   b. GMS account ending in 606, an individual retirement account of Kenneth McAfee. See Exhibit "2."

The Court further ordered that all other accounts at GMS Group, LLC, holding assets of Kenneth McAfee be subject to the writs such that Rosemary and Jake Foltyn recover $6,694.39 in account number 55HO56008 and $1,661.15 in account number 55HOO4628 for a total of $8,355.54 from GMS Group, L.L.C.,

MOTION TO PARTIALLY RELEASE INJUNCTION
Page 1 of 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy
Sterling G. Senechal III



upon receipt of an order releasing the *Agreed Order for Temporary Injunction* which is the subject of this *Motion. Id.*

3. Storer asks the Court to enter an order partially releasing the June 8, 2011 temporary injunction as to the following three accounts:

   a. Woodforest account ending in 404, in the name of Kenneth Cooper McAfee exclusively holding social security assets of Kenneth Cooper McAfee, to Kenneth Cooper McAfee;

   b. account number 55HO56008 holding $6,694.39 at GMS Group, LLC, to Rosemary and Jake Foltyn, c/o Dean M. Blumrosen; and

   c. account number 55HOO4628 holding $1,661.15 at GMS Group, LLC, to Rosemary and Jake Foltyn, c/o Dean M. Blumrosen.

4. All other accounts and assets described in the June 8, 2011 *Agreed Order for Temporary Injunction* should remain subject to the temporary injunction.

   WHEREFORE PREMISES CONSIDERED, Charles Storer, Power of Attorney for Kenneth McAfee, prays the Court enters an order granting his *Motion to Partially Release Temporary Injunction* and for such other relief, at law or in equity, as he may be justly entitled.

MOTION TO PARTIALLY RELEASE INJUNCTION
Page 2 of 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Sterling G. Senechal III

Respectfully submitted,

ANDERSON PFEIFFER, PC

*Esther Anderson*

By:    Esther Anderson
SBN:  00792332
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 281.488.6535
Facsimile: 281.614.5205
Email: esther@probateguardianship.com

Of counsel on the Pleading:

*/s/ Robert Teir*

Robert Teir
Robert Teir, PLLC
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 832.365.1191
Facsimile: 832.550.2700
Email: rob@probateguardianship.com

Attorneys for Mr. Charles Storer, Power of Attorney for Kenneth McAfee

MOTION TO PARTIALLY RELEASE INJUNCTION
Page 3 of 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to all parties and/or counsel of record through our electronic service provider, certified mail, return receipt requested and/or facsimile on this _10 th_ day of February, 2015.

_Esther Anders_

Esther Anderson

cc: Mary Elizabeth Duff
210 Main Street
Richmond, Texas 77469

**VIA ELECTRONIC SERVICE PROVIDER & FACSIMILE 281-341-5517**

Matthew E. Lipman
Faust Oppenheim LLP
488 Madison Avenue
New York, New York 10022

**VIA ELECTRONIC SERVICE PROVIDER & FACSIMILE 212-371-8410**

Dean M. Blumrosen, Esq.
4615 Southwest Freeway
Suite 850
Houston Texas 77027

**VIA ELECTRONIC SERVICE PROVIDER & FACSIMILE 713-524-5570**

Woodforest National Bank,
through their registered agent
James D. Dreibelbis
25231 Grogan's Mill Road
Suite 100
The Woodlands, Texas 77380

**VIA CMRRR** 9414 7102 0088 1504 4648 51

Charles Storer

N:\Storer, Charles\Pleadings, Motions, Applications\Mot to Release Injunction.docx

MOTION TO PARTIALLY RELEASE INJUNCTION
Page 4 of 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



**CAUSE NO. 396935-401**

| | | |
|---|---|---|
| IN RE | § | IN THE PROBATE COURT |
| JANET F. McAFEE, | § | |
| Deceased | § | NUMBER ONE |
| | § | |
| ROSEMARY FOLYN and | § | |
| JAKE FOLYN | § | |
| | § | |
| v. | § | OF |
| | § | |
| THE GMS GROUP, LLC and | § | |
| WOODFOREST NATIONAL BANK, | § | HARRIS COUNTY, TEXAS |
| Defendants | | |

### ORDER PARTIALLY GRANTING MOTION TO QUASH WRITS OF GARNISHMENT AND DISSOLVING INJUNCTIONS.

On this day came to be considered the *Motion to Quash Writs of Garnishment* filed by Charles Storer, Power of Attorney for Kenneth Cooper McAfee. After review and consideration of said *Motion*, the evidence, the responses, and the arguments of counsel, the Court finds the following:

1. Judgment for damages in the amount of $2,000,000.00 plus pre and post judgment interest and court costs was entered by this Court on March 21, 2014 in Cause Number 396,935-401; *Rosemary Foltyn, Individually and as Independent Administratrix of the Estate of Janet Foltyn McAfee, Deceased; and Jake Foltyn, Individually v. Kenneth Cooper McAfee* Plaintiffs/Garnishors herein executed two writs of garnishment directed at The GMS Group, LLC, ("GMS") and Woodforest National Bank ("Woodforest").

2. The GMS account ending in 606 (SSN xxx-xx-4352) and the Woodforest account ending in 404, hold assets in the name of or for the benefit of Kenneth Cooper McAfee.

3. The GMS account ending in 606 (SSN xxx-xx-4352) is an individual retirement

**EXHIBIT**

**1**

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



account for the benefit of Kenneth McAfee that qualifies for federal income tax deferral. Such account holds, exclusively, funds exempt from garnishment under Tex. Prop. Code. §42.0021(a).    Because such account is exempt from garnishment, the writ directed to the GMS as to Kenneth McAfee's account ending in 606 (SSN xxx-xx-4352) should be quashed. All other accounts at GMS that hold assets of, or are for the benefit of, Kenneth C. McAfee or Kenneth McAfee remain subject to the writ.

4.    Further, GMS Group, L.L.C., is indebted to Kenneth Cooper McAfee ("Judgment Debtor") in the amount of $6,694.39 and account number 55HO56008 and $1,661.15 in account number 55HOO4628 for a total of $8,355.54.

5.    The Woodforest account ending in 404 holds, exclusively, social security benefit proceeds of Kenneth C. McAfee which benefits are exempt from garnishment under 42 U.S.C. §407.   42 U.S.C. provides an absolute exemption and there are no statutory exceptions to same. Because the Woodforest account ending in 404 contains only funds exempted from garnishment, the writ directed at Woodforest as to Kenneth McAfee's account ending in 404 should be quashed.    All other accounts at Woodforest that hold assets of or for the benefit of Kenneth C. McAfee or Kenneth McAfee remain subject to the writ. It is therefore,

ORDERED, ADJUDGED AND DECREED that the writs of garnishment directed at (i) GMS Group, LLC, for the account number ending with 606 (SSN xxx-xx-4352) in the name of and belonging to Kenneth McAfee, and (ii) Woodforest National Bank for the account number ending with 404 in the name of and belonging to Kenneth C. McAfee are QUASHED.   It is further,

ORDER
PAGE 2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy

Sterling G. Senechal III



ORDERED, ADJUDGED AND DECREED that all other accounts at GMS Group LLC, and Woodforest National Bank that hold assets in the name of Kenneth McAfee or for the benefit of Kenneth C. McAfee remain subject to the writs. Specifically, Garnishors, Rosemary and Jake Foltyn shall recover against the GMS Group, L.L.C., the sum of $8,355.54, such sum to be credited to the judgment entered in the wrongful death judgment. It is further,

ORDREED, ADJUDGED AND DECREED that the payment of such sums as set forth above shall issue from funds of the judgment debtor, Kenneth Cooper McAfee, currently being held by Garnishee, the GMS Group, L.L.C., from the following accounts: $6,694.39 in account number 55HO56008 and $1,661.15 in account number 55HOO4628 for a total of $8,355.54, *upon receipt of an order releasing the* it is further,

ORDERED, ADJUDGED AND DECREED that Garnishee, The GMS Group, L.L.C. shall immediately send $8,355.54 payable to Deam M. Blumrosen, Attorney, at 4615 Southwest Freeway, Suite 850, Houston, Texas 77027.It is further,

~~ORDERED, ADJUDGED AND DECREED~~ that the *Agreed Order for Temporary Injunctions* in Cause No. 396,935; In the Estate of Janet Foltyn McAfee, Deceased, dated June 8, 2011, ~~is dissolved and all assets described therein, and in particular, the GMS account ending in 600 and the Woodforest account ending in 404, are released.~~

ORDER
PAGE 3

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



SIGNED this _____27^th_____ day of January, 2015.

JUDGE PRESIDING

ANDERSON PFEIFFER, PC

_____Esther Anderson_____
By:    Esther Anderson
SBN: 00792332
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 281.488.6535
Facsimile: 281.614.5205
Email: esther@probateguardianship.com

Of Counsel:
Robert Teir, PLLC
_____Robert Teir, w/ perm by EA_____
By:    Robert Teir
SBN: 00797940
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 832.365.1191
Facsimile: 832.560.2700
Email: rob@teirlaw.com
Attorneys for Charles Storer,
POA for Kenneth Cooper McAfee

Mitchell & Duff, LLC

_____
By:    Mary Elizabeth Duff
SBN: 06166880
210 Main Street
Richmond, Texas 77469
Office: 281-341-1718
Office: 281-341-5517
Attorney for Estate of Rosemary F. McAfee, Deceased

_____
By:    Dean M. Blumrosen
SBN: 02517900
4615 Southwest Freeway, Suite 850
Houston, Texas 77027
Office: 713-524-2226
Facsimile: 713-524-5570
Attorney for Plaintiffs/Garnishors, Rosemary and Jake Foltyn

N:\Storer, Charles\Orders\Order Granting Motion to Quash (not agreed).docx

ORDER
PAGE 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ **Deputy**

Sterling G. Senechal III



# JUDGE LOYD WRIGHT

Harris County Probate Court No. 1
201 Caroline, 8th Floor
Houston, Texas   77002
Phone 713-368-8700    Fax 713-368-7300

**FROM:**

| | | |
|---|---|---|
| Judge Loyd Wright | Kimberly Hightower | Susie Rowley |
| Ruth Ann Stiles | Kevin Scott | Betty Hazlewood |
| Pam Speer | Cres Machicek | Anthi Pavlicek |
| Toni Williams | Renae Brown | Don Pylant |

**To:** Esther Anderson         281/614-5205
        Robert Fein         832/550-2700
        Mary Elizabeth Duff   281/341-5517

**Date :** Dean Brunsose         713/524-5570

**RE:** 391935-401 Estate of Janet F. McAfee,

**Comments:** Order Partially Granting Deed
        Motion to Quash Writs of
        Garnishment

PAGE \_\_1\_\_ OF \_5\_

CONFIDENTIALITY NOTICE: THE DOCUMENTS ACCOMPANYING THIS TELECOPY TRANSMISSION CONTAINS CONFIDENTIAL INFORMATION WHICH IS LEGALLY PROVILEDGED. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE RECEIPIENT NAMED ABOVE. IF YOU HAVE RECEIVED THIS TELECOPY IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE TO ARRANGE FOR RETURN OF THE ORIGINAL DOCUMENTS TO US AND YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS TELECOPIED INFORMATION IS STRICTLY PROHIBITED.
i:winword\misc\fax01

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

PROBATE COURT 1

998797                          No. 396,935

IN THE ESTATE OF              §      IN THE PROBATE COURT

JANET FOLTYN MCAFEE,          §      NO. 1

DECEASED                      §      HARRIS COUNTY, TEXAS

### AGREED ORDER FOR TEMPORARY INJUNCTION

On March 31, 2011 the Application for a Temporary Restraining Order of Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee (the "Estate"), was heard and granted before this Court.

On April 14 and May 5, 2011 the Court ultimately ordered the Temporary Restraining Order be extended and Temporary Injunction  hearing be rescheduled to June 9, 2011 at 2:00 P.M.

On May 18, 2011 the Application for a Supplemental Temporary Restraining Order of Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee, was heard and granted before this Court. The Temporary Injunction hearing was scheduled for June 1, 2011 at 12:00 PM.

On June 1, 2011 the Court ordered the Supplemental Temporary Restraining Order be extended and Temporary Injunction be extended and Temporary Injunction hearing be rescheduled to June 9, 2011 at 2:00 P.M.

On June 7, 2011, the parties agreed to the entry of a Temporary Injunction, and to pass on the hearing on June 9, 2011. This agreement is evidenced by counsels' signatures below.

The Court finds that all necessary prerequisites of the law have been legally satisfied and that the Court has jurisdiction in this case and of all the parties. The Court finds that Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee, is entitled to a Temporary Injunction.

Agreed Temporary Injunction                    1 of 10

EXHIBIT
2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas


_____ Deputy
Sterling G. Senechal III



IT IS THEREFORE ORDERED that Kenneth McAfee and all of his officers, agents, servants, employees, agents, servants, successors, assigns, representatives, and attorneys are ordered to immediately cease and desist from the use and control of the following accounts and property:

### THE GMS GROUP, LLC

1.  Any and all funds in GMS Group, LLC accounts, including but not limited to the following, all of which are presumed to contain community funds and/or funds belonging to the Estate:

    a.  55H-004028

    b.  55H-056808

    c.  55L-660606

    d.  55H-003612

    e.  55H-034914

    f.  55H-850012

    g.  55H-042479

    h.  55H-008207

    i.  989-03491

    j.  996-66060

    k.  989-03500

2.  Any and all funds in GMS Group, LLC accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v)

Agreed Temporary Injunction                    3 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

1. PO Box 66352, Houston Texas, 77266

2. PO Box 460786 Houston, Texas, 77056

3. 6650 Fairfield Street Houston, Texas, 77023

4. 2119 Tangley Houston, Texas, 77005

### WOODFOREST NATIONAL BANK

Any and all funds in Woodforest National Bank accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

a. PO Box 66352, Houston Texas, 77266

b. PO Box 460786 Houston, Texas, 77056

c. 6650 Fairfield Street Houston, Texas, 77023

d. 2119 Tangley Houston, Texas, 77005

Agreed Temporary Injunction                     3 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



### BANK OF AMERICA, N.A.

4.      Any and all funds in Bank of America, N.A. accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (I) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (II) Kenneth McAfee and Janet F. McAfee jointly; (III) which names one or both of them as a signature; (IV) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to the following:

     a.   PO Box 66352, Houston, Texas, 77266

     b.   PO Box 460786 Houston, Texas, 77056

     c.   6650 Fairfield Street Houston, Texas, 77023

     d.   2119 Tannley Houston, Texas, 77005

### BBVA COMPASS BANK

5.      Any and all funds in BBVA Compass accounts, including Laredo National Bank, including but not limited to the following, all of which are presumed to contain community funds and/or funds belonging to the Estate:

     a.   113010547049-023

     b.   0010098023

6.      Any and all funds in BBVA Compass accounts, including Laredo National Bank, all of which are presumed to contain community funds and/or funds belonging to the Estate, (I) in the name of Kenneth McAfee and Janet F. McAfee, Individually; (II) Kenneth McAfee and Janet

Agreed Temporary Injunction                          4 of 18

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

    a.  PO Box 66352, Houston Texas, 77266

    b.  PO Box 460786 Houston, Texas, 77056

    c.  6650 Fairfield Street Houston, Texas, 77023

    d.  2119 Tangley Houston, Texas, 77005

### WELLS FARGO BANK, N.A.

7.    Any and all funds in Wells Fargo Bank, N.A. accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

    a.  PO Box 66352, Houston Texas, 77266

    b.  PO Box 460786 Houston, Texas, 77056

    c.  6650 Fairfield Street Houston, Texas, 77023

Agreed Temporary Injunction    5 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

d. 2119 Tangley Houston, Texas, 77005

### CITIZENS FINANCIAL GROUP, INC.

8. Any and all funds in Citizens Financial Group, Inc. accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

    a. PO Box 66952 Houston, Texas, 77266

    b. PO Box 460786 Houston, Texas, 77056

    c. 6650 Fairfield Street Houston, Texas, 77023

    d. 2119 Tangley Houston, Texas, 77005

### PERSHING LLC

9. Any and all funds in Pershing, LLC accounts, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v)

Agreed Temporary Injunction     6 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was owned in whole or in part by either or both of them. The addresses include, but are not limited to, the following:

    a. PO Box 66352, Houston Texas, 77266

    b. PO Box 460786 Houston, Texas, 77056

    c. 6650 Fairfield Street Houston, Texas, 77023

    d. 2119 Tangley Houston, Texas, 77005

### GRUNTAL & CO., INC.

10. Any and all funds in Gruntal & Co., Inc. accounts, including any Gruntal & Co., Inc. subsidiaries or affiliates, including but not limited to the following, all of which are presumed to contain community funds and/or funds belonging to the Estate:

    a. 989-03491

    b. 989-05600

11. Any and all funds in Gruntal & Co., Inc. accounts, , including any Gruntal & Co., Inc. subsidiaries or affiliates, all of which are presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which names one or both of them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or attorney's address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee or which was

Agreed Temporary Injunction 7 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



Sterling G. Senechal III

_____ Deputy



owned in whole or in part by either of both of them. The addresses include, but are not limited to, the following:

    a.  PO Box 66352, Houston Texas, 77266

    b.  PO Box 460786 Houston, Texas, 77056

    c.  6650 Fairfield Street Houston, Texas, 77023

    d.  2119 Tangley Houston, Texas, 77005

### OTHER ACCOUNTS

12.    Any and all accounts presumed to contain community funds and/or funds belonging to the Estate, (i) in the name of Kenneth McAfee or Janet F. McAfee, Individually; (ii) Kenneth McAfee and Janet F. McAfee jointly; (iii) which name them as a signatory; (iv) which contains funds in the care, custody, control, for the benefit, or on behalf of Kenneth McAfee and/or Janet F. McAfee, individually or jointly; and (v) under any address related to either of them, such as a previous residence, relative, representative, or previous address, or company which did business on behalf of either Kenneth McAfee or Janet F. McAfee, including, but not limited to the following:

    a.  PO Box 66352, Houston Texas, 77266

    b.  PO Box 460786 Houston, Texas, 77056

    c.  6650 Fairfield Street Houston, Texas, 77023

    d.  2119 Tangley Houston, Texas, 77005

which contain:

    (i)  Funds transferred from or that can be traced to the accounts described herein, including but limited to accounts at The GMS Group, LLC,

Agreed Temporary Injunction    8 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Sterling G. Senechal III



Woodforest National Bank, Bank of America, N.A., BBVA Compass Bank, Wells Fargo Bank, N.A., Citizens Financial Group, Inc., Pershing LLC, and Grutnal & Co., Inc.; and/or

   (ii)    Any and all additional funds and assets which are presumed to contain community funds and/or funds belonging to the Estate.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that any entity or individual, including but not limited to The GMS Group, LLC, Woodforest National Bank, Bank of America, N.A., BBVA Compass Bank, Wells Fargo Bank, N.A., Citizens Financial Group, Inc., Pershing LLC, and Grutnal & Co., Inc., which contains, controls, or possesses funds presumed to belong to the community and/or Estate, is ordered by the Court to effectuate the terms of this Temporary Injunction should Kenneth McAfee, or any officers, agents, servants, employees, agents, servants, successors, assigns, representatives, and/or attorneys acting on his behalf, attempt to access or obtain accounts or property within that entity or individual's control or possession, which may contain community funds and/or funds that belong to the Estate.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this Temporary Injunction Order is effective immediately and shall continue in force and effect until the Court makes a determination of what property belongs to the Estate or the Court renders a full and final judgment is in the pending wrongful death suit associated with this matter, which ever is later, or by further order of this Court. This order shall be binding on Kenneth McAfee, or any officers, employees, agents, servants, successors, assigns, representatives, attorneys acting on his behalf, and on those persons in active concert or participation with him. The bond posted by the Administratrix is required to remain posted.

Agreed Temporary Injunction      9 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



SIGNED on June 8, 2011 at 12:00 p.m.

_____
JUDGE PRESIDING

Rec/Row

APPROVED AS TO FORM:

_____
Mary Elizabeth Duff
Texas Bar No. 06166880
210 Main Street
Richmond, TX 77469
Tel. (281)341-1718
Fax. (281)341-5517
Attorney for Independent Administratrix
Rosemary Folyn

By: _____
DEAN M. BLUMROSEN, ESQ.
State Bar No. 02517900
4615 Southwest Freeway, Suite 850
Houston, Texas 77027
713.524.2225- Telephone
713.524.5570- Facsimile
Attorney for Heirs of Janet Foltyn McAfee

By: _____
Alexander Forrest
State Bar No. 24065226
805 Congress, #350
Houston, Texas 77002
Tel. (832) 692-0939
Fax. (719) 224-3111
Attorney for Kenneth McAfee

**FILED** 2011 JUN -9 PM 3:31

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

Agreed Temporary Injunction                         10 of 10

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

# Tab 11

## Motion to Partially Release Temporary Injunction

FILED
3/6/2015 4:35:23 PM
Stan Stanart
County Clerk
Harris County

DV

No. 396,935

**PROBATE COURT 1**

| IN THE ESTATE OF | § | IN THE PROBATE COURT |
|---|---|---|
| | § | |
| JANET FOLTYN MCAFEE, | § | NO. 1 |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

## MOTION TO PARTIALLY RELEASE
## TEMPORARY INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee (the "Estate"), and requests this Honorable Court to PARTIALLY RELEASE the Temporary Injunction for the ground set forth herein.

Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee requests PARTIAL RELEASE of the Temporary Injunction because the Writ of Garnishment has been issued as to the accounts set forth below.

Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee requests that the following accounts be released to Dean M. Blumrosen as the attorney for Rosemary Foltyn and Jake Foltyn, and Rosemary Foltyn as Administratrix of the Estate of Janet Foltyn McAfee

1.      Account number 55H056008 holding approximately $6,694.39, or all funds remaining in the account after liquidation and account service fees, at GMS Group, LLC; and

2.      Account number 55H004628 holding approximately $1,661.15, or all funds remaining in the account after liquidation and account service fees, at GMS Group, LLC.

Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee further requests that all other accounts and assets described in the June 8, 2011 Agreed Order for Temporary Injunction should remain subject to the Temporary Injunction.

Page 1 of 3

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 10/1/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Summer Lea Willette



**WHEREFORE,** Plaintiff requests this Honorable Court to PARTIALLY RELEASE the Temporary Injunction, and release the aforementioned accounts to Dean M. Blumrosen as the attorney for Rosemary Foltyn and Jake Foltyn, and Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee, and for such other and further relief that may be awarded at law or in equity.

Respectfully submitted,

Mitchell & Duff, LLC

By: _____
Mary Elizabeth Duff
Texas Bar No. 06166880
210 Main Street
Richmond, Texas 77469
Tel. (281) 341-1718
Fax. (281) 239-7928
Attorney for Rosemary Foltyn, Administratrix

Page 2 of 3

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 10/1/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ **Deputy**
Summer Lea Willette



## CERTIFICATE OF SERVICE

I certify that on March 6 , 2015 a true and correct copy of the *Motion to Partially Release Temporary Injunction* was served on all parties.

M. Elizabeth Duff

**Esther Anderson**
Anderson Pfeiffer, PC
845 FM 517 West, Suite 200
Dickinson, TX 77539
*Via Fax: (281) 614-5205*

**Dean M. Blumrosen, Esq.**
4615 Southwest Freeway, Suite 850
Houston, TX 77027
*Via Fax: (713) 524-5570*

Page 3 of 3

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 10/1/2015
**Stan Stanart, County Clerk**
Harris County, Texas

 _____Deputy

Summer Lea Willette



No. 396,935

| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JANET FOLTYN MCAFEE, | § | NO. 1 |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

## ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION

On _____, the Court considered the Motion for Partial Release of the Temporary Injunction filed by Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee and the arguments of counsel. After due consideration of the Motion, the Response thereto, and the arguments of counsel, the Court finds the motion is **GRANTED** and orders the **PARTIAL RELEASE** of the TEMPORARY INJUNCTION to Dean M. Blumrosen as the attorney for Rosemary Foltyn and Jake Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee as to the accounts referenced below ONLY:

1.  Account number 55H056008 holding approximately $6,694.39, or all funds remaining in the account after liquidation and account service fees, at GMS Group, LLC; and

2.  Account number 55H004628 holding approximately $1,661.15, or all funds remaining in the account after liquidation and account service fees, at GMS Group, LLC.

IT IS FURTHER ORDERED that the other accounts and assets described in the June 8, 2011 Agreed Order for Temporary Injunction should remain subject to the Temporary Injunction.

Signed on: _____, 2015.

_____
PRESIDING JUDGE

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 10/1/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy
Summer Lea Willette



Approved as to Form Only By:

MITCHELL & DUFF, LLC



M. Elizabeth Duff
Attorney for Rosemary Foltyn, Administratrix
210 Main Street
Richmond, Texas 77469
Tel: (281) 341-1718
Fax: (281) 239-7928
Email: eduff@mitchellandduff.com

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 10/1/2015
**Stan Stanart, County Clerk**
Harris County, Texas


Summer Lea Willette

_____**Deputy**



# Tab 12
March 12, 2015 Transcript

TRIAL COURT CAUSE NUMBER 396,835-401

| | |
|---|---|
| IN RE: THE ESTATE OF JANET FOLTYN McAFEE, | * IN THE PROBATE COURT OF |
| | * |
| | * |
| ROSEMARY FOLTYN and | * |
| Jake Foltyn | * HARRIS COUNTY, T E X A S |
| | * |
| THE GMS GROUP, LLC and | * |
| WOODFOREST NATIONAL BANK, | * |
| Defendants | * COURT NUMBER (1) ONE |

MOTION TO PARTIALLY RELEASE FUNDS HEARING

Came to be heard on this the 12th day of March, 2015, Motion to Partially Release Funds Hearing, in the above-entitled and numbered cause, and all parties appeared in person and/or being represented by Counsel of Record, before the Honorable Ruth Ann Stiles, Associate Judge Presiding.

VOLUME _1_ OF _1_

O R I G I N A L

APPEARANCES

ATTORNEY FOR CHARLES STORER:

    Robert Teir
    State Bar No. 00797940
    845 FM 517, Suite 200
    Dickinson, Texas 77539
    Telephone:  831-365-1191

ATTORNEY FOR PLAINTIFFS, ROSEMARY FOLTYN AND
JAKE FOLTYN:

    Dean Blumrosen
    State Bar No. 02517900
    4615 Southwest Freeway, Suite 850
    Houston, Texas 77027
    Telephone:  713-524-2225

ATTORNEY FOR THE ESTATE OF
ROSEMARY F. McAFEE, DECEASED:

    Mary Elizabeth Duff
    State Bar No. 06166880
    210 Main St.
    Richmond, Texas 77469
    Telephone:  281-341-1718

THE COURT: The McAfee Estate.

MR. TEIR: Good afternoon. I should start by explaining that I am not Esther Anderson.

THE COURT: I am aware of that. So you are -- could you say your name?

MR. TEIR: Robert Teir, T-E-I-R.

THE COURT: T-E-I-R?

MR. TEIR: All right. So, is there opposition to the Motion to Partially Release?

MS. DUFF: We have actually two motions. They have one which includes the Wood Forest Bank account plus two other GMS accounts. We have a motion to partially release which only includes the GMS account. There is some dispute on the Wood Forest account. I have talked to Ms. Anderson about it. There are two -- we agree that it was for the most part SSI deposits into the account which the Estate would have no claim against. However, there are two fairly large deposits that no one has given me backup that happened prior to the date of death that I'm trying to find out what the backup is on those and whether or not those were community so that they could be taken out of what was being distributed out of the Wood Forest account. We are asking that our Motion to Partially Release be signed, which just includes the two GMS accounts.

THE COURT: So our only point of contention is

the Wood Forest account?

MS. DUFF: Yes, Your Honor.

THE COURT: Okay. So would you like to proceed on your motion?

MS. DUFF: I don't think they filed an appearance into the probate, which this is under the probate cause number. And which cause number are they filing appearance under?

UNIDENTIFIED PERSON: 401, Wrongful death.

MS. DUFF: The wrongful death matter. So that's just the trial. Storer as the Power of Attorney, I don't know that he would necessarily have standing in the probate matter at this point in time.

THE COURT: Well, in regard to the Injunction, clearly, Mr. McAfee is the person --

MS. DUFF: But it's Mr. Storer as the Power of Attorney. That's who they represent.

THE COURT: Right. Which is representing -- who represents Mr. McAfee? Is that a point of contention?

MS. DUFF: That's a little bit of a point of contention. It has been over these two cases. They have entered an appearance in the wrongful death case but no one has entered an appearance, unless they consider this their entering of an appearance, in the probate estate itself. Mr. McAfee has entered one but Mr. Storer as his Power of Attorney hadn't.

THE COURT: Okay, so are you contesting that Mr. Store has Mr. McAfee's Power of Attorney?

MS. DUFF: I'm just contesting his standing to make an appearance today. I believe Mr. Blumrosen has also contested that in the wrongful death case as well.

MR. BLUMROSEN: The wrongful death issues were basically I believe that Ms. Anderson indicates that she is only representing Mr. Storer, she is not entering an appearance on behalf of Mr. McAfee. But the issues in this, Your Honor, are quite simple. Everybody agrees that the two accounts, the GMS accounts are subject to garnishment, that they have been garnished, and all we are waiting on now is the Court to release the Injunction. And it would appear to me that the only person that may have authority to do that would be someone who has been involved in representing the Estate which is Ms. Duff. The other language that is contained in Ms. Duff's Order is language that I have spoken to the GMS attorney, that he said that the only way they would ever release the funds in the GMS accounts is if that language was contained in the Order. I sent that to opposing counsel and indicated as such, and again, even though they don't even contest the fact that those accounts are subject to garnishment, that language is not contained in there. So if the Court signs their motion, the GMS counsel, Mr. Lipman has indicated to me he can't release the funds because, since the market fluctuates, that has a

specific dollar amount in it as of whatever the date that we last were provided information on those accounts. The language that's proposed in Ms. Duff's Order indicates that amount plus whatever amount is left in the account after liquidation and fees. And for whatever reason, Mr. Lipman, as attorney for GMS, indicated he must have that language in the Order or he would not be able to release the funds.

MS. DUFF: So my motion is specific to the GMS accounts.

MR. BLUMROSEN: And as I see it, Your Honor, the only contention here is that they are claiming that the Wood Forest account should also be released. All Ms. Duff is saying is she has asked for, and I believe it's been documented, she has asked for backup. We agree if it's Social Security benefits, I have already pulled the garnishment. We are not entitled to garnish that because it had Social Security benefits in it. However, the Estate may or it may not have claims to it, depending on the character of those assets, and all we are simply asking is on behalf of the Estate, since this case has been going for five years anyway, that the Estate be entitled to look at the character and the backup so that Mr. McAfee, who is now a convicted murderer and doesn't get the benefit of money that he shouldn't get, and it seems pretty easy if they would provide us the backup if it was there, and then we would have no problem and release the Wood Forest

account to them. That's hasn't been done. And as I understand, all she has asked for is some backup, and if they provide it and show that it is Social Security benefits, then according to Ms. Duff, the Estate will walk away from their claims of it because they won't have any. That's really the only issue of this hearing.

MR. TEIR: I don't want to interrupt the dueling monologue. Continue.

MR. BLUMROSEN: I'm finished.

MR. TEIR: Because it seems like they are arguing against what they perceive our position is but didn't want to hear it.

THE COURT: Right.

MR. TEIR: Your Honor, the issue of the Wood Forest account is res judicata, respectfully, in this Court. This Honorable Court ordered and held that the account is completely one hundred percent exempt from garnishment in its January 27th, 2015 Order. The Court did so because of its inherent finding that every dime in the account is exempt from the reach of the Plaintiffs and is Mr. McAfee's Social Security income. That issue is decided and we say what's good for the goose is good for the gander if we are going to tinker with the Temporary Injunction that was agreed for the sole purpose of counsel getting paid a fee of eight thousand, that's all that's going on here, then allowing Mr. McAfee access to what all

agreed is his money so he can have an occasional stamp and piece of paper and Amazon book while in prison seems very fair and is the only result, respectfully, consistent with the Order quashing the Writ of Garnishment. The Order held that the Plaintiffs can't get at that account. Therefore, the only party that can is the Defendant, Mr. McAfee. And right now he can only access it through my client, Mr. Store. So we ask respectfully to allow the learned opposing counsel to be paid their approximately eight thousand dollars they have been waiting for from this other account, which we have no objection to. They are correct. But also to release the injunction to the funds that this Court has ruled belongs to Mr. McAfee, and to do both.

THE COURT: Okay.

MR. TEIR: Nothing further, Your Honor.

MS. DUFF: The only thing, Your Honor, the Wood Forest account was held to be exempt from garnishment. The Estate has a TRO covering all the assets and that's what we are here today on, a completely separate claim. I discovered that there is about $35,000 that was deposited, $25,162 was deposited on April 23rd, 2010, and $9,735 was deposited on May 4th of 2010. Both prior to death. Those are different than the normal SSI deposits that were coming into the account. My question is, where did those two deposits come from in the amount of $35,000 and was it community property? That's my

only question. If we can show that it was not community property, that it was separate property for whatever reason, then I understand the rest of that account is SSI, and is not subject to the TRO or to the garnishment. We don't like letting it go but we understand that it has to be let go because of federal law. So my question is on those two deposits.

MR. TEIR: I respectfully feel a little bit about hearing by ambush. Ms. Anderson, my colleague, filed our motion. There was no opposition although there was a counter-motion but no pleading offered any objection to our motion for any reason. I simply respectfully am not in a position to discuss the transaction from five years ago because there was no clue that that would be brought up. It is my understanding that similar questions were raised by counsel in the wrongful death charge and an explanation was provided through direct communications that we authorized with Charles Storer.

MR. BLUMROSEN: May I respond?

THE COURT: Yes.

MR. BLUMROSEN: Your Honor, at the hearing on the garnishment, and I did object to their motion and their Order based on the language of it, I would agree with counsel that it has been the decided that that account is not subject to garnishment. That much I agree with. But I think they are

wanting you to take the Order a little bit further and say not only is it not entitled to garnishment but the Estate has no claims to it. I don't represent the Estate. Ms. Duff does. Ms. Duff has -- we have e-mailed each other several times over the last week that she has been asking counsel for information about these deposits and that's the whole reason that she is inquiring about that on behalf of the Estate. So again, I get back to, this case has been going on for five years, the garnishment is not in dispute about the two GMS accounts. The only thing that's in dispute is the amount that Ms. Duff is indicating to the Court she has questions about which have not been provided to anybody about where that money came from.

MS. DUFF: I have asked about the deposits into the account for backup on them and I received the printout of the account. The account still doesn't have the backup on those two dollar figures. Ms. Anderson may have thought that this would have answered my questions but we have been calling for this week also to just try to get an answer as to what those two deposits are. Once we are clarified as to those two deposits, we understand that the TRO will be released as to the Wood Forest Bank.

MR. TEIR: In the alternative, if this Court is inclined to allow this Cinderella hour opposition to our motion, which again, I'm not prepared because, although our motion was filed a week ago, this is the first I'm hearing it.

But if there is a problem with twenty-five thousand, then we submit the Injunction should still be released to the balance of the account and any Temporary Injunction that we don't think should carry over at all, but if it does, it should be limited to the amount of that deposit.

THE COURT: Thirty-five thousand, I believe.

MS. DUFF: Thirty-five thousand, Your Honor.

MR. TEIR: I stand corrected. I didn't mean to misrepresent. Close enough. Public school, Your Honor.

THE COURT: Math. That would be my problem. So really, is there any desire for you all to communicate for the next week to try to clarify that $35,000 or there is no desire to do that right now?

MR. TEIR: We would be happy to discuss it and provide any information that we know but we don't know very much, Your Honor. The transaction was five years ago. Mr. Store had nothing to do with it and therefore we don't have anything but what Ms. Duff has, the bank records. As far as the source of that -- those funds, we believe that those funds are gone. They were subsequently withdrawn closer to the time of the deposit, and the only thing in the account, as we showed, to get our -- the writ quashed was Social Security deposits. Today every dime in that account is directly attributable to a direct deposit from the United States Social Security Administration. That money was gone long ago.

MS. DUFF: There were withdrawals out of the account, Your Honor. I do concur with that. But was it that money that was taken out or prior money. Is it first in first out on money? That's where our concern is coming from.

THE COURT: Lifo fifo.

MR. TEIR: The Courts have dealt with that and there is no appellate decision, and this is nationwide, because we are dealing with a federal statute, that has allowed access to funds and ruled them to be subject to garnishment or any other collateral attack because of commingling from a deposit over three years back, at least I couldn't find any, and I believe I read them all.

MS. DUFF: Well, Your Honor, this was immediately prior to her death and the funds were taken out immediately after her death, which was that's where we are saying, is it a community property interest because the funds went in prior and came out almost immediately after. We don't know what the exact funds are that came out.

MR. TEIR: What may help is, regardless of which accounting methodology is applied, lifo or fifo, after the withdrawals are made, there is a series of deposits made from only one source, the Social Security Administration. The funds that are on account now wouldn't be there but for the Social Security Administration direct deposits. Not a dollar. So regardless of accounting methodology, whether it's lifo or

fifo, the deposits from five years are gone. It's almost as if Mr. McAfee opened a new account at that point, because zero went out from after the withdrawals and the only money that came in was from the Social Security Administration. That's why we believe the Injunction should be lifted as to the account as a whole.

MR. BLUMROSEN: Your Honor, most Defendants who are post-judgment debtors have to respond to post judgment discovery and provide documentation as to where all their assets are which would include what happened to this money. In this matter, that hasn't happened because he is in jail and really doesn't have any care in the world about what the Court could do to him. He has a ninety-nine year sentence. The Court could hold him in contempt but it's really of no effect to Mr. McAfee.

So what they have done is they represent Mr. Store, the Power of Attorney, who they have said clearly, we don't represent Mr. McAfee and we will see what we can do about getting you stuff to help you, which they did finally answer the post-judgment discovery, but there is just no documents. They don't have any filing a Motion to Compel which we have already done and have ordered is of no effect to Mr. McAfee. So I do think when the Court is looking at its discretion in how to handle this matter, we would appreciate airing on the side of the victims of his brutal murder instead of saying,

well, we don't have any documents and we can't find out where this money came from so let's let Mr. McAfee have it. And what we would ask that if they refuse to and will not provide any benefit or any document supporting these transfers, that the Court use its power when the Estate comes in and says we believe this is community property, we believe the Court would have the inherent authority to look at it and decide that based on the fact of their refusal to produce any documents.

MR. TEIR: That argument was considered and completely rejected because it simply has no basis in the unanimous consensus of federal and state courts that admit that even for a defendant who is -- could be described as evil, the Social Security Administration Act from the Roosevelt administration in 1933 has no exceptions. The writ has been quashed. They have to let it go. I understand the resistance but their remedy is to seek a repeal of the Social Security Act. They should go to their congressman. It says you can't get at it for any reason. There have been fraudsters, there have been murderers, there have been kidnappers, and people have litigated the claim that they are a bad person. The purpose of the Social Security Act is to protect widows and children and retirees. This person is in jail. Doesn't need Social Security. The Courts have unanimously without one exception said that doesn't matter, Congress gave us an absolute language. It's protected. End of story. I can't

defend what Mr. McAfee did to his late wife, of course, but he has equal rights under the law and the Social Security Act has no exceptions, including for their clients.

MS. DUFF: Your Honor, I'm not contesting that this money may not be subject to the garnishment, my question is, $35,000 that was in there on her date of death, which we contend to have been community property at that point in time, at least 50 percent. Unless they prove that it was not community property, at least 50 percent of that $35,000, $17,000, I believe, if my math is correct, would have been her community property. That's what we are contesting at this point, not that she is entitled to any of the Social Security benefits but the community property interest in that money.

THE COURT: So as to his position that all of the money that's currently in the account is directly attributable to Social Security?

MS. DUFF: I don't see that, Your Honor, because there have been withdrawals, deposits, withdrawals, well, just those two deposits, I will give them that, but there are numerous other withdrawals after the date of death, so I don't know if he is taking out Social Security money, taking out -- what money was taken out? My argument is at that snapshot in time on May 10th of 2010, that $35,000 was still sitting in the bank account and that was community property.

THE COURT: Which gives you a claim against that

community property.

MS. DUFF: Yes, Your Honor.

THE COURT: But if all the money that's currently in the account is directly attributable to Social Security, money that he might have previously taken wrongfully that was community property, is that -- I guess your position would be that because that money was removed before and there is a claim that --

MS. DUFF: That at least fifty percent -- at least her community property interest should have been considered to remain in the bank account.

THE COURT: Even though the money that's currently there is -- unless you use a --

MS. DUFF: Some portion of it is.

THE COURT: Okay.

MR. TEIR: In summary, Your Honor, I think it's been well hashed by learned counsel and myself, after the withdrawals again, it doesn't --  no one has to take my word for it, they can just add up the deposits, they will see that that's the money that's in there and no one is questioning where one penny, one dime of that money has come from.  But if the Court rejects our claim, that the Injunction should be released, there is no reason to deny Mr. McAfee access to most of it because, by counsel's own admission, at most, the community property claim is equal to one-half the approximately

thirty-five thousand, and the rest, I don't hear anyone saying rests with any other soul on this planet but Charles McAfee, and he should have access to it for the very limited purposes that he is permitted under Texas law to use it such as a commissary account.

MS. DUFF: Your Honor, I wish I could argue against him on that but I do agree that anything in there that is SSI is his, I'm arguing about that portion that I consider to be. I wish I could argue different but, unfortunately, federal law decided that murderers have access to their money.

THE COURT: Okay, I'm going to look at this and discuss it with Judge Wright.

MR. BLUMROSEN: Judge, the only thing I wanted to add, I know I made the point, but if you decide to go with their Order, the one that they proposed --

THE COURT: I have to use your language or else the money won't come out.

MR. BLUMROSEN: Yes, ma'am.

MS. DUFF: Yes, we need the money to come out of those two accounts.

THE COURT: Got it.

MR. TEIR: We are certainly amenable to that, Your Honor.

THE COURT: Okay.

MR. TEIR: May we be excused, Your Honor?

THE COURT: You may.

C E R T I F I C A T E

COUNTY   OF   HARRIS   *
STATE   OF   TEXAS   *

I, Donald G. Pylant, Official Court Reporter in and for Probate Court No. 1 of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record truly and correctly reflects the exhibits, if any, admitted, tendered in an offer of proof or offered into evidence by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is _$133.00_ and will be paid by _Esther Anderson_ .

Given under my hand and seal of office this the _5th_ day of _August_, 2015.

/s/Donald G. Pylant_____
Donald G. Pylant, C.S.R.
Official Court Reporter
in and for the County of
Harris and the State of
T E X A S.

Certification No. 668    Exp. Date: 12-31-2016
Probate Court No. One 201 Caroline Street, 6th fl.
Houston, Texas 77002 (713) 368-6692

# Tab 13

Order Partially Releasing
Temporary Injunction

No. 396,935

| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| --- | --- | --- |
| | § | |
| JANET FOLTYN MCAFEE, | § | NO. 1 |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

### ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION

On March 12, 2015, the Court considered the Motion for Partial Release of the Temporary Injunction filed by Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee and the arguments of counsel. After due consideration of the Motion, the Response thereto, and the arguments of counsel, the Court finds the motion is **GRANTED** and orders the **PARTIAL RELEASE** of the TEMPORARY INJUNCTION to Dean M. Blumrosen as the attorney for Rosemary Foltyn and Jake Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee as to the accounts referenced below ONLY:

1.      Account number 55H056008 holding approximately $6,694.39, or all funds remaining in the account after liquidation and account service fees, at GMS Group, LLC; and

2.      Account number 55H004628 holding approximately $1,661.15, or all funds remaining in the account after liquidation and account service fees, at GMS Group, LLC.

IT IS FURTHER ORDERED that the other accounts and assets described in the June 8, 2011 Agreed Order for Temporary Injunction should remain subject to the Temporary Injunction.

Signed on: March 16, 2015.

PRESIDING JUDGE

Rec /RCS 3/13/15

FILED
2015 MAR 17 AM 9: 22

Confidential information may have been redacted from the document in compliance with the Public Information Act.

**A Certified Copy**
**Attest: 10/1/2015**
**Stan Stanart, County Clerk**
**Harris County, Texas**



Summer Lea Willette

_____ **Deputy**



Approved as to Form Only By:

MITCHELL & DUFF, LLC

M. Elizabeth Duff
Attorney for Rosemary Foltyn, Administratrix
210 Main Street
Richmond, Texas 77469
Tel: (281) 341-1718
Fax: (281) 239-7928
Email: eduff@mitchellandduff.com

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 10/1/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ **Deputy**

Summer Lea Willette



# Tab 14

First Amended Motion for Reconsideration of March 16, 2015, Order Partially Releasing Temporary Injunction, First Amended Motion for Entry of Order Releasing Social Security Proceeds from Injunction

And

Motion for Sanctions

ANM

DATA-ENTRY
PICK UP THIS DATE

PROBATE COURT 1

FILED
4/30/2015 1:55:07 PM
Stan Stanart
County Clerk
Harris County

**CAUSE NO. 396,935**

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JANET F. McAFEE, | § | NUMBER 1 OF |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

**CAUSE NO. 396935-401**

| | | |
|---|---|---|
| IN RE | § | IN THE PROBATE COURT |
| JANET F. McAFEE, | § | |
| Deceased | § | NUMBER ONE |
| | § | |
| ROSEMARY FOLYN and | § | |
| JAKE FOLYN | § | |
| | § | |
| v. | § | OF |
| | § | |
| THE GMS GROUP, LLC and | § | |
| WOODFOREST NATIONAL BANK, | § | HARRIS COUNTY, TEXAS |
| Defendants | § | |

**FIRST AMENDED MOTION FOR RECONSIDERATION OF MARCH 16, 2015, ORDER
PARTIALLY RELEASING TEMPORARY INJUNCTION,
FIRST AMENDED MOTION FOR ENTRY OF ORDER RELEASING SOCIAL
SECURITY PROCEEDS FROM INJUNCTION
AND
MOTION FOR SANCTIONS**

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Charles Storer, Agent under a Power of Attorney from Kenneth

McAfee (see Exhibit "1"), who moves the Court to:

    a. reconsider its March 16, 2015 *Order Partially Releasing Temporary Injunction*

       (see Exhibit "2") that does not include language permitting Kenneth McAfee

       access to funds the Court previously held to be his social security proceeds

       on deposit at Woodforest National Bank (see Exhibit "3," *Order Partially*

       *Granting Motion to Quash Writs*, ¶5. And,

FIRST AMENDED MOTION FOR RECONSIDERATION OF MARCH 16, 2015, ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION,
FIRST AMENDED MOTION FOR ENTRY OF ORDER RELEASING SOCIAL SECURITY PROCEEDS FROM INJUNCTION
AND MOTION FOR SANCTIONS
Page 1

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Sterling G. Senechal III



b. to enter an *Order Releasing Social Security Proceeds* from any injunction that may be in force.

In support of this *Motion for Reconsideration*, all Exhibits are attached and incorporated herein by reference as if set out in full. Charles Storer, Power of Attorney for Kenneth McAfee, hereinafter, "Storer" shows the following:

## A. PROCEDURAL HISTORY

1. The Estate of Janet McAfee was awarded a judgment against Kenneth McAfee in a wrongful death action under the jurisdiction of this Court. Although assets have been available to satisfy such judgment and although such assets have been repeatedly offered to the Estate, the Estate representative and her counsel, Elizabeth Duff, have refused to take any steps toward accepting the assets and crediting them against the judgment. Instead, they have made misrepresentations to the Court in a effort to not let go of their only tie to McAffee.

2. Ignoring the fact that the account Kenneth McAfee (hereinafter "McAfee") held with his employer, GMS, was a retirement account, the judgment creditor (hereinafter "Plaintiffs") sought, and received, a writ of garnishment against the GMS retirement account, along with two other accounts at GMS. Plaintiffs also sought a separate writ of garnishment for funds held on deposit at Woodforest National Bank (Woodforest"), which was also issued and is the subject of this *Motion*.

3. To protect the GMS account, which held only retirement benefits exempt from creditors under the Texas Property Code, and to protect the Woodforest account,

FIRST AMENDED MOTION FOR RECONSIDERATION OF MARCH 16, 2015, ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION,
FIRST AMENDED MOTION FOR ENTRY OF ORDER RELEASING SOCIAL SECURITY PROCEEDS FROM INJUNCTION
AND MOTION FOR SANCTIONS
Page 2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
**Harris County, Texas**



Sterling G. Senechal III _____Deputy



which held only social security proceeds exempt from creditors under the federal Social Security Act, Storer moved to quash Plaintiffs' writs only to the extent they reached these two accounts. *See* Exhibit "4," *Motion to Quash Writs of Garnishment,* which is attached hereto without Exhibits, which Exhibits are a part of this Court's file and are incorporated herein by reference as if set out in full.

4. Storer's *Motion to Quash Writs* set forth the source of funds in both accounts, demonstrating their exempt nature and providing the points and authorities to explain how each were, without exception, exempt from the reach of judgment creditors by operation of federal law. [1]

5. The legal authorities and conclusion in Storer's *Motion to Quash Writs* were never questioned or objected to by Plaintiffs. Indeed, there is no countervailing authority to be found to the arguments raised in Storer's *Motion to Quash Writs.* See *In re Franklin,* 506 B.R. 765, 769 (Bankr., C.D. Ill. 2014) ("These proscriptions have been part of the Social Security Act since 1935"). As such, the Court granted Storer's *Motion* and entered an *Order Partially Granting Motion to Quash Writs of Garnishment,* which quashed both writs only to the extent they reached the GMS account containing retirement benefits and the Woodforest account containing social security proceeds. *See* Exhibit "3." [2] The "injunction" over each account, however, remained to be addressed.

---

[1] *See* 42 U.S.C. §407; *see also Bennett v. Arkansas,* 485 U.S. 395, 397, 108 S.Ct. 1204, 1205, 909 L.Ed2d 455 (1988) (42 U.S.C. §407(a) "unambiguously rules out any attempt to attach Social Security benefits").
[2] The Court's ruling per the January 27, 2015 *Order Partially Granting Motion to Quash Writs of Garnishment* did not reach two other GMS accounts that did not contain exempt funds, which Storer never sought to protect from garnishment. See Exhibit "3." To the best of the undersigned's knowledge, such other accounts have been collected by Plaintiffs.

FIRST AMENDED MOTION FOR RECONSIDERATION OF MARCH 16, 2015, ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION,
FIRST AMENDED MOTION FOR ENTRY OF ORDER RELEASING SOCIAL SECURITY PROCEEDS FROM INJUNCTION
AND MOTION FOR SANCTIONS
Page 3

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ **Deputy**
Sterling G. Senechal III

6. Thereafter, Storer sought a release from the "injunction" of (i) the non-exempt accounts Plaintiffs and/or the Estate wanted, and (ii) the exempt GMS and Woodforest accounts. See Exhibit "5," *Motion to Partially Release Temporary Injunction*, without Exhibits, which Exhibits are a part of this Court's file and are incorporated herein by reference as if set out in full. On March 12, 2015, the Court heard for the first time, arguments against releasing McAfee's federally and state protected retirement benefits and social security proceeds, yet such arguments had already been determined by the Court *on* January 27, 2015, when the Court found that there existed no question but that all deposits into the Woodforest account since 2010 were direct deposits from the United States Social Security Administration, and that such deposits represented the entirety of the Woodforest account. See Exhibit "3." At neither hearing did Plaintiffs offer any evidence to show that the funds on deposit at Woodforest were anything but what Storer has always said they are, social security proceeds. Nonetheless, on March 16, 2015 the Court entered the Order submitted by the Plaintiffs and/or the Estate, which included language releasing only the non-exempt accounts Plaintiffs and/or the Estate wanted, and not releasing the social security account solely owned by McAfee. See Exhibit "2."

7. There is no action or pleading pending before this Court questioning the Court's January 27, 2015 *Order Partially Granting Motion to Quash Writs of Garnishment* that the Woodforest account is, in its entirety, social security proceeds. Similarly, there is no objection to Storer's *Motion to Partially Release Temporary Injunction* such assets from the scope of any continuing injunction.

FIRST AMENDED MOTION FOR RECONSIDERATION OF MARCH 16, 2015, ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION, FIRST AMENDED MOTION FOR ENTRY OF ORDER RELEASING SOCIAL SECURITY PROCEEDS FROM INJUNCTION AND MOTION FOR SANCTIONS
Page 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



Sterling G. Senechal III _____ Deputy



## B. ARGUMENT

**i.      THE FUNDS IN THE WOODFOREST ACCOUNT ARE MCAFEE'S AND ARE BEYOND THE JURISDICTION OF THIS COURT**

8.    Storer requests the Court reconsider its decision, if a deliberate decision was made, to not enter the order he submitted freeing both the GMS accounts subject to garnishment for the Estate/Plaintiffs <u>and</u> the Woodforest social security account of McAfee, not subject to garnishment, because the nature and the ownership of the funds on deposit in the Woodforest social security account were determined with finality via the Court's January 27, 2015 *Order Partially Granting Motion to Quash Writs of Garnishment*, (Exhibit "3") and as such, the subject of such *Order* is now *res judicata* and the law of the case. Specifically, this Court lacks subject matter jurisdiction over the Woodforest social security account. Therefore, the Court must release its "injunction" pertaining to such account.

10.   Because the nature and source of the funds on account in the Woodforest social security account is the law of this case, and because the Estate does not and cannot have any claim in or against any of such social security proceeds, there is no legal basis to continue the "injunction" as same pertains to the Woodforest social security account.

11.   Additionally, because the Woodforest social security account is not an asset of the Decedent's Estate, the Court does not have jurisdiction over such account. *See Smith v. Lanier*, 998 S.W.2d 324, 335 (Tex. App.—Austin 1999, pet. denied) (because assets "arguably were" husband's separate property, Probate Court administering late wife's estate "did not have subject-matter jurisdiction over the disputed property"); *see also State v. Traylor*, 374 S.W.2d 203, 207 (Tex.1963) (Smith, J., concurring) (Probate Court lacks jurisdiction over separate property of widow or widower).

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



**ii. IT IS *RES JUDICATA* TO NOW ARUGUE THAT THE FUNDS IN WOODFOREST ARE ANYTHING BUT SOCIAL SECURITY PROCEEDS**

12. The Court entered an *Order Partially Granting* [Storer's] *Motion to Quash Writs* on January 27, 2015, as to the Woodforest social security account. See Exhibit "3." Storer's *Motion to Quash Writs* was based on one argument and one proposition of law—that the funds in the Woodforest account are federal social security benefits. *See* Exhibit "4," ¶'s 8-21.

13. While an opposition to the *Motion to Quash Writs* was filed, Plaintiffs' and the Estate's counsel did not, and could not, question, refute, or distinguish the unanimous and clear precedent that social security proceeds are beyond the reach of creditors. Therefore, the writ of garnishment with regard to the Woodforest social security account was quashed in its entirety. See Exhibit "3." Because only one argument was made for quashing such writ, and because the Court quashed such writ, it is *res judicata* to now argue anything but that the funds in the Woodforest account are exempt because they are protected from creditors under the Social Security Act, which protection attaches to the account because the funds in it are only social security proceeds.

14. *Res judicata* prevents anyone from acting or asserting a position contrary to the holding and implicit finding of this Court in the January 27, 2015 on the *Order Partially Granting Motion to Quash Writs.* *See Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 101 (Tex. App.— Eastland 2010) (stating that once a ruling is made, it is final, and contrary arguments are prohibited).

FIRST AMENDED MOTION FOR RECONSIDERATION OF MARCH 16, 2015, ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION, FIRST AMENDED MOTION FOR ENTRY OF ORDER RELEASING SOCIAL SECURITY PROCEEDS FROM INJUNCTION AND MOTION FOR SANCTIONS
Page 8

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III                              Deputy

15. *Res judicata* also bars retrial of claims that have been actually litigated and finally adjudicated in the original suit. *See Coalition of Cities for Affordable Util. Rates v. Public Util. Comm'n,* 798 S.W.2d 560, 562–63 (Tex. 1990), *cert. den. sub nom., Gulf States Utils. Co. v. Coalition of Cities for Affordable Util. Rates,* 499 U.S. 983, (1991). Specifically, the nature of each and every dollar in the Woodforest social security account was both, "actually litigated" and "finally adjudicated" via this Court's disposition of Storer's *Motion to Quash Writs* based on the Court's finding that such funds are social security proceeds belonging solely to McAfee that are absolutely exempt from garnishment. *See* Exhibit "3," ¶5.

16. The doctrine of *res judicata* also bars litigation of all issues connected with a cause of action or defense that, with the use of diligence, might have been litigated in the prior dispute. *See Gracia v. RC Cola – 7-up Bottling Co.,* 667 S.W.2d 517, 519 (Tex. 1984). If any party had the slightest differing view of the Woodforest social security account than Storer, they had ample opportunity to make that argument, and, with diligence, would have done so when the *Motion to Quash Writs* was pending in November 2014, December 2014, and January 2015. No party did. The Estate did file an opposition to the *Motion to Quash Writs,* but did not question the factual or legal conclusions about the Woodforest account containing social security proceeds. The period when the *Motion to Quash Writs* was pending would have been the timely, relevant, and appropriate time to question any of the legal or factual assertions made in Storer's *Motion to Quash Writs,* and would have been the correct time to bring to the Court's

FIRST AMENDED MOTION FOR RECONSIDERATION OF MARCH 16, 2015, ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION, FIRST AMENDED MOTION FOR ENTRY OF ORDER RELEASING SOCIAL SECURITY PROCEEDS FROM INJUNCTION AND MOTION FOR SANCTIONS
Page 7

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III _____ Deputy



attention for consideration, any evidence that the Woodforest account held anything other than social security proceeds. No party did; and it is too late to make any such argument now.[3]

18. The bottom line is that the March 12, 2015 hearing on Storer's February 10, 2015 *Motion to Partially Release Temporary Injunction* as to the Woodforest account was not the time nor the place for an "impermissible collateral attack" on the prior January 27, 2015 judgment of the Court. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) (stating that it is impermissible to "attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against.") *U.S. Bank, N.A. v. Kobernick*, 402 S.W.3d 748, 754 (Tex. App.—Houston [1st] 2012); *in re Commitment of Briggs*, 350 S.W.3d 362, 368 (Tex. App.—Beaumont 2011); *Dallas County Tax Collector v. Andolina*, 303 S.W.3d 926, 930 (Tex. App.—2010); *Henderson v. Chambers*, 208 S.W.3d 546, 550 (Tex. App.—Austin 2006); *see also id.* ("Only a void judgment may be collaterally attacked").

---

[3] No evidence was offered during the adjudication of Storer's *Motion to Quash Writs of Garnishment* that the funds on deposit at Woodforest are anything but what Charles Storer has maintained they are, and what the Court has found they are — social security proceeds. The sole questioning of the nature of these funds was in the latest late arguments of Plaintiffs'/Estate's counsel on March 12, 2015, and even then, there was no assertion that the funds are anything but social security proceeds. Rather, Plaintiffs'/Estate's counsel stated only that she "questions" some of the deposits in the account. Questioning is good, but offers this Court no reason to deny Storer's *Motion*. Additionally, questioning is also not testimony and is not evidence. *See Lee v. State*, 442 S.W.3d 569, 579 (Tex. App.—San Antonio 2014) (stating that arguments of counsel are not evidence, even when counsel is the honorable Attorney General); *Levy v. Cash, LLC*, 2013 WL 6237273, at *1 (Tex. App.—Houston [14th] 2013) ("challenged statements of .... Counsel were arguments of counsel, not testimony").

FIRST AMENDED MOTION FOR RECONSIDERATION OF MARCH 16, 2015, ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION, FIRST AMENDED MOTION FOR ENTRY OF ORDER RELEASING SOCIAL SECURITY PROCEEDS FROM INJUNCTION AND MOTION FOR SANCTIONS
Page 8

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Sterling G. Senechal III



### iii. SOCIAL SECURITY PROCEEDS ARE PERSONAL PROPERTY

19. In *Richard v. Richard*, a Court of Appeals held:

> "Social Security benefits are not community property, and a state court's attempted disposition would conflict with federal law, disrupting a 'uniform federal scheme of benefits' by producing results which would vary 'depending upon the community property law of various states'".

20. *Id.*, 659 S.W.2d 746, 747 (Tex. App.—Tyler 1983). The personal property nature of social security benefits is well-settled under Texas law. *See id.; see also In re Marriage of Ford*, 435 S.W.3d 347, 350, n.2 (Tex. App.—Texarkana 2014) ("Social Security benefits are not subject to division under community property laws"); *In re Marriage of Everse*, 440 S.W.3d 749, 754 (Tex. App.—San Antonio 2013) ("[T]reatment of social security disability benefits paid during the marriage as community property would do major damage to clear and substantial federal interests") (internal quotations omitted); *Granger v. Granger*, 236 S.W.3d 852 (Tex. App.—Tyler 2007 pet. denied) ("Social security benefits are not subject to division under community property laws because the language in 42 U.S.C.A., section 407 of the Social Security Act manifests a congressional intent to preempt state law.").

21. For these additional reasons, the social security proceeds in the Woodforest social security account are not subject to any claim of Decedent's Estate.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
rling G. Senechal II.



22. There have already been multiple hearings to address issues relating to the Woodforest social security accounts and the assets therein. The Court has already determined to be wholly exempt from creditors under long standing federal law. Nonetheless, Rosemary and Jake Foltyn and Rosemary Foltyn, as Independent Executor of the Estate of Janet F. McAfee, while doing nothing to accept assets from Storer on behalf of McAfee, to satisfy the judgment recovered against McAfee, engage in an endless obstacle course aimed at denying Storer access to what everyone agrees is McAfee's exempt, separate property. The Foltyns have turned this tiny bit of remaining litigation into a game of smite, where, if they cannot get to the account because of federal law, they will do whatever they can so that no one else gets to it either, including its lawful owner.

23. This spiteful harassment now takes the form of accusations that are never put on paper (as legal assertions would require references to actual facts and legal authority). And as the prior hearing showed, the sole, tardy reason offered to oppose the lifting of the 'injunction' freezing the Woodforest social security account was that counsel supposes that, maybe, somehow, some unknown small portion of such account is community property, without giving this Court or Storer so much as a clue as to how this may be the case.

25. This Court's, *Order Partially Granting Motion to Quash Writs* held that the Woodforest account contains exempt social security assets belonging to McAfee. Counsel's most recent pretended suspicions do not overcome what is res judicata in this case, and offer no reason to put Storer through hearing after

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



hearing based on unwritten, unspecified, and most certainly unproven suspicion(s).

26. Plaintiffs have not offered one bit of evidence that questions the source and nature of the funds on deposit at Woodforest, which subject is now moot. Their efforts to forever punish McAfee is perhaps understandable, but the use of the civil courts to further punish McAfee is ultra vires, a violation of the double jeopardy clause of the United States and Texas Constitution, and totally ignores the very real fact that McAfee has already been judged and is being punished for his crime every day he remains in the state's maximum security prison. See U.S. Const., Amd. V; Texas Const., Art. I, §14. The Foltyns' secondary punishment, no matter how gratifying for those for whom no punishment is sufficient, must stop now, especially in light of the fact that they are relying upon enforcement of a "temporary injunction," which everyone knows is not enforceable, but is, instead, being honored by Storer out of respect to the Court.

30. In addition to the endless moving of the goalpost, the Foltyns knowingly filed improper writs of garnishment and attempted to collect assets they knew to be exempt under law. Even after the Court heard and adjudicated the issue of exempt assets, which determination they did not (and could not seriously) appeal, and even after this issue had been resolved and was *res judicata*, they now insist on an oral hearing on Storer's *Motion for Reconsideration*, without anything in writing, so they can again hide from Storer what basis they seek he be denied the relief he requests (see *Pearson v. Wichita Falls Boys Club Alumni Assoc.*, 633 S.W.2d 684, 686 (Tex. App.—Fort Worth 1982) (Texas litigation is

FIRST AMENDED MOTION FOR RECONSIDERATION OF MARCH 18, 2015, ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION, FIRST AMENDED MOTION FOR ENTRY OF ORDER RELEASING SOCIAL SECURITY PROCEEDS FROM INJUNCTION AND MOTION FOR SANCTIONS
Page 11

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III

not "a game of chance and surprise, or 'Blind Man's Bluff'"), and to increase attorney fees.

31. Plaintiffs' attempts to use the processes of this Court to continue their harassment in the face of the Court's plain and unambiguous final Order should no longer be tolerated. *See, e.g., Bennett v. Reynolds*, 2014 WL 4179452, at n. 49 (Tex. App.—Austin 2014) (courts declining to "beat a dead horse").

32. The bottom line is that the issue is settled and moot, and any further complaints regarding same are barred by *res judicata*. Plaintiffs simply have no right to the social security proceeds; they know this and have admitted this fact on the record through their counsel.

33. Therefore, for the above stated reasons, the Court should impose appropriate and just sanctions against Rosemary and Jake Foltyn, and Rosemary Foltyn, as Independent Executor of the Estate of Janet F. McAfee, for their groundless and frivolous pleadings, settings, and acts in violation Texas Civil Practice & Remedies Code §10.001, 9.012 and Texas Rule of Civil Procedure 13. *See Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 96 (Tex. 2009) (sanctions permissible for seeking to collect from debtor discharged in bankruptcy); *Low v. Henry*, 221 S.W.3d 609, 616 (Tex. 2007) (sanctions appropriate for improper pleadings filed with the trial court); *Gomer v. Davis*, 419 S.W.3d 470, 478 (Tex. App.—Houston [1st] 2013) (sanctions permissible for submission of pleadings groundless in law and fact).

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas


Sterling G. Senechal III _____ Deputy



## PRAYER

WHEREFORE, Charles Storer, Agent under a Power of Attorney from Kenneth McAfee, prays the Court:

a.  reconsiders its *Order Partially Releasing Temporary Injunction* dated March 16, 2015, releasing from any injunction only the non-exempt GMS accounts, and not releasing from any injunction Kenneth McAfee's social security proceeds account at Woodforest National Bank;

b.  enters Charles Storers' proposed Order, attached hereto as Exhibit "6," which releases the exempt social security account at Woodforest National Bank;

c.  grants appropriate and just sanctions against Rosemary and Jake Foltyn and Rosemary Foltyn, as Independent Executor of the Estate of Janet F. McAfee, for groundless and egregious efforts to keep Storer from assets that rightfully belong, under settled law, to Kenneth McAfee; and

d.  for such other and further relief at law or in equity to which Storer may be justly entitled.

FIRST AMENDED MOTION FOR RECONSIDERATION OF MARCH 16, 2015, ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION,
FIRST AMENDED MOTION FOR ENTRY OF ORDER RELEASING SOCIAL SECURITY PROCEEDS FROM INJUNCTION
AND MOTION FOR SANCTIONS
Page 13

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



Sterling G Senechal III

_____Deputy

Respectfully submitted,

ANDERSON PFEIFFER, PC

*Esther Anderson*

By:   **Esther Anderson**
SBN:  00792332
By:   Robert Teir, of Counsel
SBN: 00797940
845 FM 517 West, Suite 200
Dickinson, Texas 77539-2903
Office: 281.488.6535
Facsimile: 281.614.5205
Email: esther@probateguardianship.com
      rob@probateguardianship.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the following has been forwarded to all parties and/or counsel of record through our electronic service provider and/or facsimile and/or certified mail, return receipt requested on this 30th day of April, 2015.

*Esther Anderson*

Esther Anderson

cc:    Matthew E. Lipman
      Faust Oppenheim LLP
      488 Madison Avenue        **Via Electronic Service Provider &**
      New York, New York 10022    **Facsimile 212-371-8410**

      Dean M. Blumrosen, Esq.
      4615 Southwest Freeway, Suite 850   **Via Electronic Service Provider &**
      Houston Texas 77027         **Facsimile 713-524-5570**

      Mary Elizabeth Duff
      210 Main Street           **Via Electronic Service Provider &**
      Richmond, Texas 77469      **Facsimile 281-341-5517**

      Woodforest National Bank,
      through their registered agent
      James D. Dreibelbis
      25231 Grogan's Mill Road, Suite 100
      The Woodlands, Texas 77380    **VIA CMRRR** 9414 7102 0082 9596 1128 35

N:\Storer, Charles\Pleadings, Motions, Applications\1st amended motion to reconsider & motion for sanctions.docx

FIRST AMENDED MOTION FOR RECONSIDERATION OF MARCH 16, 2015, ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION,
FIRST AMENDED MOTION FOR ENTRY OF ORDER RELEASING SOCIAL SECURITY PROCEEDS FROM INJUNCTION
AND MOTION FOR SANCTIONS
Page 14

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

*Sterling G. Senechal III*

Sterling G. Senechal III      Deputy



# DURABLE POWER OF ATTORNEY FOR
# KENNETH COOPER MCAFEE

I KENNETH COOPER MCAFEE revoke all previous powers of attorney given by me. This is a durable power of attorney given for the management, protection, and conservation of my property, especially in the event I am unable for any reason to manage, protect, and conserve my own property, and to avoid a guardianship as to the management, protection, and conservation of my property. It is my purpose to delegate certain other authority of a personal nature, such as the authority to make health care decisions in the event I cannot do so for myself. The authority vested in a Personal Representative under this durable power of attorney is unlimited in nature, and is based in complete trust. A Personal Representative's authority and legal capacity will be that of an agent and trustee.

## APPOINTMENT OF THE PERSONAL REPRESENTATIVE

I appoint my CHARLES RUSSELL STORER as my Personal Representative.

My Personal Representative may elect to receive a reasonable compensation for service considering the time required in the administration of my affairs and the responsibility assumed. My Personal Representative may delegate to a state or national banking corporation, having trust powers and an active trust department, by agency agreement or otherwise, any one or more of the following administrative functions: the custody and safekeeping of assets, record keeping and accounting, and/or investment authority. The expense of the agency or other arrangement will be paid as an expense of administration pursuant to this power of attorney.

My Personal Representative will serve without the requirement of bond or other security, and will have the authority given to agents by Texas law and to trustees under the laws of the state of Texas.

This power of attorney is revocable and revocation will be effective only if my written and acknowledged revocation is filed of record in the Deed Records of Harris County, Texas. Any person, entity, or institution dealing with my Personal Representative will be entitled to rely upon my Personal Representative's sworn statement that this general power of attorney has not been revoked and that the Personal Representative is authorized and empowered to serve. Further, any person, entity, or institution dealing with my Personal Representative will be entitled to rely upon a copy of this Drurable Power of Attorney to the same extent they could rely on the original of this document. I indemnify and hold harmless any person, firm, institution, or agency from any loss or claim whatsoever in relying upon such statement, and to this end, I bind myself, my estate, my heirs, successors, and assigns. I vest in my Personal Representative the authority to

Page 1 of 4

**EXHIBIT 1**

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling C Senechal III

record this power of attorney at any reasonable time, and to the extent I may lawfully provide, my Personal Representative may do so at any time before the Personal Representative is to act with respect to any third party who may be asked to rely upon this document.

## AS A GENERAL POWER OF ATTORNEY

This document is to be construed as a general power of attorney vesting in my Personal Representative complete and absolute authority, without my joinder or consent, to transact for me and on my behalf any and all business I might transact if personally present and acting. Any transaction completed on my behalf by my Personal Representative will be binding upon me, my estate, my successors, and assigns.

Most general powers of attorney attempt to list the specific power or authority in a Personal Representative. I am concerned that the attempt to make a comprehensive list might in some way limit my Personal Representative's authority. The authority I vest in my Personal Representative is comprehensive and unlimited.

My Personal Representative will have the authority to continue during any period or episode of my disability any program of planned giving which I may have established. The continuation of a program or plan of giving which includes annual gifts to my Personal Representative will not be a breach of trust or an act of self-dealing on the part of my Personal Representative.

This power of attorney is to be considered and construed as being a durable power of attorney and will not terminate upon my disability. As a trust, the authority of the Personal Representative will continue following my death for a time reasonably needed to complete administration of the property which, at the time of my death, was in the custody or control of my Personal Representative. This would include, for example, all property held in the name of my Personal Representative as trustee.

## AUTHORITY AS A TRUSTEE

I vest in my Personal Representative all of the power and authority given to trustees by the trust laws of the state of Texas. If my Personal Representative determines that it is in my best interest under the facts and circumstances then existing, I authorize my Personal Representative to take possession of any and all of my property and estate, as trustee, and to hold, conserve, and administer such property for me and for my general welfare. My Personal Representative will be responsible only for the property of my estate over which my Personal Representative shall assert direct control, and will not have liability for the loss of income from, or the depreciation in value

Page 2 of 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Sterling G. Senechal III

of, assets which my Personal Representative does not possess or which are retained in the form my Personal Representative received them.

My Personal Representative will have the authority to employ such professional help and consultation as needed to assist with the prudent administration of my property and to provide for my welfare. The expense of professional help, consultation, and assistance will be an expense of administration.

My Personal Representative is authorized, upon my death, to make direct payment for any expense related to my hospitalization, illness, treatment, and care prior to my death, and any expense related to my death and the settlement of my estate. The trust created by this document will continue for a reasonable time in which to conclude administration, pay expenses of termination (including the discretionary payment of expenses and estate settlement costs), and to make distribution of the trust property to those entitled thereto.

## RATIFICATION AND INDEMNITY

I ratify and confirm all that my Personal Representative will do or cause to be done by reason of the authority vested by this power of attorney and by law. I further provide that my Personal Representative may indemnify and hold harmless any third party who accepts and acts under this power of attorney. No person, firm, agency or entity will be obligated to see to application of payment delivered to my Personal Representative for or on my behalf. I bind myself, my estate, my successors, heirs, and assigns, to indemnify and hold harmless any person, agency, or entity from any loss or claim which may be sustained as the result of relying upon this document and the authority of my Personal Representative. My Personal Representative is authorized to proceed in my name and on my behalf against any person, agency or entity who will fail or refuse to recognize the authority of my Personal Representative or who will refuse to transact business with my Personal Representative to my harm and detriment.

## CONCLUSION

This power of attorney, and the trust it represents, is dated and effective the date set forth below.

DATE: _Jan. 27_____, 2013.

_Kenneth Cooper McAfee_ 10R
KENNETH COOPER MCAFEE

Page 3 of 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Sterling G. Senechal III

STATE OF TEXAS      §
                    §
COUNTY OF POLK      §

JAN. 2014

On this __27__ day of December 2013, before me, a Notary Public for the State of Texas, personally appeared KENNETH COOPER MCAFEE, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same and for the purpose and consideration therein expressed.

WITNESS MY HAND AND OFFICIAL SEAL.

_____
Notary Public, State of Texas

KENNETH W. STACKHOUSE
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 01/16/2018

My Commission Exirtes: __01-16-2018__

Ret v/
Charles Stoner
6650 FAIRFIELD St.
Houston, TX 77023-4002

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and chang·: were present at the time the instrument was filed and recorded.

Page 4 of 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



FILED
2015 JAN -8 PM 12:17
COUNTY CLERK
HARRIS COUNTY TEXAS

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas

JAN - 8 2015

Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



Stoces
PMod

No. 396,935

| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JANET FOLTYN MCAFEE, | § | NO. 1 |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

### ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION

On March 12, 2015, the Court considered the Motion for Partial Release of the Temporary Injunction filed by Rosemary Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee and the arguments of counsel. After due consideration of the Motion, the Response thereto, and the arguments of counsel, the Court finds the motion is GRANTED and orders the PARTIAL RELEASE of the TEMPORARY INJUNCTION to Dean M. Blumrosen as the attorney for Rosemary Foltyn and Jake Foltyn, as Administratrix of the Estate of Janet Foltyn McAfee as to the accounts referenced below ONLY:

1. Account number 55H056008 holding approximately $6,694.39, or all funds remaining in the account after liquidation and account service fees, at GMS Group, LLC; and

2. Account number 55H004628 holding approximately $1,661.15, or all funds remaining in the account after liquidation and account service fees, at GMS Group, LLC.

IT IS FURTHER ORDERED that the other accounts and assets described in the June 8, 2011 Agreed Order for Temporary Injunction should remain subject to the Temporary Injunction.

Signed on: March 16, 2015.

PRESIDING JUDGE

Rec /Ros 3/13/15

EXHIBIT
2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

Storer
Pikon

CAUSE NO. 396935-401

| | | |
|---|---|---|
| IN RE | § | IN THE PROBATE COURT |
| JANET F. McAFEE, | § | |
| Deceased | § | NUMBER ONE |
| | § | |
| ROSEMARY FOLYN and | § | |
| JAKE FOLYN | § | |
| | § | |
| v. | § | OF |
| | § | |
| THE GMS GROUP, LLC and | § | |
| WOODFOREST NATIONAL BANK, | § | HARRIS COUNTY, TEXAS |
| Defendants | | |

### ORDER PARTIALLY GRANTING MOTION TO QUASH WRITS OF GARNISHMENT. ~~AND DISSOLVING INJUNCTIONS~~.

On this day came to be considered the *Motion to Quash Writs of Garnishment* filed by Charles Storer, Power of Attorney for Kenneth Cooper McAfee. After review and consideration of said *Motion*, the evidence, the responses, and the arguments of counsel, the Court finds the following:

1. Judgment for damages in the amount of $2,000,000.00 plus pre and post judgment interest and court costs was entered by this Court on March 21, 2014 in Cause Number 396,935-401; *Rosemary Foltyn, Individually and as Independent Administratrix of the Estate of Janet Foltyn McAfee, Deceased; and Jake Foltyn, Individually v. Kenneth Cooper McAfee* Plaintiffs/Garnishors herein executed two writs of garnishment directed at The GMS Group, LLC, ("GMS") and Woodforest National Bank ("Woodforest").

2. The GMS account ending in 606 (SSN xxx-xx-4352) and the Woodforest account ending in 404, hold assets in the name of or for the benefit of Kenneth Cooper McAfee.

3. The GMS account ending in 606 (SSN xxx-xx-4352) is an individual retirement

ORDER    **EXHIBIT**
PAGE.    **1**

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



account for the benefit of Kenneth McAfee that qualifies for federal income tax deferral. Such account holds, exclusively, funds exempt from garnishment under Tex. Prop. Code. §42.0021(a). Because such account is exempt from garnishment, the writ directed to the GMS as to Kenneth McAfee's account ending in 606 (SSN xxx-xx-4352) should be quashed. All other accounts at GMS that hold assets of, or are for the benefit of, Kenneth C. McAfee or Kenneth McAfee remain subject to the writ.

4. Further, GMS Group, L.L.C., is indebted to Kenneth Cooper McAfee ("Judgment Debtor") in the amount of $6,694.39 and account number 55HO56008 and $1,661.15 in account number 55HOO4628 for a total of $8,355.54.

5. The Woodforest account ending in 404 holds, exclusively, social security benefit proceeds of Kenneth C. McAfee which benefits are exempt from garnishment under 42 U.S.C. §407. 42 U.S.C. provides an absolute exemption and there are no statutory exceptions to same. Because the Woodforest account ending in 404 contains only funds exempted from garnishment, the writ directed at Woodforest as to Kenneth McAfee's account ending in 404 should be quashed. All other accounts at Woodforest that hold assets of or for the benefit of Kenneth C. McAfee or Kenneth McAfee remain subject to the writ. It is therefore,

ORDERED, ADJUDGED AND DECREED that the writs of garnishment directed at (i) GMS Group, LLC, for the account number ending with 606 (SSN xxx-xx-4352) in the name of and belonging to Kenneth McAfee, and (ii) Woodforest National Bank for the account number ending with 404 in the name of and belonging to Kenneth C. McAfee are QUASHED. It is further,

ORDER

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



ORDERED, ADJUDGED AND DECREED that all other accounts at GMS Group LLC, and Woodforest National Bank that hold assets in the name of Kenneth McAfee or for the benefit of Kenneth C. McAfee remain subject to the writs. Specifically, Garnishors, Rosemary and Jake Foltyn shall recover against the GMS Group, L.L.C., the sum of $8,355.54, such sum to be credited to the judgment entered in the wrongful death judgment. It is further,

ORDREED, ADJUDGED AND DECREED that the payment of such sums as set forth above shall issue from funds of the judgment debtor, Kenneth Cooper McAfee, currently being held by Garnishee, the GMS Group, L.L.C., from the following accounts: $6,694.39 in account number 55HO56008 and $1,661.15 in account number 55HOO4628 for a total of $8,355.54, *upon receipt of an order releasing the* it is further,

ORDERED, ADJUDGED AND DECREED that Garnishee, The GMS Group, L.L.C. shall immediately send $8,355.54 payable to Deam M. Blumrosen, Attorney, at 4615 Southwest Freeway, Suite 850, Houston, Texas 77027.It is further,

ORDERED, ADJUDGED AND DECREED that the Agreed Order for Temporary Injunctions in Cause No. 396,935; in the Estate of Janet Foltyn McAfee, Deceased, dated June 8, 2011, is dissolved and all assets described therein, and in particular, the GMS account ending in 606 and the Woodforest account ending in 404, are released.

ORDER

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ **Deputy**
Sterling G. Senechal III



SIGNED this _____27<sup>th</sup>_____ day of January, 2015.

_____
JUDGE PRESIDING

ANDERSON PFEIFFER, PC

*Esther Anderson*

By:   Esther Anderson
SBN: 00792332
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 281.488.6535
Facsimile: 281.614.6205
Email: esther@probateguardianship.com

Of Counsel:
Robert Teir, PLLC

_____*Robert Teir, w/ perm by EA*_____

By:   Robert Teir
SBN: 00797940
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 832.365.1191
Facsimile: 832.550.2700
Email: rob@teirlaw.com
Attorneys for Charles Storer,
POA for Kenneth Cooper McAfee

Mitchell & Duff, LLC

_____
By:   Mary Elizabeth Duff
SBN: 06166880
210 Main Street
Richmond, Texas 77469
Office: 281-341-1718
Office: 281-341-5517
Attorney for Estate of Rosemary F. McAfee, Deceased

_____
By:   Dean M. Blumrosen
SBN: 02517900
4615 Southwest Freeway, Suite 850
Houston, Texas 77027
Office: 713-524-2225
Facsimile: 713-524-5570
Attorney for Plaintiffs/Garnishors, Rosemary and Jake Foltyn

N:\Storer, Charles\Orders\Order Granting Motion to Quash (not agreed).docx

ORDER

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III





522CAUSE NO. 396936-401

| | | |
|---|---|---|
| IN RE | § | IN THE PROBATE COURT |
| JANET F. McAFEE, | § | |
| Deceased | § | NUMBER ONE |
| | § | |
| ROSEMARY FOLYN and | § | |
| JAKE FOLYN | § | |
| | § | |
| v. | § | OF |
| | § | |
| THE GMS GROUP, LLC and | § | |
| WOODFOREST NATIONAL BANK, | § | HARRIS COUNTY, TEXAS |
| Defendants | § | |

## MOTION TO QUASH WRITS OF GARNISHMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Charles Storer, Power of Attorney for Charles McAfee, Defendant herein, and holder of the accounts Plaintiffs seeks via the Writs of Garnishment Issued by this Court, who moves to quash (dissolve) the two Writs of Garnishment Issued post-judgment In this cause (to Woodforest National Bank and GMS Group), as the Writs reach accounts and/or assets that are wholly exempt from the reach of judgment creditors (indeed from the reach of all creditors). In support of this *Motion*, Mr. Storer, would show the following:[1]

### I. INTRODUCTION AND SUMMARY

1. This Court issued two writs of garnishment at the request of Plaintiffs. While a judgment creditor has a right to pursue collection on their judgment, including via garnishment upon depository accounts, Texas and federal law sharply limit what property of a judgment debtor may be taken. Here, both of the accounts are

---

[1] Mr. McAfee designated a Power of Attorney because he is incarcerated.

MOTION TO QUASH WRITS OF GARNISHMENT

**EXHIBIT**
, 1

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Deputy

Sterling G. Senechal III



entirely and undividedly, protected from the reach of all creditors. Because these accounts may not be taken by any creditor, with any judgment, the two Writs issued while the Court was unknowing of the exempt status of these accounts, should and must be quashed.

## II. FACTS AND PROCEDURAL HISTORY

2. Mr. McAfee was convicted of a criminal offense involving the death of the decedent, Janet Foltyn McAfee, and is currently serving his sentence at a Texas correctional institution. The underlying claim was a wrongful death action against Mr. McAfee. This Court found for the Plaintiffs in the wrongful death action.

3. Post-judgment, the Plaintiffs sought from this Court, and received, two Writs of Garnishment. The Application for Writs of Garnishment made no mention of the exempt status of either account. Rather, the Application simply noted that the garnishees, both Woodforest and GMS, may be indebted to the Defendant "by maintaining or holding one or more bank accounts." Application for Writ of Garnishment, ¶7.

4. The first Writ of Garnishment reached Mr. McAfee's depository account at Woodforest National Bank ("Woodforest"). This account, however, is beyond the reach of all creditors, including the judgment creditors in this cause, because the account was opened to receive, received, and is now holding funds received pursuant to the federal Social Security Disability Insurance ("SSDI") system. The account contains no funds other than those received as Social Security benefits.

5. The second Writ of Garnishment reached Mr. McAfee's depository account held by his former employer, GMS Group, L.L.C. ("GMS"). This account is also

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III                    _____ Deputy



beyond the reach of all creditors, including the judgment creditors in this cause, because the account is Mr. McAfee's tax-deferred retirement benefit account arising from his employment with GMS.

6. In lieu of an Answer, GMS reported to this Court that it is holding depository accounts belonging to Mr. McAfee. *See* letter from Matthew F. Lipman, Esq. (counsel for GMS Group) to Stan Stanart, County Clerk (Oct. 23, 2014), which is a part of this Court's file and is incorporated herein by reference. See Exhibit "C." GMS' response indicates that the account in question is a retirement account qualified under IRS rules for tax deferment. *Id @* Exhibit "2."

7. Garnishee Woodforest National Bank has yet to answer its Writ.

### III. ARGUMENT AND AUTHORITIES

8. All social security benefits, including SSDI, are exempt from collection actions, and beyond the reach of debtors, pursuant to a federal statute that was a central component of the original depression-era Social Security Act. *See* 42 U.S.C. §407; H. R. 7260 (1935); *see also In re Franklin*, 506 B.R. 765, 769 (Bankr., C.D. Ill. 2014) ("These proscriptions have been part of the Social Security Act since 1935").[2]

9. The absolute nature of the social security benefit exemption has been recognized by the United States Supreme Court, which observed that 42 U.S.C. §407(a) "unambiguously rules out any attempt to attach Social Security benefits." *Bennett v. Arkansas*, 485 U.S. 395, 397, 108 S.Ct. 1204, 1205, 909 L.Ed2d 455

---

[2] The exemption reaches Social Security retirement income, disability benefits, and supplemental security income, amongst other benefits. *See Townsel v. Dish Network*, 668 F.3d 967, 968 (7th Cir. 2012). Veterans' benefits are exempt and treated the same way. *See Christensen v. Pack*, 122 Nev. 1309, 149 P.3d 40, 48 (Nev. 2006).

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
**Harris County, Texas**

Sterling G. Senechal III                    Deputy



(1988).

10. The same complete exemption also reaches accounts that qualify for deferment of federal income tax, including Mr. McAfee's 401(k) account that is the subject of the GMS garnishment. IRS qualified retirement accounts are exempt from collection actions, and beyond the reach of debtors, pursuant to Texas law. *See* Tex. Prop. Code, §2.0021. The legal issue, and exempt nature, regarding both accounts is neither controversial nor a close call.

## IV. EXEMPTION OF THE WOODFOREST (SOCIAL SECURITY) ACCOUNT

### A. The Exemption for Social Security Benefits is Statutory and Contains No Exceptions

11. The federal statute protecting federal social security benefits from the reach of creditors, including those on deposit, is unequivocal and sweeping in its scope. It is so protective of federal benefits, it goes as far as to prohibit recipients of these benefits from voluntarily choosing to assign or alienate these benefits, even for valuable consideration. *See* 42 U.S.C. §407. Indeed, the sole manner these funds can be put into the hands of others is through standard purchases of goods and services after the benefits have been cashed or deposited. These funds may not be assigned to creditors, including by the involuntary means of garnishment. *See Townsel v. Dish Network*, 668 F.3d 967, 968 (7th Cir. 2012) ("A creditor that tried to garnish or attach Social Security benefits ... would encounter a §407 defense).[3]

---

[3] The statute creates three separate protections for social security benefits. It forbids assignments of such benefits. *See* 42 U.S.C. §407(a). Second, it makes these benefits beyond the reach of a bankruptcy trustee. *See Id.* Third, and relevant here, it exempts these benefits from state or federal judicial action. *See Id.* ("none of the moneys paid or payable or rights existing under this subchapter shall be

MOTION TO QUASH WRITS OF GARNISHMENT

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

12. The absolute nature of the exemption is based on Congress' insistence on firm and secure protection for "beneficiaries and those dependent on beneficiaries from the claims of creditors." *Reams v. Oklahoma*, 411 F.3d 1164, 1172 (10th Cir. 2005); *see also In re Greene*, 27 B.R. 462, 464 (Bankr., E.D. Va. 1983) (§407 "deals with the rights of social security recipients and seeks to protect their benefits from the reach of creditors").

13. In fact, Congress wanted to protect beneficiaries "from seizure in the legal process." *Id.* By doing so, Congress ensured that the underlying purpose of social security benefits, to provide a minimum level of support and financial stability, cannot be hindered by creditors, regardless of the merits of the creditors' claim. *See id.; see also In re Buren*, 6 B.R. 744, 746 (Bankr., M.D. Tenn, 1980) ("The purpose of the Social Security Act of 1935 was to provide a minimal level of economic security for the unemployed, the elderly, the homeless, and the blind").

14. The Woodforest account that Plaintiffs seek to garnish is funded with social security deposits. *See* Deposit/Transaction record of Woodforest National Bank (showing monthly direct deposits as received from "SOC SEC US TREASURY").[4]

15. While Mr. Afee is disabled, he is admittedly not homeless, elderly, or blind. The lack of a destitute state, however, as well as the existence of other means of support, such as the Texas Department of Corrections, does not cause the

---

subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law").

[4] A spreadsheet showing all deposits into the account since December of 2009 is attached to this pleading as Exhibit A. The Woodforest-generated statement of account activity is attached to this pleading as Exhibit B. The account activity ceases in November, 2010 except for the exclusive continuing Social Security benefits directly deposited and interest on the account. *See id.*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Sterling G. Senechal III

shedding of the exemption of these funds from garnishment or collections. The Social Security Act uses absolute language, devoid of any exceptions, for any circumstances. *See Philpott v. Essex County Welfare Board,* 409 U.S. 413, 415, 93 S.Ct. 590, 34 L.Ed2d 608 (1973) (because "the language is all-inclusive," the Social Security Act prohibits any state from reaching federal disability benefits); *id.,* 409 U.S. at 416 ("it imposes a broad bar against the use of any legal process to reach social security benefits").[5] There is, therefore, no need-testing for the exemption to apply. *Cf. Reams v. Oklahoma,* 411 F.3d at 1172 ("To tinker with that scheme could open the door for a loss of protection down the road").

16. Rather, the exemption is absolute. The statutory language, the United States Supreme Court noted, "is broad enough to reach all security benefits," no matter the cause of the benefits or the situation of the beneficiary." *Philpott v. Essex County Welfare Board,* 409 U.S. at 417; *see also In re Carpenter,* 614 F.3d 930, 932 (8th Cir. 2010) (exemption statute is unambiguous, and therefore courts have no need for legislative history or implied exceptions); *accord, In re Ragos,* 700 F.3d 220, 222-224 (5th Cir. 2012).[6]

17. The statute, therefore, is an unyielding prohibition on the garnishment sought in this case. *See N.L.R.B. v. HH# Trucking, Inc.,* 755 F.3d 468 (7th Cir. 2014) ("Social Security benefits ... cannot be garnished or otherwise attached after

---

[5] *Philpot* was an unanimous decision/opinion of the Supreme Court.

[6] There was, for a brief, time an implied exception, in just one federal circuit, for beneficiaries who did not need the social security funds for their sustenance. *See Citronelle-Mobile Gathering v. Watkins,* 934 F.2d 1180 (11th Cir. 1991). Not one of the *Citronelle* court's sister circuit courts adopted that holding given the absolute language of the statute. *Citronelle's* reach, in any event, terminated at the hand of the Supreme Court. See *Law v. Siegel,* — U.S. —, 134 S.Ct. 1188, 1196,188 L.Ed2d 146, 82 USLW 4140 (March 2014).

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



receipt"); *NCNB Financial Services v. Shumate*, 829 F.Supp. 178, 180 (W.D. Va. 1993) (statute "prohibits attachment, levy, or garnishment on such benefits"); *In re Franklin*, 506 B.R. 765, 773 (Bankr., C.D. Ill.2014) (exemption provision is not tied to Bankruptcy Code and is assertable defensibly including against garnishments). *In re Miller*, 445 B.R. 504, 507 (Bankr., D.S.C. 2011) (the statute "contains no limiting language" and therefore extends to all social security income); *id.*, ("section 407(a) operates as a complete bar to the forced inclusion of past and future social security proceeds in the bankruptcy estate") [quoting *In re Carpenter*, 615 F.3d 930, 946 (8th Cir. 2010)]; *see also Bennett v. Arkansas*, 485 U.S. 395, 398, 108 S.Ct. 1204, 1205-06, 99 L.Ed2d 455 (state may not attach social security benefits of state prisoners) (*per curiam*); *Marengo v. First Massachusetts Bank*, 152 F.Supp.2d 92 (D. Mass. 2001) (efforts to reach account contained benefit deposits violated Social Security Act).

18. Judicial interference with these funds, indeed, is so disfavored, it has been held to implicate the constitutional due process rights of social security beneficiaries. *See Dionne v. Bouley*, 757 F.2d 1344, 1350 (1st Cir. 1985) ("It is also clear that Dionne's interest in retaining her exempt social security funds free from attachment was the kind of property interest that is entitled to due process protection").

19. Earlier this year, the United States Supreme Court once again held that the statute means what it says:

> § 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate. Rather, the statute exhaustively specifies the criteria that will render property exempt.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Sterling G. Senechal III

*Law v. Siegel*, — U.S. —, 134 S.Ct. 1188, 1196, 188 L.Ed2d 146, 82 USLW 4140 (March 2014); *see also id.* ("courts are not authorized to create additional exceptions"); *In re Franklin*, 506 B.R. at 773 ("Congress has strongly expressed its policy of protecting social security benefits, and it is not for the courts to read an implied exception" into the exempting statute).

20. The mountain of precedent and the unambiguous wording of the federal statute mandate the quashing of the Woodforest writ. Social security funds can never be used to pay creditors, except when received, turned into cash, and become the subject of voluntary spending by the debtor. *See In re McFarland*, 481 B.R. 242, 250 (Bankr., S.D. Ga. 2012) (social security benefits remain exempt from creditors after they are "received by the Social Security recipient and deposited into the bank"); *In re Moore*, 214 B.R. 628, 630 (Bankr., D. Kan. 1997) (the funds do not lose their exempt status when deposited into a bank account"); *see also S & S Diversified Services v. Taylor*, 897 F.Supp. 549, 552 (D. Wyo. 1995) (Social Security benefits remain exempt when deposited into joint bank account).[7]

21. These benefits, and the Woodforest Bank account, are, absolutely and entirely, beyond the reach of any creditors, and therefore an impermissible object of a writ of garnishment. *See NCNB Financial Services v. Shumate*, 829 F.Supp. at 180 (W.D. Va. 1993) (statute "prohibits attachment, levy, or garnishment on such

---

[7] One creditor can get at social security benefits: the government of the United States. *See Lockhart v. United States*, 546 U.S. 142, 145, 126 S.Ct. 699, 701, 163 L.Ed2d 557 (2005) (federal government may attach social security benefits of federal student loan debtors. Congress, however, explicitly passed an exception to the no-attachment provision of the Social Security Act to achieve that result. *See* 31 U.S.C. § 3716(c)(3)(A)(i). The fact that Congress had to twice-amend the debt collection legislation, and specifically override the anti-creditor provision of the Social Security Act, demonstrates how steadfast this protection remains.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



benefits"); *In re Franklin*, 506 B.R. at 773 (Bankr., C.D. Ill.2014) (exemption provision is not tied to Bankruptcy Code and is assertable defensibly including against garnishments). To ensure that the congressional/statutory protection of social security benefits is achieved, writs of garnishment inadvertently issued without the Court's knowledge of the exempt status of these funds, must be quashed. *See NCNB Financial Services v. Shumate*, 829 F.Supp. at 181 (quashing writ to the extent it reached exempt funds).[8]

**B. COMINGLING OF SOCIAL SECURITY BENEFITS DOES NOT AFFECT THEIR EXEMPT STATUS, AND ANY SUCH COMINGLING IN THE WOODFOREST ACCOUNT CEASED YEARS AGO**

22. It may be true that the Woodforest Account was occasionally used to hold other assets of Mr. McAfee, unrelated to his social security benefits. This has no bearing on the protected status of the account and of the social security funds within it. *See NCNB Financial Services v. Scumate*, 829 F.Supp. 178, 180 (W.D. Va. 1993) ("Social security benefits are protected even if they are commingled in a savings or checking account with funds from other sources"); *In re Lichtenberger*, 337 B.R. 322, 325 (Bankr., C.D. Ill 2006) (same).

23. While courts may-differ in the accounting method used to calculate protected funds in a comingled account, no court has questioned the protected status of

---

[8] While the federal regulations insist that banks calculate the "lookback" amount, reaching two months of deposits, that small period of time only addresses the bank's requirements. None of the deposits of federal benefit funds are reachable by creditors, no matter how long ago the deposit occurred. *See* 31. C.F.R. §212.6 (duty to determine an amount that the financial institution must protect from creditors); *id.*, §212.9 (safe harbor for financial institutions form liability claims). The regulations do not, and cannot, change the blanket exemption of federal benefit funds from the reach of creditors. *See id.*, §212.8 ("Nothing in this part shall be construed to limit an individual's right under Federal law to assert against a creditor a further exemption from garnishment in excess of the protected amount, or to alter the exempt status of funds that may be protected from garnishment under federal law.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III

social security benefits in a comingled account. On the contrary, the protected status is 'black-letter law,' nationally. *See Philpott v. Essex County Welfare Board*, 409 U.S. 413, 416-17, 93 S.Ct. 590, 592-93, 34 L.Ed2d 608 (1973) (funds exempt so long as they maintain the character of money); *In re King*, 508 B.R. 71, 78 (Bankr., N.D. Ind. 2014) ("commingling of an earned income credit refund with other funds does not affect the ability to claim the statutory earned income credit exemption"); *In re Lantz*, 451 B.R. 843, 847 (Bankr., N.D. Ill. 2011) (depositing funds into an account that contains other funds does not lose exempt status for social security funds, if the latter can be traced); *see generally* 2A Soc. Sec. Law & Prac. §34.8 (Sept. 2014).

24. Because the account may have received, and may have comingled funds on deposit, this Court can hold a hearing to trace the protected assets, if the Garnishor deems such a hearing worth the time and expense. *See Philpott*, 409 U.S.at 416-17, 93 S.Ct. at 592-93; *see also Christensen v. Peck*, 149 P.3d at 48 (it "defies logic" to argue that exempt benefits lose that status with comingling).[9]

25. In the present case, the Court need not be concerned about choosing the best method, as the bank records for the account show that the funds now on deposit came exclusively from the Social Security Administration. *See In re Hensley*, 393 B.R. 186, 198 (Bankr., E.D. Tenn. 2008) (accepting testimony that entire

---

[9] Tracing can be done through the last in/first out method (LIFO), last in/last out (LIFO), and other means. All calculations are "an equitable substitute for the impossibility of specific identification." *In re Lantz*, 451 B.R. at 848; *In re Lichtenberger*, 337 B.R. 322, 325 (Bankr., C.D. Ill. 2006) (selection of methods should be guided by the principle that exemptions are to be interpreted liberally, in favor of the debtor). In other instances, courts have chosen a pro-rata basis by measuring the percentage of deposits that came from the exempt source. *See Neilson v. McGuire*, 2006 WL 1875383, at *4 (D. Nebr. 2006).

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Sterling G. Senechal III



source of funds in bank account except for one gift were social security benefits).[10]

## V. EXEMPTION OF THE GMS (IRA) ACCOUNT

26. The exemption for IRS qualified tax-deferred retirement accounts, such as Mr. McAfee's GMS account, comes from state law. *See* Tex. Prop. Code, §42.0021(a) (including within exemptions "a person's right to the assets held in or to receive payments, whether vested or not, under any stock bonus, pension, annuity, deferred compensation, profit-sharing, or similar plan"). Such funds and such accounts are "exempt from attachment, execution, and seizure for the satisfaction of debts" so long as the account is exempt from immediate federal income taxation. *Id.*; *see also Lozano v. Lozano*, 875 S.W.2d 63, 66 (Tex.App. – Houston [14th] 1998). IRAs have been exempt from the reach of creditors in Texas, including judgment creditors, since 1987. *See Williams v. Texas Commerce Bank*, 766 S.W.2d 344, 346 (Tex.App. – El Paso 1989).

27. The GMS account is, was intended to be, and is set forth by GMS as a tax-deferred retirement account, and qualifies for exemption under §42.0021(a). *See* Letter from Matthew E. Lipman (counsel for GMS) to County Clerk (Oct. 23, 2014) (Exhibit 2) (describing garnished account as a "DLJ Qualified Retirement Plan"); *see also* Summary Plan Description for GMS Group, L.L.C. Salary

---

[10] A spreadsheet showing all deposits into the account since December of 2009 is attached to this pleading as Exhibit A.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III _____ Deputy



Savings Plan, at p. 3, ¶6 (describing employee contributions as 401(k) tax-deferred contributions).[11]

28. The GMS account, therefore, may not be turned over to a creditor, including by garnishment. *See Bergman v. Bergman,* 888 S.W.2d 580, 586 (Tex.App. – El Paso 1994) (reversing turnover order because account was exempt); *accord Nu-Way Energy Corp. v. Delp,* 205 S.W.3d 667, 679 (Tex.App. – Waco 2006); *Kent v. Holmes,* 139 S.W.3d 120, 131 (Tex.App. – Texarkana 2004); *Bergman v. Begman,* 888 S.W.2d 580, 586 (Tex.App. – El Paso 1994); *Morgan v. Horton,* 675 S.W.2d 602, 604 (Tex.App. – Dallas 1984). The unanimous voice of the courts results from the clear legislative purpose to "protect the interests in the retirement fund from creditors and assignees" *Kent v. Holmes,* 139 S.W.3d at 131.

29. Like with social security benefits, the exemption for tax-deferred retirement accounts is read without neither exemptions nor narrowness, to fulfill a state policy favoring debtors that has existed since the nineteenth Century. *See Bergman v. Bergman,* 888 S.W.2d 580, 586 (Tex.App. – El Paso 1994) *id.,* 888 S.W.2d at 585 ("the long standing public policy of Texas has favored debtors over creditors) [citing *Bell v. Indian Live-stock Co.,* 11 S.W. 344, 346 (Texas 1889)].

30. There can be little doubt that a firm such as GMS, which represents itself as a full service brokerage house, and advises people on planning for their retirement, presented their employees with anything other than an IRS-qualified plan for their

---

[11] The chart of accounts included in Mr. Lipman's letter (Exhibit 2 to that letter) is attached to this pleading as Exhibit C. The Plan Description is attached to this pleading as Exhibit D.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas


Deputy

Sterling G. Senechal III



retirement benefit. *See In re Youngblood,* 29 F.3d 225, 228 (5th Cir. 1994) (tax treatment of account is determinative inquiry under §42.0021); *see also Id.,* 29 F.3d at 229 ("the legislature intended for its own state courts ... to defer to the IRS in determining whether a retirement plan is 'qualified' under the Internal Revenue Code"); *Lozano v. Lozano,* 975 S.W.2d at 67 ("evidence that an account is an individual retirement annuity is sufficient to establish that it is exempt").[12]

31.   While Mr. Storer has, and can put on evidence showing the tax-exempt nature of the GMS account, that exemption is clear from the facial descriptions of the account issued by GMS. In any event, garnishment has no basis in Texas' common law, and is purely statutory. Consequently, a party claiming an entitlement to garnishment has to prove that the property he is after is subject to the procedure. *See Del-Phi Engineering Associates v. Texas Commerce Bank,* 771 S.W.2d 589, 591 (Tex.App. – Beaumont 1989) (Burgess, J., dissenting) (motion to dissolve writ joins the issue, and then party seeking garnishment must put on proof that they are entitled to the funds).

32.   That burden cannot be met by the Plaintiffs in this cause, as the GMS account is, beyond question, a tax-deferred retirement account and beyond the reach of all creditors.[13]

---

[12] Moreover, unlike with social security benefits, it is the account that is exempt; the source of the funds is irrelevant. *See Id.,* 975 S.W.2d at 68.
[13] If the burden is placed on Mr. Storer, as the party claiming the exemption, he can easily do so if permitted an evidentiary hearing with sufficient time to subpoena the needed records.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III _____ Deputy



## PRAYER

WHEREFORE, PREMISES CONSIDERED, Charles Storer, Power of Attorney for Defendant, Charles McAfee, respectfully prays that the Court enters an Order quashing (dissolving) the two Writs of Garnishment issued in this cause as reaching exempt assets that cannot be garnished, for any reason, and further prays for such other and further relief to which he or Mr. McAfee may be entitled, in law or in equity.

Respectfully submitted,

ANDERSON PFEIFFER, PC

*/s/ Esther Anderson*
By:    Esther Anderson
SBN: 00792332
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 281.488.6535
Facsimile: 281.614.5205
Email: *esther@probateguardianship.com*

Of counsel on the Pleading:

*/s/ Robert Teir*
Robert Teir
Robert Teir, PLLC
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 832.365.1191
Facsimile: 832.550.2700
Email: *rob@teirlaw.com*

Attorneys for Mr. Charles Storer

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III _____ Deputy



## CERTIFICATE OF SERVICE

I, Robert Teir, undersigned below, hereby certify that a true and correct copy of the following has been forwarded to all parties and/or counsel of record through our electronic service provider and/or facsimile on this 19th day of November, 2014.

/s/ Robert Teir
Robert Teir

cc:     Matthew E. Lipman
        Faust Oppenheim LLP
        488 Madison Avenue                  Via Electronic Service Provider &
        New York, New York 10022            Facsimile 212-371-8410

        Dean M. Blumrosen, Esq.
        4615 Southwest Freeway, Suite 850   Via Electronic Service Provider &
        Houston Texas 77027                 Facsimile 713-524-5570

        Defendant Woodforest National Bank
        By and through Its Registered Agent
        James D. Dreibelbis
        25231 Grogan's Mill Road
        Suite 100
        The Woodlands, TX 77380   VIA CMRRR 9402 7102 0088 5422 6895 15

N:\Storer, Charles\Pleadings, Motions, Applications\Motion to Quash writ of garnishment.docx

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



Sterling G. Senechal III _____ Deputy



PROBATE COURT 1

CAUSE NO. 396,935

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JANET F. McAFEE, | § | NUMBER ONE |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

## MOTION TO PARTIALLY RELEASE TEMPORARY INJUNCTION

COMES NOW Charles Storer, Power of Attorney for Kenneth McAfee, and files this is *Motion to Release Injunction* and would show the Court the following.

All Exhibits referenced are attached and incorporated herein by reference as if set out in full for all purposes.

### BACKGROUND

1. On June 8, 2011, all parties to the above stated cause entered an *Agreed Order for Temporary Injunction.* See Exhibit "1."

2. On January 27, 2015, the Court entered an *Order Partially Granting Motion to Quash Writs of Garnishment* as to two accounts:

   a. Woodforest account ending in 404, in the name of Kenneth Cooper McAfee exclusively holding social security assets of Kenneth Cooper McAfee; and

   b. GMS account ending in 606, an individual retirement account of Kenneth McAfee. See Exhibit "2."

The Court further ordered that all other accounts at GMS Group, LLC, holding assets of Kenneth McAfee be subject to the writs such that Rosemary and Jake Foltyn recover $6,694.39 in account number 55HO56008 and $1,661.15 in account number 55HOO4628 for a total of $8,355.54 from GMS Group, L.L.C.,

MOTION TO PARTIALLY RELEASE INJUNCTION
Page 1 of 4

**EXHIBIT**
5

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas


Sterling G. Senechal III _____ Deputy



| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| --- | --- | --- |
| | § | |
| JANET F. McAFEE, | § | NUMBER ONE |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

## MOTION TO PARTIALLY RELEASE TEMPORARY INJUNCTION

COMES NOW Charles Storer, Power of Attorney for Kenneth McAfee, and files this is *Motion to Release Injunction* and would show the Court the following.

All Exhibits referenced are attached and incorporated herein by reference as if set out in full for all purposes.

### BACKGROUND

1. On June 8, 2011, all parties to the above stated cause entered an *Agreed Order for Temporary Injunction.* See Exhibit "1."

2. On January 27, 2015, the Court entered an *Order Partially Granting Motion to Quash Writs of Garnishment* as to two accounts:

   a. Woodforest account ending in 404, in the name of Kenneth Cooper McAfee exclusively holding social security assets of Kenneth Cooper McAfee; and

   b. GMS account ending in 606, an individual retirement account of Kenneth McAfee. See Exhibit "2."

The Court further ordered that all other accounts at GMS Group, LLC, holding assets of Kenneth McAfee be subject to the writs such that Rosemary and Jake Foltyn recover $6,694.39 in account number 55HO56008 and $1,661.15 in account number 55HOO4628 for a total of $8,355.54 from GMS Group, L.L.C.,

MOTION TO PARTIALLY RELEASE INJUNCTION
Page 1 of 4

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Sterling G. Senechal III



upon receipt of an order releasing the *Agreed Order for Temporary Injunction* which is the subject of this *Motion. Id.*

3. Storer asks the Court to enter an order partially releasing the June 8, 2011 temporary injunction as to the following three accounts:

   a. Woodforest account ending in 404, in the name of Kenneth Cooper McAfee exclusively holding social security assets of Kenneth Cooper McAfee, to Kenneth Cooper McAfee;

   b. account number 55HO56008 holding $6,694.39 at GMS Group, LLC, to Rosemary and Jake Foltyn, c/o Dean M. Blumrosen; and

   c. account number 55HOO4628 holding $1,661.15 at GMS Group, LLC, to Rosemary and Jake Foltyn, c/o Dean M. Blumrosen.

4. All other accounts and assets described in the June 8, 2011 *Agreed Order for Temporary Injunction* should remain subject to the temporary injunction.

WHEREFORE PREMISES CONSIDERED, Charles Storer, Power of Attorney for Kenneth McAfee, prays the Court enters an order granting his *Motion to Partially Release Temporary Injunction* and for such other relief, at law or in equity, as he may be justly entitled.

MOTION TO PARTIALLY RELEASE INJUNCTION
Page 2 of 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III _____ Deputy



Respectfully submitted,

ANDERSON PFEIFFER, PC

*Esther Anderson*

By:   Esther Anderson
SBN:  00792332
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 281.488.6535
Facsimile: 281.614.5205
Email: esther@probateguardianship.com


Of counsel on the Pleading:

*/s/ Robert Teir*
Robert Teir
Robert Teir, PLLC
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 832.365.1191
Facsimile: 832.550.2700
Email: rob@probateguardianship.com

Attorneys for Mr. Charles Storer, Power of
Attorney for Kenneth McAfee

MOTION TO PARTIALLY RELEASE INJUNCTION
Page 3 of 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy
Sterling G. Senechal III



1-800-555-1215-2015-050

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to all parties and/or counsel of record through our electronic service provider, certified mail, return receipt requested and/or facsimile on this ___10 th___ day of February, 2015.

_Esther Anders_
Esther Anderson

cc:   Mary Elizabeth Duff
      210 Main Street                 **VIA ELECTRONIC SERVICE PROVIDER &**
      Richmond, Texas 77469           **FACSIMILE 281-341-5517**

      Matthew E. Lipman
      Faust Oppenheim LLP
      488 Madison Avenue             **VIA ELECTRONIC SERVICE PROVIDER &**
      New York, New York 10022       **FACSIMILE 212-371-8410**

      Dean M. Blumrosen, Esq.
      4615 Southwest Freeway
      Suite 850                      **VIA ELECTRONIC SERVICE PROVIDER &**
      Houston Texas 77027            **FACSIMILE 713-524-5570**

      Woodforest National Bank,
      through their registered agent
      James D. Dreibelbis
      25231 Grogan's Mill Road
      Suite 100
      The Woodlands, Texas 77380    VIA CMRRR  9414 7102 0088 1504 4648 51

      Charles Storer

N:\Storer, Charles\Pleadings, Motions, Applications\Mot to Release Injunction.docx

MOTION TO PARTIALLY RELEASE INJUNCTION
Page 4 of 4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



CAUSE NO. 396,935

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JANET F. McAFEE, | § | NUMBER 1 OF |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

CAUSE NO. 396935-401

| | | |
|---|---|---|
| IN RE | § | IN THE PROBATE COURT |
| JANET F. McAFEE, | § | |
| Deceased | § | NUMBER ONE |
| | § | |
| ROSEMARY FOLYN and | § | |
| JAKE FOLYN | § | |
| | § | |
| v. | § | OF |
| | § | |
| THE GMS GROUP, LLC and | § | |
| WOODFOREST NATIONAL BANK, | § | HARRIS COUNTY, TEXAS |
| Defendants | | |

### ORDER GRANTING STORER'S MOTION TO RECONSIDER MARCH 16, 2015 ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION AND RELEASING SOCIAL SECURITY PROCEEDS

On this day came to be considered the *Motion for Reconsideration of March 16, 2015 Order Partially Releasing Temporary Injunction and Motion for Entry of Order Releasing Social Security Proceeds from Injunction,* filed by Charles Storer, Power of Attorney for Kenneth McAfee, and after review and consideration of said *Motion,* the evidence, the responses filed, and the arguments of counsel, the Court finds the following:

1. On June 8, 2011, all parties to the above stated cause entered an *Agreed Order for Temporary Injunction.*

ORDER PAGE 1    EXHIBIT

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Sterling G. Senechal III



2. On January 27, 2015, the Court entered an *Order Partially Granting Motion to Quash Writs of Garnishment* as to two accounts:

a. Woodforest account ending in 404, in the name of Kenneth Cooper McAfee holding social security proceeds of Kenneth Cooper McAfee; and

b. GMS account ending in 606, an individual retirement account of Kenneth McAfee.

The Court also ordered that all other accounts at GMS Group, LLC, holding assets of Kenneth McAfee or for the benefit of Kenneth C. McAfee be subject to the writs such that Rosemary and Jake Foltyn recover $6,694.39 in account number 55HO56008 and $1,661.15 in account number 55HOO4628 for a total of $8,355.54 from GMS Group, L.L.C., upon receipt of an order releasing the *Agreed Order for Temporary Injunction*.

3. On March 16, 2015, the Court entered an *Order Partially Releasing Temporary Injunction* releasing both the non-exempt accounts Plaintiffs and/or the Estate wanted.

4. On April 15, 2015, Charles Storer filed a *Motion for Reconsideration of March 16, 2015 Order Partially Releasing Temporary Injunction and Motion for Entry of Order Releasing Social Security Proceeds from Injunction*. It is therefore,

ORDERED, ADJUDGED AND DECREED that this *Order* shall be and is a partial release of the June 8, 2011 temporary injunction as to the Woodforest account number XXXXXX3404, in the name of Kenneth Cooper McAfee holding social security benefits of Kenneth Cooper McAfee.

ORDER
PAGE 2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

 

_____Deputy

All other accounts and assets described in the June 8, 2011 *Agreed Order for Temporary Injunction* remain subject to the *Agreed Temporary Injunction.*

SIGNED this _____ day of _____, 2015.

_____
JUDGE PRESIDING

APPROVED AND ENTRY REQUESTED:

ANDERSON PFEIFFER, PC

_____
By:    Esther Anderson
SBN: 00792332
By:    Rob Teir, of Counsel
SBN: 00797940
845 FM 517 West, Suite 200
Dickinson, Texas 77539
Office: 281-488-6535
Facsimile: 281-614-5205
Email: esther@probateguardianship.com
Attorneys for Charles Storer, POA for
Charles McAfee

N:\Storer, Charles\Orders\order granting reconsideration.docx

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was
found to be inadequate for the best photographic
reproduction because of illegibility, carbon or
photo copy, discolored paper, etc. All blockouts,
additions and changes were present at the time
the instrument was filed and recorded.

ORDER
PAGE 3

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



# Tab 15

May 14, 2015 Transcript

TRIAL COURT CAUSE NUMBER 396,835-401

| | | |
|---|---|---|
| IN RE:  THE ESTATE OF JANET FOLTYN McAFEE, | * | IN  THE PROBATE COURT OF |
| | * | |
| | * | |
| ROSEMARY FOLTYN and | * | |
| Jake Foltyn | * | HARRIS COUNTY, T E X A S |
| | * | |
| THE GMS GROUP, LLC and | * | |
| WOODFOREST NATIONAL BANK, | * | |
| Defendants | * | COURT    NUMBER  (1)  ONE |

MOTION FOR RECONSIDERATION TO PARTIALLY RELEASE
FUNDS AND MOTION FOR SANCTIONS HEARING

Came to be heard on this the 14th day of May, 2015, Motion for Reconsideration to Partially Release Funds and Motion for Sanctions Hearing, in the above-entitled and numbered cause, and all parties appeared in person and/or being represented by Counsel of Record, before the Honorable Loyd Wright, Judge Presiding.

VOLUME  1  OF  1

O R I G I N A L

APPEARANCES

ATTORNEY FOR CHARLES STORER:

    Robert Teir
    State Bar No. 00797940
    845 FM 517, Suite 200
    Dickinson, Texas 77539
    Telephone: 831-365-1191

ATTORNEY FOR PLAINTIFFS, ROSEMARY FOLTYN AND
JAKE FOLTYN:

    Dean Blumrosen
    State Bar No. 02517900
    4615 Southwest Freeway, Suite 850
    Houston, Texas 77027
    Telephone: 713-524-2225

ATTORNEY FOR THE ESTATE OF
ROSEMARY F. McAFEE, DECEASED:

    Stacey Severovich
    State Bar No. 24088393
    210 Main St.
    Richmond, Texas 77469
    Telephone: 281-341-1718

THE COURT: The McAfee Estate.

MS. ANDERSON: Yes, Your Honor. Good morning, Judge.

THE COURT: Good morning.

MR. BLUMROSEN: Good morning, Judge.

THE COURT: Good morning.

MS. SEVEROVICH: Stacey Severovich, here on behalf of Rosemary Foltyn, the Administratrix of the Estate. And that's S-E-V-E-R-O-V-I-C-H.

MS. ANDERSON: May I proceed, Your Honor?

THE COURT: Yes.

MS. ANDERSON: Just to let you know what's coming, there are actually two things that were set today. One was the Motion for Reconsideration and another was a Motion for Sanctions. And after having a discussion with Ms. Duff yesterday, I advised her that I would pass the Motion for Sanctions pending further discussions that we are having.

THE COURT: Okay.

MS. ANDERSON: So the only thing that's before the Court today is with regard to a Wood Forest Bank account. And I don't know, well, in the Order that the Judge signed at the last hearing you didn't deny our request, you just didn't sign an Order allowing us access to the funds. So if I can just go through a couple of things, this started with a Writ of Attachment on various bank accounts, primarily the GMS account

and the Woodforest account.

Since that time we had a hearing on January 27 of 2015, and the Court entered an Order partially granting a quash on that. And in that Order, it specifically addressed the account that we are here for today, so at the beginning, in the first paragraph, it states that the Court makes -- finds the following, and in paragraph 2, the Court found that the Woodforest account ending in 404, which is one we are talking about, holds assets in the name or the benefit of Kenneth McAfee. And then if you go down to the paragraph 5, the Court further found that the Woodforest account ending in 404 holds exclusively Social Security benefit proceeds of Kenneth McAfee, which benefits are exempt from garnishment under 42 USC sec. 407, and so the only thing we are before the Court on today is a bank account that includes only Social Security proceeds.

At the hearing on January 27th, we had that discussion. Everyone saw the bank records and this Court made a finding that that bank account only included Social Security proceeds. So after that, we got that determined and then we needed to release a Temporary Injunction that's been in place for a very long time, and so I filed a Motion to Partially Release or lift the Temporary Injunction. I wanted our one Social Security account to be lifted because it's protected. That money will never go toward anything. And then I asked for two of Plaintiff's accounts to be released. Rather than having

two people do the work, I just put it all in one Order. At the hearing, and I believe the associate judge was sitting at that time so she did not have the history that this court had, but for whatever reason or however it happened, the Court signed an order lifting the Temporary Injunction as to the two GMS accounts, which are the ones the Plaintiffs were seeking. I believe they have already received their $8,000 but did not issue an Order lifting the Temporary Injunction on the Social Security accounts.

Now, in what I have learned from Plaintiff's counsel, Ms. Duff, is that they -- their position is they have a claim to a certain dollar amount, and I'm just going to use the number 38,000 for ease, but it's a 25,000 and a 9,000, so about $38,000. Their position is that that money came out of a community property account, went into the Social Security account, and so then part of the money in that Social Security account they are entitled to. What our position is, this Court has already made a finding that the only money in that account is Social Security money.

We are not saying they don't have a claim to the 38,000, we are saying that they will never be able to get the 38,000 from the money that's in the Social Security account because it's exempt from garnishments, from judgments, from everything, because of federal law. There is other assets. It ranges from 600 to a million dollars, depending on which

Inventory you look at. But there are other assets that that money could potentially come from. This is just not the bank account it's going to come from. There are no exceptions to the rule. The Court has already made the findings. It entered an Order in January. There was no Motion for New Trial or Motion for Reconsideration. It's a done deal. And so for it to be attacked now, one, it's improper because it's beyond the time frame. It's a collateral attack on this Court's previous decision and they know, they know that that money is not subject to anything based upon federal law.

I remember at our very first hearing there was a discussion about the circumstance of the case and how bad it was but the Court said, I'm going to follow the law, and that's what I'm asking you to do. You have you already made the decision. It's not going to be attached. It can not be attached unless we don't follow the law. And the Injunction needs to be lifted. Once that's done, then there are all of these other accounts which to this date we have tried to give to Plaintiffs. We can't push it on them, Judge. They won't take it. But there are other monies there to address whatever other claims they have. And so all we want today is the Order that was previously filed. I printed it out again. And all it does is lift the Temporary Injunction only the Social Security account. All of the other accounts, I believe on the last page, it's very clear that that Temporary Injunction continues

for all of the other accounts that are in place.

I would also like to say, Judge, aside from that, this Temporary Injunction that everyone is talking about and relying on, you know has been going on for a very long time without a cause of action, without a trial date. It's basically an agreement for everyone to have a standstill. And that's fine. We intend to honor it. But it's time to separate these parties. It's time for the Plaintiffs to collect on their judgment. Mr. Store, who is the agent under a Power of Attorney for Mr. McAfee, is ready, willing and able to do whatever he needs to do to turn over all of Mr. McAfee's assets. It's just time for this case to end and to get these parties separated. There are only two bank accounts at issue that I'm aware of. One is a Social Security account which should be addressed today and the other is the 401 K plan which are Ms. Duff and I are working on.

THE COURT: So this account that I did something with in January, it was represented to be all Social Security?

MS. ANDERSON: Not only was it represented but I had the exhibits here in Court. Everyone looked at them. We discussed it and showed you, Judge, that each of the bank statements -- nothing has gone into the account. I mean, you see the two thousand and something dollars from the Social Security Administration that have come in on a monthly basis and so the bank statements are whatever the dollar amount is

like $2,000, $2,000, $2,000, $2,000. It's just very clear and that fact is never going to change. I understand he took money from someplace else and put it in that account but he also --

THE COURT: That's a problem, isn't it?

MS. ANDERSON: It is, but he --

THE COURT: The $34,898.58 that seems to be in question?

MS. ANDERSON: Let me finish the story.

THE COURT: Okay.

MS. ANDERSON: He put it in the Social Security account and then he gave it out. They have a claim for that money. They had a claim and there are other assets to take it from. What I'm saying is, it will legally never come out of the Social Security proceeds. The briefing is done. I mean, it goes on and on and on from the 30's of the basis why the federal government protects Social Security assets. I'm not saying it's right, I'm saying that's the law. I'm saying they have a claim. It's just they can not be paid by the Social Security proceeds, they need to be paid by some other asset of Mr. McAfee's of which there is a lot of.

THE COURT: Okay. So maybe I'm missing some aspects of the history of this case, but if somebody put $10 million into this account, would that mean that because it's a Social Security account or it's an account that held Social Security funds that you can't reach the $10 million?

MS. ANDERSON: Absolutely not. But here is the difference, if the $10 million is there, you get it. You just can't touch any of the Social Security money. Because he paid it out, the only thing that was left there, and you can trace it, I know it doesn't make sense, Judge, but it is all briefed, if you can trace the Social Security funds, it's the one that's protected. That is what our federal government has done. It's not my call.

THE COURT: Even if it's commingled like this?

MS. ANDERSON: And it can be traced, yes, absolutely. And I don't know if the Court has had the opportunity to read the briefing that's done. All of that is discussed. It doesn't matter if it was commingled, it could be traced. In this case we don't even need to trace it. We looked at the hearing that we already had on this issue and we saw the bank statements that are very clear, page after page, of a monthly Social Security deposit.

And once again, I have to emphasize, no one is saying they don't have a claim to that $34,000. There are other monies that they can get the 34,000, just like there is other money that they are going to get the $2 million from if they will just take it.

THE COURT: All right.

MS. SEVEROVICH: Your Honor, and I'm speaking on behalf of Ms. Duff, she is the one that was at the last

hearing, and it's her position, and I know we discussed on the phone yesterday, but in that judgment on January 27th there was basically the garnishment is -- let me back up.

The January 27th Order went to whether the funds in those two accounts could be exempt from garnishment or if they were subject to garnishment. Now, the Order said that they were exempt from garnishment in those two accounts. But it has always been Ms. Duff's position that just because they are exempt from garnishment doesn't actually go to the characterization of the property. You can have community property that is exempt from garnishment.

She has been asking for clear evidence as to tracing where the two deposits, the first one being on April 23rd of 2010 for $25,162.66. It says wire tran. There was the second deposit on May 4th, 2010, which was for $9,735.92. It's classified as WT. We assume that's wire transfer again. Ms. Duff has been asking for things that trace where those funds came from so that she could adequately determine if they were community property or separate property. We realize that they are in, quote, a Social Security account, if you will, but that doesn't mean they are Social Security monies, and it is their burden to prove by a clear and convincing evidence that those funds that were two deposits, is the only thing we take issue with, were actually separate property. And so if they were community property, if they were deposited from some other

community GMS account or something, then actually the Estate is entitled to the fifty percent of that amount. And so that's why we are just asking that, you know, if this Court wanted to release the rest of the funds but put those two deposits into the Registry until we could actually get the documentation that traces those. Ms. Duff was under the impression that Mr. McAfee was not cooperating and he wouldn't give documentation to trace those, so all we have is the one exhibit which was attached showing the deposits.

Everything that's in there that says SSDI, or interest, Ms. Duff concedes is fine, that's Social Security. And she realizes those are exempt and those would be his separate property. But those two deposits that are not labeled the same, they are labeled Wire Transfer or WT, she wanted documentation on where that money came from, because if it's community property, then he doesn't get the full amount.

THE COURT: What's in the account? How much is in the account?

MS. ANDERSON: I believe it is in the 70's or 78 or 79, but, Judge -- are you finished? I just wanted to respond to that directly.

MS. SEVEROVICH: I believe at the last hearing as far as that judgment, and if I'm speaking out of turn, I apologize, but there was objections made as to the wording and that they weren't actually adjudicating whether or not this was

community funds or separate property, just whether or not they could be attacked by judgment creditors. Correct me if I am wrong.

MS. ANDERSON: And Judge, I will just address those in the order that they were brought in. With regard to the documentation on the account, Ms. Duff has never, never asked for documentation tracing the account. What she asked me to do was to tell her where they came from because she needed to tell her client something. Those were her words to me. What they did do was on the Plaintiff's side in the wrongful death case the Plaintiff sent out discovery. He never filed a Motion to Compel discovery. He never moved forward on it to take that expense to go to where Mr. McAfee is. When Mr. Storer came in, we voluntarily did that for him. Mr. Storer went to see Mr. McAfee. Mr. Store got all the answers and responded to all of the Requests for Production and interrogatories. With that though, even if they are asking for documentation, these are the hoops we have had to jump through. They say they want a tracing on where it came from, yet if you look at the Plaintiff's Original Inventory, she herself tells me where it came from. I mean, in her Inventory she says on 5/4, 2010, from GMS account 612, ninety-seven thirty-five ninety-two was transferred to Woodforest 404. On 4/23, 2010, GMS, Account No. 914, twenty-five thousand was transferred to Woodforest.

A.   They know this.  They have it.  They put it in their Inventory.  There is no reason to trace.  We have never said the GMS account is not a community property asset.  We know fifty percent of it is theirs.  I will even say that of the 35 or $38,000, it's community property, half of it is theirs.  Take the half.  We can't give it to them, Judge.  They have not moved one step toward collecting any of the assets from all of the other assets that are out there but what they will do is cause Mr. Storer to use his own money to come down here, hearing after hearing, to argue about the same thing that this Court already decided on January 27th.  We did it.  That is not -- the paperwork that she showed you is not the only thing that was attached to the motion.  Attached to the motion were the bank statements from the bank.  And so I don't know what else can be shown other than a whole bunch of papers that say $2,000 a month, the total is X amount of dollars, it's all Social Security funds.

THE COURT:   Okay.

MS. ANDERSON:   And I believe I have handed you the Order.

THE COURT:   Well, maybe I'm getting confused.  Are you saying that out of the 70 or $80,000 account they can have the thirty-four eight ninety-eight?

MS. ANDERSON:   No.  I'm saying that that thirty-four thousand was community property, and if it was

community property, then one-half is his and one-half is hers. So whatever half of --

THE COURT: And then one-half is subject to the judgment, which if his is subject to the judgment which would make it all hers.

MS. ANDERSON: Except that it comes from someplace else, not the Social Security. Judge, that's one account. If you will look at the Temporary Injunction, it's pages of accounts here. There are so many accounts the judgment is going to be met, and they need to let go of this one that the government has protected and start separating these people. There are only two accounts tying them together and if why is it that since, I don't know, I've been in the case since November or December trying to push it to them, I can't get them to take a penny.

MS. SEVEROVICH: We are not saying Ms. Duff has expressed this. We are not saying out of the $70-80,000, whatever is actually traced to be his Social Security proceeds, she agrees, that's his separate property, he can have it. Now, if they are saying that the approximately 35 thousand dollars came from other sources are which are not Social Security funds which are community property, that's why we are saying to put that thirty-five in the Registry of the Court. We would agree to release the rest of it that is Social Security funds. But the thirty-five thousand is not Social Security.

MS. ANDERSON: But Judge, that decision has already been made. How many times -- we are arguing about it right now.

THE COURT: Is that in paragraph five where I said it is exclusively --

MS. ANDERSON: Okay, No. 2 holds assets in the name of Kenneth. No. 5, the Wood Forest account, 404, that's the one we are talking about, holds exclusively Social Security benefit proceeds of Kenneth McAfee.

MS. SEVEROVICH: Which are exempt from garnishment but that doesn't meaning whether there are community or separate property funds in there.

MS. ANDERSON: It doesn't matter, they are Social Security.

THE COURT: I think that's probably an interim order. Here is -- let me tell you the bottom line, if I did something wrong that I can fix I'm going to fix it. The fact that I said something is exclusively, I think that's what you are arguing, that I made a finding that's erroneous and you know it's erroneous --

MS. ANDERSON: No, sir.

THE COURT: Why isn't it erroneous when this 35 thousand seems to be non-retirement benefits that --

MS. ANDERSON: Let me draw you a picture.

THE COURT: Do it like I'm a six-year-old.

MS. ANDERSON: I'm very visual.

THE COURT: That's from the movie Philadelphia.

MS. ANDERSON: So this is a 35K and we have got a Social Security pot with Social Security of let's just say fifty, okay?

THE COURT: All right.

MS. ANDERSON: Social Security goes in here. Fifty came in here by two, two, two, two, each month, that totals up to fifty. As soon as it went in here, days before her death, it went out. That's the money that he gave his ex-wife and his son. The bank statements that you looked at were all of these two that total fifty. It is that simple. This was, and hold on just a second, I mean, we are talking about days.

THE COURT: There was sort of a brief commingling but the tracing, from your point of view would be, thirty-five comes in and goes out within a short period of time.

MS. ANDERSON: Immediately. She died on May 8th, 2010.

THE COURT: Okay.

MS. Anderson: This deposit was May 4th, 2010, that's nine thousand. It went into Woodforest. He gave it to the son. This one came out of GMS 423, two weeks or so before she died, twenty-five thousand, it went out and was paid to his

wife. That money is gone. Yes, it was commingled but it is clearly traceable. They know he paid it to the wife and son because that's been one of the --

THE COURT: Same amounts in and out?

MS. ANDERSON: The exact amounts. I mean, it may have been twenty-five thousand instead of twenty-five one six six, I don't recall, but that was the claim that was potentially, do we go after your ex-wife and the son? We are saying, no, we owe it to you. It goes over here. But it doesn't come out of this bank account. This bank account is Social Security. And Judge, you didn't make a mistake and I'm not BSing you. These are plain-Jane bank statements. We have already done this on January 27th and every time we come back it's the same thing. It's the same thing. And I know that Ms. Duff and I understand what the truth is and that that money is available from other funds. I also know that they can't agree to anything on behalf of their client.

MR. BLUMROSEN: May I respond, Judge?

THE COURT: Yes, briefly. Or, you know, go ahead.

MR. BLUMROSEN: I will be -- I promise you, I'm not happy that I'm here.

THE COURT: I understand.

MR. BLUMROSEN: As you know, I represent the Plaintiffs in a wrongful death matter. I was served with her

Motion for Sanctions and her Motion for Sanctions for the first time that I have ever heard this morning I was never notified that she wasn't going forward on it, so that's why I'm here, she never notified me.

THE COURT: Okay.

MR. BLUMROSEN: But, as you know, Judge, I filed a Response and I also filed a Counter-Motion for Sanctions for her to file her Motion for Sanctions, which addresses actions that my clients have taken, that they knowingly filed improper writs of garnishment. That's number one. And number two, that they attempted to collect assets they knew to be exempt under the law.

MS. ANDERSON: Are we going into my Motion for Sanctions and his Response?

THE COURT: No.

MS. ANDERSON: Thank you.

THE COURT: We are going to do that some other week.

MR. BLUMROSEN: All I'm saying is, Judge, I wrote her a letter asking her to withdraw that. She didn't. She is complaining about Mr. Store having to come down here for his money. She has made me to come down here to defend my client's actions, put something in writing that there is no basis for. I have responded to that and I have indicated that we want sanctions for her doing that.

The other thing I would like the Court to know and I want the record to be very clear, she represented to the Court that we haven't done anything to try and collect, we never filed a Motion to Compel. As you are very well aware, you signed an Order compelling Mr. McAfee to respond, so that statement is simply not true.

Number two, nobody has ever offered me one penny, not one dime. I promise you, we will take it. We have a $2 million judgment. I've been working on this case for five years. The representation that she is making to you that she is offering us money and we won't take it, is simply not true. If you want to offer me -- any money she wants to offer me that Mr. McAfee has, we will take it right now. So that's just simply not true. I'm not coming down here for fun. I'm not coming down here because we enjoy having hearings, I'm down here because she wanted my client to be sanctioned.

MS. ANDERSON: Judge, you were here at all of our hearings. Have you heard me spout and rattle off how we can't give them money? We have had that conversation often. And I want to say that Mr. Blumrosen did not ask me for anything, he told me what to do this week. And as a courtesy to Ms. Duff, who is his co-counsel, who I spoke with yesterday, I told her that I would consider passing the hearing. I considered it. I will pass it. And if need be, I will amend it and include the other account that the writ was issued on

that shouldn't have been issued. But I would really prefer to just visit with Ms. Duff to continue our discussions and see if everything can be worked out.

MR. BLUMROSEN: Just to clarify, Judge, I don't represent the Estate. I'm not on the Estate case. If there is anything to do with the Temporary Injunction, things of that nature, that doesn't address the wrongful death, so I am Ms. Duff's co-counsel only to the extent that we represent the same parties, Ms. Foltyn. But I am not co-counsel on the Estate matter, I'm only counsel of record along with Ms. Kelly Zeigler on the wrongful death action. And I will state again on the record, they have not ever offered us anything at any point in time. And believe me, I will be sending a letter out today, please let me know what you would like to offer us, we will be glad to accept it.

MS. ANDERSON: And Judge, those things have been done. These people work together, Ms. Duff and Mr. Blumrosen, they have the same client. I'm talking to multiple attorneys. And even yesterday, I told Ms. Stacey, I really don't want to talk with you, I need to talk with Ms. Duff, because it is too many different opinions, versions, thoughts of what is going on, so I'm trying to keep it centralized to one.

The bottom line is, if Plaintiffs would file something with the Court that it's just an Order, that all of these assets that are Mr. McAfee's go to the Plaintiffs, we

will sign off on it. It's that simple. And that hasn't been done since the date of the judgment. It hasn't been done since I came into the case in November. It hasn't been done to date. Instead, there is just this list of assets he's, you know, keeping it from them. And we are not. We are ready to give it to them. They need to just take it.

THE COURT: I mean, I don't think it's my job to prepare the documents for this. What can I do to get y'all to sit down and see if these representations are real and get this over with?

MS. SEVEROVICH: We will take the 35. I'm kidding.

THE COURT: Would a mediation --

MS. ANDERSON: I think part of the deal is bringing at least Ms. Duff and I together. I know she is a very busy person, you know, I mean, I can only count on someone so much, so -- we are just not able to get on the same schedule. But I really do think that if we got together it would happen. I don't even think it needs to be a mediation.

MR. BLUMROSEN: On the wrongful death side we will take anything she wants to offer, we will take it. I will make that representation. This matter has been done on a contingency basis. Anything she wants to offer to help satisfy the $2 million judgment, we will take it. I'm not saying it will extinguish the $2 million judgment. We will take whatever

he has. I will represent that to the Court right now. We haven't been offered anything.

MS. ANDERSON: And we want the credit for it because it will pay the entire $2 million judgment.

MR. BLUMROSEN: Certainly get the credit for it.

MS. ANDERSON: But I've been dealing with Ms. Duff because she is the one who has the Inventory. I have no idea -- I don't know what this wrongful death stuff is, all I know is he has got a judgment. Okay? Well, where is the money coming from if not from Mr. McAfee who is addressed in the Estate Inventory. If he doesn't represent -- but that's why I'm dealing with her.

THE COURT: Mr. McAfee, let me, and then I have got to move on, but so you have this issue of what should be in her Estate, correct?

MS. ANDERSON: We --

MS. SEVEROVICH: Right, we are still figuring that out.

THE COURT: And that's her property, however that works out. And then you have what's left is Mr. McAfee's property, which some of it is exempt and some is not, and whatever is nonexempt, up to $2 million, should go to satisfy the judgment.

MS. ANDERSON: And that's what we are trying to do. It's two accounts. It's Social Security of about seventy

thousand and the 401 which Ms. Duff and I are discussing right now.

THE COURT: Which has what?

MS. ANDERSON: Well, it's really a little more complicated.

THE COURT: Well, what's in it? How much money?

MS. ANDERSON: About two hundred thousand.

THE COURT: So how are we satisfying a $2 million judgment?

MS. ANDERSON: Because there is about a million in her Estate, which means there is a million in his Estate on the Inventory.

THE COURT: Okay.

MS. ANDERSON: That's only her half. And there was a piece of real property that we say was valued between eight hundred thousand and nine hundred thousand, and under common law he gets a credit for that. She is claiming it's all theirs, and that's fine, we want her to have it, but he needs his credit for it because it was his separate property.

MS. SEVEROVICH: That's a whole nother ball of wax.

MS. ANDERSON: Yeah. But they get everything, Judge. We are not trying to keep anything except what is exempt.

THE COURT: Okay.

MS. ANDERS: They get one hundred percent of all of his assets except for what is exempt.

THE COURT: All right, I will look at it. I mean, you're basically saying that we have left is unclear as to the release of those funds that you think he is entitled to.

MS. ANDERSON: One account. That's what the Order says. That one account, 404. It's not subject to anything. And, you know, what does garnishment go with? Garnishment with a judgment. So even if they get a judgment, they will never be able to touch those funds. They need to get it from someplace else.

THE COURT: And you're saying that you would agree to something that puts funds in issue and, from your perspective, into the Registry and releases everything else to her client?

MS. SEVEROVICH: Correct. As Ms. Duff has always said, anything that was Social Security, fine, we will release that. But those two deposits Ms. Duff has issues with as to their characterization, that's why we wanted that in the Registry.

THE COURT: So that would be in the Registry while that actually --

MS. SEVEROVICH: Is sorted out.

THE COURT: -- is figured out. It could actually go to either side ultimately.

MS. ANDERSON: But, Judge, I think we need to be careful because their characterization, meaning was it separate or community. That has nothing to do with regard to, it's in the Social Security account which is protected. We are saying it's community.

THE COURT: I see what you are saying. I understand. You are saying it went out at or about the time that it went in or shortly after, and therefore that 35 thousand isn't even an issue from your perspective, that everything that's left in there is protected under the Social Security.

MS. ANDERSON: Right. And if you look back at the motions that were filed, the briefing that was done before the January hearing, all of those are attached, all bank statements. I mean, I'm not particularly thrilled about this case. I have always been straight with the Court and I'm never going to try and mislead you in any way. The paperwork is there. We have already gone through this. And I believe that even if the Court did take thirty out, thirty-eight, and put it in the Registry of the Court, that you would be violating federal law. And I know that's not anyone's intent. So I understand that the dispute is over characterization. Characterization has to do with is it separate or is it community. No one says that the money in the bank account is not Social Security money. No one says that.

THE COURT: Well, I could also, if I knew the balance, I could also allow the account to remain frozen as to thirty-four thousand eight ninety-eight fifty-eight with the understanding that there would still be this issue of who is entitled to it.

MS. ANDERSON: Here is the deal, Judge, I mean, this man is being punished. We know that. He did a bad thing. A horrible thing. All right? Where it -- you are talking about more hearings over $38,000 when there is so much money over here --

THE COURT: Well then y'all -- that's what I'm asking, what's the mechanism for y'all to actually sit down and be forced to sort of work through this and --

MS. ANDERSON: But there is nothing to negotiate on the one account. If I do anything contrary, then I'm going against federal law. Okay? So the only one that's left to negotiate on is the 401K plan which is what we are negotiating on. If they want to tag that at that thirty-eight something, but they haven't come up with it and I can't do both sides of this case.

THE COURT: Okay. All right, let me look at it and I will let y'all know something by Monday.

MR. BLUMROSEN: Just one point briefly, Judge, on the last point since, for her benefit, she wasn't here at the January hearing, I agreed that that account was not subject

to garnishment. We did not agree with her language in the Order for this very --

THE COURT: Oh, I remember that nuance about all this, that there was a concern that this would be used to release, and that's where we are.

MS. ANDERSON: No, it is not. We had a January 27th hearing. It is the hearing afterward that there was an issue over the Orders and at the hearing afterwards is the hearing that you signed their Order on, and he is nodding his head yes, so it is not the January 27th.

MR. BLUMROSEN: That's correct. But I'm talking about the Order that she is showing you saying that it is exclusively, when you signed that we had objected to it because we thought that it was -- the language was unnecessary for that Order and we agreed that that account, the Social Security account that was designated, was not subject to garnishment. We agreed with that. We thought her language in her Order gave it more protection than it needed because I said I don't represent the Estate and the Estate may or may not have claims against it. But that Order was placed in front of you by her and that was her Order and her language that we did not want the Court to sign but the Court did sign it.

MS. ANDERSON: And we were all here. It wasn't like it was just you and me talking in secret.

THE COURT: No, I understand.

MS. ANDERSON: All right, thank you, Judge.

THE COURT: Thank you.

MS. SEVEROVICH: Thank you, Judge. May we be excused?

THE COURT: Yes.

29

C E R T I F I C A T E

COUNTY OF HARRIS *
STATE OF TEXAS *

        I, Donald G. Pylant, Official Court Reporter in and for Probate Court No. 1 of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.
        I further certify that this Reporter's Record truly and correctly reflects the exhibits, if any, admitted, tendered in an offer of proof or offered into evidence by the respective parties.
        I further certify that the total cost for the preparation of this Reporter's Record is __$203.00__ and will be paid by __Esther Anderson__.

        Given under my hand and seal of office this the _5th_ day of __August__, 2015.


                              /s/Donald G. Pylant_____
                              Donald G. Pylant, C.S.R.
                              Official Court Reporter
                              in and for the County of
                              Harris and the State of
                              T E X A S.

Certification No. 668   Exp. Date: 12-31-2016
Probate Court No. One 201 Caroline Street, 6th fl.
Houston, Texas 77002 (713) 368-6692

# Tab 16

## Inventory, Appraisement and List of Claims



**097895**

No. 396,935

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JANET FOLTYN MCAFEE, | § | NO. 1 |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

### INVENTORY, APPRAISEMENT AND LIST OF CLAIMS

#### Date of Death: May 8, 2010

The following is a full, true, and complete Inventory and Appraisement of all real property situated in the State of Texas and of all personal property wherever situated, together with a List of Claims due and owing to this Estate as of the date of death, which have come to the possession or knowledge of the undersigned.

### INVENTORY AND APPRAISEMENT

**COMMUNITY PROPERTY**                                                                                **VALUE**

1.  **CASH IN BANKS:**

    Account #1
    Institution:  The GMS Group, LLC
    Account type:  Brokerage Account
    Account/CD No:  xxx - xxx612
    Total value of asset:  $0 *
    Less surviving spouse share:  $<0.00>                                              $0.00
    Co-owners:  None
    Decedent's interest:  50%

    *Note that (1) on April 23, 2010 Kenneth McAfee made a $1,700.00 distribution to an unknown account; and (2) on May 4, 2010, Kenneth McAfee transferred $9,760.92, entire remaining balance, to the Woodforest National Bank Account listed below.

    Account #2
    Institution:  The GMS Group, LLC
    Account type:  Brokerage Account
    Account/CD No:  xxx - xxx628
    Total value of asset:  $53,749.42 *

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



Less surviving spouse share: $<26,874.71>                                    $26,874.71
Co-owners: None
Decedent's interest: 50%

*Note, on (1) May 13, 2010, Kenneth McAfee sent an authorization to GMS to transfer balances of his accounts into Gerald Fry's IOLTA at Bank of America, Account number 002663331329; and (2) on May 20, 2010 Kenneth McAfee wired the remaining balance, $51,462.06, into Gerald Fry's IOLTA at Bank of America BOA acct no. 002663331329; wire no. 026009593

Account #3
Institution: The GMS Group, LLC
Account type: Salary Savings Plan 401K
Account/CD No: xxx - xxx606
Total value of asset: $425,034.70 *
Less surviving spouse share: $<212,517.35>                                  $212,517.35
Co-owners: None
Decedent's interest: 50%

* Note on May 25, 2010, Kenneth McAfee withdrew $200,000 and was sent to an unknown location. GMS withheld $40,000.00 for taxes.

Account #4
Institution: The GMS Group, LLC
Account type: Brokerage Account
Account/CD No: xxx - xxx914
Total value of asset: $0 *
Less surviving spouse share: $<0.00>                                           $0.00
Co-owners: None
Decedent's interest: 50%

*Note on April 23, 2010, Kenneth McAfee wire transferred balance, $25,187.66, to account at WoodForest National Bank, described below

Account #5
Institution: The GMS Group, LLC
Account type: Brokerage Account
Account/CD No: xxx - xxx008
Total value of asset: $6,772.52
Less surviving spouse share: $<3,386.26>                                      $3,386.26
Co-owners: None
Decedent's interest: 50%

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III                          Deputy



Account #6
Institution: Woodforest National Bank
Account type: Multiparty checking with Right of Survivorship (Kenneth McAfee and Brenda McAfee, Kenneth's first wife)
Account/CD No: xxxxxxx404
Total value of asset: $38,256.91 *
Less surviving spouse share: $<15,605.71>                                        $22,651.20
Co-owners: Brenda McAfee and Kenneth McAfee
Decedent's interest: 25% of balance, plus 50% interest in the amounts that were transferred from the GMS accounts shortly before Janet Foltyn McAfee's death, as set forth below in points (1) and (2).

* Note, (1) on April 23, 2010, Kenneth McAfee transfers $25,162.66 (from GMS xxx – xxx914) into this account; (2) on May 4, 2010, Kenneth McAfee transfers $9,735.92 (from GMS xxx-xxx612) into this account; (3) on July 1, 2010 Kenneth McAfee issues $10,000.00 check from this account to Michael McAfee; (4) on July 2, 2010, Kenneth McAfee issues $15,000.00 check from this account to Brenda McAfee; (5) n July 2, 2010, Kenneth McAfee issues $6,000.00 check from this account to IRS for 2008 taxes; (6) on November 29, 2010, Brenda McAfee issues $19,024.63 check to McDavid Honda.

Decedent's share of Account #6 above is calculated as follows:

Funds transferred from GMS that Decedent claims a 50% interest in: $17, 449.29
        $25,162.66 / 2 = $12,581.33
        $9,735.92 /2 = $4,867.96

        $9,735.92 + $4,867.96 = $17, 449.29

Remaining funds in Woodforest that Decedent claims s a 25% interest in: $5,201.91
        $38,256.91 (-) $17, 449.29 = $20,807.62
        $20,807.62 / 4 = $5,201.91

Total interest Decedent claims: $22,651.20
        $17, 449.29 + $5,201.91= $22,651.20


Account #7
Institution: Wells Fargo National Bank
Account type: Checking
Account/CD No: xxxxxx184
Total value of asset: $589.76
Less surviving spouse share: $<294.88>                                        $294.88
Co-owners: Kenneth McAfee
Decedent's interest: 50%

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Sterling G. Senechal III _____Deputy



2.  **MOTOR VEHICLES:**

Vehicle #1
Description:  2006 Mazda Miata (MX-5)
VIN #:  xxxxxxxxxxxxxx539
Total Value:  $12,830.00
Less surviving spouse share:  $<6,415.00>                    $6,415.00
Co-owners:  None
Decedent's interest:  50%


Vehicle #2
Description:  1959 Mercedes Model 190, 4 door
VIN #:  xxxxxxx510
Total Value:  $5,050.00                                      $2,525.00
Co-owners:  None
Decedent's interest:  50%

Vehicle #3
Description:  2007 or 2008 Suzuki Motorcycle
VIN #:  xxxxxxxxxxxxxx547
Total Value:  $4,490.00
Less surviving spouse share:  $<2,245.00>                    $2,245.00
Co-owners:  None
Decedent's interest:  50%

3.  **INSURANCE:**

Policy #1
Insurer:  unknown at this time
Policy No.:  unknown
Total Value:  $unknown                                             $0
Co-owners:  None
Decedent's interest:  50% of premium payments

4.  **HOUSEHOLD FURNISHINGS:**
Household furniture and furnishings        $14,000.00
Total Value:  $14,000
Less surviving spouse share:  $<7,000.00>                      $7,000
Co-owners: . Kenneth McAfee
Decedent's interest:  50%

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



| TOTAL COMMUNITY PROPERTY | $283,909.40 |
|---|---|

| SEPARATE PROPERTY | VALUE |
|---|---|

1.    REAL PROPERTY:

Parcel #1
LEGAL DESCRIPTION:
Lot 12 Block 16 of South Hampton Place, a subdivision in Harris County, Texas according to the map or plat thereof, recorded in Vol. 6, Page 52 of the Map Records of Harris County, Texas, commonly known as 2119 Tangley Street, Houston, Texas Harris County
Total Value: $537,701.00 *                                                                  $423,454.10
Less remaining Chase Bank mortgage balance: ($114,246.90)
Co-owners: None
Decedent's interest: 100%

* Note that Kenneth McAfee gifted his interest in the property to Janet Foltyn McAfee via gift deed on July 11, 2008, making it her separate property.

Parcel #2
LEGAL DESCRIPTION:
Ten (10) acre tract of land situated in Matagorda County, Texas in the G.J Williams League, Abstract No. 103, being a portion of Lot No. 55 of the Elmaton Farms Subdivision, and being out of the Southwest corner thereof, the map of said subdivision being recorded in the County Clerk's Office in Matagorda County, Texas, and said Lot. No. 55 being conveyed by B.W. Trul et ux to E.E. Adamcik by deed dated February 9, 1932, recorded in Vol. 94, Page 211 of the Matagorda County Deed Records
Total Value: $13,750.00                                                                  $13,750.00
Co-owners: None
Decedent's interest: 100%

Parcel #3
LEGAL DESCRIPTION:
Mineral Interest under the 10 acres in Matagorda county listed above in the Saha-Peterson GU W3.
Total Value: $5,784.28                                                                  $5,784.28
Co-owners: None
Decedent's interest: 100%

2.    HOUSEHOLD FURNISHINGS:
|  |  |
|---|---|
| Artwork | $17,900.00 |
| Electronics | $1,850.00 |
| Jewelry | $5,000.00 |

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



|                               |           |             |
|-------------------------------|-----------|-------------|
| Firearms - .25 cal pistol     | $300.00   |             |
| Misc items                    | $3,500.00 |             |

Total Value: $28,550.00                                       $28,550.00
Co-owners: None
Decedent's interest: 100%

3.    **MOTOR VEHICLES:**

Vehicle #1
Description: 2006 Hummer H3 (4x4)
VIN #: xxxxxxxxxxxxxx109
Total·Value: $18,100.00                                       $18,100.00
Co-owners: None
Decedent's interest: 100%

Vehicle #2
Description: 2007 Honda Shadow Motorcycle
VIN #: xxxxxxxxxxxxxx977
Total Value: $3,495.00                                        $3,495.00
Co-owners: None
Decedent's interest: 100%

4. ·    **CASH IN BANKS:**

Account #1
Institution: The GMS Group, LLC
Account type: Brokerage Account
Account/CD No: xxx - xxx479
Total Value: $ 3,440.02                                       $3,440.02
Co-owners: None
Decedent's interest: 100%

Account #2
Institution: The GMS Group, LLC
Account type: Brokerage Account
Account/CD No: xxx - xxx012
Total Value: $36,420.66                                       $36,420.66
Co-owners: None
Decedent's interest: 100%

Account #3
Institution: The GMS Group, LLC
Account type: Brokerage Account
Account/CD No: xxx - xxxx28

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



Total Value: $0                                                    $0
Co-owners: None
Decedent's interest: 100%

5.   **SECURITIES:**

Security #1
Description: Devon Energy Corp., ENV # xxxxx111, 1984.75 shares
Total Value: On May 8, 2010 valued at $64.58/share                $128,175.16
Co-owners: None
Decedent's interest: 100%

**TOTAL SEPARATE PROPERTY**                                        **$661,169.22**

### LIST OF CLAIMS OWED TO ESTATE

No claims are due and owing to the Estate of Janet Foltyn McAfee, Deceased.

### TOTAL VALUE OF ESTATE

The total value of the Estate of Janet Foltyn McAfee, Deceased is $945,078.62.

The Independent Administratrix asks the Court that foregoing Inventory, Appraisement and

List of Claims be approved and entered of record.

FILED
2011 SEP 21 AM 7:34

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



_____
Rosemary Foltyn
Independent Administratrix of the Estate of Janet
Foltyn McAfee, Deceased

_____
Mary Elizabeth Duff
Attorney for Rosemary Foltyn
State Bar No.: 06166880
210 Main Street
Richmond, TX 77469
Telephone: (281) 341-1718
Facsimile: (281) 341-5517

**STATE OF TEXAS**                    §

**COUNTY OF HARRIS**                  §

    I, Rosemary Foltyn, having been duly sworn, hereby state on oath that the said Inventory and List of Claims are a true and complete statement of property and claims of the estate that have come to my knowledge.

_____
Rosemary Foltyn
Independent Administratrix of the Estate of Janet
Foltyn McAfee, Deceased

    **SWORN TO AND SUBSCRIBED BEFORE ME** on this the 26th day of August, 2011 by Rosemary Foltyn, to certify which witness my hand and seal of office.

ALICE M BROOKS
NOTARY PUBLIC
State of Texas
Comm. Exp. 07-11-2015

_____
Notary Public, State of Texas

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



<p style="text-align:center">No. 396935</p>

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JANET FOLTYN MCAFEE, | § | NO. 1____ |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

## ORDER APPROVING INVENTORY, APPRAISEMENT & LIST OF CLAIMS

The foregoing Inventory, Appraisement and List of Claims of the above estate having been filed and presented; there having been no objections made thereto; and the Court having considered and examined the same, is satisfied that it should be approved.

**IT IS THEREFORE ORDERED** that the foregoing Inventory, Appraisement and List of Claims is in all respects approved and **ORDERED** entered of record.

**SIGNED** on the _____ day of _____, 2011.

_____
**JUDGE PRESIDING**

**APPROVED AS TO FORM:**

_____
Mary Elizabeth Duff
State Bar No.: 06166880
Carla K. Freeman
Attorney for Rosemary Foltyn,
Independent Administratrix of the Estate of Janet Foltyn McAfee, Deceased
210 Main Street
Richmond, TX 77469
Telephone: (281) 341-1718
Facsimile: (281) 341-5517

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Sterling G. Senechal III



# Tab 17

Order on First Amended Motion for Reconsideration of March 16, 2015 Order Partially Releasing Temporary Injunction, First Amended Motion for Entry of Order Releasing Social Security Proceeds from Injunction and Motion for Sanctions

No. 396,935 —401

IN THE ESTATE OF § IN THE PROBATE COURT
§
JANET FOLTYN MCAFEE, § NO. 1
§
DECEASED § HARRIS COUNTY, TEXAS

### ORDER ON FIRST AMENDED MOTION FOR RECONSIDERATION OF MARCH 16, 2015, ORDER PARTIALLY RELEASING TEMPORARY INJUNCTION, FIRST AMENDED MOTION FOR ENTRY OF ORDER RELEASING SOCIAL SECURITY PROCEEDS FROM INJUNCTION AND MOTION FOR SANCTIONS

CAME ON THIS DAY, Charles Storer, Agent under a Power of Attorney from Kenneth McAfee's, First Amended Motion for Reconsideration of March 16, 2015 Order, First Amended Motion for Entry of Order Releasing Social Security Proceeds from Injunction, and Motion for Sanctions, and after considering the pleadings on file, the Responses thereto, the arguments of counsel, and the evidence and testimony submitted to the Court, the Court finds that Charles Storer did not prove the characterization of the property at issue by clear and convincing evidence, and thus, the relief requested in Storer's Motion should be DENIED.

IT IS THEREFORE ORDERED that Charles Storer's Motion for Sanctions is denied; and it is further

____ ORDERED that the previous ruling is upheld until Charles Storer provides clear and convincing evidence of the separate nature of the commingled funds held at Woodforest National Bank; or

_X_ ORDERED that the Woodforest National Bank account funds are to be released to Woodforest National Bank deposit Charles Storer, provided that $34,898.58 of the account funds are deposited into the registry of payable to the Stan Stanart, Harris County Clerk for the Court until the nature of two deposits at issue has been determined. the use and benefit of the estate of Janet Foltyn McAfee, Deceased.

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 10/1/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ **Deputy**
Summer Lea Willette



SIGNED on *May 18*, 2015.

_____
JUDGE PRESIDING

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 10/1/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ **Deputy**
Summer Lea Willette



APPROVED AS TO FORM:

Mitchell & Duff, LLC

By: _____
Mary Elizabeth Duff
Texas Bar No. 06166880
210 Main Street
Richmond, Texas 77469
Tel. (281) 341-1718
Fax. (281) 239-7928
*Attorney for Rosemary Foltyn,*
*Administratrix*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 10/1/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ **Deputy**
Summer Lea Willette



# Tab 18

## Application for Temporary Restraining Order and Temporary Injunction



**664781**

No. 396935

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JANET FOLTYN MCAFEE, | § | NO. 1 |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

*W/c*

*1 PERS by P.P. W/S*

*06/08/10*

## ~~ADMINISTRATOR'S~~ APPLICATION FOR
## TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Rosemary Foltyn, *Applicant for* Administrator for the Estate of Janet Foltyn McAfee, ("Applicant"), and files this Application for Temporary Restraining Order and Temporary Injunction against Kenneth McAfee, ("Respondent") herein, and in support thereof, show the court the following:

### PARTIES AND SERVICE

1. Respondent, Kenneth McAfee, an Individual who is a resident of Texas, may be served with process at his home at the following address: 2119 Tangley Street, Houston, Texas 77005; or if he remains incarcerated, through the Harris County Sheriff's Department at: 1200 Baker Street, Houston, Texas 77002, SPN 00883964. Service of said Defendant as described above can be effected by personal delivery at either location, or wherever he may be found.

### FACTS

2. Decedent, Janet Foltyn McAfee, died on May 8, 2010, at Houston, Harris County, Texas, at the age of 50 years. Decedent's domicile at the time of her death was Houston, Harris County, Texas. Respondent is alleged to have killed Decedent. An Application to Probate Will was filed by Rosemary Foltyn on May 24, 2010. In addition, a wrongful death suit was filed by the heirs of the Estate and the relatives of Janet Foltyn McAfee, in Harris County District Court.

*U:\Clients\FOLTYN, ROSEMARY\Application for Temporary Restraining Order.rtf*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

 _____ Deputy
Summer Lea Willette

3. Should Respondent be released from incarceration, assets of the estate, rightfully belonging to the Community, and from which Respondent is prohibited by law and public policy from inheriting, may be depleted by Respondent.

4. Unless Kenneth McAfee is immediately enjoined and restrained from use of the funds belonging to the Estate of Janet Foltyn McAfee, Kenneth McAfee will have the ability to deplete the assets of the estate.

## ELEMENTS FOR INJUNCTIVE RELIEF

5. In light of the above described facts, Rosemary Foltyn, As Applicant for Independent Administratrix, seeks to Probate the will of Janet Foltyn McAfee. The nature of the lawsuit is Probate, with an additional wrongful death suit pending.

6. Rosemary Foltyn, As Applicant for Independent Administratrix, is likely to succeed on the merits of this lawsuit because there is a necessity for administration of the estate, specifically so that property can be transferred to the rightful heirs.

7. Unless this Honorable Court immediately restrains Kenneth McAfee, the Estate of Janet Foltyn McAfee as well as Rosemary Foltyn and the remaining heirs of the Estate of Janet Foltyn McAfee will suffer immediate and irreparable injury, for which there is no adequate remedy at law to give Rosemary Foltyn, As Applicant For Independent Administratrix, and the heirs of the Estate of Janet Foltyn McAfee complete, final and equal relief. More specifically, Rosemary Foltyn, As Applicant for Independent Administratrix, will show the court the following:

A. The harm to Rosemary Foltyn, As Applicant For Independent Administratrix, and the heirs of the Estate of Janet Foltyn McAfee is imminent because Kenneth McAfee has the ability, as husband of the decedent, to deplete the assets of the Estate of Janet Foltyn McAfee, and Kenneth McAfee would benefit from his alleged wrongful conduct.

*U:\Clients\FOLTYN, ROSEMARY\Application for Temporary Restraining Order.rtf*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

 _____Deputy

Deputy Clerk: Lea Willette



B. This imminent harm will cause Rosemary Foltyn, As Applicant For Independent Administratrix, and the heirs of the Estate of Janet Foltyn McAfee irreparable injury in that funds will not be available to the Estate for proper distribution.

C. There is no adequate remedy at law which will give Rosemary Foltyn, As Applcan For Independent Administratrix, and the heirs of the Estate of Janet Foltyn McAfee complete, final and equal relief because Kenneth McAfee has the ability, as husband of the decedent, to deplete the assets of the Estate of Janet Foltyn McAfee, and Kenneth McAfee would benefit from his alleged wrongful conduct.

## BOND

8. Rosemary Foltyn, As Applcan For Independent Administratrix, is willing to post a nominal temporary restraining order bond and request the court to set such bond.

## REMEDY

9. Rosemary Foltyn, As Applicant For Independent Administratrix, has met her burden by establishing each element which must be present before injunctive relief can be granted by this court, therefore Rosemary Foltyn, As Applicant For Independent Administratrix, is entitled to the requested temporary restraining order.

10. Rosemary Foltyn, As Applcan For Independent Administratrix, requests the court to restrain Kenneth McAfee from use of any funds or property which rightfully belongs to the Estate of Janet Foltyn McAfee. Specifically, Kenneth McAfee is restrained from the use of the following accounts and property:

    a. Any accounts through GMS Group which are not the separate property of Kenneth McAfee;

    b. Any Compass Bank Accounts;

*U:\Clients\FOLTYN, ROSEMARY\Application for Temporary Restraining Order.rtf*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

 _____ Deputy
Summer Lea Willette



c. Any Laredo Accounts;

d. Any Wells Fargo Accounts;

e. Any Citizens' Bank Accounts;

f. Pershing c/o Harland Ics Account; and

g. Any community property or separate property of Janet Foltyn McAfee.

11. It is essential that the court immediately and temporarily restrain Kenneth McAfee, from the use of the listed accounts and property. It is essential that the court act immediately, prior to giving notice to Kenneth McAfee and a hearing on the matter because the ability to deplete the assets of the estate exists.

12. In the alternative, should the court not wish to grant a Temporary Restraining Order, Rosemary Foltyn as Applican For Independent Administratrix of the Estate of Janet Foltyn McAfee respectfully requests the Court to order a Constructive Trust over the aforementioned Assets.

13. In order to preserve the status quo during the pendency of this action, Rosemary Foltyn requests that Kenneth McAfee be temporarily enjoined from use of the accounts and property as described herein.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Rosemary Foltyn, As Applican For Independent Administratrix, Applicant herein, respectfully prays that:

A. Kenneth McAfee, Respondent, be cited to appear and answer herein;

B. A temporary restraining order will issue without notice to Kenneth McAfee, restraining Kenneth McAfee, and his officers, agents, servants, employees, agents, servants, successors and assigns, and attorneys from use of the accounts and property described herein;

C. The Court sets a reasonable bond for the temporary restraining order;

*U:\Clients\FOLTYN, ROSEMARY\Application for Temporary Restraining Order.rtf*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas


Summer Lea Willette _____Deputy



D.    The Court order a Constructive Trust over the aforementioned assets;

E.    After notice and hearing, a temporary injunction will issue enjoining and restraining Kenneth McAfee, his officers, agents, servants, employees, successors and assigns, and attorneys from direct or indirect use of the accounts and property described herein;

F.    For such other and further relief, in law or in equity, to which Applicant may be justly entitled.

Respectfully submitted,
Mitchell & Duff, LLC

By: _____
Mary Elizabeth Duff
Texas Bar No. 06166880
Amy L. Mitchell
Texas Bar No. 12560500
Matthew F. Scholes
Texas Bar No. 24056630
210 Main Street
Richmond, TX 77469
Tel. (281)341-1718
Fax. (281)341-5517
Attorney for Applicant
Rosemary Foltyn

*U:\Clients\FOLTYN, ROSEMARY\Application for Temporary Restraining Order.rtf*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas


Summer Lea Willette _____ Deputy



## VERIFICATION

STATE OF TEXAS            §
                         §

COUNTY OF FORT BEND      §

BEFORE ME, the undersigned authority, personally appeared Rosemary Foltyn, as Applican

For Independent Administratrix of the Estate of Janet Foltyn McAfee who, on oath, stated that the

statements made in the foregoing Application for Temporary Restraining Order and Temporary

Injunction are true and correct.



_____
Rosemary Foltyn, as Applican For Independent
Administratrix of the Estate of Janet Foltyn McAfee

SUBSCRIBED AND SWORN TO BEFORE ME on this the 8<sup>th</sup> day of June ,

2010, to certify which witness my hand and seal of office.

_____
Notary Public, State of Texas

MARY ELIZABETH DUFF-DROZD
Notary Public, State of Texas
Commission Expires 03-13-2013

*U:\Clients\FOLTYN, ROSEMARY\Application for Temporary Restraining Order.rtf*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy
Summer Lea Willette



| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JANET FOLTYN MCAFEE, | § | NO. 1 |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

## AFFIDAVIT IN SUPPORT OF
## <u>ROSEMARY FOLTYN'S APPLICATION FOR TEMPORARY RESTRAINING ORDER</u>

BEFORE ME, the undersigned authority, personally appeared Rosemary Foltyn, as Applican

For Independent Administratrix of the Estate of Janet Foltyn McAfee, who being duly sworn,

deposed as follows:

"My name is Rosemary Foltyn. I am at least 18 years of age and of sound mind. I am

personally acquainted with the facts alleged herein.

"Kenneth McAfee was married to Janet Foltyn McAfee at the time of her death on May 8,

2010. Kenneth McAfee was arrested by the Houston Police Department, and charged with the

murder of Janet Foltyn McAfee. Kenneth McAfee is currently incarcerated for that charge, pending

a trial. Kenneth McAfee may soon make bail and be released from custody. If he is not restrained

from using any of the accounts and property listed in the Application for Temporary Restraining

Order and Temporary Injunction, the assets of my daughter's estate will be depleted. I have filed an

Application to Probate a Holographic Will and For Issuance of Letters of Administration Pursuant to

Section 145(d) of the Texas Probate Code at the request of the heirs of the Estate, myself and Jake

Foltyn so that my daughter's property can be distributed in accordance with her wishes."

"Further affiant sayeth not."

Rosemary Foltyn, as Applican For Independent
Administratrix of the Estate of Janet Foltyn McAfee

*U:\Clients\FOLTYN, ROSEMARY\Application for Temporary Restraining Order.rtf*

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas


_____ Deputy
Summer Lea Willette



SUBSCRIBED AND SWORN TO BEFORE ME on June 8, 2010 , by Rosemary Foltyn



Notary Public, State of Texas

*U:\Clients\FOLTYN, ROSEMARY\Application for Temporary Restraining Order.rtf*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas

 Deputy

Summer Lea Willette



## No. 396935

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JANET FOLTYN MCAFEE, | § | NO. 1 |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

### TEMPORARY RESTRAINING ORDER

On _____, 2010, the Application for a Temporary Restraining Order of Rosemary Foltyn, as Applican For Independent Administratrix of the Estate of Janet Foltyn McAfee was heard before this court.

Based upon the pleadings, records, documents filed by counsel, and the arguments of counsel at the hearing, IT CLEARLY APPEARS:

A. That unless Kenneth McAfee is immediately restrained from the use of the following accounts and property:

    a. Any accounts through GMS Group which are not the separate property of Kenneth McAfee;

    b. Any Compass Bank Accounts;

    c. Any Laredo Accounts;

    d. Any Wells Fargo Accounts;

    e. Any Citizens' Bank Accounts; and

    f. Pershing c/o Harland Ics Account; and

    g. Any community property or separate property of Janet Foltyn McAfee.

that Kenneth McAfee will commit the foregoing before notice and a hearing on Rosemary Foltyn's Application for Temporary Injunction.

B. Rosemary Foltyn, as Applican For Independent Administratrix of the Estate of

*U:\Clients\FOLTYN, ROSEMARY\Application for Temporary Restraining Order.rtf*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy
Summer Lea Willette



Janet Foltyn McAfee and the other heirs of the Estate of Janet Foltyn McAfee will suffer irreparable harm if Kenneth McAfee is not restrained from the use of the foregoing property immediately because he will deplete the assets of the Estate of Janet Foltyn McAfee and there is no adequate remedy at law to grant Rosemary Foltyn, as Applican For Independent Administratrix of the Estate of Janet Foltyn McAfee and the other heirs of the Estate of Janet Foltyn McAfee complete, final and equal relief.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Kenneth McAfee and all of his officers, agents, servants, employees, agents, servants, successors and assigns, and attorneys are ORDERED to immediately cease and desist from the use of the following accounts and property:

      a.     Any accounts through GMS Group which are not the separate property of Kenneth McAfee;

      b.     Any Compass Bank Accounts;

      c.     Any Laredo Accounts;

      d.     Any Wells Fargo Accounts;

      e.     Any Citizens' Bank Accounts; and

      f.     Any community property or separate property of Janet Foltyn McAfee,

from the date of entry of this order until twenty (20) days thereafter, or until further order of this Court.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that a Constructive Trust is issued over the aforementioned assets.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Rosemary Foltyn's, as Applican For Independent Administratrix of the Estate of Janet Foltyn McAfee Application for Temporary Injunction be heard on _____ at _____:00 ___M in the courtroom of Probate

*U:\Clients\FOLTYN, ROSEMARY\Application for Temporary Restraining Order.rtf*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy
Summer Lea Willette



Court #1 of Harris County, Texas. Kenneth McAfee is commanded to appear at that time and show cause, if any exist, why a temporary injunction should not be issued against him.

The clerk of the above-entitled court shall issue a temporary restraining order in conformity with the law and the terms of this order upon the filing by Rosemary Foltyn of the bond hereinafter set.

This order shall not be effective until Rosemary Foltyn, as Applican For Independent Administratrix of the Estate of Janet Foltyn McAfee deposits with the Clerk, a bond in the amount of $_____ in conformity with the law.

SIGNED and ENTERED on _____ at _____ __.M.

_____
PRESIDING JUDGE

THIS INSTRUMENT RETURNED
UNSIGNED BY JUDGE'S OFFICE

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blackouts, additions and changes were present at the time the instrument was filed and recorded.

*U:\Clients\FOLTYN, ROSEMARY\Application for Temporary Restraining Order.rtf*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 9/29/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy
Summer Lea Willette

